ORIGINAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------X

JOHN FREDERICK, Pro-Se

Plaintiff,

-Against-

THE CITY OF NEW YORK,
NEW YORK CITY MAYOR MICHEAL BLOOMBERG,
NEW YORK CITY POLICE DEPARTMENT,
NEW YORK CITY POLICE DEPARTMENT COMMISSIONER RAYMOND KELLY,
NEW YORK CITY POLICE OFFICER EDWIN SIMON # 26883,
SGT WAYNE MANGAN, ARNOLD MURPHY # 29794,
DERRICK BOYD # 10014, DET. NICHOLAS RIVER, JOHN DOE from paragraph 14 to 18,
JOHN & JANE DOE
KINGS COUNTY DISTRICT ATTORNEY CHARLES HYNES,
ASSISTANCE DISTRICT ATTORNEY DENNIS SHELTON,
JOAN ERASKIN, JOHN & JANE DOE,
SEAGATE ASSOCIATION, SEAGATE N.Y. POLICE DEPARTMENT,
SEA GATE POLICE CHIEF ROBERT ABRAHAM, JEFFREY FORTUNATO
& LT MOYSE or JOHN & JANE DOE

Defendant(s),

-------------------------------------------------------X

File #

CV13 - 0897

*Summons and Complaint
*Demand for Jury Trial
*10 Days after Services of Answer

BRODIE, J

LEVY, M.J.

RECEIVED
FEB 19 2013
PRO SE OFFICE

UNITED STATES DISTRICT COURT EASTERN DISTRICT OF NEW YORK
225 Cadman Plazas East Brooklyn, New York 11201

PARTIES

1) The Plaintiff, John Frederick, Pro-Se
*P.O. Box 471774 Brooklyn, NY 11247

2) The Defendant(s) the City of New York,
Agents, representative's servants and / or employees or John & Jane Doe

3) The Defendant, Mayor of New York Michael Bloomberg
Agents, representatives servants and / or employees or John & Jane Doe
For the Mayor's Office, Police Department and the City of New York.
*City Hall New York, NY 10001

4) The Defendant, New York City Police Department
Agents, representatives servants and / or employees or John & Jane Doe
For the New York City Police Department

5) The Police Commissioner Raymond Kelly
Agents, representatives servants and / or employees or John & Jane Doe
For the New York City Police Department
*One Police Plaza New York NY 10001

6)  The Defendant, New York City Police Officer <u>Edwin Simons # 26883</u>
7)  The Defendant, New York City Police Officer <u>Sgt Wayne Managan</u>
8)  The Defendant, New York City Police Officer <u>Arnold Murphy # 29794</u>
9)  The Defendant, New York City Police Officer <u>Derrick Boyd # 10014</u>
10) The Defendant, New York City Police Detective <u>Nicholas Rivera</u>
11) The Defendant, New York City Police Officers  <u>Sgt John Doe</u>
12) The Defendant, New York City Police Officers <u>John Doe</u>
13) The Defendant, New York City Police Officers <u>John Doe</u>
14) The Defendant, New York City Police Officers <u>John Doe</u>
15) The Defendant, New York City Police Officers <u>Sgt John Doe</u>
16) The Defendant, New York City Police Officers <u>John Doe</u>
17) The Defendant, New York City Police Officers <u>John Doe</u>
18) <u>The Defendants John Doe</u> indicated in incident 3 and 4 or paragraph
19) <u>The Defendants</u> agents, representatives servants and / or
    Employees or John & Jane Doe for the New York City Police Department
    <u>*77 Pct. 127 Utica Ave. Brooklyn, New York 11213</u>

20) The Defendants, The District Attorney Office and
    The District Attorney, <u>Charles Hynes</u> for
    The County of Kings for the City of New York
21) The Defendant Assistance District Attorney, <u>Dennis Shelton</u>
22) The Defendant Assistance District Attorney, <u>Joan Eraskin</u>
23) The Defendant <u>agent, representative's servants and /</u> or
    Employees or John & Jane Doe for the District Attorney Office<u>.</u>
    <u>*370 Jay Street Brooklyn, NY 11201</u>

24) <u>All the above Defendant(s) may be serve upon;</u>
    New York City Corporation Counsel
    <u>*100 Church Street New York NY 10001</u>

25) The Defendant, Sea Gate Association
    3700 Surf Ave Brooklyn, New York 11226
26) <u>The above Defendant may be serve upon;</u>
    <u>Molod Spitz & Desantis, PC. Attorney at Law</u>
    <u>*1430 Broadway, 21st Floor  New York, NY 10018</u>

27) <u>The Sea Gate NY Police Department</u>
28) The Defendant, Sea Gate New York Police <u>Chief Robert Abraham</u>
29) The Defendant, Sea Gate New York Police <u>Chief Jeffrey Fortunato</u>
30) The Defendant, Sea Gate New York Police <u>Lt. Moyse or John & Jane Doe</u>
31) The Defendants <u>agents, representatives servants and / or employees</u>
    <u>or John & Jane Doe for the Sea Gate Association and Police Department</u>
    <u>*3700 Surf Ave Brooklyn, New York 11226</u>
    <u>All the above Defendant(s) may be serve upon;</u>
    <u>Miranda Sambursky Slone Sklarin Vervenitis LLP Attorney(s) at Law</u>
    <u>*The Esposito Building - 240 Mineola Blvd Mineola New York, NY 11501</u>

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x      **File #**

**JOHN FREDERICK,** Pro-Se                   **File Date;**              **2013**

          Plaintiff,

            ·**Summons and Complaint**

   -Against-                   *__Motion to Proceed Pro-se__

            *__Demand for Jury Trial__

            __10 Days after Services of Answer__

THE CITY OF NEW YORK,
NEW YORK CITY MAYOR MICHEAL BLOOMBERG
NEW YORK CITY POLICE DEPARTMENT COMMISSIONER RAYMOND KELLY,
NEW YORK CITY POLICE OFFICER EDWIN SIMON # 26883,
SGT WAYNE MANGAN, ARNOLD MURPHY # 29794,
DERRICK BOYD # 10014, DET. NICHOLAS RIVER, JOHN DOE from paragraph 11 to 18,
JOHN & JANE DOE.
KINGS COUNTY DISTRICT ATTORNEY CHARLES HYNES,
ASSISTANCE DISTRICT ATTORNEY DENNIS SHELTON,
JOAN ERASKIN, JOHN & JANE DOE,
SEAGATE ASSOCIATION, SEAGATE N.Y. POLICE DEPARTMENT,
SEA GATE POLICE CHIEF ROBERT ABRAHAM, JEFFREY FORTUNATO,
LT MOYSE, JOHN & JANE DOE

          Defendant(s),
------------------------------------------------------------x

**UNITED STATES DISTRICT COURT EASTERN DISTRICT OF NEW YORK**
**225 Cadman Plaza East Brooklyn, New York 11201**

**PLEASE TAKE NOTICE: the plaintiff, John Frederick, respectfully request to precede Pro-Se with the option for further litigation that legal counsel may be retained or appointed to assist this plaintiff in prosecuting this matter. The plaintiff is duty sworn on this 18th Day of January 2013 and the exhibits attached thereto, and upon all prior proceeding in the case to date the Plaintiff's Summons and Complaint will move this __United State District Court of the Eastern District at 225 Cadman Plaza East, Brooklyn New York 11201__ to the assign part affirms the following under penalty of perjury and the __Demand of a Jury Trial 10 days after Services of Answers;__**

## JURISDICTION AND VENUE

This action is authorized by violations of 42 U.S.C. civil rights would be pursuant to 42 U.S.C. § 1983. Subject matter jurisdiction for these federal claims rests upon Employment Discrimination 28 U.S.C. §§ 1331 and 1343(a)(4). This court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 (a). The Federal Courts did grant plaintiff(s) to file site for alleged practice of Stop and frisk by the police from 2005 to present day and that such practice deem "disturbing".  Pursuant to 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights of the parties and to grant all further relief deemed necessary and proper. Rule 65 of the Federal Rules of Civil Procedure authorizes injunctive relief. The Court has authority to award costs and attorneys' fees under 42 U.S.C. § 1988. And other money damage that the court may deem proper pursuant to Federal Tort Claim Act (28 U.S.C. §§2671-80) 28 U.S.C. § 1346(B) and 28 U.S.C§ 1402 (B) provides that such an action may be brought only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred. Venue is proper in this judicial district pursuant to 28 U. S.C. § 1391(b), as this is a district in which a substantial part of the events or omissions giving rise to Plaintiffs' claims arose in this district due to Governments, the City of New York resulted in the bureaucratic incompetence and impropriety the plaintiff seek fairness. The plaintiff alleges violation by the City of New York (HEREINAFTER REFERRED TO AS "CITY"), through the New York City Police Department (HEREINAFTER TO AS NYCPD) of several sections of federal and state: (1) 42 U.S.C. § 1983 of the Civil Right Act of 1871, (2) the forth and fourteenth amendments of the U.S. Constitution, (3) 42. U.S.C. § 2000 (d) (title VI) of the Civil Right Act of 1964, and violation of New York State Laws the fourth Amendment claim alleges that the City has engaged in pattern of unconstitutional stop frisk / search of vehicle(s), residential and of person(s), City residents that are done without the requisite reasonable and articulable suspicion required under the fourth Amendment. The fourteenth Amendment claim alleges that the City through the NYCPD has often used race, gender, nation origin or its residents that resides about the City Housing Developments, in lieu of mere suspicion, as the factor that determine whether officers decide to stop, search and frisk vehicle(s) and person(s).

Plaintiff claims that these practices violate equal protection clause of the fourteen amendments. The Plaintiff further claims that Black and Latino males are the population groups are affected by the alleged violation. The Plaintiff will provide evidence that NYCPD police officers decision to engage in a pattern of harassment particular pedestrian intrusive when stopping non-whites include the plaintiff. The Complaint asserts the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1961 et seq., The Defendant(s) jointly in violation of whistle Blowing retaliation.

**PLAINTIFF'S DEFINITION; Stop and Frisk / Search** – Law Enforcement official under the color of authority unconstitutional or without cause, lack mere suspicion or rise to the level of precursor of any criminality afoot, stop person(s), vehicle(s) or place of resident(s) without a warrant, search such person(s) by placing hands inside person(s) pockets or verbal order such person(s) to turnout such pocket pat down from head to toe subsequently may result in arrest. The Defendant(s) created a culture of corruption probable Cause will be perjured / manufacture in these circumstances to justified cause for arrest, **Floyd et al v City of New York.**

**PLAINTIFF'S DEFINITION; Stop Question and Frisk / Search** – Law Enforcement official under the color of authority stop person(s) when a precursor of a crime about to or had committed a crime.

**PLAINTIFF RECOGNIZED** Law Enforcement authority to conduct protective search when the level of suspicion is warranted **NOT A WITCH HUNT.**

## STATEMENT OF CLAIM

1)    This is an action for compensatory and punitive damage for violation of plaintiff's civil and constitutional rights under the Fourth, Fifth and Fourteenth Amendment and to the Constitution of the United States by reason of the unlawful acts of defendant(s) by violating the plaintiff's Civil and Constitutional Rights under the color of law denied due process and not allow the plaintiff to face his accuser under the 6th Amendment.

2)    The plaintiff is innocent and denied the defendant(s) allegation due to lack of credibility of the defendant(s) and did falsely arrested, wrongfully incarcerated, maliciously prosecuted and wrongfully convicted cause that did cause a domino effect of intentional tort that violated the plaintiff's civil and constitutional rights. The plaintiff's claim arose due to the false, manufacture allegations of the defendant(s) failure to display earnestly and integrity, acting individually and together and / or in concert conspirer and further alleged that the "CITY" failed to supervise and train its employees, servants, agents or representatives, led to violations of the rights guaranteed by the First Amendment, the 14th Amendment, 42 U.S.C.? 1983 and 42 U.S.C.? 1988. THE DEFENDANT(S) created a crime by distorted facts with falsehood such the defendant(s) created a criminal thus damage the plaintiff's reputation. The defendant(s) received bounty for such acts by promotions or to prime agency assignments.

3)    The Complaint asserts the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1961 et seq., of the defendants lack of credibility acting individually and together and / or in concert and in their official capacity under the color of law the defendant(s) did violate the Plaintiffs constitution and civil rights and seek injunctive relief, declaratory relief, and punitive damages. The action of the defendant(s) is not for the safety or the protection of its citizens which did victimizing certain community residents due to unconstitutional stop and search/ frisk of vehicle(s), residential and of person(s) unlawful police intrusion policy for arrest for bounty as incentive under the color of law.

4)    The acronym (NYPD), New York Police Departments is defines as New York State Law Enforcement Agencies pursuant under 1.20, 2.10 & 2.13 of the New York State Criminal Procedure. New York City Police Department of the City of New York is one of the many New York Police Departments (NYPD) in the State of New York in which the defendant(s) misused the acronym as their own.

## CAUSE OF ACTION

5)    The Plaintiff, John Frederick is a tax payer, recently served Jury Duty register Voter, former Law Enforcement Official and Law Enforcement Instructor served the public for more than 30 years and is a resident of Brooklyn, State of New York County of kings and is a legalize citizen of the United States of American.

6)    The Defendant City of New York, (HEREINAFTER REFERRED TO AS "CITY") is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York, and as such maintained the New York City Police Department (N.Y.C.P.D.) and employed and together and / or in concert individual Defendant(s) sued herein. That upon information and belief the City is responsible for the hiring and training of its servants, agents or representatives' and / or employees of N.Y.C.P.D. sanction such on the unconstitutional (lack mere suspicion or precursor of criminality) on a campaign of stop and search/ frisk of vehicle(s), residential and of person(s) policy for arrest for bounty as incentive under the color of law.

7)    The Defendant, Mayor Michael Bloomberg Chief executive of the City of New York (HEREINAFTER REFERRED TO AS "The Mayor") did hired the Police Commissioner to implement police department's policies and sanction and instigated the police commissioner on a campaign of unconstitutional (lack mere suspicion or precursor of criminality) for stop and search/ frisk of vehicle(s), residential and of person(s) policy that resulted in the plaintiff's innocent was falsely arrested, wrongfully incarcerated, maliciously prosecution and the wrongful conviction causation a domino effect of intentional tort due to the false, manufacture allegations, perjured police officers testimony, forged police reports to justified unlawful act of intrusion the defendant(s) for arrest for bounty as incentive acting individually and together and / or in concert conspirer under the color of law. The Mayor on numerous occasions directs the New York City Police Department supports such unlawful practices.

8)    The Defendant, New York City Police Commissioner Raymond Kelly, (HEREINAFTER REFERRED TO AS "The Commissioner") that at all times herein the defendants, was negligent in the hiring, training, supervision, discipline, retention and promotion of the defendant's employees, servants, agents or representatives  and / or employees of New York City Police Department sanction or instigate its police officers on the campaign of unconstitutional (lack mere suspicion or precursor) for stop and search/ frisk of vehicle(s), residential and of person(s) policy that resulted in the plaintiff's innocent was falsely arrested, wrongful incarcerated, maliciously prosecution and the wrongfully conviction cause a domino effect of intentional tort due to the false, manufacture allegations, perjured police officers testimony, forged police reports to justified unlawful act of intrusion the defendant(s) for arrest for bounty incentive for promoted acting individually and together and / or in concert conspirer under the color of law. The New York City Police Department did train or introduce a few of its employees, servants, agents or representatives, on a term called Classic Condition. Such introduction is on how to circumvent the proper way of investigations to raise the level of suspicion on unlawful police intrusion which lacks probable cause. The plaintiff was incarcerated for more than 72 hours unable to use the bathroom only allow use a drinking cup for relief and criminally charged the plaintiff for his license firearm leads to the violations of the rights guaranteed by the First Amendment, The 14th Amendment, 42 U.S.C.? 1983 and 42 U.S.C.? 1988. Defendant(s) fail to provide due process by false courtroom testimony and subsequently resulted in the plaintiff revocation of his firearms licenses due to the error of law. The Commissioner stated on numerous occasions supported and directed the defendant(s), NYCPD official on such unlawful practices.

9)    At all times hereinafter mentioned, the Defendants, from paragraph 5 to 19 employees, servants, agents or representatives are police officer of the New York City Police Department, (HEREINAFTER REFERRED TO AS "NYCPD") acting within the scope and authority of their employment. They acting individually and together and / or in concert and in their official capacity as a New York City Police Officers. The incentive for arrest is for bounty the defendant(s) employees, servants, agents or representatives' agents, and / or employees of NYCPD did conduct a campaign of unconstitutional (lack mere suspicion or precursor of criminality) for stop and search/ frisk of vehicle(s), residential and of person(s) policy that resulted in the plaintiff's innocent was falsely arrested, wrongful incarcerated, maliciously prosecution and the wrongful conviction due to the false, manufacture allegations, perjured police officers testimony,

forged police reports to justified unlawful police intrusion, unjustified act of the defendant(s) for arrest for bounty incentive acting individually and together and / or in concert conspirer under the color of law. <u>Nearly 150.000 or 6.71% of all discretionary stop lack legal justification. An additional 544,252 or 24.37% of all discretionary (non-radio run) stops lack sufficiently detail documentation to assess their legality</u>. The plaintiff was incarcerated for more than 72 hours unable to use the bathroom only allow use a drinking cup for relief and plaintiff criminally charged for his license firearm that was not used in these allegation defendant(s) unlawfully obtain.

10)    That at all times mentioned herein the defendant(s) knew or should have known of the discriminatory or profile nature, bad judgment, unlawful police intrusion, unjustifiable harassment, stop, frisk and search (Defendant(s) place hands inside plaintiff's pockets not for police protection for witch hunt search policies, falsify police arrest report, perjured court room police testimony by the defendant(s), false and misleading or incomplete statements, prosecutor's misconduct to suborn perjury, the unlawful propensities and conspiracies the defendant(s) acting individually and together and / or in concert along with the Assistance District Attorney Officials of the County of Kings involved in the malicious violation or breach of the plaintiff's civil and constitutional rights and a serious of judicial bureaucratic incompetence to seek unfairness of trial under the color of law.

11)    The Defendant, New York City Police Officer Edwin Simons # 26883, failure to display earnestly and integrity, lack credibility, knowing distorted the facts in incident # 1 did conduct and instigated a campaign of harassment of the plaintiff and unconstitutional (lack mere suspicion or precursor of any criminality) did stop and search the plaintiff by placing his hands inside of the plaintiff's pocket, removing his wallet and searching therein, search his vehicle(s) pulling out the back seat and trunk lining panel not safe guarding plaintiff's property but searching close brief case. Due to the defendant(s) policy that resulted in the plaintiff's innocent / absent of any criminality was falsely arrested, wrongfully incarcerated, maliciously prosecution and the wrongful conviction due to the falsehood, manufacture allegations, perjured police officer Edwin Simons court testimony and conflicted police reports to justified unlawful police intrusion act of the defendant(s) for arrest for bounty and incentive acted individually and together and / or in concert conspirer under the color of law the defendant did stole plaintiffs personal property items from the plaintiff's

car and his person. The defendant, Edwin Simons took photos copies of the plaintiff's and the content of his wallet and passes it among other police officer of the 77th Pct. a tactic to pile on series of harassment of police intrusion and arrest. The plaintiff was incarcerated for more than 72 hours unable to use the bathroom only allow use a drinking cup for relief and criminally charged for a license firearm. There is no question that the plaintiff claims that defendant(s) lacked probable cause to arrest the plaintiff and brought unfounded, manufacture criminal charges against plaintiff that instigated incidents 2, 3 and 4, refer to incident # 1 in paragraph # 56.

12)   The Defendant, New York City Police Officer Sgt Wayne Managan, lacks credibility, incident # 1, paragraph # 55 did fail to supervise and display bad judgment, did conducted campaign of unconstitutional (lack mere suspicion or precursor of any criminality) failure to supervise Simon properly did stop and search/ by placing his hand inside the plaintiff's pocket and search the plaintiff's vehicle(s) policy of harassment that resulted in the plaintiff's innocent / false arrest, wrongful incarcerated, maliciously prosecution and the wrongful conviction due to the falsehood, manufacture allegations, perjured police officers probable cause, forged police reports to justified unlawful police intrusion act of the defendant(s) for arrest for bounty and incentive acting individually and together and / or in concert conspirer under the color of law. The plaintiff was incarcerated for more than 72 hours unable to use the bathroom only allow using a cup for relief and criminally charged for a license firearm.

13)   The Defendant, New York City Police Officer Arnold Murphy # 29794, failure to display earnestly and integrity, lacks credibility, knowing distorted the facts present at incident #1 – paragraph # 56 and incident # 2 - paragraph # 59 did conduct a campaign of unconstitutional harassment (lack mere suspicion or precursor of any criminality) did stop and search/ the plaintiff by placing his hand inside the plaintiff's pants pocket and search the plaintiff's vehicle(s) policy that resulted in the plaintiff's innocent / was falsely arrested, wrongful incarcerated, maliciously prosecution and the wrongful conviction due to the false, manufacture allegations, perjured police officers court room testimony, forged police reports to justified unlawful police intrusion act of the defendant(s) for arrest for bounty and incentive acting individually and together and / or in concert conspirer under the color of law. Testified in a court proceeding and submitted falsehood testimony that resulted in the plaintiff conviction.

14)    The Defendant, New York City Police Officer Derrick Boyd # 10014, failure to display earnestly and integrity, lacks credibility, knowing distorted the facts present at incident #1- paragraph # 56, incident # 2 - paragraph # 58 and incident # 4 - paragraph # 62 did conducted a campaign of harassment unconstitutional (lack mere suspicion or precursor any criminality) did stop and search/ the plaintiff's vehicle(s) policy, excessive force with the threat of deadly force at gun point that resulted in the plaintiff's innocent / was falsely arrested, wrongfully incarcerated, maliciously prosecution and the wrongful conviction due to the manufacture allegation, perjured or falsehood court testimony by this defendant, forged police reports to justified unlawful act of police intrusion implemented by these defendant(s) for arrest for bounty incentive acting individually and together and / or in concert conspirer under the color of law.

15)    On or about November 14, 2007 at the 77 pct the plaintiff was debrief by the defendant, New York City Police Officer Detective Nicholas Rivera, failure to display earnestly and integrity, lacks credibility, who failed to properly investigate or take any police action involving incident # 1 & 2 the defendant was inform of defendant(s) Simon, Managan, Boyd & Murphy impropriety of unconstitutional stop and frisk and the manufacture of allegation.

16)    The Defendant, New York City Police Officers John & Jane Doe also indicated in incident # 3, paragraph # 60 and incident # 4, paragraph # 61 did conduct a campaign of harassment unconstitutional (lack mere suspicion or precursor of any criminality) did stop and search/ the plaintiff's by placing their hands inside the plaintiff pocket and search the plaintiff's vehicle(s) / trunk, policy of excessive force with the threat of deadly force that resulted in the plaintiff's false arrest, wrongful incarcerated, maliciously prosecution and the wrongful conviction due to the false, manufacture allegation, perjured police officers forged police reports to justified unlawful act of police intrusion the defendant(s) for arrest for bounty as incentive acting individually and together and / or in concert conspirer under the color of law.

17)    At all times hereinafter mentioned, the Defendants, Charles Hynes the District Attorney of the county of Kings for the City of New York County of Kings an elected official (HEREINAFTER REFERRED TO AS "D.A.") acting within the scope and authority of this employment. That at all times herein the defendant, management was negligent in the hiring, training, supervision, discipline, retention and promotion of the defendant's servants, agents or representatives, and / or employees, Assistance District Attorney; (HEREINAFTER REFERRED TO AS "A.D.A.") the Defendant(s) acting individually and together and / or in concert with others under the color of law.

18)    That at all times mentioned herein the defendant, D.A, Knew or should have known of the discriminatory practice or profile nature, bad judgment, unconstitutional (lack mere suspicion or precursor of any criminality) or for unlawful stop, frisk and search policies, falsify police records, perjured court room testimony by the defendant(s), false and misleading statements, prosecutory misconduct to suborn perjury, malicious prosecution, the unlawful propensies and conspiracies of the A.D.A. / prosecutors involved in the violation or breach of the plaintiff's civil and constitutional rights under the color of law.

19)    The Defendant A.D.A. Dennis Shelton failure to display earnestly and integrity,, lacks credibility, knowing and intentionally distorted the facts Knew or should have known of the discriminatory practice or profile nature, bad judgment, unconstitutional (lack mere suspicion or precursor of any criminality) or unlawful stop, frisk and search policies, falsify police reports, perjured or falsehood court room testimony by the defendant(s) Simons, Wayne, Boyd and Fortunato did made false and misleading statements, conspired in malicious prosecution of the plaintiff. The plaintiff denied the allegation if its establish the defendant(s) Simons, Wayne, Boyd and Fortunato change their Court testimony at the behest of defendant(s) Shelton and Eraskin thus suborn perjury prosecutory misconduct which constitute Defendant(s) Shelton and Eraskin is not eligible for immunity from any criminal prosecution or civil liability for suborn perjury, the unlawful propensies and conspiracies of the A.D.A. / prosecutors involved in the violation or breach of the plaintiff's civil and constitutional rights under the color of law and the attorney canon rules.

20)    The Defendant A.D.A. Joan Eraskin failure to display earnestly and integrity, lacks credibility, knowing distorted the facts as Knew or should have known of the discriminatory practice or profile nature, bad judgment, unconstitutional (lack mere suspicion or precursor of any criminality) or unlawful stop, frisk and search policies, falsify police records, perjured or falsehood of court room testimony by the defendant(s), false and misleading statements, malicious prosecution of the plaintiff, prosecutory misconduct to suborn perjury is not eligible for immunity, the unlawful propensities and conspiracies of the A.D.A. and prosecutors involved in the violation or breach of the plaintiff's civil or constitutional rights under the color of law and the attorney canon rules.

21)    The Defendant(s) A.D.A. John and Jane Doe assisted D.A. City, Commissioner, and member of NYCPD, Sea Gate Association and member of the Sea Gate Police Department
knew or should have known of the discriminatory practice or profile nature, bad judgment, unconstitutional (lack mere suspicion or precursor of any criminality) or for unlawful stop, frisk and search policies, falsify police records, perjured of falsehood court room testimony by the defendant(s), false and misleading statements, malicious prosecution of the plaintiff, prosecutory misconduct to suborn perjury, the unlawful propensities and conspiracies of the A.D.A. and prosecutors involved in the violation or breach of the plaintiff's civil or constitutional rights under the color of law .

22)    The Defendant(s) Sea Gate Association, (HEREINAFTER REFERRED TO AS "MANAGEMENT") failure to display earnestly and integrity, lacks credibility, is a corporation duly organized and existing under and by virtue of the laws of the State of New York, and as such maintained the Sea Gate New York Police Department and employed the individual Defendants as representatives, agents, servants and / or employees. They acting individually and together and / or in concert and in their official capacities as Sea Gate New York Police Officers are sue herein. Violated labor and management settlement agreement, submitted false and misleading statements and retaliated due labor union activity civil complaint and the retaliation of whistle blowing complaint.

23)    At all times hereinafter mentioned, the Defendants, Police Officers / Peace Officers are representatives, agents, servants and / or employees of the Sea Gate New York Police Department, (HEREINAFTER REFERRED TO AS "S.G.P.D.") another New York Police Department (N.Y.P.D.) acting within the scope and authority of their employment. As the results / retaliation of their action individually and together and / or in concert and in their official capacity as a Sea Gate New York Police Officers are sue herein. The plaintiff was employed with the defendant as a supervisor Detective Sergeant and second in command of the agency and union delegate (The Special Status of Shop Steward / Union delegate) about March 1999 the plaintiff did filed unlawful labor practices with the National Labor Relation Broad Case # 29-CA-22576 did rule in favor of the plaintiff and its union members thus Sea Gate Association and its Sea Gate N.Y. Police Department retaliatory act due to the Plaintiff's Whistle Blowing Complaint.

24)    That upon information and belief the Management is responsible for the training of defendant(s) acting individually or together and or in concert\ of its police / peace officers hiring, training, supervision, discipline, retention and promotion of the agents, representatives servants and / or employees of S.G.P.D. did violated labor and management settlement agreements.

25)    The Defendant, Sea Gate Police Chief Robert Abraham failure to display earnestly and integrity, lacks credibility, knowing distorted the facts hired by Management to implement police department's policies and sanction their police chief Abraham to submit false and misleading statements about the plaintiff that causation a domino effect of intentional tort for retaliation which cause the plaintiff's wrongful arrest never attended Court to defend his statement for such the plaintiff never received a fair trial. The defendant(s), Sea Gate Association and Sea Gate Police Chief Robert Abraham did violated settlement agreements and submitted false statement to the New York City Police Department, ADA representative and the Court and the retaliation of whistle blowing complaint.

26)    The Defendant, Sea Gate Police Lt. Moyse or John & Jane Doe failure to display earnestly and integrity, lacks credibility, knowing distorted the facts hired by Management to implement police department's policies and sanction police supervisors to submit falsehood and misleading statements to defendant(s) New York City Police department that causation a domino effect of intentional tort for retaliation which cause the plaintiff's wrongful arrest, this defendant never attended Court to defend his statement for such the plaintiff did not received a fair trial the defendant(s) did violated settlement agreements.

27)    The Defendant, Sea Gate Police Chief Jeffrey Fortunato failure to display earnestly and integrity, lacks credibility, knowing distorted the facts hired by Management to implement police department's policies and sanction their police chief to submit false/hood and misleading statements about the plaintiff that causation a domino effect of intentional tort as a form of retaliation which did cause the plaintiff's wrongful conviction the defendant(s) did violated settlement agreements and the retaliation of whistle blowing complaint.

28)    The Defendant, Sea Gate's Association or Management of its Police Department agents, representative's servants and / or employees or John & Jane Doe lacks credibility, knowing distorted the facts did submit falsehood and misleading statements about the plaintiff the causation and the domino effect of intentional tort for retaliation wrongful and malicious prosecution of the plaintiff did violated settlement agreements due to the plaintiff's labor union status and civil complaint.

29)    That at all time mentioned herein the defendants, Managements, lacks credibility, knowing distorted the facts Knew or should have known of the discriminatory / profile nature, bad judgment, whistle blowing retaliations (The Special Status of Shop Steward / Union delegate) and the violation of the settlement agreement the causation act toward the plaintiff malicious prosecution. The defendant(s) action individually and together and / or in concert and in their official capacity by the State of New York as a Sea Gate New York Police Official or as a NYPD agency did violated settlement agreements.

## *PLAINTIFF'S BACKGROUND*

30)    The Plaintiff, John Frederick is a tax payer, recently served Jury Duty register Voter, former Law Enforcement Official and Law Enforcement Instructor served the public for more than 30 years and is a resident of Brooklyn, State of New York County of kings and is a legalize citizen of the United States of American. The plaintiff did possess a NYC Police Department *Carry Conceal Pistol license and Rifle / Shotgun Permit since 1978*    for more than twenty (30) years.

31)    The Plaintiff is currently license and Bonded as a Private Investigator pursuant to Article 7 of the New York State General Business law. Under the color of such authority the plaintiff uphold the United State Constitution while continued to possess such license since 1995 and prior to such Watch Guard Patrol Agent license since 1984.   New York City Police Department rules are codified in the City of New York (RCNY) title 38 section 5-01 provides for Private Investigator / Watch Guard Patrol Agent as such New York City Police Department may grant applicants for pistol license.

32)    The Plaintiff's clients were Check Cashing Companies and the investigation of fraudulent check schemers, Pawn Shops, Jewelry Stores, Restaurants, Real Estate Management and Laundry Mats few of the duties include but not limited to open and close these commercial business establishments. As a armor car courier transport funds to the local Banks daily, transport valuable commodities to its chain of stores, conduct employee background checks and other armed Security civil & criminal Investigations, logistics and Dignitary Protection Services. The plaintiff conducts many missing or kidnapped children victims pro bono this project resulted in many successful locations and the return to family members. For decades the Plaintiff maintains the same clients due to his integrity and reliability.

33)    As a prerequisite for this Specialize professional employments he must be legally authorized or licenses to conduct such business, private investigation and carry a firearm for his protection and the protection of others life(s) and properties.

34)    With such a task there are people out there who are willing to cause harm to comment armed robbery to the plaintiff in order to steal valuable items during his cost of business. The Commerce Department requires that licensees of such profession needs to be license to carry firearms for such a monumental task or duties. Legislation also required that former law enforcement officials retired in good standing and as Private Investigator shall be granted firearm permits.

35)    The Plaintiff is currently license and bonded by the New York City Department of Consumer Affairs as a Process Server pursuant to Chapter # 23 of the New York City Administrative Code, since 1975.

36)    About 1983 to 1988 the plaintiff was appointed to the Sea Gate N.Y. Police Department (SGPD) as a Police Officer / Peace Officer pursuant to New York State Criminal Procedure Law 2.10 sub 46 and 1.20 section 34-A. 1985 plaintiff promoted to Detective / Investigator.

37)    About 1984 to present plaintiff was appointed by the New York City Council Member from the 36th District as Commissioner of Deeds (Notary) pursuant of New York State Executive Law section  140 (5),.

38)    About 1985 to 1989 the plaintiff attended John Jay College major in police science he volunteer his time to the mentor program at the school.

39)    About 1987 to 1988 the plaintiff was Deputize by the NYC Police Commissioner as Special Officer or Special Patrolman (Peace Officer) in pursuant of CPL 2.10 (27) with the N.Y.C. Taxi & Limousine Commission, (TLC) appointed as an Inspector. The plaintiff Patrol the New York City area. The plaintiff worked at TLC in morning and Sea Gate Police (SGPD) at night.

40)    About 1988 the plaintiff resigned from both agencies SGPD and TLC to join the Amtrak Police Department (Penn Station) as a Police Officer Drug Interdiction Investigation Unit pursuant of CPL 1.20 (P). The plaintiff patrols the eastern corridor from Connecticut to Washington DC. Resigned in about 1991 and reappointed to The Sea Gate NY Police Department with the rank of Detective Sergeant.

41)    From 1986 to 1989 the plaintiff volunteer to manage and organized approx 5 little league boys and girls soft ball teams from the NYC Police Dept PAL, 77th pct and the NYC Housing Authority.

42)    From 1989 to 2007 the plaintiff manage and organized the Boy Scouts of American Troop # 386, once a month for about 5-years volunteer and assist the staff at First Baptist Church in Brownville Brooklyn in distributing clothing and food Bank to the community and volunteer services to escort staff member employed with Family Dynamic Community Services Center and host of charitable events. The plaintiff plays Santa Claus every Christmas holidays at the neighborhood's community centers, Hospitals and NYC Police Department 60th Pct. The plaintiff has demonstrated positives characterization. His contribution for a safer and better City throughout his life is for the betterment of us all.

43)    About 1991 the plaintiff reappointed to the Sea Gate New York Police Department, (SGPD) Commanding Officer Peter Seijo. The plaintiff expected the position as Detective /Sergeants to be entered into the labor union collective bargaining contracts. The plaintiff's contribution; law enforcement accreditation, more training, prepare operation guideline manual for the officers, government grants for law enforcement enactive for community services, better police equipments, law enforcement labor union contract, NYSPIN computer, jail cells, fax machine, computers for agency internal reports, N.Y.C.P.D. citywide or 10th division radio, comparative salary and benefits for the officers and bullet proof vest for Sea Gate Police Officers.

44)    About 1996 the plaintiff out on leave of absent from SGPD issued retired ID card, ██████████.

45)    About 2001 received retirement benefit from Sea Gate after civil litigation and settlement agreement received retired ID card, ◄█████████████►).

46)    May 1992 the plaintiff was awarded Sergeant of the month by Sea Gate NY Police Department and the NYS Fraternal Order Police for excellent police work, created a neighborhood meditation, intervention group and a laudatory of praise from the community residents and for going that extra mile.

47)    **Also appointed by the New York City Court Assigned Counsel Plan Agency as a Court assigned Private Investigator, since 2003.**

48)    **About 2000 the plaintiff appointed as NYC Health and Hospital Police assign to New York City Hospital's Facility about March 2006 the plaintiff took a leave of absent to explore other opportunity. Due to the arrest about November of 2007 the plaintiff resigns his position with NYC Hospital Police as a police officer.**

49)    **The plaintiff has an extensive history of commendation and numerous certificate of training in criminal investigation and firearms, The plaintiff is the only member of Sea Gate Police that is certified as a police officer under 1.20 of the New York State CPL and is ranked as one of highest decorated police officer in the Department, 2- silver star, 6-bronze star, 1- blue star for community services, 13- meritorious awarded & 9- excellent police duty awarded. The plaintiff contribution of public services for the citizens of the City of New York should not by underscore,**

50)    **The Plaintiff's Sea Gate New York Police Evaluation reports, (▓▓▓▓)**

51)              ***PLAINTIFF'S POFESSIONAL CERTIFICATE OF TRAINING***

A.    <u>American Red Cross</u>: Basic Life Support Course in Cardiopulmonary Resuscitation and Advanced First Aid and Emergency Care; 05/84.

B.    <u>NYS Municipal Police Training Council</u>: Peace Officer Training Course with Firearms; 12/84.

C.    <u>Security Management Institute</u>: Certified Protection Professional; 05/87.

D.    <u>NYC Taxi & Limousine Commission:</u> Street Enforcement Operations and Weapons Course; 09/87.

E.    <u>NYS Municipal Police Training Council</u>: Police Officers Training Course; 05/89.

F.    <u>NYS Municipal Police Training Council</u>: Emergency Medical Service First Responder Training; 05/89.

G.    <u>Sea Gate NY Police Department</u>: Field Training Police Officer Course; 01/92.

H.    <u>NYC Police Department</u>: Basic Latent Print Techniques; 08/92.

I.       **NYC Police Department**: Private Security Officers Course; 10/92.

J.       **NYC Police Department**: Police Firearms Instructor Course; 12/92.

K.      **NYS Police Department**: New York Statewide Police Information Network Basic Course; 02/95.

L.       **NYS Municipal Police Training Council**: ASP Tactical Police Baton; 10/97.

M.      **NYC Police Department**: Auto Crime School Organized Crime Control Bureau; 01/98.

N.      **NYC Police Department**: Special Protective Security Training Course; 04/98.

O.      **Warwick NY Police Department**: Narcotics Identification Competency Level Course; 04/98.

P.       **Sea Gate NY Police Department**: LO/JACK Operator; 10/98.

Q.      **NYS Municipal Police Training Council**: Peace Officers Course; 12/00.

R.      **NYC Hospital Police**: Weapons of Mass Destruction Refresher Course; 08/02.

S.       **NYC Hospital Police**: Security Management Awareness Course; 08/02.

T.       **NYS Municipal Police Training Council**: Law Enforcement Counter-Terrorist Response to Weapons of Mass Destruction; 05/03.

U.      **NYS Division of Criminal Justices**: Police and Security Guards Instructor Training Course; 09/13.

V.       **NYS Department of Criminal Justices**:  Annual Article 35 Training;
         Firearms, Baton, Mace, Handcuffing, Hand to Hand combat & customer services.

**52)**    ***PLAINTIFF'S GOOD MORAL VALUE AND HUMANITY OF PUBLIC SERVICES***

A.    About 6/10/78 c/o Macdonough St. & Summer Ave. Brooklyn, NY in the confine of the 79 Pct, The plaintiff did observed 5 male, 1 armed with a knife was beating & robbing an elderly male, Mr. Lemon of 125 Macdonough St. The plaintiff stops the assailants disarmed 1 and apprehended 2 of the 5 suspects.

B.    About 7/18/80 c/o Sterling Pl. and Rochester Ave. Brooklyn, NY in the confine of the 77 Pct. The plaintiff witness a male later identified as Raymond Nero beating and stomping an unconscious female in the middle of the street. The plaintiff used physical force to terminate the assault and restrains the suspect until police arrival. The serious injured female was transported to Kings County Hospital for treatments. The plaintiff testifies in court on the incident, UF#8951, Arrest# 27241.

C.    About 7/31/80 f/o 107 Kingston Ave. Brooklyn NY in the confine of the 77 Pct. The plaintiff did observe later identified as Derwyn Ford and Phillip Ladson shot and killed a male victim during a robbery. The plaintiff at gun point apprehends disarmed & secures both suspects for the police and rendered aid to the victim to no avail the male victim died at the scene. The plaintiff testifies in court on the incident, UF#9544, Arrest# 29254 and 29252.

D.    About the summer of 1980 the plaintiff did observed a neighborhood resident identified as Garlin Shephard ran out of an apartment building at 1400 Bergen Street Brooklyn, NY in the confine of the 77Pct. A Female tenant also exits the same location and informs the plaintiff that Garlin did beat and rape her. The Plaintiff gives chase and apprehended Garlin in the school yard of P.S. 243 located on Bergen Street and Troy Ave. The plaintiff returns to the location with the suspect Garlin Shephard and turn him over to the police for prosecution.

E.    About 9/10/80 c/o Ralph Ave and Pacific St Brooklyn, NY in the confine of the 77 Pct the plaintiff while inside a Grocery Store a male later identified as Kim Chamber entered the store and begin shooting randomly at the store clerks. The plaintiff tackles Chamber and disarmed him until police arrival, no injury. The Plaintiff ask Chamber "why did you do that?" he stated, "the store clerk slap me in the face", UF61 #11S87, Arrest #34718.

F.    About 10/80 c/o Bergen Street and Ralph Ave Brooklyn, NY in the confine of 77 Pct the plaintiff observed, later identified as Reginald Hall and Ronald Jackson both armed with firearms attacked an off duty New York State Correction Officer Wallace Miller. The plaintiff assisted the officer in terminate the assault and arrested both suspects. The plaintiff was called to testify in court.

G.    About 11/80 Ms Renee Palmer, Mr. Wallace Miller and the plaintiff the operator traveling south on Albany Ave at the intersection of Crown St in the confine of the 71st Pct. Waiting at the red light a U-Haul truck traveling west bound on Crown Street occupied by 2 males and a female clan in bra and panty screaming for help trying to escape from out of the truck. The plaintiff proceeded west bound on Crown Street and stopped the truck. The plaintiff remove the female from the truck occupies. The unidentified males drove away without further incident. The Female states she was at Lincoln Terrace Park, Rochester Ave & Crown Street Brooklyn when the two males grab her and forces her in the truck. The Police was notified and responded.

H.    About 5/25/81 f/o 89 Franklyn Ave Brooklyn, NY in the confine of 88 Pct the plaintiff exiting the location did observed, later identified as Louis Figueroa during a dispute shot at several individual inside the court yard. The plaintiff manages safely, tackle, disarm (gun) and restrain the suspect until the police arrived, UF61#5335, Arrest #5335.

I.    About July 1982 c/o Green Ave & Classon Ave Brooklyn, NY in the confine of 88 Pct the plaintiff arrived at a friend residence and observed next door a male breaking into the Church and removed the Church's property. The plaintiff detains the male suspect and notified the police of the Burglary. The suspect was subsequently arrested by the police and the Church's property was returned.

J.    About 8/28/82 73rd Ave Glen Oaks Village Queens, NY in the confine of 103 Pct the plaintiff on security motor patrol in his geographical area of employment did observed 6 assailant feeing from a residence 2 of them armed with a knife. The plaintiff and his partner at gun point apprehend, disarmed and secured all 6 suspects. The plaintiff enters the residence and found a male victim stab. The plaintiff notified the police and ambulance for assistance while aid render to the male victim. The victim subsequently surveys his injuries, ADA Tulier from the Queens District Attorney assign to the case.

K.    About 9/1/82 73rd Ave Glen Oaks Village Queens, NY in the confine of 103 Pct the plaintiff on security motor patrol in his geographical area of employment did observed a male crossing the street armed with a sew-off shot gun. The plaintiff at gun point apprehends and disarmed the suspect. When the suspect was ask what was he doing with the shot gun? He replies "I am going across the street to shot those people", "they refuse to turn down that noise (music)". Police was notified and arrest the male suspect.

L.    About 8/2/83 f/o 400 Clinton Street Brooklyn, NY in the confine of the 88 Pct the plaintiff drop off his 7 yr old son and his mother observed from his car 2 males armed with knives grab his son and his son's mother and push them both inside the lobby of the location. The male suspects had several other victims in the lobby held at knife point. The plaintiff at gun point exits his vehicle and disarmed, apprehends both suspects later identified as Allen Rhodes and Allen Robinson, UF61 # 4809.

M.   About 10/28/84 at 4505 Surf Ave Sea Gate Brooklyn, NY in the confine of the Sea Gate NY Police Department and the 60th pct. The plaintiff entered a burning building and carried out unconscious elderly women from the second floor apartment. The aided was transported to Coney Island Hospital for treatment. The plaintiff was treated at the scene for smoke inhalation. The plaintiff received a meritorious award from the Department.

N.   About 2/3/86 at 4505 Surf Ave Sea Gate Brooklyn, NY in the confine of the Sea Gate NY Police Department 60th pct. The plaintiff on duty as Police Detective seating in his patrol unit did observed 2 male fighting with a knife. The suspect later identified as Jimmy Farrell stab the male victim several times. The plaintiff handcuff the male suspect and transported both by RMP to Coney Island Hospital for treatment both survive there injuries, Mr. Jimmy Farrell was arrested by the plaintiff for the assault, UF 61 # 1179.

O.   About 6/17/86 at 309 Patchen Ave Brooklyn, NY in the confine of the 81 Pct  UF61 # 4688 the victim Sally Palmer was stab 17 time and survive her injuries the assailant her son Ottis Palmer who fled the scene. About 9/18/86 an informant notified the plaintiff and states that the assailant, Ottis Palmer was observed operating a motor vehicle on Surf Ave in the Coney Island area of Brooklyn, NY in the confine of the 60th Pct. The Plaintiff on duty at Sea Gate along with 2 other New York City Police Officers canvass and located the suspect, Ottis Palmer. The Plaintiff arrested the suspect and notified the victim of suspect apprehension, UF 61 # 4688

P.   About 6/24/86 f/o 3915 Neptune Ave Brooklyn, NY in the confine of the 60th Pct and the community of Sea Gate in his geographical area of employment as a Police Officer (Detective) the plaintiff stopped and question a male later identified as William Martin about the violation of a Order of Protection of a community residence. While interviewing the suspect he pulls out and aims a loaded 4 shot derringer firearm towards another police officer. The plaintiff was standing close to the suspect to disarm him safety and arrested the suspect. Later it was determined the suspect was just release from prison and was being sought for serious of arm robbery and carjacking that day in the 83 Pct UF61 # 4115 and the 60th Pct UF 61 # 6608.

Q.   About 2/23/87 f/o 105 Lincoln Road Brooklyn, NY in the confine of the 71 pct. The plaintiff seating in his auto double parked waiting with his brother, NYC Police Detective Christopher Frederick for a friend. When they both observed a male suspect later identified as Michael Cole – 29 during a dispute with unknown males the suspect pulled a loaded 45 automatic firearm and pointed at the males. The plaintiff and his brother identified them self and ordered the armed suspect to drop his weapon, the suspect complied and he was arrested, UF 61 # 2480.

R.     About May 1987 Brooklyn, NY Coney Island Train Station D – Line in the confine of the 60th Pct the plaintiff embarks from the train. A NYC transit motorman did collapsed from a heart attack and fell onto the tracks. The plaintiff jump onto the track place the NYC transit motorman back onto the platform with the assisted of the other passengers. The plaintiff performed CPR to the transit employee until he regains conscious. Subsequently the aided was transported to Coney Island Hospital by EMS for treatment.

S.     About June 1987 the plaintiff created a crisis intervention program where community residents can come into Sea Gate Police Department to mediate family or social conflicts and find solutions to such conflicts. The plaintiff received commendation Blue Star for its achievement.

T.     About 6/9/87 c/o Surf Ave & W. 37th Street Brooklyn, NY in the confine of 60th Pct and the Sea Gate community passengers on a NYC Bus alerted the plaintiff who was on duty as a uniformed police (Detective) on the bus. The bus operator did collapsed on the Bus. The plaintiff administers CPR and subsequently transported the aided to Coney Island Hospital. Days later family members of the aided arrived at the Sea Gate Police station house to thank the plaintiff and to inform him that the aided had passed away.

U.     About 6/16/87 o/p 129 Kingston Ave Brooklyn, NY in the confine of the 77th Pct the plaintiff off duty as Police Detective waiting at a traffic light when he hear and observed 2 females screaming and 1 out of the 2 males suspect later identified as Lewis Rideout and Kendall Foster pointed a gun at the females. The plaintiff exit his vehicle at gun point disarms the male suspect and arrested both, no injury, UF61 # 9368.

V.     About 8/10/87 c/o Bergen St and Albany Ave Brooklyn, NY in the confine of the 77th Pct the plaintiff off duty as Police Detective waiting at a traffic light when hears and observed shots fired. The suspect later identified as Iran Reid with 4 other perpetrators arbitrary shooting at pedestrian as they exit a building during a drug dealer robbery incident. The plaintiff notified the police via police radio coordinate the apprehension of all 5 suspects with no injury. Loaded firearms and large duffel bag of crack cocaine recovered, Iran Reid jumped bail subsequently apprehended and pleaded guilty, UF61 # 12665.

W.     About 7/23/93 c/o Surf Ave and West 37th Street Brooklyn, NY in the confine of the Sea Gate Police Department and the 60th pct. While on duty as police detective and patrol supervisor the plaintiff did observe a male later identified as Paul Serge appear to be in need of medical attention as the plaintiff interview Serge a police radio transmission announce a double homicide f/o 3002 Surf Ave Brooklyn, NY few block from the location. The description of the 2 suspects was disseminated Paul Serge and his friend, Guy Fluerant match the description. Closer examination of Serge injury a spent round fell on the ground. The plaintiff secured the 2 alleged male suspects and requests a witness for a show up. The witness confirms that the 2 males' subjects are the suspects involved in the double homicide. The 2 suspect were turn over to Housing and NYC Police Department Detective unit from the 60th pct for further investigation. The plaintiff testified in the Grand Jury and Trial, indictment # 9126/93.

X.    About 6/6/94 an informant notified the plaintiff of a double homicide in Nashville, Tennessee and the suspect, Pat Kalfalla is in New York. The Plaintiff, police detective sergeant confirm the incident by NYSPIN (New York State Police Information Network) and a telephone call to Nashville Metropolitan Police Department The plaintiff formed a taskforce of city, state and federal law enforcement officers. On 6/6/94 c/o Franklyn Ave and Union Street Brooklyn, NY in the confine of the 71 pct the plaintiff and his team arrested the suspect and turn him over to the U. S. Marshal, Warrant # N30878.

Y.    About 9/11/01 the plaintiff employed with the New York City Health and Hospital Police Department as a police / peace officer and trained as a First Responder Specialize in Weapons of Mass Destruction, Emergency Medical Technician and Criminal Investigator assigned to the pile at the World Trade Location to search for survivals, City Hospitals and Morgues working 12 hour shifts.

Z.    About 2/14/03 at NYC Coney Island Hospital at 2601 Ocean Parkway Brooklyn, NY in the confine of the 60th pct. The Plaintiff employed as a police officer and a field training officer with the NYC Health and Hospital Police Department assigned to patrol. Request to respond to the emergency room and inform by a doctor of a patient armed with a gun. The Plaintiff instructed emergency room personnel to evacuate the emergency room in the armed suspect later identified as Alton Milfari entered the emergency room the plaintiff unarmed, subdue and disarmed the suspect until assistance arrived. The suspect possesses a loaded 25 automatic and in the lining of the suspect coat was a large quantity of marijuana. Investigation reveals that the suspect was release days prior for weapon & drugs possession. The suspect arrived at the hospital due to a head injury, UF 61 # 61064.

AA.    About 1/10/09 the plaintiff license as a private investigator was contacted by friends and family member of Giles Manley a/k/a Jim Jim to assist them into the location and safe return of Jim Jim. It's alleged that Jim Jim was kidnapped for ransoms by mask unknown person(s) from the corner of Albany Ave and Pacific Street Brooklyn, NY in the confine of the 77th pct. The victim, Jim Jim is a long time child hood friend of the plaintiff. The plaintiff contacted the kidnapper(s) to confirm the incident a ransom demand was ordered. Unable to trust the New York City Police Department of the 77th pct and the lack of needed resources. The Plaintiff contacted members of the NYC Police Department Major Cases Squad in Coney Island Brooklyn, NY. A cell phone traces lead to the location of the suspects. The victim barely alive was found inside the trunk of a car parked on Gates Ave in Brooklyn. The suspect later identify as Lewis Rideout and Phillip Wright both release from prison days prior. It's alleged that both suspects are part of a gang that would kidnap street hustler for funds. (Further investigation determined that one of the suspects, Louis Rideout was arrested on    6/16/87 UF61#9368, by the plaintiff for weapon possession); Indictment # 438/09, case pending, arrest # K09603473 & k09603481.

BB.   The inevitable occurred, the plaintiff license as a private investigator hired by Church Ave Pawn Shop to provided dignitary protection, logistics and courier services. About 6/10/11 f/o ---- Church Ave Brooklyn, NY in the confine of the 70th pct. The plaintiff unarmed were transporting a large amount of commodities  (pawn shop client's jewelries) when armed suspects  one later identified as Dony Elysse armed with a 45 cal firearm pointed at the plaintiff and announce a robbery and removed the bag of jewelries from the plaintiff possession. The suspect unable to hold his gun, the bag and his pants the plaintiff disarmed the suspect. While in combat with one of the suspect, the second suspect grabs the bag and fled into the getaway vehicle. The plaintiff held and restrains the suspect, Dony Elysse until the police arrived. The plaintiff testified in the grand Jury of the incident and it was voted a True Bill. The suspect out on bail and further Intelligent determine that the suspects operate as a gang committing armed robbery throughout the city. The suspect, Dony Elysse allegedly brag to others that he will catch the plaintiff out there to keep him from testify, UF 61 # 4550 , case pending.

CC.   About 7/25/11 inside ---- Bergen Street Brooklyn, NY in the confine of the 77th pct the plaintiff observed two young males from the neighborhood in verbal dispute. The plaintiff convinces both to go their separate ways to avoid any further violates. Few moments later the altercation started up again this time the victim, Owine Omoruy, 25 was stab several time. The plaintiff send the suspect back into his apartment with his mother while stopping the bleeding and administered  CPR to the unconscious  victim for more than 20 min until emergency medical services arrived. Subsequently the victim died from his injuries. The alleged suspect was so distraught he allegedly committed suicide, UF 61 # 5724, case pending.

## *STATEMENTS OF FACTS*

53)    There have been a series of unconstitutional police intrusion of stop and search in the plaintiff's community. The plaintiff's sons and the plaintiff has been a victim of such police policy on numerous occasions. These incidents occurred periodically throughout the community. It appears the theory behind such police intrusion is for bounty to stop and search as many male citizens in the community as possible founding a person(s) have nothing the police will let them go. No stop and frisk report was ever prepared to document such intrusion. If a citizen has questionable contraband or gives the police any mouth the person(s) will be arrested probable cause is never an issue in Courts just the allegations. **Nearly 150.000 or 6.71% of all discretionary stop lack legal justification. An additional 544,252 or 24.37% of all discretionary (non-radio run) stops lack sufficiently detail documentation to assess their legality.**

54)    The defendant, NYCPD P.O. Edwin Simon failure to display earnestly and integrity, lacks credibility and the plaintiff had prior police encounters with P.O. Simon, Sgt Yee and another unidentified police officer stop and search the plaintiff's son in the Albany Houses parking lot. The plaintiff's son was parking the plaintiff's car after using it for the evening. A neighbor knocks on the plaintiff's apartment door and informed the plaintiff that the police did arrest his son. The plaintiff proceeded outside to see what was going on. As the plaintiff approach the scene the plaintiff's son was handcuff in the back seat of a unmark black Chevy Impale,  the license plate bend up difficult for anyone to view the license plate for identification. Simon and the unidentified uniform police officer were searching the plaintiff car pulling out the back seat the plaintiff yelled and stated "what are you doing". Sgt Yee approach the plaintiff and ask the plaintiff are you a police officer after observing the adornment around his neck (3 - chains of gold police badges) the plaintiff informed Sgt Yee that he is retired and shown him his retired ID card as he requested,  ▬▬▬▬. The plaintiff demanded why his son is arrested Sgt Yee stated that the plaintiff's son mouth got him into trouble. Sgt Yee further stated that the plaintiff son was driving his car he looks like he didn't belong in this type of car. The plaintiff reply "since when that's became an arrest able offense". "Did I miss something or better yet show me that offense in the penal law". After argues debate subsequently they release the plaintiff son at the scene. The plaintiff's son John Jr. Stated he was parking his car when 3 uniform police officers him demanded to search his car when he refused they extracted him out of the car and arrested him.

55)    About August 2007 the plaintiff instructed his sons to log such stop and search due to the rampant civil rights violation of conduct of the police in the community. Frustrated the plaintiff's and his son want to 77 pct to file a complaint after another stop and search incident. The plaintiff confer with Ms Goss, PAA she refer the plaintiff to the desk Sergeant Dixon. The plaintiff informed Sgt Dixon of several incidents were police officers stealing items or damaging the plaintiff's car by pulling out the rear car seats to search for contraband during an unjust or unconstitutional car stop, no summons ever  issue. Dixon ensures the plaintiff that he will look

into the matter and informed the plaintiff sons not to argue with the police any further problem notified your father let him handle it any further incidents.

56)    *INCIDENT # 1*, On November 9, 2007 at approximately 7 p.m. in the confine of the 77th pct. the plaintiff  traveling north bound on Troy Ave Brooklyn NY (operating Chrysler bearing New York licenses plate # JMFII, Fraternal Order of Police organization plates). A mark NYCPD police vehicle facing east bound parked on the corner of Park Place and Troy Ave. As the plaintiff passes the intersection the police vehicle immediately pull the plaintiff over. Police officers later identified as Edwin Simon, lacks credibility, Driver and Sgt Mangan, recorder. Simon approach the plaintiff driver side door and states "How are you doing Boss" the plaintiff ask Simon,"why was he stop", than the plaintiff remember prior encounter. The plaintiff again asks Simon   "why was I being stopped" Simon responses, "What kind of license plate are they?" The plaintiff reply "Organization plates, Fraternal Order of Police" Simon pointed to the adornment around the plaintiff's neck (3 - chains of gold police badges) than ask "Are You a Police Officer" the plaintiff reply "that he retired as Detective Sergeant wit  Sea Gate Police Department". Simon request to see the plaintiff's ID card from the agency, (▮▮▮▮▮). Again the plaintiff demanded why he was stopped Simon and his partner Sgt Magnan extracted the plaintiff from his car and search him by placing his hand inside the plaintiff's pockets and search his vehicle and inside the trunk. Simon stated he had never heard of Sea Gate and you are not N.Y.P.D. The plaintiffs continue to protest and demand why he was being stopped and search Simon later stated that the license plate is covered (licenses plate frame), (▮▮▮▮). The plaintiff walked to the rear of his vehicle to see the license plate and what he was talking about. The plaintiff asks Simon "what are you talking about" this car stop didn't rise to the level of reasonable suspicion at such time Simon place handcuff on the plaintiff in front of his neighbors. Several police officers (from incident 2, 3, & 4) continued to search the plaintiff car and recovered his New York City Police Department license firearm in the trunk of his car enclosed in cases. The plaintiff informed Simon that he have a permit. The Defendant Simon stated that the permit and the Sea Gate ID are forgery. The plaintiff was criminally charge for the firearm and the ID. It appeared that some type of operation was going on half of the neighborhood was

arrested and place in small jail cells or cage overcrowded many were complaining of  being stopped search and arrested for no reason and crammed inside a small jail cell. Plaintiff unable to use the bathroom for more than 6 hours he had to urinate in a cup inside small cell.

57)    Defendant Simon did stole the plaintiff's New York City Commission of Deeds notary stamped, vehicle registration card, insurance card, hand cuff, 2 hand cuff keys, gold plated business card holder, CD disk and radio player cleaning kits and few CD disks, ink pens, These mention items were never vouched nor returned any of these items. The plaintiff's vehicle trunk liner and the back seat pull apart and damages from the police search the defendant(s) did not safe guard plaintiff's property conduct unconstitutional search of the vehicle.

58)    (The Court, Judge Desmond Green during the Huntley Hearing after seeing the evidences and testimony in regard to the car stop probable cause due to the obstructed license plate, he stated "It clearly is not obstructing the information necessary", thus lacks probable cause for the car stop and such did violated the defendant constitutional right.

59)    *INCIDENT # 2,* On November 14, 2007 at approximately 8: pm in the confine of the 77th pct. the plaintiff was closing the Nostrand Ave Gold Shop located on Nostrand Ave Brooklyn NY. As the plaintiff was about to enter his vehicle that was parked f/o of the location a mark police vehicle back up in a high rate of speed on Nostrand Ave and two idiots uniform NYCPD police officers from the prior week incident (11/9/07 incident #1 arrest) immediately exit their police vehicle, P.O. Arnold Murphy, lacks credibility, states, "you are the guy with that ratchet, (shot gun) in the trunk of your car last week". P.O. Derrick Boyd, lacks credibility, approaches the plaintiff and places his hand inside the plaintiff pockets. The plaintiff demanded that the defendants, Murphy and Boyd take his hand off of him as Murphy search the plaintiff's car and inside the trunk Murphy assisted Boyd in searching the plaintiff and hand cuff the plaintiff. Boyd retrieved the plaintiff's wallet and handed off to Murphy. Murphy states that he remembers the plaintiff from last week arrest. Boyd called P.O. Simon on his cell phone to inform him that he had found the plaintiff. After speaking to Simon, Boyd states to Murphy "get his permit" (shotgun permit). While

going through the plaintiff's wallet Murphy found the plaintiff older Sea Gate Police retired identification card, (~~Exhibit~~).

60)    **Police Officer Arnold Murphy** memo book indicated that Murphy, Edwin Simon and Derrick Boyd worked together the day before this incident.  P.O. Derrick Boyd denied on the stand that he knows P.O. Edwin Simon from the same police precinct.

61)    ***INCIDENT # 3,*** On Saturday September 5, 2009 at 9:50 pm the plaintiff was traveling south on Albany Ave in Brooklyn NY. At the intersection of Albany Ave and Eastern Pkwy the confine of the 77 Pct the plaintiff he was waiting at the traffic light to turn green a black Chevy Impala 4 door sedan occupied with 4 males, lacks credibility, 3 black and 1 white all clad in dark plain clothing pull along side of the plaintiff One of the unidentified male occupant states are you the guy that was arrested a year ago with a gun the plaintiff ignore them the traffic light turn green the plaintiff drove off. Subsequently the unmark vehicle follow the plaintiff for several blocks and pull the plaintiff over (lights and siren) on Albany Ave between Carroll Street and Montgomery Street the confine of the 71 Pct. All 4 male occupant approaches the plaintiff in fear of his safety was extracted from his car. The plaintiff demanded why he was stopped. The plaintiff feels he was being setup again. These individual refused to identified them self they place their badges inside their shirt. Two of the unidentified males ordered the plaintiff by physical forces him out of his vehicle to the rear of the plaintiff car and states to the plaintiff "You know what this about" and force to face forward toward their unmark vehicle the front license plate # ***DGZ-8937 (NY).*** The white male possessed a sergeant shield and another person search the plaintiff's car. The plaintiff was search by placing his hands inside the plaintiff pockets  and removed his wallet from his pocket the guy yelled out and states "Yea it's him" the plaintiff car was search a crowd gather and yelled "why are bothering him", the 4 males told the crowd to "mind they business" and got back into their vehicle and drove away with their rear license plate bent up. Now the plaintiff is really concern some type of contraband was place inside of his car for the next car stop at a later time.

62)    *INCIDENT # 4*, May 6. 2010 at approximately 7:30 pm the was exiting a Nostrand Ave Brooklyn, New York location, Nostrand Ave Gold Shop in the confine of the   77 Pct. a black Ford Five Hundred 4 door sedan New York license plate # EMF-6878 occupied with 3 males black, lacks credibility, pull up and double parked in front of the plaintiff and his legally parked and unoccupied vehicle defendant # the driver is the plain clothes police officer driver from incident # 3 paragraph # 60, 6ft, 250 lbs, black baseball cap, late 20's, the passenger I never seen before possess a sergeant badge 5'10, 230 lbs and the person in the rear seat was Derrick Boyd the knucklehead from incident # 1 and incident # 2. The drive made a comment the statement from incident # 2 that establishes Derrick Boyd and Arnold Murphy probable cause for their stop and search, statement; "you are parked on the crosswalk" The plaintiff pull out my video camera from my pocket for such encounter and start recording the incident then the plaintiff reply "give it a ticket". As soon as they seen the camera the 3 plain clothes police officer immediately exited their vehicle and tickle the plaintiff knocking the camera out of my hand. The plaintiff immediately picks up the camera and continues to record the incident. Boyd and the other plain clothes grabs restrain the plaintiff arms and ordered him to drop the camera when he refused Boyd Stated "drop the camera or he will shot him dead" Boyd slap the camera out of my hand again. Boyd demanded the plaintiff's license, vehicle registration, and his insurance card. Boyd stated we are going to take my camera and my car and the other plain clothes police officer stated to the crowd that gather to mind their own business. Several uniform police officers who was standing on the corner across the street manning an elevated police tower #22154 ran across the street to investigate the incident the 3 knuckleheads identified them self as police to the uniform officers and question them about the tower video. The plain clothes sergeant walked across the street to the tower while Boyd and the other mutt place handcuff the plaintiff and removed his wallet and his car key from his pockets and place the plaintiff in the back of their unmark police car and transported me to the 77 Pct. Boyd drove the plaintiff's car to the precinct. At the precinct Boyd removed some of the items from the plaintiff's wallet and photo copy them. Boyd handed my car key over to 2 other plain clothes police officers that were present in incident #3. Boyd

informs them that the plaintiff's vehicle was parked inside the 77 Pct parking lots. The plaintiff was subsequently place into a cage for more than two hours. Before the plaintiff was release Boyd issued the plaintiff 3 Criminal Court summons all for <u>Disorderly Conduct trial schedule for; December 15, 2010 Brooklyn Criminal Court Part - SAP3 case 2010SK069839, 2010SK069841 & 2010SK069847</u>.

63)    The plaintiff's car have been ransack his voice activated recorder over the driver side viewfinder the cassette was missing and his camera on the floor of my car the footage of the incident  and other car stop by police was deleted. The plaintiff reviewed the content of his wallet and uncovered his stolen shotgun permit that Boyd and Murphy had stolen on November 14, 2007 arrest. Witness statement and photos obtain, camera and recorder secure for safe keeping (bag for DNA or finger prints to corroborate). On 9/3/11 all 3 summons was dismiss & seal.

64)    Filed NYC Police Department Internal Affairs case complaint # 1023048, case never was investigated.

65)    These officers did Tampered with evidences, obstruction of government administration, and intimidation of a witness and police misconduct. The arrest constituted an unlawful seizure under the Fourth Amendment.

66)    The plaintiff will bring both of these federal claims pursuant to 42 U.S.C. §1983. The plaintiff will motion the court for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth above.

67)    The plaintiff denied this defendant inconsistence allegation. Defendant, P.O. Edwin Simon prepared 4 consistence reports; Arrest Reports, Complaint Reports, Online Booking Sheet, DA Intake Reports and the DA deposition.

68)    45 Court appearance;

68)  The Defendant(s) incorporate herein by reference paragraphs 1 through 120 are liable pursuant to 42 U.S.C. § 1983 for maintaining a policy, practice, and custom of unreasonably seizing and unlawfully arrested plaintiff absent probable cause of criminal activity in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

69)  The Defendant(s) failure to display earnestly and integrity, lacks credibility and probable cause for the car stop, search the plaintiff's vehicle prior to arrest. The license plate frame, no traffic offense occurred didn't rise to the levels of probable cause for the car stop and search or insufficient evident that warrant criminal charges.

70)  Prosecute attorney, ADA Dennis Shelton, lacks credibility, suborn perjury to allow police officers Simon, Murphy and Boyd to perjured themselves to obtain a conviction by falsely stating untruths of the alleged incidents planted inadmissible evidences During the Huntley Hearing there were conflicted police report and court testimony. Before the court on December 3, 2009 trial the prosecuting attorney Dennis Shelton petition the Court to testify that on 9/25/09 he did observed my car parked in front of the court houses with a fraudulent parking plaque, that was an outright lie, the court denied the motion. It stands to reason that ADA Shelton is willing to submit perjured testimony and to have the arresting officers to state that they observed the alleged police parking plaque on the dash broad of my car.

71)  The trial testimony from the newly appointed Police Chief Fortunato lacks credibility shouldn't be admitted. He was never present or employed with the Sea Gate Police Department in 1997 to 2000 when the newly develop ID cards was made and issued with laminated material or he is unable to authenticate the ID cards or is certify as a forensic document examiner to render an opinion. Police Chief Fortunato never submit an affidavit prior to his testimony he was never the complainant witness, never had prior knowledge of this incident until the ADA Shelton notified him of the incident and request him to appear in court as a substitute witness. Prior witness statements from Sea Gate Police Chief Abraham and LT. Moyes did recant cited ID cards were issued, it's real.

72)    **The Weapon was legally license by the City of New York Police Department and Simon didn't know what a firearm permit looks like. Simon try to conceal the existence of the permit an unknown female police office retrieved it and returned it to me while I was in a jail cell and told me to put it away. This idiot doesn't know its own agency firearm permit so how is he able to identify phony ID cards from other agency. NYC Police never trained its members on how to identify false documents its suggestive but only driver license using as reference a driver license guide manual.**

73)    **All of the prosecuting attorney's witnesses did give testimony that they were expert on fraudulent documents, voir-dire should determine that the officers is not qualifies to give such opinion on ID cards or not certified as forensic document examiner or is unable to authenticate the ID card. Comparing to a 13 year old Sea Gate Police ID card to their current New York City Police Department hard plastic credit card type ID card that P.O Boyd display during trial that should not have been presented before the Court / jurors.**

74)    **The defendant, prosecution attorney Dennis Seldon failure to display earnestly and integrity, lacks credibility, presented fraudulent documents as evidence that was presented by the prosecutor during trial was never signed by the defendant nor was presented during discovery to be challenge, voir-dire.**

75)    **The defendant was convicted for firearm although no firearm was ever mentioned during the trial.**

76)    **The defendant(s) NYC police officer Boyd and Simon failure to display earnestly and integrity, lacks credibility, did conspire in violation or breach of the plaintiff constitutional rights. The defendant Officer Boyd on 11/14/07 arrest that he called Simon at the scene to advise him by stated that "I found Frederick" on his cell phone. The question is to illustrate that it was a plan of conspiracy to create a stronger criminal case by manufacture a crime, and their inconsistence trial testimony and witness statements.**

77)    Items retrieve from a warrantless or inventory searches of an auto cannot be used as arrest evidence if it not in plain view, see DBS reports. We come now to the inventory search of the automobile. That was never vouched. The purpose of inventory searches of automobiles and other property is to protect property, ensure against unwarranted claims of theft in these cases items was stolen and to protect uniformed member of the service and others against dangerous instrumentalities. [(Florida v. Wells, 495 US 1, 4 (1990)]. An inventory search cannot include a general rummaging or investigating in order to discover some incriminating evidence. To ensure that the search is proper, it must be conducted pursuant to an established procedure clearly limiting the conduct of individual officers that assures that the searches are carried out consistently and reasonably. [(People v. Galak, 80 NY2d 715 (1993)]. The procedure must be standardized to as to limit the discretion of the officer in the field. While incriminating evidence may be a consequence of an inventory search, it should not be its main purpose. Here, the People had the burden of establishing that there was a valid inventory search. They did not sustain that burden. Neither officer testified that he knew of the general objectives of an inventory search nor did either testify that the search of the closed or seal bags in the trunk fulfilled those objectives. In fact, Officer Simon witness statements that he opened the truck at the arrest site and saw nothing. It would appear that once the officers found the bag containing the license weapon, they were determined to rummage in the automobile looking for some other item.

78)    The Defendant Sea Gate Police / Sea Gate Association failure to display earnestly and integrity, lacks credibility, disclosure of the documents which the plaintiff had never seen before was in violation or breach the parties, John Frederick vs. Sea Gate Police Department / Sea Gate Association violated a Court settlement agreement. The plaintiffs a whistle blowing complaint. The defendants issued termination or arbitration notice without the reversal decision or the circumstance involving the mention history deem improper or one cited.

79)    The District attorney fail to prosecute for the ignition reason for the car stop VTL 402 SUB 1 covered license plate is excuse to justify an unconstitutional car stop.

80)    Both arresting officers alleged that official from Sea Gate stated that Sea Gate doesn't issue retired ID cards such statements deem untrue.

81)    Constitutional Right to Counsel Standards the United States Constitution affords a defendant in a criminal case the guarantee of effective assistance of counsel to mount a defense. (U.S. Const., amends. VI). In order to establish a constitutional violation under the federal Sixth Amendment standard, a defendant must satisfy a two-pronged test, demonstrating first, "that counsel's representation fell below an objective standard of reasonableness" (Strickland v. Washington, supra, 466 US at 688), and second, that the defendant suffered prejudice, that is, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Id., at 694). The Supreme Court has explained that. The court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. The court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment failure to make a proper opening statement, failure to adequately cross-examine prosecution witnesses, failure to make proper objections and failure to develop an adequate defense theory.

82)    The Court committed error in allowing the People to cross-examine the defendant about those prior allege bad act of termination or disciplinary action should be precluded and thereby deprived the defendant of his right to a fair trial (see Cipriano v Ho, People v. Beasley, 184 AD2d 1003, 1003-1004, affd 80 NY2d 981, 982; People v. Montoya, 63 AD3d at 961; People v. Marrow, 301 AD2d 673, 675).

83)    ADA Sheldon failure to display earnestly and integrity, knowingly distorted the facts to cover-up the police inexperience and misconduct to obtain a conviction due to misleading false statements and evidence fail to outline the jury of the impersonation if any. The justification for the police encounter with the defendant is the alleged traffic stop watch was clearly disclosed the traffic stop is unconstitutional the traffic stop is the people claim to the motive of the ADA Sheldon knowingly distorted the facts to cover-up the police inexperience and misconduct to obtain a conviction due to misleading false statements and evidence fail to outline the jury of the impersonation if any. The justification for the police encounter with the defendant is the alleged traffic stop watch was clearly disclosed the traffic stop is unconstitutional the traffic stop is the people claim to the motive of the impersonation.

84)    That he was falsely arrested; and that he was maliciously prosecuted. He further alleged that the city's failures led to violations of the rights guaranteed by the First Amendment, the 14th Amendment, 42 U.S.C.? 1983 and 42 U.S.C. 1988.  Police witness statements and the trial testimony were inconsistent Defendant's claim that the People intentionally elicited perjuries testimony; Defendant could have raised this claim on his direct appeal. The police version is clearly Defendant's claim that the People intentionally elicited perjuries testimony.

85)    The Defendant denied the people's version of events of displaying a badge during such car stop, nor informed the police that he was an active police officer this is due to the lack of the police officers and the prosecutor's credibility. The admission of statement can't deem credible by the police officers due to the contradictory reports and court testimonies. There was no motion to change police statement at trial. Huntley Hearing court Judge Desmond Green had a probable with the police statements and version of events for such the police change its testimony at trial the defense counsel failed to see the change in police testimony and the admitted into court unsubstantiated and irrelevant documents.

86)    On February 13, 2008 the people dismiss 170.25, 170.30 & 190.26 and only retained 190.25 & 170.20. The court had tried the defendant on the dismiss charges and on the license firearm, CPL §30.30(1) (b).

87)    As results of the defendant's employees, servants, agents or representatives action of misleading or incomplete statements constituted an intentional tort and infliction, false arrests wrongful incarceration of emotional distress; that the city failed to maintain adequate policies and practices that addressed the handling of evidence; that the Plaintiff was falsely arrested; and that he was maliciously prosecuted. He further alleged that the city's failures led to violations of the rights guaranteed by the First Amendment, the 14th Amendment, 42 U.S.C.? 1983 and 42 U.S.C.? 1988.

## N.Y.C.P.D. Defendant(s)

88)    <u>Date of incidents Defendant(s) unlawful police intrusion, search, seizure & arrest;</u>

> # 1 - 11/09/07
> # 2 - 11/14/07
> # 3 - 09/05/09
> # 4 - 05/06/10

The Defendant known as Police Officer: Edwin Simon, shield # 26883, of incident # 1 did violate the plaintiff's civil and constitutional under the first, fourth and the fourteenth amendments of are liable pursuant to 42 U.S.C. § 1983 for unreasonably seizing and unlawfully arresting individually named Plaintiff    in violation of the Fourth and Fourteenth Amendments to the United States Constitution. are liable pursuant to 42 U.S.C. § 1983 for unreasonably seizing and unlawfully arresting individually named Plaintiff in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

89)    Sgt Magman, incident # 1

90)    Arnold Murphy, shield # 29794, incident # 2

91)    Derrick Boyd, shield # 10014, incident # 2 & 4

92)   Detective Nicolas Rivera, 77 pct PDU, incident # 2, failed to properly ascertain the facts during an investigative debriefing interview of the plaintiff

93)   Sgt. John Doe, incident # 3

94)   P.O. John Doe, incident # 3 & 4

95)   P.O. John Doe, incident # 3 & 4

96)   P.O. John Doe, incident # 3

97)   Sgt. John Doe, incident # 4

98)   P.O. Derrick Boyd, incident # 4

99)   P.O. John Doe, incident # 4 & 2

100)   P.O. John Doe, incident # 4

101)   P.O. John Doe, in incident # 4 & 3 search the plaintiff's vehicle inside 77 pct parking lot the false allegation didn't raise to the level suspension that the plaintiff's vehicle such have been search.

102)   The unidentified plain clothes police officers occurred on 9/5/09 Charge with; Civil Rights Violation, Conspiracy, Official Misconduct, perjury, robbery obstruction of government administration, tampering with witnesses and evident Termination / Fired and jail time

103)   Defendant City of New York is a municipal corporation duly incorporated and existing pursuant to the laws of the State of New York. The City of New York has established and maintains the (N.Y.C.P.D.) New York City Police Department or agencies of the City.

104)   Defendant Michael R. Bloomberg is the Mayor of the City of New York, with supervisory authority over the NYCPD. He is sued here in his official capacity.

105)   Defendant Raymond W. Kelly is the Police Commissioner for the City of New York, with supervisory authority over all officers and operations of the N.Y.C.P.D., including responsibility for training, recruiting, and managing all members of the NYCPD. He is sued here in his official capacity. The defendant failing to make meaningful attempts to improve the training and supervision of members of the N.Y.C.P.D.

106) **The defendant(s) employees, servants, agents or representatives deprived the plaintiff of his right to freedom from deprivation of liberty acting individually or together and or in concert with other under the color of law without due process of the law did engage in a policy and practice of unlawfully seizing and arresting the plaintiff in violation of the Fourth Amendment of the United States Constitution and the State of law. This policy and practice manifests itself in three ways:**

1. **Unconstitutional car stop that does not constitute probable cause of criminal     activity or traffic infraction,**
2. **Unlawful search and seizure, for no legitimate reason at all**
3. **False Arrests of the plaintiff on 2 occasions the defendant(s) conduct is not   pursuant to a lawful arrest,**

107) **As a result of the defendant(s) employees, servants, agents or representatives deprived the plaintiff of his right to freedom from deprivation of liberty acting individually or together and or in concert with other under the color of law the defendant(s) unconstitutional policies and practices the plaintiff face the humiliation and degradation of being paraded in handcuffs and hauled off to jail in front of his neighbors.**

108) **As a result of the defendant(s) employees, servants, agents or representatives deprived the plaintiff of his right to freedom from deprivation of liberty acting individually or together and or in concert with others under the color of law the defendant(s) unconstitutional policies and practices the criminal cases these policies and practices generate fear, distrust towards the police, and even violence and tension within the community.**

109)    According to CCR, the judge suspected these arrests have become a method to fill quotas; From CCR: "the Judge described audio recordings of NYCPD precinct roll-calls presented by plaintiffs as 'smoking gun' evidence that creates 'a tradable issue of fact as to whether N.Y.C.P.D. supervisors have a custom or practice of imposing quotas on officer activity, and whether such quotas can be said to be the 'moving force' behind widespread suspicion-less stops.

110)    Suspicion of weaponry is also a prerequisite to stop-and-frisks, and the N.Y.C.P.D.'s tendency to use the procedure to generate mass arrests is a gross violation of the law. Filling quotas is no excuse to impede community relations with cops, nor is it a reason to target (and destroy the future of) community minority residence.

111)    According to the Center for Constitutional Rights, who originally handled the 2008 case *Floyd v. City of New York*, Scheindlin determined that the plaintiff's claims raise serious questions "as to whether the N.Y.C.P.D.'s stop and frisk policies have had a disparate impact in the form of a widespread pattern of race-based stops," not invalidated by the N.Y.C.P.D.'s claims to corrective action. Over the past few years, N.Y.C.P.D. officers have stopped and frisked millions of innocent people for walking in the wrong neighborhood at the wrong time, and now the Department has extended this unlawful practice to passengers in livery cars," said NYCLU Executive Director Donna Lieberman. "It's just another disturbing example of the N.Y.C.P.D.'s campaign of excessive and racially lopsided policing, and we're confident the courts will put a stop to it." *Floyd, et al. v. City of New York, et al.* is a federal class action lawsuit filed against the New York City Police Department (N.Y.C.P.D.) and the City of New York that challenges the N.Y.C.P.D.'s practices of racial profiling and unconstitutional stop-and-frisks. These N.Y.C.P.D. practices have led to a dramatic increase in the number of suspicion-less stop-and-frisks per year in the city, with the majority of stops in communities of color.

112)    As a result of the defendant(s) employees, servants, agents or representatives were acting individually or together and or in concert with others under the color of law the defendant(s) pattern of unconstitutional arrests and seizures, and the use of excessive force amounts to deliberate indifference, thus constituting official municipal policy of abuse of their authority.

113)    Defendant Charles Haynes, District Attorney, (DA) County of Kings including responsibility for training, recruiting, and managing all members of the ADA. He is sued here in his official capacity. The defendant failing to make meaningful attempts to improve the training and supervision of members of the ADA.

114)    * Defendant Dennis Shelton, Assistance District Attorney, (ADA) County of Kings: Charge with; Civil Rights Violation, Conspiracy, Malicious Prosecution, Official Misconduct, Suborn Perjury.

115)    Defendant Assistance District Attorney, (ADA) County of Kings: Charge with; Civil Rights Violation, Conspiracy, Malicious Prosecution, Official Misconduct, Suborn Perjury.

116)    City-Defendant(s) have been well aware of the allegations described above and the pervasive nature of the pattern and practice by members of the N.Y.C.P.D. unlawful search, seizing and arresting and subjecting them to excessive force. Yet, City-Defendants have been deliberately indifferent to this pattern and practice, and have not attempted to remedy it several years beyond the numerous episodes described above. In March 2007, the New York Civil Liberties Union and the American Civil Liberties Union published a report titled *Criminalizing the* further reported that "Community residences [they] interviewed had been harassed, handcuffed, patted down and in some cases Arrested.

117)    **The Defendant(s) Sea Gate Association, (SGA) including responsibility for training, recruiting, and managing all members of the SGPD. He is sued here in his official capacity. The defendant failing to make meaningful attempts to improve the training and supervision of members of the SGPD. The Defendants Sea Gate Association, have been well aware of the allegations described above and the pervasive nature of the pattern and practice by members of the SGPD.**

118)    **The Defendant(s) Sea Gate Police Department, (SGPD) including responsibility for training, recruiting, and managing all members of the SGPD. He is sued here in his official capacity. The defendant failing to make meaningful attempts to improve the training and supervision of members of the SGPD.**

119)    **The Defendant Sea Gate Police Chief Robert Abraham by issuing false, incomplete and misleading statements and fraudulent documents or information to the City – Defendant(s)**

120)    **The Defendant(s) Sea Gate Police Lt. Moyse by issuing false, incomplete and misleading statements and fraudulent documents or information to the City – Defendant(s)**

121)    **The Defendant(s) Sea Gate Police Chief Jeffery Fortunato did submit false, incomplete and misleading statements and fraudulent documents or information to the    City – Defendant(s) and the Courts.**

## CONCLUSION

122)  The Defendant(s) injury to plaintiff proximately resulting from that breach of duty. Probable cause is defined as a good faith belief that a person is guilty of a crime when this belief rests upon such grounds as would induce an ordinarily prudent and cautious person, under the circumstances, to believe likewise. Assault and Battery: Assault occurs when a person has been placed in reasonable fear of bodily harm by the conduct of the defendant(s), and a battery is the actual infliction of any unlawful, unauthorized violence on the person of another, irrespective of degree. An unlawful act of violent injury accompanied by circumstances of aggravation," such as "the use of a deadly weapon in Incident # 4, Therefore, barring any immunity.

123)     The defendant(s) intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct; the defendant(s) conduct was so extreme and outrageous that it exceeded all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community; the actions of the defendant(s) caused the plaintiff's emotional distress; and the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it. Where physical harm is lacking, the courts should look initially for more in the way of extreme outrage as an assurance that the mental disturbance claimed is not fictitious. It is the duty of the court to determine whether or not the alleged conduct "may reasonably be regarded as so extreme and outrageous as to permit recovery" before submitting the issue to the jury. ("Conduct growing out of a business relationship between Sea Gate Police Department, D.A. Office and the New York City Police Department may be so outrageous and shocking as to be actionable" "hostile or abusive encounters" or "coercive or oppressive conduct." Outrageousness where defendant(s) employer, City of New York and The Sea Gate Association forced its employee to perform exercises in public which exposed the Defendant(s) incontinence problem to others) Therefore, the Plaintiff's civil rights action, pursuant to §1983,

is not time-barred. In order to present a claim under § 1983, The plaintiff did establish that (1) the defendant acted under color of state law, (2) the defendant intentionally deprived plaintiff of a right protected under the Constitution or laws of the United States, and (3) the defendant's actions were the proximate cause of the deprivation. The proximate cause inquiry does not require any special explanation as it is the same as that in all other civil cases. Furthermore, the defendant(s) herein clearly acted under color of state law in that the defendant(s) are police officer, and a municipality. Thus, the primary question in this case is whether the defendant(s) violated the plaintiff's constitutional rights.

124)  An allegation that one was charged and/or prosecuted without probable cause must be analyzed under the Fourth Amendment; a Fourteenth Amendment substantive due process argument can be raised in that context. Thus, the analysis of a Fourth Amendment claim is a two-step process: (1) was there a "search" and/or "seizure, "and if so, (2) was it "unreasonable?" Provided that a municipal official is held to have violated the plaintiff's constitutional rights, the municipality employing such official may be subject to liability for the official's actions. The Supreme Court has "considered whether an alleged injury caused by municipal employees acting under color of state law provided a proper basis for imposing liability on a city. The Court held that a municipality's failure to adequately train its law enforcement officers is actionable under § 1983.

125)  A single decision of a municipal policymaker may suffice as official policy which triggers municipal liability. First, a municipality is only liable for "acts which the municipality has officially sanctioned or ordered."

## PRAYER FOR RELIEF

**WHEREFORE, plaintiff prays that this Court Assume jurisdiction over this matter; Certify this action pursuant to Fed. R. Civ. P. 23(b)(2);**

**FIRST CAUSE OF ACTION:** *THE DEFENDANT'(S)* **UNLAWFUL SEIZURES AND ARRESTS IN VIOLATION OF THE FEDERAL CONSTITUTION; Plaintiff reiterates and realigns the facts stated. Enter Summary judgment in favor of the plaintiff that the defendant(s) by their action impose damage of four million ($4,000,000.00) dollars for each defendant(s) and,**

**SECOND CAUSE OF ACTION:** *THE DEFENDANT'(S)* **EXCESSIVE FORCE IN VIOLATION OF THE FEDERAL CONSTITUTION; Plaintiff reiterates and realigns the facts stated. Enter Summary judgment in favor of the plaintiff that the defendant(s) by their action impose damage of four million ($4,000,000.00) dollars for each defendant(s) and,**

**THIRD CAUSE OF ACTION:** *THE DEFENDANT'(S) ABUSE OF PROCESS;* **Plaintiff reiterates and realigns the facts stated. Enter Summary judgment in favor of the plaintiff that the defendant(s) by their action impose damage of four million ($4,000,000.00) dollars for each defendant(s) and,**

**FOURTH CAUSE OF ACTION:** *THE DEFENDANT'(S)* **UNLAWFUL SEIZURES AND ARREST IN VIOLATION OF NEW YORK STATE AND FEDERAL CONSTITUTION; Plaintiff reiterates and realigns the facts stated. Enter Summary judgment in favor of the plaintiff that the defendant(s) by their action impose damage of four million ($4,000,000.00) dollars for each defendant(s) and,**

**FIFTH CAUSE OF ACTION: THE DEFENDANT'(S) FALSE ARREST IN VIOLATION OF NEW YORK STATE AND FEDERAL LAW; Plaintiff reiterates and realigns the facts stated. Enter Summary judgment in favor of the plaintiff that the defendant(s) by their action impose damage of four million ($4,000,000.00) dollars for each defendant(s) and,**

**SIXTH CAUSE OF ACTION:** *THE DEFENDANT'(S) ASSAULT AND BATTERY IN VIOLATION OF NEW YORK STATE LAW; Plaintiff reiterates and realigns the facts stated.* Enter Summary judgment in favor of the plaintiff that the defendant(s) by their action impose damage of four million ($4,000,000.00) dollars for each defendant(s) and,

**SEVENTH CAUSE OF ACTION:** *DEFORMATION / SLANDER BY THE DEFENDANT'(S) TO PLAINTIFF'S POTENTIAL EMPLOYERS; Plaintiff reiterates and realigns the facts stated.* Enter Summary judgment in favor of the plaintiff that the defendant(s) by their action impose damage of four million ($4,000,000.00) dollars for each defendant(s) and,

**EIGHTH CAUSE OF ACTION:** *PLAINTIFF IS UNABLE TO GAIN EMPLOYMENT DUE FALSE DERGATORY STATEMENTS, INFORMATION AND OR DOCUMENTS; Plaintiff reiterates and realigns the facts stated.* Enter Summary judgment in favor of the plaintiff that the defendant(s) by their action impose damage of four million ($4,000,000.00) dollars for each defendant(s) and,

**NINTH CAUSE OF ACTION:** *THE DEFENDANT'(S) DEFORMATION / SLANDER OR STATEMENTS TO NYC POLICE DEPARTMENT PISTOL LICENSES SECTION OF THE PLAINTIFF'S PISTOL LICENSE; Plaintiff reiterates and realigns the facts stated.* Enter Summary judgment in favor of the plaintiff that the defendant(s) by their action impose damage of four million ($4,000,000.00) dollars for each defendant(s) and,

**TENTH CAUSE OF ACTION:** *THE DEFENDANT'(S) FALSE AND MISLEADING STATEMENTS OR INFORMATION TO THE NYC POLICE DEPARTMENT PISTOL LICENSES SECTION OF THE PLAINTIFF' SEA GATE PISTOL LICENSE; Plaintiff reiterates and realigns the facts stated.* Enter Summary judgment in favor of the plaintiff that the defendant(s) by their action impose damage of four million ($4,000,000.00) dollars for each defendant(s) and,

**_ELEVENTH CAUSE OF ACTION: FOR INFLICTION OF EMOTIONAL DISTRESS;_** _Plaintiff reiterates and realigns the facts stated._ **Enter Summary judgment in favor of the plaintiff that the defendant(s) by their action for punitive damages and impose damage of Eight million ($8,000,000.00) dollars for each defendant(s) and;**

**_TWELFTH CAUSE OF ACTION: ATTENTIONAL TORT; Plaintiff reiterates and realigns the facts stated._ Enter Summary judgment in favor of the plaintiff that the defendant(s) by their action impose damage of Eight million ($8,000,000.00) dollars for each defendant(s) and;**

**_THIRTEENTH CAUSE OF ACTION:_ Retaliatory act due to the Plaintiff's Whistle Blowing Complaint; _Plaintiff reiterates and realigns the facts stated._ Enter Summary judgment in favor of the plaintiff that the defendant(s) by their action impose damage of Eight million ($8,000,000.00) dollars for each defendant(s) and;**

**Enter a judgment ordered the Defendants, City of New York Police Department to reinstate the plaintiff's pistol, shotgun permits, return or replace plaintiff's firearms and to grant his application for Special Officer under CPL 2.10 sub ;**

**Enter a judgment ordered the Defendants, City of New York Police Department Declare that the policies and practices of City-Defendants to seize and arrest the plaintiff absent probable cause of criminal activity violate the Plaintiff's federal and state rights**

**Award Plaintiff's Attorneys litigation fees expenses, Court cost pursuant of New York State or U.S. Federal laws and; Granting such other and further relief which to the Court seems just and proper.**

## NOTICE OF MOTION DEMAND FOR JURY TRIAL
## 10 DAYS AFTER ANSWER OF SERVICES

**WHEREFORE, The Plaintiff prey and respectfully request that the Court Grant this Summons and Complaint to process. Plaintiff designates Kings County as the place of trial. The basis of venue is that the action of the Defendant(s) complained of took place within the County of Kings.**

**Dated: January 18th 2013**

Submitted on 2/19/13 97

**Respectfully Submitted,**

*John Frederick*

**Pro- Se (Plaintiff)    JOHN FREDERICK**
**Mailing Address:       P.O. Box 471774**
**BROOKLYN, N.Y. 11247**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x

**JOHN FREDERICK, Pro-Se**

                                        Plaintiff,

        -Against-

**THE CITY OF NEW YORK,**
**NEW YORK CITY MAYOR MICHEAL BLOOMBERG**
**NEW YORK CITY POLICE DEPARTMENT COMMISSIONER RAYMOND KELLY,**
**NEW YORK CITY POLICE OFFICER EDWIN SIMON # 26883,**
**SGT WAYNE MANGAN, ARNOLD MURPHY # 29794,**
**DERRICK BOYD # 10014, DET. NICHOLAS RIVER, JOHN DOE from paragraph 11 to 18**
**JOHN & JANE DOE.**
**KINGS COUNTY DISTRICT ATTORNEY CHARLES HYNES,**
**ASSISTANCE DISTRICT ATTORNEY DENNIS SHELTON,**
**JOAN ERASKIN, JOHN & JANE DOE,**
**SEAGATE ASSOCIATION, SEAGATE N.Y. POLICE DEPARTMENT,**
**SEA GATE POLICE CHIEF ROBERT ABRAHAM, JEFFREY FORTUNATO,**
**LT MOYSE, JOHN & JANE DOE**

                                        Defendant(s),

-----------------------------------------------------------x

**File #**

**File Date;**                    **2013**

**SUMMONS AND**
**VERIFIED COMPLAINT**

**TO THE ABOVE NAMED DEFENDANT(S)**

**YOU ARE HEREBY SUMMONED** and required to serve upon plaintiff answer at the post office box address stated below by certificate of mail or receipt requested a notices of appearance or demand for complaint within thirty (30) days after services of this summons exclusive of the day of services is complete if this summons was not personally delivered to you within the State of New York. Fail to appear or answer, judgment will be taken against you be default for the relief demanded herein.

**Respectfully Submitted,**

**Date: January 18th 2013**

Submitted on  2/19/13

*John Frederick*

**John Frederick, Pro-Se**
**P.O. Box 471774**
**Brooklyn, N.Y. 11247**

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------X     File #

JOHN FREDERICK, Pro-Se                                         File Date:                          2013

                                  Plaintiff,

    -Against-                                          ## VERIFICATION

THE CITY OF NEW YORK,

NEW YORK CITY MAYOR MICHEAL BLOOMBERG

NEW YORK CITY POLICE DEPARTMENT COMMISSIONER RAYMOND KELLY,

NEW YORK CITY POLICE OFFICER EDWIN SIMON # 26883,

SGT WAYNE MANGAN, ARNOLD MURPHY # 29794,

DERRICK BOYD # 10014, DET. NICHOLAS RIVER, JOHN DOE from paragraph 11 to 18,

JOHN & JANE DOE

KINGS COUNTY DISTRICT ATTORNEY CHARLES HYNES,

ASSISTANCE DISTRICT ATTORNEY DENNIS SHELTON,

JOAN ERASKIN, JOHN & JANE DOE,

SEAGATE ASSOCIATION, SEAGATE N.Y. POLICE DEPARTMENT,

SEA GATE POLICE CHIEF ROBERT ABRAHAM, JEFFREY FORTUNATO

& LT MOYSE or JOHN & JANE DOE

                                Defendant(s),

---------------------------------------------------------X

## UNITED STATES DISTRICT COURT EASTERN DISTRICT OF NEW YORK

## 225 Cadman Plaza East Brooklyn, New York 11201

STATE OF NEW YORK)

COUNTY OF KINGS    )

      **JOHN FREDERICK, being duly sworn, deposes and says:**

**That I am the plaintiff in the within action, and that I have read the within action, Verified this Summons of Complaint the contents thereof, and that same in true to my knowledge, except and to the matter herein state to be alleged upon information and belief and that as to those matter I believes it to true.**

   Sworn before me on

   18th Day of January 2013

                                                     Respectfully Submitted,

Notary

GALINA FELDMAN
Notary Public, State of New York
Registration #01FE6051186
Qualified In Kings County
Commission Expires November 20, 2018

(Plaintiff)    JOHN FREDERICK, Pro-Se

Mailing Address:    P.O. Box 471774

BROOKLYN, N.Y. 11247



**FAMILY**
*dynamics*

Gladys Carrión, Esq.
*Executive Director*

Andrew Lagnese
*Associate Executive Director*

December 24, 1997

John M. Frederick II
P.O. Box 1774
Brooklyn NY 11247

Dear John,

In the position that I am in, it would be unwise to single out any one individual for the help given at our Holiday Party last Saturday. However, without a Santa Claus, it certainly would not really be a party, would it ??

John, you were FANTASTIC ! Your arrival at the party was so exciting, even I started believing that Santa Claus was real ! You really "got into the part" and brought an excitement that many of us will long remember. We had over 350 children there that day and at least that many must have sat on your lap...yet you were as kind and funny and magical with the last of them as you were with the first who "rushed" you.

The thanks that I would like to convey to you are truly heartfelt, but I am certain that you felt so much more by being that special person to so many children.

John, you have a true talent for spreading joy and helping children believe that magic still exists in this world.

My sincerest wishes for a warm, peaceful holiday season.

Andrew Lagnese
Associate Executive Director

***strengthening families, protecting children***
1360 Fulton Street, Brooklyn, NY 11216 Tel (718) 783-6666 FAX (718) 783-6504







# *Boy Scouts* of *America*

## *Charter*

Granted to the

First Baptist Church

upon application through authorized representatives to carry on the Scouting program for
CHARACTER DEVELOPMENT • CITIZENSHIP TRAINING • MENTAL AND PHYSICAL FITNESS
subject to the provisions of the Charter and Bylaws and Rules and Regulations of
the Boy Scouts of America for the period ending

January 31, 2000

Pack 3586

Brooklyn, NY
In testimony whereof the Boy Scouts of America
has caused this charter to be issued and
its corporate seal to be affixed.

Serving Youth for
2    Years



Chief Scout Executive

**Boy Scouts of America**
Incorporated February 8, 1910
Chartered by Congress June 15, 1916



**Boy Scouts of America**

This is to certify that

John Frederick

has completed training in

Cub Leader Basic

GNYC - Brooklyn
Council

3/27/99
Date

_____
Instructor

Michall P Mahon
Scout Executive

This certifies that

John Frederick

Committee Chairman
is a member of the

BOY SCOUTS OF AMERICA

Pack 3686

Brooklyn, NY

and is entitled to all the rights and privileges
thereof to the last day of

January, 2001

_____
Chief Scout Executive





# JOHN M. FREDERICK II
## * PRIVATE INVESTIGATOR *
## Licensed and Bonded by New York State
### P.O. Box 1774
### Brooklyn, N.Y. 11247
### (718) 773-1906

Specializing in



Criminal & Civil Investigation
Retail Security
Executive Protection
Armed Courier Services
Surveillance (Photo)
Background Check
Fingerprint Check
Skip Trace
Missing Person
Social Security Search
Credit Report
Driver's License (all States)
Vehicle Search (all States)
Criminal Record Search (all States)
Latent Finger Prints
UCC Filing
Phone Search (including cellular)
Address Identifier
Bank Probe

\* Many results within 24 hours, prices affordable - free price quote.

I have over 20 years experience in law enforcement and I will treat each job individually and professionally. My staff and I is the solution, we cater to each client's needs and our reputation precedes us in the industry. We are skilled, trained and capable to fulfill all your requirements. You can rely on us with confidence and peace of mind.

UNIQUE ID NUMBER
11000048778

*State of New York*
## Department of State
### DIVISION OF LICENSING SERVICES

50796

PURSUANT TO THE PROVISIONS OF ARTICLE 7 OF THE
GENERAL BUSINESS LAW AND AMENDMENTS THERETO,

EFFECTIVE DATE

| MO. | DAY | YR. |
|-----|-----|-----|
| 06 | 28 | 1999 |

FREDERICK JOHN M II

BROOKLYN NY 112██

EXPIRATION DATE

| MO. | DAY | YR. |
|-----|-----|-----|
| 06 | 27 | 2001 |

HAS BEEN DULY LICENSED TO TRANSACT BUSINESS AS A

# PRIVATE INVESTIGATOR

FOR THE TERM OF TWO YEARS FROM DATE HEREOF, TO BE REPRESENTED,
AS PRINCIPAL, BY THE QUALIFIED MEMBER(S) NAMED BELOW:

FREDERICK JOHN M II

In Witness Whereof, The Department of State has caused these
presents to be signed and its official seal to be hereunto affixed.
DEPARTMENT OF STATE

*Alexander F. Treadwell*
SECRETARY OF STATE

DOS-1098 (REV. 9/97)

---

## NEW YORK STATE DEPARTMENT OF STATE
### DIVISION OF LICENSING SERVICES



JOHN M FREDERICK II
IS A QUALIFYING
Officer/Principal of
FREDERICK JOHN M II

a duly licensed
PRIVATE INVESTIGATOR

LIC. NO: 050796
EXP: 06/27/01
This does not confer NYS Employee Status

---

LIC. NO. _____ C358683 _____          01 OF 1

PAGE _____

LICENSEE AUTHORIZED TO POSSESS THE FOLLOWING FIREARMS:

| MAKE | MODEL | SERIAL NO. | CAL. | TYPE |
|------|-------|-----------|------|------|
| CLT |  | S08470 | 38 | R |
| GLC |  | SX977145 | 9MM | A |
| SW |  | C796059 | 38 | R |

### PISTOL LICENSE
(ISSUED UNDER ARTICLE 400, PENAL LAW)

LIC # ____ C358683 ____   TYPE ____ CARRY ____
ISS. DATE __ 01/01/97 __   EXP. DATE __ 03/10/99 __
BASIC PERMIT ✱✱✱✱✱✱✱✱✱ COUNTY

TO          FREDERICK, JOHN M
ADDRESS ███████████████
CITY        BROOKLYN          Pct 077
                                            11213
OCCUPATION   OWNER
EMPLOYED BY  FREDERICK SECURITY
DOB ████████████   HT 70   WT 190

CONDITIONS OF LICENSE ON REVERSE SIDE

CONTROL # ____ 058810 ____

New York State
Department of Environmental Conservation

CERTIFICATE
SERIAL NO.
853032

# HUNTER TRAINING
# CERTIFICATE OF QUALIFICATION

John M Frederick II
NAME

BIRTH DATE (Month/Day/Year)

The above person has successfully completed a minimum of 6 hours of instruction in responsible hunting practices and is hereby awarded this certificate of qualification in Hunter Training.

SIGNATURE OF INSTRUCTOR

X

Instructor's ID No.  INSTRUCTOR'S COUNTY OF RESIDENCE
0526418    RICHMOND

82-06-4 (10/79)    ORIGINAL



PERMIT #
100159338
1-28-2010

EDERICK JOHN M
OOKLYN NY

510 190 077

---

DISPOSITION - REGISTRATION CERTIFICATE
PD 641-150 (10-83)

COMPLETE WHENEVER POSSESSION OF A RIFLE OR SHOTGUN IS TRANSFERRED BY SALE OR OTHERWISE.

SK# 04155    Exp 2/20/07    A579515

| SERIAL NO. | MAKE/MANUFACTURER | CAL./GAUGE | TYPE OF GUN | MODEL |
|---|---|---|---|---|
| R675778 | Mossberg | 12 | Shotgun | 500 |

DEALER'S NAME
D F BROS. SPORTS CENTER

BUYER/SELLER'S LAST NAME
Frederick

FIRST NAME
John M.

ADDRESS
7919-21 New Utrecht Avenue    (NUMBER AND STREET)

ADDRESS    (NUMBER AND STREET)

BOROUGH    POST OFFICE    ZIP CODE
Brooklyn    New York    11214

CITY OR POST OFFICE
Brooklyn

STATE    ZIP CODE
NY    11213

DEALER'S LIC. NO.
248

PERMIT NO./AUTHORIZATION NO.
6-11-024-010-D-07078

SOCIAL SECURITY NO.

PERMIT NO./AUTHORIZATION NO.
000616935 8

DEALER'S SIGNATURE

DATE OF SALE
8/2/05

TIME OF SALE
1800    AM  PM

BUYER'S/SELLER'S SIGNATURE
John Frederick

INSTRUCTIONS: Strike out all inappropriate captions. One copy of this form will be forwarded to the Firearms Control Section by the dealer and one copy will be given to the individual who buys, sells or transfers the Rifle or Shotgun. The third copy will be retained by the dealer.

If an individual is obtaining or buying a Rifle or Shotgun from a dealer, the copy of this form that the individual receives will serve as the Certificate of Registration for the gun.

NOTE: YOU MUST CARRY THIS CERTIFICATE OF REGISTRATION WHEN IN POSSESSION OF THE GUN DESCRIBED ABOVE.

---

DISPOSITION - REGISTRATION CERTIFICATE
PD 641-150 (10-83)

COMPLETE WHENEVER POSSESSION OF A RIFLE OR SHOTGUN IS TRANSFERRED BY SALE OR OTHERWISE.

B# 04120    Exp 2/20/07    A579510

| SERIAL NO. | MAKE/MANUFACTURER | CAL./GAUGE | TYPE OF GUN | MODEL |
|---|---|---|---|---|
| R625117 | Mossberg | 12GA | Shotgun | 500 |

DEALER'S NAME
D F BROS. SPORTS CENTER

BUYER/SELLER'S LAST NAME
FREDRICK, John M.

ADDRESS
7919-21 New Utrecht Avenue    (NUMBER AND STREET)

ADDRESS    (NUMBER AND STREET)

BOROUGH    POST OFFICE    ZIP CODE
Brooklyn    New York    11214

CITY OR POST OFFICE
Brooklyn

STATE    ZIP CODE
NY    11213

DEALER'S LIC. NO.
248

PERMIT NO./AUTHORIZATION NO.
6-11-024-010-D-07078

SOCIAL SECURITY NO.

PERMIT NO./AUTHORIZATION NO.
000616935 8

DEALER'S SIGNATURE

DATE OF SALE

TIME OF SALE

BUYER'S/SELLER'S SIGNATURE

3

 

**New York City
Department of
Consumer Affairs**

LICENSEE

Commissioner
JOHN  M.          FREDERICK
**PROCESS-SERVER (INDIVIDUAL)**

License No: 0956395   Expires: 2/28/2010
Document Number: 109624   Issued: 3/12/2008   F109624

**THE CITY OF NEW YORK**
**ASSIGNED COUNSEL PLAN**
**253 Broadway, Room 200**
**New York, New York 10007**

712 676-0059

Margaret Wellington
Continuing Legal Education Assistant
(212) 676-0065

Mr. John M. Frederick, II                    May 7, 2003
P.O. Box 1774
Brooklyn, New York 11247

Dear Mr. Frederick:

After review of your application, we are pleased to inform you that you have been approved to be included in the Assigned Counsel Plan Database and Directory of Experts and Investigators. The database is updated regularly, and a printed copy of the Directory is distributed to the attorneys periodically.

Enclosed in this letter are copies of the Compensation Guidelines, an explanation of procedures for assignment and payment, and a Substitute Form W-9 with instructions.

Present inclusion in the Database and Directory does not guarantee permanent membership. You will be asked periodically to update your application. Attorneys are solicited to provide information, positive and negative about experts that they use. The Assigned Counsel Plan reserves the right to remove any investigator/expert from the listing.

Welcome. We thank you in advance for the work you will do with attorneys on behalf of indigent defendants.

Sincerely,

Margaret Wellington

Margaret Wellington

Enclosures

5




**ALBERT VANN**
COUNCIL MEMBER, 36TH DISTRICT
BROOKLYN

DISTRICT OFFICE
613-619 THROOP AVENUE
BROOKLYN, NEW YORK 11216
(718) 919-0740
FAX (718) 919-0744

CITY HALL OFFICE
250 BROADWAY, ROOM 1743
NEW YORK, NEW YORK 10007
(212) 788-7354
FAX (212) 788-8951

THE COUNCIL
OF
THE CITY OF NEW YORK

COMMITTEES
EDUCATION
HEALTH
LAND USE
YOUTH SERVICES
SUB COMMITTEE
ZONING & FRANCHISES

March 21, 2005

John M. Fredeick, 11
~~                    ~~
Brooklyn, New York 112██

Dear Mr. Fredeick:

I am pleased to have had the opportunity to approve your application to become a Commissioner of Deeds. I wish you well in all your future endeavors.

To provide you with an opportunity to be informed about the issues that affect our community, I have included your name on the mailing list of my political organization, the Vanguard Independent Democratic Association. With some exception, we meet the fourth Saturday of every month (excluding July & August) from 10:00 a.m. to 12:00 p.m. noon.

In addition, I am compelled to sponsor two or three fundraising events during the course of year. I will make certain that you receive an invitation. Our events are well received and provide an opportunity for positive and interesting people to come together in support of their community. I look forward to hearing from you soon.

Sincerely,

Al Vann

(For filing in County Clerk's Office)                    02826

## Certificate of Appointment of Commissioner of Deeds

I, the City Clerk of the City of NEW YORK, do hereby certify that

.......... Jhn M Fredeick II ...............

residing in ....KINGS.......................... County, was duly appointed a
COMMISSIONER OF DEEDS in and for the City of New York for the term ending

**JUN 0 1 2011** ....... **JUN 0 1 2009** ......................

and duly qualified in my office on ...................................

WITNESS my hand and seal at New York City this

.............. day of ..... **MAY 2 0 2009** ......... 20 .....

_____
City Clerk, City of New York

**FILL IN REVERSE SIDE BEFORE FILING WITH COUNTY CLERK**
**THE FEE FOR FILING THIS CERTIFICATE IS $10.00**

RF-432 (2007)                              (DO NOT FOLD THIS CARD)

*1*

# List of Long Island law enforcement agencies

*Help us improve Wikipedia by supporting it financially.*

From Wikipedia, the free encyclopedia

The **List of Long Island law enforcement agencies** provides an inclusive list of law enforcement agencies serving New York's Long Island. This includes those agencies serving the New York City boroughs of Brooklyn and Queens on the western portion of Long Island along with those serving the suburban counties of Nassau County and Suffolk County.

## List of agencies

### New York City

- New York City Police Department
- New York City Sheriff's office (peace officers)
- New York City Marshals (peace officers)
- New York City Department of Environmental Protection Police (peace officers)
- New York City Department of Sanitation Police (peace officers)
- New York City Health and Hospitals Police (peace officers)
- New York City Parks Enforcement Patrol (peace officers)
- New York City Waterfront Commission Police
- New York City Taxi and Limo Commission (peace officers)
- New York City Department of Investigation
- New York City Department of City Administrative Services Police (peace officers)
- New York City Department of Correction (peace officers)
- New York City Department of Human Resource Services Police (peace officers)
- New York City Department of Homeless Services Police (peace officers)
- City University of New York Public Safety Department (peace officers)
- Seagate Police Department (private police force for Brooklyn/Coney Island community)
- Co-Op City Police Department (private police force for Bronx housing project)
- Roosevelt Island Department of Public Safety (private police force for Roosevelt Island Development Corps owned housing projects)
- Triborough Bridge & Tunnel Authority (Peace Officers)
- Port Authority of New York and New Jersey Police Deparment
- New York City Humane Society Law Enforcement (peace officers)
- New York City Society for the Prevention of Cruelty to Children Law Enforcement (peace officers)

The New York City Transit Police and the New York City Housing Authority Police were merged into the NYPD in 1995. The Brooklyn Police Department and the Long Island City Police Department in 1898 and the Town of Morrisania Police Department in 1879.

Each of the five counties of New York City — New York (Manhattan), Bronx, Richmond (Staten Island), Kings (Brooklyn) and Queens — had a county sheriff's department. In 1942 they were merged together to form the New York City Sheriff's Office. In 1970 the corrections part of the sheriff's office became a separate New York City Department of Correction.

### Nassau County

LAWS OF NEW YORK. ---- By Authority

# CHAPTER 972

AN ACT to amend chapter three hundred ninety-one of the laws of nineteen hundred forty, entitled " An act to authorize the Sea Gate Association to appoint special policemen, " generally

Became a law April 26, 1957, with the approval of the Governor. Passed, by a majority vote, three-fifths being present

The People of the State of New York, represented in Senate and Assembly do enact as follows:

Section 1. Chapter three hundred ninety-one of the laws of nineteen hundred forty, entitled " An act to authorize the Sea Gate Association to appoint special policemen, " sections one and two having been amended and section three having been added by chapter two hundred forty of the laws of nineteen hundred forty-two, is hereby amended to read as follows:

Section 1. The Sea Gate Association, a membership corporation owning, leasing and controlling real property in the area known as Sea Gate in the borough of Brooklyn, in the city of New York, as shown on map number eleven hundred and seventy, filed in the office of the register of the county of Kings on June sixteenth, eighteen hundred ninety-seven and its successors and assigns, may appoint and at pleasure remove, one or more special police officers. Every policeman so appointed shall, within fifteen days hereafter, before entering on the duties of his office, take and subscribe the constitutional oath of

9

office and file the same with the clerk of the county of Kings. The compensation of such policemen shall be paid by the corporation appointing them.

SoS 2. Such policemen shall be peace officers within the said  Sea Gate area. In addition thereto such policemen shall have the power to preserve order, prevent disturbances and breaches of the peace in and about the buildings and property, and in and about the said area and grounds so owned, leased or controlled, and shall protect and preserve the same from injury, shall arrest or summons to magistrate's court and prosecute any person committing any crime or offense or any traffic infraction as defined by the vehicle and traffic law, or any violation of the provisions of the vehicle and traffic law, or of the traffic regulations of the city of New York, the provisions of both of which shall apply and extend to the use, operation, and maintenance of motor vehicles on the streets, avenues, and roads in the said area or on such grounds or committing any wilful trespass in said area, or on such grounds or property or in or upon such buildings, or on the streets, avenues and roads in said area or on such grounds and shall either summons to magistrate's court or convey such person so arrested with a statement of the cause of such arrest before a magistrate having jurisdiction of the offense. Each such policeman shall, when on duty, wear in plain view a metallic shield with the words " policeman ", his rank, if any, and the name of the corporation which appointed him inscribed thereon.

SoS 3. The provisions of the vehicle and traffic law and the traffic regulations established by the commissioner of traffic of the city of New York shall apply with the same force and effect to the streets, avenues and roads of the said Sea Gate area as they apply to the streets, avenues and roads of the city of New York.

SoS 4. A violation of any section of the vehicle and traffic law or any traffic regulation of the city of New York, made applicable as provided in section three hereof, shall be a misdemeanor, traffic infraction or offense as designated in such law or regulation as the case may be, and punishable as therein provided.

SoS 5. Such laws, rules and regulations shall be enforced, and violations thereof shall be punishable, in the city magistrate's court of the city of New York.

SoS 6. Any wilful trespass in said area or upon any grounds therein or the buildings and approaches thereto; and any wilful injury to any of the said buildings, grounds, area or to any trees, shrubbery, fences, fixtures or other property thereon or pertaining thereto, and any wilful disturbance of the peace thereon shall constitute disorderly conduct.

SoS 7. The board of city magistrates of the city of New York is empowered and directed to prepare and issue summons in blank, attested in the name of its chief magistrate, to members of the police force of the Sea Gate Association appointed as provided in section one of this act, and the provisions of section h of section one hundred sixteen of the New York city criminal courts act shall be applicable thereto. The provisions of subdivision i of section one hundred sixteen of the New York city criminal courts act shall be applicable to all summonses issued for a violation of any provision of this act, or any law, rule or regulation adopted or made applicable pursuant to the provisions of section three of this act, concerning the parking of a motor vehicle.

SoS 8. Where a summons has been served by a policeman of the Sea Gate Association appointed as provided in this act in lieu of arrest in cases authorized by this act, the officer of the police department of the city of New York assigned to desk duty in the precinct in which the service of such summons is made, is hereby authorized and directed to administer to such policeman all necessary oaths in connection with the execution of the complaint to be presented in the magistrate's court of the city of New York by such policeman in the prosecution of such offense.

SoS 9. This act shall take effect immediately.

CARMINE G. DeSAPIO,

Secretary of State

11

# Municipal Police Training Council

DIVISION OF
CRIMINAL
JUSTICE
SERVICES

NEW YORK
STATE

BUREAU FOR
MUNICIPAL
POLICE

## State of New York

Be it hereby known that

### JOHN M. FREDERICK

has successfully completed the

BASIC COURSE FOR POLICE OFFICERS

which satisfies the minimum

criteria established by the

### Municipal Police Training Council

CONDUCTED AT NEW YORK, NEW YORK
FEBRUARY 8, 1989 - MAY 12, 1989

DIRECTOR OF CRIMINAL JUSTICE
AND COMMISSIONER

CHAIRMAN, MUNICIPAL POLICE
TRAINING COUNCIL

DEPUTY COMMISSIONER, DIVISION o

12



# John Jay College of Criminal Justice
## The City University of New York

### AWARD FOR EMERGENCY MEDICAL SERVICES
### FIRST RESPONDER TRAINING

Presented to

## John M. Frederick

achieved during the

### BUREAU FOR MUNICIPAL POLICE
### BASIC POLICE TRAINING PROGRAM

Established by the

### MUNICIPAL POLICE TRAINING COUNCIL
### STATE OF NEW YORK
May 1989

James T. Curran
Dean, Special Programs

13



# Municipal Police Training Council

## State of New York

Be it hereby known that

JOHN M. FREDERICK II

has completed the

# Basic Course for Peace Officers

held at

BROOKLYN, NEW YORK

Awarded this ___6th___ day of ___DECEMBER___ 1984

Commissioner
DIVISION OF CRIMINAL JUSTICE SERVICES

Chairman
MUNICIPAL POLICE TRAINING COUNCIL

14

# Municipal Police Training Council

## State of New York



Be it hereby known that

JOHN M. FREDERICK II

has completed the

**Firearms**

and

**Deadly Physical Force Training**

held at

BROOKLYN, NEW YORK

Awarded this ___6th___ day of ___FEBRUARY___ 1985

Commissioner
DIVISION OF CRIMINAL JUSTICE SERVICES



Chairman
MUNICIPAL POLICE TRAINING COUNCIL

15



# Sea Gate Police Dept.

## This is to certify that

POLICE OFFICER JOHN FREDERICK

## has completed the

ANNUAL FIREARMS TRAINING (QUALIFIED AS SHARPSHOOTER)

6/4/86
DATE

NYPD RODMANS NECK
INSTRUCTOR

CHIEF OF POLICE

16

# Honor Roll

**Police Officer** John Frederick

Has distinguished himself, for his courage, ability and conduct above and beyond the line of duty, on October 28th, 1984

In witness there of: He is awarded the

**Meritorious Police Duty Citation**

Date _____

_____
Police Commissioner



17



**Police Department, Sea Gate, N.J.**

Certificate of Training

This is to Certify

that

**JOHN M. FREDERICK III**

ON THIS __2nd__ DAY OF __January, 1992__.

HAS SUCCESSFULLY COMPLETED ALL

NECESSARY REQUIREMENTS OF THE

**FIELD TRAINING FOR POLICE OFFICERS**

**COURSE** (350 Hours)

AND IS HEREBY AWARDED THIS

**CERTIFICATE**

COMMANDING OFFICER

FIELD TRAINING OFFICER

LITHO IN U.S.A.

18

# SEA GATE POLICE DEPARTMENT

## FIELD TRAINING AGENDA

The following constitutes the required subject matter to complete the field training for police officers course as mandated by the Sea Gate Police Department Patrol Guide. This course will be completed within the first six months of employment by each member.

| | |
|---|---|
| INTRODUCTION TO POLICE DUTIES AND RESPONSIBILITY WITH CLASSROOM NOTE TAKING AND DISCUSSION. | 8 hours |
| TRAFFIC ENFORCEMENT, CAR STOPS, FELONY CAR STOPS. UNIVERSAL AND ENVIRONMENTAL CONSERVATION SUMMONSES. | 40 hours |
| ROUTINE PATROL PROCEDURES, OBSERVATIONS AND REPORTS. | 40 hours |
| NEW YORK STATE PENAL LAW AND CRIMINAL PROCEDURE LAW. | 40 hours |
| UNITED STATES CONSTITUTION AND BILL OF RIGHTS. | 4 hours |
| FAMILY DISPUTES, FAMILY VIOLENCE AND OFFENSE TO INDIVIDUAL. | 40 hours |
| PUBLIC MORALS, PUBLIC ASSEMBLY AND DISORDERLY CONDUCT. | 40 hours |
| NARCOTICS AND CONTROLLED SUBSTANCE IDENTIFICATION WITH FIELD TESTING. | 12 hours |
| SEARCH AND SEIZURE LAWS, PERTINENT SUPREME COURT DECISIONS AND DISCUSSION. | 40 hours |
| BASIC INVESTIGATION PROCEDURE, AUTO ACCIDENT INVESTIGATION, FIELD NOTATION AND REPORT WRITING AND FILING. | 20 hours |
| CRIMINAL INVESTIGATION, INTERVIEW AND INTERROGATION, SEARCH, PRESERVATION OF CRIME SCENE. | 40 hours |
| TRAFFIC CONTROL PROCEDURES. | 8 hours |
| CROWD CONTROL PROCEDURES. | 8 hours |
| ARREST BOOKING PROCEDURES. | 8 hours |
| STOP, QUESTION AND FRISK LAWS AND PROCEDURE. | 2 hours |
| TOTAL | 350 hours |

19



The New York City Police Department

Auto Crime Division

Certificate of Attendance

This is to certify that

Sgt. John M. Frederick II          Agency Sea Gate P.D.

has completed the Advanced Training course in the field of Auto Crime.

Presented by

Auto Crime School

of the

Auto Crime Division

Organized Crime Control Bureau

Awarded this 8th day of January, 1998

COMMANDING OFFICER
AUTO CRIME DIVISION

CHIEF
ORGANIZED CRIME CONTROL

DIRECTOR
AUTO CRIME SCHOOL



# THE SEA GATE N.Y. HARBOR
# POLICE DEPARTMENT

3700 SURF AVE., SEA GATE, BROOKLYN, N.Y. 11224
POLICE 449-4400, 449-4700

*Chief*
Harold R. Dugan

March 22, 1987

From:      Chief Harold R. Dugan

Subject:      Promotion Order

SPECIAL ORDER NO. 1-87

1.  Effective February 19, 1987, Sea Gate Police Officer John Frederick, shield 5020 is promoted to the rank of Investigator, with assigned shield number being 3601.

2.  In such capacity he will function as the department's investigator, and will be assigned to the 4-12 tour.

-----

Lt. Joseph Rodziewicz
Administrative Officer

FOR

Harold Dugan
Chief of Police

HD/JR

21

## UNIFORM AND EQUIPMENT RECORD

ime ☒
ime ☐
ary ☐

DATE APPOINTED – 9/12/8
TOUR – 4X12

Revolver Ser. # _____

E: Frederick, John     M.     PHONE: 375-8856     BADGE SET: # 5020
   LAST     FIRST     MIDDLE INITIAL

DRESS _____ Brooklyn, New York _____
   NO. STREET     CITY     STATE     ZIP CODE

SIZES: Cap _____ Coat _____ / _____ Reefer _____ / _____ Trousers _____ / _____ Shirt _____ / _____

| ARTICLE | Initial Issue | | Turned In | | | | ARTICLE | Initial Issue | | Turned In | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Qty. | Date | Qty. | Date | Clerk | Bal. | | Qty. | Date | Qty. | Date | Clerk | Bal. |
| Belt, Web | | | | | | | Shirts, White L'S | | | | | | |
| Belt, S/Browne | | | | | | | Shirts, White S'S | | | | | | |
| Blazer | | | | | | | Tie, Blue | | | | | | |
| Cap, regular | 1 | 9/10/37 | 1 | 9/14/84 | @3 | | Traffic Vest | | | | | | |
| Cap, fur | | | | | | | Trousers, summer | 1 | 9/10/84 | | | | |
| Cap cover, plastic | | | | | | | Trousers, year-round | | | | | | |
| Cap cover, rubber | | | | | | | Whistle w/chain | | | | | | |
| Coat, (blouse) | | | | | | | G.O.R. & R. Booklet | | | | | | |
| Coveralls | | | | | | | G.P.D I.P card | 1 | 9/11/84 | | | | |
| Flashlight | | | | | | | D0 registration card | 1 | 10/84 | | | | |
| Helmet, Safety | | | | | | | 2 patches | 2 | 9/2/92 | | | | |
| Holder, nightstick | | | | | | | | | | | | | |
| Holster, .38 Cal. | | | | | | | | | | | | | |
| Leggins, rubber | | | | | | | | | | | | | |
| ghtstick | | | | | | | Sec l. no 1)152) | 1 | 9.2.92 | | | | |
| a | | | | | | | | | | | | | |
| oat | | | | | | | Received Initial Issue from: | | | | | | |
| 3/4 | 1 | 9/10/84 | | | | | on: 9-10-84 / Sgt. Reed | | | | | | |
| ue L/S | 2 | 9/10/84 | 1 | 9/14/84 | @ | ← | DATE          SIGNATURE | | | | | | |
| e S/S | | | | | | | | | | | | | |

REV. 10/74

RDO'S MON. & TUES.



**POLICE DEPARTMENT
SEA GATE, NEW YORK
IDENTIFICATION CARD**

NAME **JOHN FREDERICK**

SHIELD NO. 3601    TAX NO. 100087

RANK **INVESTIGATOR**

DATE OF BIRTH _____    WEIGHT 195

HEIGHT 70"    S.S. _____

NATURE  *John Frederick*





# THE SEA GATE
# POLICE DEPARTMENT

3700 SURF AVE.. SEA GATE, BROOKLYN, N.Y. 11224
POLICE 449-4400, 449-4700

**POLICE DEPARTMENT
SEA GATE, NEW YORK**

IDENTIFICATION CARD

NAME    JOHN FREDERICK

SHIELD NO.    TAX NO.
3601    100036

RANK    DETECTIVE

DATE OF BIRTH    WEIGHT
195

HEIGHT.    70"

SIGNATURE    *John Frederick*

23

**UNITED INSIGNIA COMPANY**
102 Fulton Street, 4th Floor
New York, New York 10038
(212) 732-5363

MON - FRI 9AM - 5 PM
FAX (212) 267-2777

Order No. **7007**

Estimated Due Date ___12/11/91___

Date ___11/11/91___

(Name) John Frederick

(Telephone #) 212 607 9842
Beeper

(Address)

PAID

| Quant. | Description | Unit Cost | Total |
|--------|-------------|-----------|-------|
|  | Na___ Stamp |  |  |
| 1 | Sea Gate New York |  |  |
|  | POLICE |  |  |
|  | 514 |  |  |
|  | SEA GEANT |  | 34.00 |
|  | Lugs |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

PAID

**All Dies Are Possession Of**
United Insignia : Any Fees Paid
Are For Labor Only

**50% Deposit Required With Order**
**Total Balance Required Upon Completion**

We Are Not Responsible For Any Items
After 90 Days

No Refunds

TOTAL ___34.00___

Deposit ___15.00___

Balance ___19.00___

**NO PERSONAL CHECKS**

24



25



26

Case 1:13-cv-00897-EK-ST    Document 1    Filed 02/19/13    Page 82 of 180 PageID #: 82

SE. GATE POLICE DEPT.    POLICE OFFICER EVALUATION REPORT    COMMAND 985

NAME: Det. John Frederick

DATE: June, 1986 THRU May , 1987

DATE APPOINTED: 09-12-84

SHIELD: 3601

ASSIGNMENT: 4-12 Tour

|  | EXCELLENT | GOOD | FAIR | POOR |
|---|---|---|---|---|
| APPEARANCE: | X |  |  |  |
| SELF CONFIDENCE: |  | X |  |  |
| EMOTIONAL STABILITY: | X |  |  |  |
| JUDGEMENT: | X |  |  |  |
| WILLINGNESS TO LEARN: | X |  |  |  |
| ABILITY TO FOLLOW ORDERS: | X |  |  |  |
| ABILITY TO DEAL WITH WORKERS: | X |  |  |  |
| ATTENDANCE: |  |  | X |  |
| PUNCTUALITY: |  |  | X |  |

NO. OF TIMES LATE: 07

NO. OF TIMES ABSENT: 11

RECOMMENDATIONS

|  | SIGNATURE | RETENTION | ADDITIONAL PROBATION | DISMISSAL |
|---|---|---|---|---|
| DUTY SERGEANT: |  |  |  |  |
| LIEUTENANT: | _signature_ | X |  |  |
| CHIEF of POLICE: |  |  |  |  |

NOTE* Use asterisk (*) to indicate insufficient field time to evaluate

27

SEA GATE POLICE DEPT   POLICE OFFICER EVALUATION REPORT   COMMAND 985

┌─────────────────┐
│ COMMENT         │
│ SECTION         │
│                 │
└─────────────────┘

**APPEARANCE:** Police Officer Frederick's dress is appropriate and conforms with the regulations transmitted by the Chief of Police during the four seasons of the year. Police Officer Frederick is rated excellent in this area of evaluation.

**SELF CONFIDENCE:** Police Officer Frederick displays confidence in his ability to perform various police functions, and performs these functions with positive results. Police Officer Frederick is rated good in this area of evaluation.

**EMOTIONAL STABILITY:** Police Officer Frederick displays great stability under stress conditions, and also has the potential and is able at certain times to defuse potentially hostile situations. Police Officer Frederick is rated excellent in this area of evaluation.

**JUDGEMENT:** Police Officer Frederick in making judgements in police oriented matters and conditions are logically sound. Police Officer Frederick on prior occassions made several positive judgement call under extreme emergency conditions. Police Officer Frederick is rated excellent in this area of evaluation.

**WILLINGNESS TO LEARN:** Police Officer Frederick displays a great interest in law enforcement and is willing to learn in this field. Police Officer Frederick has attended all instructional classes provided by the department, and in addition has attended several courses on his off duty hours. Police Officer Frederick is rated excellent in this area of evaluation.

**ABILITY TO FOLLOW ORDERS:** Police Officer Frederick is rated excellent in this area of evaluation.

**ABILITY TO DEAL WITH WORKERS:** Police Officer Frederick is rated excellent in this area of evaluation.

**ATTENDANCE:** Police Officer Frederick is rated fair in this area of evaluation.

**PUNCTUALITY:** Police Officer Frederick is rated fair in this area of evaluation.

**COMMENTS:** Police Officer Frederick's attitude towards superior officers, and the public is excellent. Police Officer Frederick in his attitude towards the public in his performance and interaction reflect favorably on the image of the police within the community.

Based on this evaluation Police Officer John Frederick was promoted to the rank of Detective on February 19, 1987.

SIGNATURE: LT. _J. Roch_   DATE: 4 / 1 / 87

28



# THE SEA GATE
# POLICE DEPARTMENT

3700 SURF AVE., SEA GATE, BROOKLYN, N.Y. 11224
POLICE 449-4400, 449-4700

## Officers Evaluation

EVALUATING SUPERVISOR(S) __Insp. Seijo_____ . TOUR_____

MONTH OF: _____19_____ DATE PREPARED __10/01/92__

POLICE OFFICER _Sgt. John Frederick_____ TOUR __12-8__

POLICE OFFICER'S DATE OF EMPLOYMENT __07/01/91__

PROBATION EVALUATION YES ( ) NO ( X ) CHECK ONE

_____ EXCELLENT            2. _____ SATISFACTORY

_____ UNSATISFACTORY       4. _____ REQUIRES ADDITIONAL TRN.

| | | | |
|---|---|---|---|
| Employees attitude towards training | ① | 2 | 3 | 4 |
| Employees attitude towards Supervisors | ① | 2 | 3 | 4 |
| Employees attitude towards other collogues | 1 | ② | 3 | 4 |
| Employees attitude towards the public | ① | 2 | 3 | 4 |
| Does employee carry out orders willingly and efficiently | ① | 2 | 3 | 4 |
| Does employee accept construtive criticism | 1 | ② | 3 | 4 |
| Is employee knowledgeble about the various post assignments | ① | 2 | 3 | 4 |
| Does employee respond favorably to correction | 1 | ② | 3 | 4 |
| Employees attendance record for this period was | ① | 2 | 3 | 4 (Explain if # 3 ) |
| Employees appearance for this period was | 1 | ② | 3 | 4 (Explain if # 3 ) |
| Employees punctuality record for this period is | ① | 2 | 3 | 4 (Explain if # 3 ) |
| Employees ability to make reports in writing | | | | |

29

. Employees ability to deal objectively with
  situations

. Employees overall performance of duty

1  (2)  3  4

(1)  2  3  4

---

## Comments

Sergeant John Frederick has been employed by this department a total
of four years. Sergeant Frederick had resigned and obtained employment
and training at other police Departments until his return on July 1,
1991. Sergeant Frederick had previously serve the department as a
Patrolman, Detective and finally attain the rank of Sergeant.
As a supervisor sergeant Frederick is dedicated and committed, puts in
voluntary time when ever case loads are heavy, without requesting
compensation. This supervisor has displayed a genuine commitment to
duty and this department.

C.O.'s Signature

30



POLICE DEPARTMENT
SEA GATE, NEW YORK

IDENTIFICATION CARD

NAME JOHN. FREDERICK.
SHIELD NO. 514    TAX NO. 1000036
RANK SERGEANT
DATE OF BIRTH
HEIGHT 70"    WEIGHT 195    S.S.
SIGNATURE John Frederick

LIC. NO. C711115    PAGE 1 of 1
LICENSEE AUTHORIZED TO POSSESS THE FOLLOWING FIREARMS:
MAKE SW
SERIAL NO. D576120    CALIC. OWN. TYPE
3    R

RESTRICTION

Pistol may be carried ONLY:
1. while actively engaged in employment.
2. from residence to place of employment.
3. ___ment back to residence

CONDITIONS OF LICENSE ON REVERSE SIDE

DESIGNATED LICENSE... (stamp)

LIC.# C711115
ISS. DATE 07/26/91    EXP. DATE 03/10/93
BASIC PERMIT ************    TYPE CA/RV

TO FREDERICK JOHN M
ADDRESS 3700 SURF AVE
CITY BROOKLYN NY    COUNTY ***********
OCCUPATION POLICE OFFICER    LIC. OWN. ___    Pc. 060
EMPLOYED BY SEA GATE ASSOCIATION POLICE    11224
DOB ___    HT. 70    WT. 200

CONTROL # 034581

31



32



# SEA GATE NEW YORK
# POLICE DEPARTMENT
### 3700 SURF AVENUE, SEA GATE, NEW YORK 11224
### POLICE (718) 449-4400 • (718) 449-4475

## INTRA DEPARTMENTAL MENMORANDUM

**TO:**            **All Members of the Service**

**From:**        **Lieutenant A. Romano, C. O.**

**Subject:**      **Promotion of Duty Function**

**Date:**        **August 3, 1994**

**All members are hereby advised that Detective *I* Sergeant John Frederick Shield # 514 have been appointed, by the Police Committee, as Deputy Commanding Officer of this Department.**

**It is expected that all members recognize that Detective *I* Sergeant Frederick is totally responsible for the operation of the Department in the absence of the Commanding Officer.**

**Members are requested to show all Courtesy and respect due to the position of Deputy C. O.**

> **By Order of the Police Committee**
> **Lieutenant Armand Romano**
> **Commanding Officer**

*33*

Jul-01-98  12:47P                                                            P.02

# Private Sanitation Union Local 813

Affiliated With:

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS**
**225 PARK AVENUE SOUTH  •  NEW YORK, N.Y. 10003**

Private Sanitation, Resource Recovery, and
Transfer and Recycling Station Employees

(212) 254-8424

Paper Products and Miscellaneous Drivers,
Warehousemen, Helpers and Messengers,
New York and Metropolitan area, New York

**Fax (212) 477-7028**

**EUGENE P. MANEY**
*International Trustee*

Sea Gate Association                                      June 25, 1998
3700 Surf Avenue
Brooklyn, NY 11224

Re: Shop Steward
Sergeants and Lieutenants

Dear Employer:

    Please be advised that Sergeant John Fredricks has been elected as the shop steward to
represent all the members under the C.B.A. covering all the Sergeants and the Lieutenants. Please
make all the necessary arrangements to have all grievances and issues come by him first  Should
there be any need for my assistance he will contact me as needed.

                          Thanking you in advanced for your cooperation,

                          Jaime Rodriguez
                          Business Agent

cc:    Police Chief
       Casper Price
       John Fredricks

                                                                        34

247-C

`01-98 12:57P

*SEAGATE POLICE*    P.01
*Sgt. FREDRICK.S*

212-254-8424

Fax 212-477-7028

# Private Sanitation Union Local 813

Affiliated With:
### INTERNATIONAL BROTHERHOOD OF TEAMSTERS

225 PARK AVENUE SOUTH
Private Sanitation, Resource Recovery, and

International Trustee - Eugene P. Maney



NEW YORK, N.Y. 10003
Transfer and Recycling Station Employees

Assistant Trustee - Michael Kelly

## FAX TRANSMISSION
## COVER SHEET

TO: _Management_

COMPANY: _Sea Gate Association_

FAX #: _718 - 449 - 4713_

FROM: _____

DATE: _____

NUMBER OF PAGES (including cover sheet): _2_

If you did not receive all of the pages, please call 212/254-8424 ext. 24 immediately.

COMMENTS: _Please give copies to all_

_cc: personell_

_____

_____

_35_

247-C

# THE SPECIAL STATUS OF UNION STEWARDS

## STEWARDS ARE CONSIDERED EQUALS WITH MANAGEMENT

Under National Labor Relations Board doctrine, union stewards (and other union representatives) have a special legal status when they engage in union business or act in their official capacities. When representing employees, stewards are considered to be equals with management.

The equality principle allows stewards to raise their voices, gesture, use forceful expressions, or threaten legal action. These tactics may not be appropriate or even successful, however, they are protected activities. However, employers' can discipline stewards for conduct which is "outrageous" or "indefensible".

The equality principle applies when a steward is acting in an official capacity. You are acting in your official capacity when you investigate a grievance, request information, present a grievance or other otherwise act as a representative of employees.

## UNLAWFUL RETALIATION AGAINST THE STEWARD

The N.L.R.A protects stewards who are punished or disciplined because he/she files grievances - even if management considers them overly frequent, or petty.

Retaliation in any form is illegal. Among other things an employer may not:

- Order a steward to perform greater or more difficult work.
- Deny a steward pay opportunities.
- Segregate a steward from other employees.
- Deprive a steward of overtime.
- Enforce rules more strictly against a steward.
- Overly supervise a steward.

## HOLDING STEWARDS TO HIGHER STANDARD

Stewards are not superworkers and cannot be held to higher standards than other workers. Some supervisors expect the 7steward to set an example and say things like "of all people you're supposed to know the rules." This attitude has no support in law. There is only one circumstance when stewards hold to higher standards than rank-and-file workers. This involves work stoppages which violate no-strike agreements.

34

*Section I*

36

# "WEINGARTEN RIGHTS"
## (THE RIGHTS OF EMPLOYEES TO UNION REPRESENTATION)

In 1975 the U.S. Supreme Court ruled that employees have a right to union representation during <u>investigatory interviews</u> by management. These are called "Weingarten Rights."

**♦ What is an Investigatory Interview**

An investigatory interview occurs whenever a supervisor questions an employee to obtain information which could be used as a basis for discipline. The employee must have a "reasonable belief" that disciplinary action may result from what he or she says at the interview.

For example, an employee who is questioned about drugs is clearly involved in an investigatory interview and has a right to union representation.

However, a foreman who gives instruction on how to do a job is not conducting an investigatory interview. The possibility of discipline resulting from such a "shop floor" discussion is usually remote.

Employees are not entitled to Union representation if the employer is simply informing the employee of some discipline which has already been decided.

**♦ When an investigatory interview occurs, the following rules apply:**

<u>Rule 1</u>. The <u>employee</u> must make a request for union representation either <u>before</u> or <u>during</u> the interview. Employers have <u>no duty</u> to inform workers of their rights. Workers who fail to request union representation can be questioned at length.

<u>Rule 2</u>. Once an employee makes a request, the employer must choose from among the following options:

a. The employer may <u>grant the request</u> and delay questioning until the union representative arrives and has a chance to consult with the employee.

b. The employer may <u>deny the request</u> and <u>end</u> the interview immediately (and possibly proceed with discipline based on other evidence).

c. The employer may <u>give the employee a choice</u> of 1) continuing the interview without representation, or 2) discontinuing the interview.

35

## Sample card for members on
## Weingarten Rights

I believe this discussion could lead to my being disciplined. I therefore request that my union representative or officer be present to assist me at the meeting. I further request reasonable time to consult with my union representative regarding the subject and purpose of the meeting. Please consider this a continuing request; without representation, I shall not participate in the discussion. I shall not consent to any searches or tests affecting my person, property, or effects without first consulting with my union representative.

*Section I*

38

# THE RIGHT TO INFORMATION

Under the National Labor Relations Act, employers have an obligation to provide information that is needed by unions to carry out their duties as bargaining agents. In addition to information relating to collective bargaining, employers must also provide information relating to grievances.

As a union steward, you are entitled to information that is needed:

- To determine whether a grievance exists
- To prepare a grievance for presentation
- To determine whether or not to drop a grievance or to move it up the ladder
- To determine whether to arbitrate a grievance
- To prepare for an arbitration hearing

Here are some of the kinds of information you can ask for:

- Attendance records
- Personnel files
- Names of witnesses
- Company records: including payroll records, time records, insurance policies, production records, material records, inspection records, time study records, security guard records, company memos, company tax returns, or any other relevant records.

In a discipline case, ask for a complete copy of the employee's personnel file. How often have you been surprised when management refers to past discipline or misconduct that you were totally unaware of? Also, since unequal punishment is always a potential defense, ask for a list of other workers who have been disciplined for the offense in previous years, as well as those who committed the offense and were not disciplined.

In a contract interpretation case, in which the employer is relying on bargaining history, ask for the employer's bargaining notes as well as the dates and contents of any conversations between the union and management upon which the employer is relying.

*Section I*

39

The bearer of this card is recognized as an Active Member
of Fraternal Order of Police law Officers.
Lodge, # 5 FOP

Signature of Bearer

This card is property of Law Officers lodge # 5
and does not confer any special privileges or benefits.



LIC. NO.   C711115

PAGE   01 OF 1

LICENSEE AUTHORIZED TO POSSESS THE FOLLOWING FIREARMS:

MAKE   MODEL   SERIAL NO.   CAL.   TYPE
SM     D576120            33     R

RESTRICTED / CARRY

Pistol may be carried ONLY:
1. While actively engaged in employment.
2. From residence to place of employment;
3. From place of employment back to residence.

R E V E R S E   S I D E

RESTRICTED CARRY
PISTOL LICENSE
Issued under Article 1991 Penal Law

TO       FREDERICK, JOHN M
ADDRESS  3700 SURF AVE
CITY     BROOKLYN
OCCUPATION  PEACE OFFICER/RESTRICTED
EMPLOYED BY  SEA GATE ASSOCIATION
DOB

LIC #    C711115     TYPE
ISS DATE 01/01/95    EXP DATE  01/10/97
BASIC PERMIT  ********** COUNTY

HT 70                Pct 060  11224
                     HT 70    WT 200

CONTROL #   030879



SIGNATURE

HEIGHT  70"     WEIGHT  200

POLICE DEPARTMENT
SEA GATE, NEW YORK
NAME
FREDERICK, JOHN M.
SERGEANT

INTERNATIONAL BROTHERHOOD OF TEAMSTERS
AFFILIATED WITH THE
AFL-CIO

Title: Steward

Name  J. Frederick II
S.S. No.
Member Sig
Local No.
Int'l. Trustee



40



POLICE DEPARTMENT
SEA GATE. NEW YORK

JOHN M. FREDERICK

S E R G E A N T

514          100036

Blk    Brn    70"    200

*John M. Frederick*

January 31, 1999

SEA GATE POLICE DEPARTMENT
Firearm Control Receipt

This is to certify that
Det. J. FREDERICK
returned to custody
S&W .38  Ser# D576120.

29  Capt. P. Seijo
    Gun Custodian

*4/*



OFFICE OF THE
# District Attorney
KINGS COUNTY

MUNICIPAL BUILDING • BROOKLYN, NEW YORK 11201     212 834-5000

**EUGENE GOLD**
*District Attorney*

1981

To whom it may concern:

This is to confirm that John Fredricks on May 27, 1981 and May 28, 1981 testified before the Grand Jury in the case of the People of New York vs. Louis Eiguera, indictment number 2483/81.

Yours truly,

J. Dopico

Assistant District Attorney
Kings County
834-4683

42

POLICE DEPARTMENT
CITY OF NEW YORK

August 2, 1983

From:        Commanding Officer, 88 Precinct

To:          Pistol License Division

Subject:     ONE SHOT FIRED BY PISTOL LICENSE HOLDER (NO INJURIES)

1.        At approximately 0145 hours, August 2, 1983 John Frederick of ██████████ Street, a pistol license holder ( 8350360) which expires 12/31/84, fired one (1) shot from S/W 38 caliber serial #3D59268, under the following circumstances.

2.        At a ovo stated time Mr. Frederick was sitting in his auto in front of 400 Clinton Ave. and he observed two (2) males armed with knives robbing Mr. Wayne Quachenbush of 220 Dekalb Ave. and two (2) other unidentified females. He heard one perp state "Come on give me all your money." Mr. Frederick came out of auto and confronted the two (2) perps at which time one perp layed on ground and 2nd. perp. jumped behind brick wall, still armed with knife and attempted to escape. Mr. Frederick cut off escape route of perp #2 and when perp would not drop weapon Mr. Frederick fired one (1) warning shot directly overhead. Perp #2 then gave up. Det. Dresback examined weapon and found one (1) spent shell and five (5) live rounds.

3.        The two perps where charged with Robbery and C.P.W... under UPCL 4809. Perp #1 was identified as Allen Robinson, M/B/ 27 yrs. of 175-38 Brecher Rd., Jamaica Queens. Perp #2 Allen Rhodes, M/B/28 yrs., of 162 Navy Walk, Apt. 1A, Bklyn. N.Y.

4.        Due to above stated facts it is recommended that Mr. Fredericks license not be suspended or revoked.

PE:cm                                        Phillip Erickson
                                             C.O., 88 Pct.

victims

Renee Palmer
400 clinton St

Stephanie Lanyer
154 lafayette Ave

shelley crawford
658 Halsey St

P.O. Skyler
Sh #30496

BS# 12047

Det. Altman

477-9797

43

**Pamela M. Schwartz**

PO Fredricks
SGPD

Enclosed 2 copies
of Commendation letter

Pam
60 Pct

43

Sally Palmer
309 Patchen Ave
Brooklyn, N.Y. 11533

September 30, 198

Dear Mr. Shaulid:

I have nothing but praise for your officers Karasinski #16727, Lotunno #9083, and officer Frederick #5020, for the capture of Otis Palmer on 9-27-86.

My life has been miserable with him on the streets, I really feel great about what they have done. They deserve a promotion and a medal. Thank you

Sincerely
Sally Palmer

44

## DEPARTMENTAL RECOGNI ___ ARREST SUMMARY

LIST ALL PERSONS ARRESTED IN ___ NNECTION WITH THIS REQUEST AND T ___ CHARGES AGAINST EACH PRISONE

| Number 1. | Month Day Year | Time | Pct. of Arrest | ARREST NO. | Comp. No. & Pct. | CURRENT COURT STATUS OF PRISONER |
|---|---|---|---|---|---|---|
| | 10 , 5 , 86 | 1330 | 60 | 0327 | 1296 | closed (Indicted for Burglary) |

NAME
Gregory Dupree

| | Age 30 | Sex M | Race B | PREVIOUS RECORD | PRISONER'S "ID" NO. |

ADDRESS
2822 West 32 Street

| | Height 6'0 | Weight 165 | DATE | | CHARGES |

| CHARGES | LAW | SECTION | Sub S | Class | Felony Misd. | NAME OF OFFENSE | DEGREE |
|---|---|---|---|---|---|---|---|
| | PL | 140.10 | A | B | M | Crim Tress | |
| | PL | 140.35 | | A | M | Poss B Tools | 1st |
| | PL | 165.60 | | D | F | Poss St.Prop | 1st |
| | PL | 165.40 | | A | M | | 3rd |
| | PL | 240.25 | | | | Harassment | |

ARRESTING OFFICER'S NAME
P.O. Frederick

COMMAND 985

| Number 2. | Month Day Year | Time | Pct. of Arrest | ARREST NO. | Comp. No. & Pct. | CURRENT COURT STATUS OF PRISONER |
|---|---|---|---|---|---|---|
| | / / | | | | | |

NAME

| | Age | Sex | Race | PREVIOUS RECORD | PRISONER'S "ID" NO. |

ADDRESS

| | Height | Weight | DATE | | CHARGES |

| CHARGES | LAW | SECTION | Sub S | Class | Felony Misd. | NAME OF OFFENSE | DEGREE |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

ARRESTING OFFICER'S NAME

COMMAND

| Number 3. | Month Day Year | Time | Pct. of Arrest | ARREST NO. | Comp. No. & Pct. | CURRENT COURT STATUS OF PRISONER |
|---|---|---|---|---|---|---|
| | / / | | | | | |

NAME

| | Age | Sex | Race | PREVIOUS RECORD | PRISONER'S "ID" NO. |

ADDRESS

| | Height | Weight | DATE | | CHARGES |

| CHARGES | LAW | SECTION | Sub S | Class | Felony Misd. | NAME OF OFFENSE | DEGREE |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

ARRESTING OFFICER'S NAME

COMMAND

| Number 4. | Month Day Year | Time | Pct. of Arrest | ARREST NO. | Comp. No. & Pct. | CURRENT COURT STATUS OF PRISONER |
|---|---|---|---|---|---|---|
| | | | | | | |

NAME

| | Age | Sex | Race | PREVIOUS RECORD | PRISONER'S "ID" NO. |

ADDRESS

| | Height | Weight | DATE | | CHARGES |

| CHARGES | LAW | SECTION | Sub S | Class | Felony Misd. | NAME OF OFFENSE | DEGREE |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

ARRESTING OFFICER'S NAME

COMMAND

| Number 5. | Month Day Year | Time | Pct. of Arrest | ARREST NO. | Comp. No. & Pct. | CURRENT COURT STATUS OF PRISONER |
|---|---|---|---|---|---|---|
| | | | | | | |

NAME

| | Age | Sex | Race | PREVIOUS RECORD | PRISONER'S "ID" NO. |

ADDRESS

| | Height | Weight | DATE | | CHARGES |

| CHARGES | LAW | SECTION | Sub S | Class | Felony Misd. | NAME OF OFFENSE | DEGREE |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

ARRESTING OFFICER'S NAME

COMMAND

001137

46

STATEMENT OF ACT (CON'T)

On Sunday Oct.5,1986 the above mentioned officers, in a combined effort set up surveillance O/P 5103 Surf Ave,were a burglary had taken place earlier that day. This along with an investigation conducted by LT Rodziewi and Sgt. Seijo led to the arrest of Gregory Dupree age 30 of 2822 West 32 S who was aprehended while trying to collect a bicycle, and the stolen prop. which He had left behind earlier. The officers mentioned showed profession- alism and much interest in effecting said arrest and may have stopped a ras of burglaries within the Sea Gate community.

REMARKS: Gregory Dupree was charged and indicted on burglary charges on Oct. 10,1986, due to said arrest.

ENDORSEMENT AND RECOMMENDATION

Commanding Officer:_____, I have investigated this r

for Departmental Recognition and find that the facts are ___TRUE ___UNTR

I RECOMEND: ___APPROVAL and ___DISAPPROVAL and

Departmental Recognition in the grade of:_____ FILE

(state reason in "Rema

_____.
RANK        SIGNATURE

001158

47

5103 Surf Avenue
Brooklyn, New York 11224
December 12, 1986

Ralph Silverman, President
Sea Gate Association
3700 Surf Avenue
Brooklyn, New York 11224

Dear Mr. Silverman:

On October 5, of this year, my house was burglarized.  The Sea Gate Police
responded immediately, and in a most helpful, sincere way.  The case was
assigned for investigation to P.O. Frederick, who immediately chained a
bicycle that was left behind by the burglar, to my tree.  He searched the
neighborhood for my possessions to no avail.  Late that evening, a suspect
came back for the bicycle and was apprehended by my neighbor.  P.O.
Frederick and other members of the Sea Gate Police took the suspect in for
questioning.  Later that evening, P.O. Frederick found my stolen
possessions, after the suspect showed him where they were.

I believe it was only through the professionalism and diligence of P.O.
Frederick and others of the investigation team, that my possessions were
recovered.  P.O. Frederick really seemed to care, as opposed to the
N.Y.P.D., who made what appeared to be a perfunctory visit.

My sincere thanks to the entire Investigative Team:

- Sgt. Feijo
- P.O. Niola
- P.O. Cenetempo
- P.O. Sollitto
- P.O. Frederick

Thanks also to the Interviewing Team:

- Lt. Rodziewicz
- P.O. Correia

My special thanks to P.O. John Frederick.

Very truly yours,

Norman Dolch

cc:  Harry Krenziz, Police Commissioner
     Hal Dugan, Chief of Police
     P.O. John Frederick

May 28, 1987

To Ralph J. Silverman,

I am writing to compliment and commend Officer Fredericks. My friend and I placed a call that a man was on the beach wandering around and exposing himself. Officer Fredericks responded to the call within 10 minutes. He came to our block for a description (he also wanted one of us to accompany him) but the man had a distinctive streak in his hair for identification. We thought the man had wandered down towards Beach 48th St. Officer Fredericks left to check out that area. When he didn't find him, he came back to Beach 44th St. and walked on the beach. Officer Fredericks found the man sleeping on the rocks. He handcuffed him and brought him into the patrol car. The man was not a Sea Gate resident. Officer Fredericks asked if we wanted to press charges, but we said just take him out of Sea Gate.

If I am ever in need, I would want Officer Fredericks to help. Because of his efforts and efficiency the outsider was caught. Officer Fredericks is certainly an asset to Sea Gate and is helping to make it a better and safer place to live.

My Thanks,

Elly Napolitano

(4396 B. 44 St)        49

001117

June 17, 1987

Dear Chief Dugan,

As per our conversation I would like to again thank you for everything you have done for our community. Special thanks to Officer Fredricks who has always been there for me and for my children when we needed him. As I explained to you on the phone I am a single parent with three children and sometimes things can become very difficult. Officer Fredricks not only took the report that the children's bikes had been stolen but followed through and brought them back. Certainly no easy feat especially this time of the year. I know you must get many complaints and not enought thanks and that is what this letter is all about. Thanks also to Jack who my children look up to and respect who does his job regardless of the flack. No one can get past him!!!

Again thank you.

Sincerely,

Shirley Angeles
3723 Time Ave

50

001...5

JOHN J. SANTUCCI
DISTRICT ATTORNEY
125-01 QUEENS BOULEVARD
KEW GARDENS NEW YORK 11415-1568

7/20/90

To Whom It May Concern:

This is to confirm that *John Fredrick*

appeared in the Grand Jury of Queens County on

_____7/20/90_____, ~~1985~~ to aid in the prosecution of

the People of the State of New York against *William Keenan*

Indictment Number *4105/90!*.  Your continued cooperation

as well as that of *mr. Fredrick* is greatly

appreciated.

*mr. Fredrick was
present in Grand Jury
from 9:30 AM - 12 PM*

*#418/18
9072*

Thank you,

*Linda Rees*
Assistant District Attorney
For
JOHN J. SANTUCCI
DISTRICT ATTORNEY
Queens County

*51*



**District Attorney**
**Queens County**
**New York**

JOHN J. SANTUCCI

Mr. John Frederick                                          February 22, 1991

Bklyn, N.Y.

Re: People V. William Keenan (NYSID#: 4843417L)
        4105/90
Dear Mr. Frederick

As District Attorney of Queens, I wish to express
my appreciation for the service you performed for this
county and its citizens through your efforts in the above
case.  The successful operation of our justice system
depends on people like you who are willing to spend time
and effort to help make this county a better place in
which to live.

As part of my desire to keep you informed in this matter,
I would like you to know that this case has been
concluded as follows:

| | |
|---|---|
| Judge: | Honorable ANTHONY SAVARESE |
| A.D.A: | JOAN RITTER |
| Orig. Charge: | BURGLARY IN THE THIRD DEGREE |
| Finding: | PLEAD GUILTY TO BURGLARY IN THE THIRD DEGREE |
| Sentence: | SENTENCED TO A TERM OF  2 1/4 – 4 1/2 YRS JAIL |

        Please be advised that you have the legal right
as a crime victim to file a written statement, otherwise
known as an impact statement, with the Division of
Parole which will be taken into consideration when
a decision is to be made granting or denying parole
release to the defendant.

        Such statement is to contain the defendant's
name and his NYSID number (New York State Identification
Number) which are set forth in this letter.
The statement is to be forwarded to:

        New York State Division of Parole
        Victim Impact Statement Office
        97 Central Avenue
        Albany, New York  12206

Very truly yours,

John J. Santucci
District Attorney
Queens County

JJS:vsa

52

POLICE  DEPARTMENT
CITY OF NEW YORK

November 23, 1991

From:      Third Platoon Commander, 77 Precinct

To:        Chief of Patrol

Subject:   SHOTS FIRED BY OFF DUTY SEAGATE POLICE SERGEANT WHO WAS THE SUBJECT OF
           MENACING BY MACHINE GUN, NO INJURIES, CONFINES OF 77 PRECINCT


    1.     * At approximately 2130 hours, Saturday November 23, 1991 in front of 1400
Bergen Street, John Frederick, M/B 35 of 1400 Bergen St. fired one shot from a 9 mm
Glock at an unidentified male black who had menaced him with a machine gun.  No injuries
were incurred.  Details are as follows:

    2.     At approximately 2135 hours this date PO Thomas Barbagallo shield #24644
tax #888104 and PO Michael Lucy shield #10110 tax #897903 assigned as operator and
recorder respectively of 77 Precinct sector "F" were flagged down by John Frederick
in front of 1400 Bergen St.  Mr. Frederick identified himself as an off duty Seagate
Police department Sergeant.  Sgt. Frederick stated to the officers that he was leaving
his apartment building when he observed a male black 18-20 years old just to the left
of the doorway, in possession of a silver colored machine gun.  Sgt. Frederick produced
his shield, drew his 9 mm Glock, and identified himself as a police officer.  He in-
structed the male to drop the weapon.  The youth instead of dropping the weapon jumped
over a small fence next the the apartment building.  The youth accidentally dropped the
weapon when he jumped over the fence and Sgt. Frederick ordered him not to move.  The
youth picked up the weapon and pointed it at the sergeant.  Sergeant Frederick then fired
one round at the youth.  The youth was apparently not hit by the shot, fled on foot
south bound on Albany Ave.  The officers requested the undersigned to respond to the
scene along with emergency service.  Upon arrival on the scene the undersigned directed
transmittal of a description of the perpertrator by communications.  The undersigned
directed emergency service to respond and supervised a search of the area for evidence
and personal or property damage.  The search concluded with negative results.

    3.     Sgt. Frederick, as a Seagate officer, has Police Officer status within the
confines of Seagate.  However, outside Seagate he has peace officer status.  He is
required to have a gun permit.  He produced pistol license #C358633 (carry) issued
1/1/91, which expires 3/10/93.  He is licensed to carry both a .38 caliber colt revolver
serial #608470 and a 9 mm semi automatic Glock serial #SX971US.  Sgt. Frederick's Glock
was inspected by Det Laporta shield #3551 of Emergency Service "Boy 8" and was found to
contain one (1) live 9 mm round in the chamber and fifteen (15) live 9 mm rounds in the
clip.  Sgt. Frederick was neatly dressed alert and lucid during the interview with the
undersigned.  He showed no sign of being impaired or intoxicated.

    4.     Sgt. Fredericks weapon and gun license to be vouchered by HPD.

    5.     Upon conclusion of investigation the undersigned finds the shooting justified.

53

ge 2 of 2

6.    TPL 61 #18277 77 Precinct prepared

7.    This case is to be investigated by the HPD Detective Squad

8.    The following were present:

Lt. Nizza                77 Pct Patrol Supervisor
Det Laporte              Emergency Service Boy 8
PO Yurkie                Emergency Service Boy 8
Det Howell               77 PDU

9.    The following were notified:

Captain Snyder           PBBN Duty Captain
Sgt. Piore               HPD PSA 2
Sgt. Barbaro             HPD PSA 2
PO Buck                  PBBN Log #2056
PAA Wright               Operations
Captain Seijo            Seagate PD

10.    Submitted for your information.

For

Sgt J Nizza
Thomas J. Nizza
Lieutenant

Distribution

Chief of Patrol          (2)
C.O. PBBN                (1)
C.O. 14th Div            (1)
C.O. 77 Pct              (1)
X.O. 88 Pct              (1)
C.O. 77 PDU              (1)
C.O. License Div         (1)
C.O. Seagate PD          (1)
File                     (1)

54



# THE SEA GATE N.Y. HARBOR
# POLICE DEPARTMENT

3700 SURF AVE., SEA GATE, BROOKLYN, N.Y. 11224
POLICE 449-4400. 449-4700

*Captain*
*Peter Seijo*

May 31, 1992

## PRESENTED TO SERGEANT JOHN FREDERICK

This letter is awarded in recognition of the excellence
demonstrated by you in the performance of your duties.
For taking that extra step and showing your dedication
to the department, you are hereby awarded Sergeant of
the Month for the month of May 1992.

**Dennis De Santi**
**Police Commissioner**

Peter Seijo
Captain Commanding Officer



SS

001110



# SEA GATE NEW YORK
# POLICE DEPARTMENT

3700 SURF AVENUE, SEA GATE, NEW YORK 11224
POLICE (718) 449-4400 • (718) 449-4475

EXCELLENT POLICE DUTY

AWARDED TO

SERGEANT JOHN FREDERICK # 514

Awarded for an intelligent act materially contributing to a valuable accomplishment, resulting in the recovery of a stolen firearm.

On Wednesday August 31, 1994 at approximatly 0530 hours, Sergeant John Frederick responded to the front of 3924 Neptune Ave. Brooklyn, New York, on a call for assistance from Police Officer Paul Martino, with regard to a "Man With Gun" investigation. Police Officer Genoroso Spagnuola also responded to assist. During the ensuing investigation Sergeant Frederick observed, and recovered, a .38 Cal. Colt Revolver on the sidewalk. The firearm was later discovered to have been stolen. In a subsequent search of the suspects, by P.O. Martino and P.O. Spagnuola, P.O. Martino found a quantity of marijuana on the person of Salik Davis and placed him under arrest.

Sergeant John Frederick demonstrated professionalism and intelligence in an act contributing to a valuable accomplishment.

Therefor as Commanding Officer of the Sea Gate Police Department I hereby acknowledge this act with the EXCELLENT POLICE DUTY AWARD to Sergeant John Frederick, Shield # 514.

SEPTEMBER 7, 1994

Kasper Price, Commissioner

Armand S. Romano, Lieutenant
Commanding Officer

56

001103

DISTRICT ATTORNEY OF KINGS COUNTY
MUNICIPAL BUILDING
BROOKLYN, N.Y. 11201
(718) 802-2000

**CHARLES J. HYNES**
DISTRICT ATTORNEY

February 9, 1995

Sgt. Frederick,

I want to thank you for your help in testifying in the murder trial of Guy Fluerant, Ind.#9126/93 last week. Your testimony as well as your humanitarian actions on the night of July 23, 1993 are much appreciated by me and my office. Please find enclosed the original incident report which you graciously allowed me to retain possession of during the course of the trial. The defendant was convicted this morning of Murder in the Second degree, Criminal Possession of a Weapon in the Second degree and Reckless Endangerment in the First degree. He is scheduled to be sentenced on March 7, 1995 before the Honorable Joann Ferdinand, Part 4, Supreme Court of the State of New York, 360 Adams Street.

Again, thank you for your help.

Sincerely,

Jeffery J. Mueller
Assistant district Attorney

57



# S A GATE NEW YORK
# POLICE DEPARTMENT
### 3700 SURF AVENUE, SEA GATE, NEW YORK 11224
### POLICE (718) 449-4400 • (718) 449-4475

## COMMENDATION
## AWARDED TO
## SERGEANT JOHN FREDERICK # 514

*Awarded for an act involving grave personal danger in the intelligent performance of duty, or a highly creditable unusual police accomplishment.*

*On October 31, 1994, at 2120 hours, P.O. Paul Martino, while on routine patrol was hailed by one Robbie Ortiz of 4017 Sea Gate Avenue Brooklyn, N.Y. who stated that he had just been robbed, at gunpoint, by three males, in front of 3915 Neptune Avenue Brooklyn, N.Y.. One of the perpatrators stated that if Ortiz moved he would shoot.*

*Police Officer Martino immediately began a canvass of the area, with the complainant, and requested assistance in the search . Sergeant John Frederick and Police Officer Francisco Colon responded to the area of search.*

*In the vicinity of Mermaid Avenue & West 36th Street, P.O. Martino observed three males fitting the given description and obtained a positive identification from the complainant. Upon the Officers approach the three men fled on foot. P.O. Martino , Sgt. Frederick and P.O. Colon initiated a foot pursuit ending in the apprehension of Jose Serrano, Gilberto Poggi and Felipe Munoz, all prior felony offenders. The three men were charged with Robbery 1st Degree, Robbery 2nd Degree and several other related charges.*

*As Commanding Officer of the Sea Gate Police Department, I hereby acknowledge this act with the award of COMMENDATION to Sergeant John Frederick, Shield # 514.*

*FEBRUARY 15, 1995*

**Kasper Price, Commissioner**          **Armand Romano, Commanding Officer**

*58*

001254

7-6-96

Dear Sarge,

What's up? Not much here. I know you are probably pissed off at me because of the holster. I don't blame you. But, believe me I am still trying to get it for you. Don't worry, if its the last thing I will do is get it for you.

I just wanted to let you know everything here is fine. I'm getting along, just fine. Every time I think about my police career, your name keeps coming up in my head, I don't think that anyone in Seagate realizes that, the job there is the "Real thing." The only thing thats not real is the money. You taught me so much in the short time I was there. All the officer saftey and legal shit you taught really paid off for me. I feel very comfortable with myself when I put on that uniform and work. Community Policing is what its all about! "Treat someone as you would want to be treated." You told me that and I will never forget it.

Well I will be home Aug 22, for Larry's wedding. I am bringing one of the guys I work with. I definiat have to introduce him to you.

In short, this letter was just to say thanks! Be safe. Stay out of the way of Alegoins bullets. I will talk to you soon. Tell everyone I said, "Hi."

Be Safe,

Frankie

59

# Coney Island HPOs Collar Pistol Packer

Hospital Police Officers joined with the gun-toting patient, in the event of trouble. HPO Regan watched the top's prisoner.

Frederick and Ernest Bronson were quite surprised shortly before 2 a.m. Feb. 14 when a visibly upset emergency room doctor at Coney Island Hospital sought them out.

"He was badly shaken when he came to us," Frederick recalled. And with good reason. The physician told the officers that the believed the patient he was treating had a head injury-in one of the ER cubicles was packing a gun and in possession of illicit drugs.

When they heard this, the uniformed HPOs Herbert Regan and Christopher Elliott, and a city police officer who was guarding a prisoner who was also in for treatment.

Frederick enlisted the city officer, who was armed, to assist them

having drugs, the man admitted he had some in his jacket.

Frederick and Bronson went to the cubicle where the doctor had been treating the gun wielder and, as they approached, he got up from bed with his coat on as if he was trying to leave.

"Bronson and I subdued him," Frederick said, "and when I asked him if he had a gun, he said yes. He couldn't move because we had him restrained."

When Frederick searched the man, he found a fully-loaded .25 caliber automatic in a holster. It had seven shots in the clip

Frederick said that when they restrained the man, there was a strong odor of marijuana surround-

ing him. When questioned about having drugs, the man admitted he had some in his jacket.

"When I took his coat, it was packed, lined with marijuana," Frederick said. "He had a bag of marijuana and 19 small packets."

They arrested the man for illegal possession of a weapon and the drugs. When they questioned him they learned he had only been released from police custody the previous morning, after being charged in an assault with a gun.

His freedom didn't last long. Frederick said. He got into an argument and somebody struck him in the head with a bottle, which sent him to Coney Island Hospital for treatment.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
- - - - - - - - - - - - - - - - - -
                                        Basis of venue:
JOHN FREDERICK,                         xPltff's residence
                                    x   **SUMMONS AND**
                                        **VERIFIED COMPLAINT**
        -against-         Plaintiff
SEA GATE ASSOCIATION,

                                        Pltff resides at
- - - - - - - - - - - - - - - - - ~~_____~~
                Defendant.              Brooklyn, NY 11213
- - - - - - - - - - - - - - - - - -x
        IND #: 23461/97 DATE OF FILING: 7/8/97
TO THE ABOVE NAMED DEFENDANTS:

        You are hereby summoned to answer the complaint
in this action and to serve a copy of your answer
or, if the complaint is not served with the summons,
to serve a notice of appearance, on the
plaintiffs'attorneys within twenty (20) days after
the service of this summons, exclusive of the day of
service (or within 30 days after the service is
complete if this summons is not personally served on
you within the State of New York); and, if you fail
to appear or answer, judgment will be taken against
you by default for the relief demanded herein.


                Yours, etc.

                DOUGLAS KAPLAN, ESQ.
                Attorney for Plaintiff(s)
                1746 N. Merrick Ave. - Suite 12
                Merrick, New York 11566
                516 868-8700

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
- - - - - - - - - - - - - - - - - - - x
JOHN FREDERICK

                              Plaintiff        VERIFIED COMPLAINT

          -against-

SEA GATE ASSOCIATION,

                    Defendant.
- - - - - - - - - - - - - - - - - - - x

Plaintiff JOHN FREDERICK complaining of the defendant by his attorney, DOUGLAS KAPLAN, respectfully shows this court and alleges upon information and belief the following:

1.   Plaintiff was at all times herein mentioned and still is a resident of the  State of New York, County of Kings.

2.   Defendant SEA GATE ASSOCIATION  (hereinafter "SGA") was at all times herein mentioned a corporation, duly organized and existing under and by virtue of the laws of this state.

3.   Defendant SGA was at all times herein mentioned an unincorporated association.

4.   That in or about July  of 1990, plaintiff FREDERICK began employment with defendant SGA, specifically as an officer of the Sea Gate Police Department, which employment has continued (with one interruption) and continues through the present date.

AS AND FOR A FIRST CAUSE OF ACTION ON BEHALF
OF PLAINTIFF JOHN FREDERICK

4.   That at various times from July 8 1994 up until the present,  plaintiff was made the subject of an ongoing campaign of racial harassment by agents, servants and employees of defendant   A, including but not but not limited to a certain Edward Alequin,  who was employed by SGA as a Police Officer up until and including part of 1996.

5.   That the management of defendant SGA   instigated,

exceptions set forth at CPLR 1602.

10. That apart from this action, there are at the present time no claims or complaints on plaintiff's behalf pending before any administrative agency; and thus there are no bars to the institution and maintenance of this action.

11. That due to defendant AHSA's violations of state law as aforedescribed, plaintiff has suffered injury and damage in the amount of TWO MILLION ($2,000,000.00) DOLLARS.

## AS AND FOR A SECOND CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF JOHN FREDERICK

12. Plaintiff repeats and realleges each and every allegation set forth at paragraphs "1" through "11" herein with the same force and effect as though more fully set forth at length herein.

13. That in September of 1996, plaintiff was terminated by defendant based solely on the complaint of a person who claimed that plaintiff had pushed him and been rude to him.

14. That such termination was effected without investigation of the underlying complaint, and without considering plaintiff's version of the events, which was markedly contrary to that of the person complaining.

15. That the grounds for termination were pretextual, and that plaintiff was in fact terminated because of his race, in violation of £296 of the New York State Executive Law.

16. That subsequently, and following arbitration, plaintiff was restored to his job.

17. That by reason of the foregoing termination, plaintiff was caused to miss approximately six months of work; was caused to undergo humiliation and anxiety about his career; and that as

a result of the foregoing plaintiff was caused to sustain damage in the amount of TWO MILLION ($2,000,000.00) DOLLARS.

WHEREFORE plaintiff respectfully prays for judgment in the amount of TWO MILLION ($2,000,000.00) DOLLARS compensatory damages on the first cause of action, and in the amount of TWO MILLION ($2,000,000.00) DOLLARS on the second cause of action, together with the costs and disbursements of this action, attorneys' fees, interest and such other relief as this court may deem appropriate.

Dated: Merrick, New York
       July 3, 1997

                    Yours, etc.

                    DOUGLAS KAPLAN, ESQ.
                    Attorney for Plaintiff(s)
                    124 N. Merrick Ave. - Suite 12
                    Merrick, New York 11566
                    516 868-8700

## AFFIRMATION OF SERVICE BY MAIL

DOUGLAS KAPLAN, an attorney duly admitted to practice in the courts of this state, affirms under the penalties of perjury as follows: I am not a party to this action, am over 18 years of age, and reside at Nassau County, New York.   On the          day of                    , 199, I served the within                                                              by depositing a true copy thereof enclosed in a postpaid wrapper in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York, addressed to each of the following persons at the last known address set forth after each name on the attached rider below:

Dated:  Merrick ,New York
        , 199

_____
DOUGLAS KAPLAN, ESQ.

## VERIFICATION

DOUGLAS KAPLAN, an attorney duly admitted to practice in the courts of this state, affirms under the penalties of perjury as follows: I am the attorney for the plaintiff in the within action; I have read the foregoing COMPLAINT and know the contents thereof; the same is true to my own knowledge, except as to the matters therein alleged to be on information and belief, and as to those matters I believe it to be true. The reason this verification is made by me and not by my clients is that they do not reside within the county where I maintain my office.   The grounds of my belief as to all matters not stated upon my own knowledge are as follows: review of file materials, medical records,discussions with client, investigation, and research.

Dated: Merrick , New York
       July 8 , 1997

_____
DOUGLAS KAPLAN, ESQ.



# SEA GATE NEW YORK
# POLICE DEPARTMENT
3700 Surf Ave.  Sea Gate, New York 11224
718-449-4400  Fax 718-449-8330

## NOTICE OF DISCHARGE

TO   :   Sgt. John Frederick

FROM:   Chief Louis Telano, C.O.

DATE :   October 20, 1998

Effective immediately you are discharged from employment with this department for failure to obtain a pistol permit.

All department property must be returned, including your Shield and ID Card which must be surrendered upon receipt of this notice.

Any back pay or unused personal, sick or vacation time will be accounted and disbursed by the Sea Gate Association.

By Order of the Police Committee

# UNEMPLOYMENT INSURANCE APPEAL BOARD
PO BOX 15126
ALBANY NY 12212-5126
(518) 402-0205

JOSEPH P. KEARNEY
EXECUTIVE DIRECTOR
ROBERT A. LORENZO
CHIEF ADMINISTRATIVE LAW JUDGE
ROBIN STROUP
PRINCIPAL ADMINISTRATIVE LAW JUDGE

RICHARD M. ROSENBAUM
CHAIRMAN
ARTHUR A. STRAUSS
LEWIS ZANKEL
JOHN J. CULLEN
FRANK N. GRASSO
MEMBERS

**IN THE MATTER OF:**



JOHN M FREDERICK

BROOKLYN NY 112

RAFF & BECKER, LLP
ATTN: ROBERT L. BECKER
59 JOHN STREET, 6TH FLOOR
NEW YORK, NY 10038

A.S.O. - Appeals Section
Department of Labor Office: 536

Mailed and Filed: APR 2 7 1999

Appeal Board No. 488489

SEA GATE ASSOCIATION
3700 SURF AVE
BROOKLYN NY 11224

TRIVELLA & FORTE
ATTN: DENISE A. FORTE
14 MADISON AVE STE 202
VALHALLA, NY 10595

A.L.J. Case No. 098-31804
S.S.A. No.



**PLEASE TAKE NOTICE** that the commissioner, or any other party affected by this decision who appeared before the Appeal Board, may appeal questions of law involved in such decision to the Appellate Division of the Supreme Court, Third Department, by written notice mailed to the Unemployment Insurance Appeal Board, PO Box 15126, Albany, New York 12212-5126 within **THIRTY DAYS** from the date this decision was mailed.

**POR FAVOR TOME NOTA** que el comisionado o cualquier otra parte afectada por esta decision que haya comparecido ante la Junta de Apelaciones puede apelar aspectos legales de dicha decision a Appellate Division of the Supreme Court, Third Department, enviando un aviso escrito a Unemployment Insurance Appeal Board, PO Box 15126, Albany, New York 12212-5126 dentro de los **TREINTA DIAS** a partir de la fecha en que esta decision fue enviada por correo.

## DECISION OF THE BOARD

PRESENT: Arthur A. Strauss, MEMBER

The local office issued the initial determination disqualifying the claimant from receiving benefits, effective October 20, 1998, on the basis that he lost employment through misconduct in connection with that employment. The claimant requested a hearing.

The Administrative Law Judge held a hearing at which testimony was taken. There were appearances by the claimant and on behalf of the employer. By decision filed January 7, 1999 (A.L.J. Case No. 098-31804), the Administrative Law Judge sustained the initial determination.

The claimant appealed the Judge's decision to the Appeal Board. The Board considered the arguments contained in the written statement submitted by the claimant.

The Board held a hearing at which all parties were accorded a full opportunity to be heard and at which testimony was taken. There were appearances on behalf of the claimant and the employer.

Based on the record and testimony in this case, the Board makes the following

FINDINGS OF FACT: The claimant worked as a sergeant for the Sea Gate Police Department during several periods, the final one being from April 1997 through October 19, 1998. His return to work in April 1997 was pursuant to an arbitrator's award following the claimant's prior discharge. The claimant filed a discrimination lawsuit against the employer in 1997. This lawsuit is still pending.

Appeal Board Case No. 488489          Page 2


According to the employer's official policy, employees could carry only weapons that were owned and licensed through the employer. However, the license for the claimant to carry one of the employer's weapons had lapsed during his prior break in service. While on duty during his final period of employment, when he was not assigned to office work, the claimant carried his personally owned handgun, for which he had a "full carry" permit. The employer advised the claimant in early July 1998 that, pursuant to its policy, he should not carry a private handgun while on duty. However, the claimant continued to carry the weapon exposed in his gun belt. On numerous occasions, including ten occasions between August 1, 1998, and October 19, 1998, the claimant recorded the fact that he was carrying the gun, and listed its serial number, in the employer's daily log book. After ignoring the claimant's violation of its policy for several months, the employer discharged him on October 19, 1998, on the ground that he was carrying an unauthorized firearm.

OPINION: The credible evidence establishes that the employer discharged the claimant on the basis that he was carrying an unauthorized firearm. However, the evidence further establishes that, in the months after he was told of the employer's policy against the carrying of privately owned firearms, the claimant carried his gun openly and frequently recorded his carrying it in the employer's daily log book. The employer was therefore on notice that the claimant was continuing to carry this weapon. By allowing the claimant to do so for several months, the employer condoned it. We therefore do not believe that the claimant's carrying of the gun was the basis for his discharge. We note that the claimant had an unrestricted permit to carry the gun, and that the employer does not suggest that he made any improper use of the gun during his employment. Under the circumstances, we conclude that the claimant was not discharged for misconduct.

DECISION: The decision of the Administrative Law Judge is reversed.


The initial determination, disqualifying the claimant from receiving benefits, effective October 20, 1998, on the basis that he lost employment through misconduct in connection with that employment, is overruled.

The claimant is allowed benefits with respect to the issues decided herein.

SN:DZ                                          Arthur A. Strauss, MEMBER



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x Index # 23462/97
JOHN FREDERICK,

                              Plaintiff,              AMENDED VERIFIED
        -against-                                     BILL OF PARTICULARS
                                                      AND UPDATED WITNESS LIST
THE SEA GATE ASSOCIATION,
                              Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

        Plaintiff by his attorney, DOUGLAS KAPLAN, as and for his amended verified Bill of

Particulars, specifies, upon information and belief, as follows:

        1c.. In addition to those acts previously specified, it will be claimed that  Jarkovsky and

Romano, between 1996 and 1998, on multiple occasions, also uttered and/or condoned racial

slurs concerning plaintiff, including referring to plaintiff as a "nigger", "lazy black man", stupid

nigger" and "lazy nigger".  Jarkovsky and Romano also said on several occasions, in sum or in

substance, "these fucking niggers, they never learn," and "all niggers are the same."  It is

contended that all of these actions and statements constituted, contributed to or otherwise

augmented a hostile work environment for the plaintiff.

        4a-c.  Plaintiff will additionally rely on those statements and acts specified at 1c, infra.

        4d.  In addition to those previously identified, John Audette, Paul Martino  and George

Sirota.

        6.  In addition to those acts and statements previously described, plaintiff will also rely on

those acts and statements described at 1c, infra.

        12.  Plaintiff will additionally contend that due to the capricious and improper termination of

him by defendant due to the Birnhack "incident", plaintiff was forced to reapply for a pistol

"carry" license as an initial rather than a renewal applicant, resulting in plaintiff's application being

treated differently than it had been during the years that plaintiff was continuously employed and renewed his license without incident.  On 9/29/98, the City of New York denied plaintiff a carry license, to which decision it adhered upon reconsideration.   Plaintiff has thus been deprived of his livelihood, with resultant projected lost earnings of at least $400,000.00.

In all other respects, plaintiff's original bills of particulars remain the same and continue in full force and effect.

## WITNESS LIST

In addition to witnesses previously identified by both sides, plaintiff may call at trial George Sirota, ▉▉▉▉▉▉ St., Bayonne NJ 07002; John Audette, ▉▉▉▉▉▉, Staten Island NY 10306; Carmine Bonura, ▉▉▉▉▉▉▉▉▉, Staten Island NY 10309, and Paul Martino, ▉▉▉▉▉▉▉▉▉ NY 11563.

Dated: Merrick, New York
October 26, 2000

Yours, etc.,

DOUGLAS KAPLAN, ESQ. (DK 2055)
Attorney for Plaintiff(s)
124 N. Merrick Ave.
Merrick, NY 11566
516   868-8700

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x   Index # 23462/97

JOHN FREDERICK,

Plaintiff,

-against-                                          AFFIDAVIT

THE SEA GATE ASSOCIATION,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

STATE OF NEW YORK)
                  ) SS.;
COUNTY OF KINGS  )

JOHN M. AUDETTE , being duly sworn, deposes and says:

I was employed by the Sea Gate Police Department from  1996  through late 1998 .

My rank was Police Officer.   I was a subordinate of John Frederick on the Sea Gate Police Department

and  knew him well.   Sergeant Frederick was a fair and competent  supervisor.  He conducted his tour

completely by the Sea Gate P.D. patrol guide  and extended no individual any  unwarranted privileges.

I know from personal experience that while I was  employed at the Sea Gate Police

Department, an unofficial policy was encouraged whereby preferential treatment was to be accorded to

certain  Sea Gate residents, generally those of the Jewish faith, or those who sat upon the Sea Gate

Association Board, all of whom were caucasian. .   This unofficial policy came from the civilian police

commissioner, (Kasper Price), a member of the Sea Gate Board of Directors elected to supervise the police

department.   Kasper Price owned a late-model black 4-door Cadillac which had a police siren and light

system installed and a Sea Gate Police Dept. restricted parking plate. Police Commissioner Kasper Price

delegated these commands to Lieutenant Armand Romano and Chief  Louis Telano.

Lieut. Romano  and Sgt. Jarkovsky  would criticize Frederick when he hadn't been doing anything

wrong.  (It should be noted that Jarkovsky was the executive officer and thus was technically Frederick's

supervisor.) On numerous occasions, I  heard  Romano and Jarkovsky criticizng Frederick  in my presence.

Romano and Jarkovsky were aware that I had a good working relationship with Frederick.  I believe,

although I cannot be certain, that they wished me to inform Frederick of the general thrust of their

discussions, so that Frederick would be intimidated.  On multiple occasions I heard Jarkovsky and Romano utter racial slurs concerning Frederick; generally, these would be volunteered by Jarkovsky, and Romano would then either chime in with his own racial comments about Frederick, or at least express his agreement with the gist of Jarkovsky's negative racial comments.   Such comments included repeated references to Frederick as a "nigger", or "lazy black man", as well as references to him as a "stupid nigger", "lazy nigger" and the like.   I did hear Jarkovsky say on several occasions , in discussing Frederick, in sum or in substance, "these fucking niggers, they never learn;" and "all niggers are the same."

When John was reinstated in April of 1997, Sgt. Jarkovsky , Lt. Romano and Commissioner Price made no secret of the fact that they were unhappy.   Jarkovsky referred to Frederick as an "ungratfeul nigger", and Romano indicated his agreement.   I was approached shortly before this time by Gary Spagnuolo, (the integrity control officer, similar to an "internal affairs" officer), who knew that I was on good terms with Frederick.  Spagnuolo told me to distance myself from Frederick because the powers that be were planning to "railroad" Frederick upon his return.


JOHN M. AUDETTE

Sworn to before me this

day of October, 2000.


NOTARY PUBLIC

```
 1    SUPREME COURT OF THE STATE OF NEW YORK                    1
      COUNTY OF KINGS : CIVIL TERM : PART JCP-1
 2    - - - - - - - - - - - - - - - - - - - - - - - - - - -X

 3    JOHN FREDERICK,

 4                      - against -        Plaintiff,
                                                         Index No.
 5    THE SEA GATE ASSOCIATION,                          23462/97

 6                                        Defendant.
 7    - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                          360 Adams Street
 8                                        Brooklyn, New York
                                          February 13, 2002
 9    B E F O R E :

10                     HONORABLE MICHAEL A. GARSON,
11                           Justice,

      A P P E A R A N C E S :
12
13                  DOUGLAS KAPLAN, ESQ.
                    124 North Merrick Avenue
14                  Merrick, New York  11566
                    Attorney for Plaintiff
15
                    MIRANDA & SOKOLOFF, LLP
16                  240 Mineola Boulevard
                    Mineola, N.Y.  11501
17                  Attorneys for Defendant
                    BY:  MICHAEL A. MIRANDA, ESQ.
18

19

20

21

22

23
                         ANN DUNAIF, CM, CSR,
24                       Official Court Reporter

25
```

1                      Proceedings                      2

2    J O H N      F R E D E R I C K, the Plaintiff in this action,

3    having been first duly sworn, was examined and

4    testified as follows:

5              THE CLERK:  Please state your name and

6    address for the record.

7              THE PLAINTIFF:   John Frederick, ▓▓▓▓▓▓▓▓

8    Street, Brooklyn, New York  11213.

9              MR. KAPLAN:  John, you understand that the

10   defendant See Gate Association has made you an

11   offer of $55,000.   Have we discussed that?

12             THE PLAINTIFF:  Yes.

13             MR. KAPLAN:  And given the stipulations that

14   we have also discussed, which we'll mention here,

15   is that offer acceptable to you?

16             THE PLAINTIFF:  Yes, it is.

17             MR. KAPLAN:  You understand that out of that

18   sum would have to come my attorneys' fees and my

19   disbursements?

20             THE PLAINTIFF:  Yes.

21             MR. KAPLAN:  You understand also that

22   pursuant to discussions had with the judge we

23   have entered into certain stipulations which will

24   accompany this.

25             I believe we are stipulating, correct me if

Case 1:13-cv-00897-EK-ST    Document 1    Filed 02/18/13    Page 130 of 180 PageID #: 130



```
                              Proceedings                      3

1

2      I'm wrong, that Sea Gate Association will not

3    disclose any of the details under which you and

4    See Gate parted company; that they will simply

5    give dates of employment and say you no longer

6    work for them

7         MR. MIRANDA:  Upon being asked by any

8    current or prospective employers.

9         MR. KAPLAN:  Is that acceptable to you,

10   John?

11         THE PLAINTIFF:  Acceptable.

12         MR. KAPLAN:  You also understand based on

13   what I told you yesterday that See Gate is not

14   going to withhold any money from this settlement

15   as sometimes employers do in employment related

16   cases; that they are going to make a straight

17   payment and that any tax consequences will be

18   your own.  And we'll hold them harmless against

19   any liens imposed by any taxing authority.

20         THE PLAINTIFF:  Yes.

21         MR. MIRANDA:  Including any disputes raised

22   by the IRS or State taxing authority.

23         MR. KAPLAN:  Subject to that is everything

24   acceptable to you, John?

25         THE PLAINTIFF:  Yes.  The other stipulation
```

Proceedings                                      4

1
2     that was mentioned --
3          MR. MIRANDA:  Confidentiality.
4          MR. KAPLAN:  There's going to be no
5     confidentiality stipulation, as had been
6     discussed at a previous point.
7          Is anyone coercing you into taking this
8     settlement, and are you doing so of your own free
9     will?
10         THE PLAINTIFF:  Yes.
11
12         MR. KAPLAN:  Subject to that, it is hereby
13    stipulated by and between counsel for the parties
14    to this action that that action be discontinued
15    with prejudice subject to the tender of a release
16    and a stipulation of discontinuance, pursuant to
17    which we'll hold harmless the defendants, as
18    said, against any and all liens, and defendant
19    agrees to make payment in accordance with 5003-A.
20         MR. MIRANDA:  Not in accordance with 5003-A,
21    but we agree to make payment within a reasonable
22    time period.
23         I would also like to have a copy of this
24    transcript as well as a written agreement that
25    embodies what was said here prior to making
      payment.

Proceedings                                                5

2    MR. KAPLAN;  That's fine.  Anything else?

3    MR. MIRANDA;  No.

4    MR. KAPLAN;  Have I covered all the bases?

5    THE PLAINTIFF;  Yes.

Certified to be a true and accurate record of the
proceedings herein.

ANN DUNAIF, CM, CSR
Official Court Reporter

County of Kings                                    Case No. 29-CA-22576

State of New York

## AFFIDAVIT

I John Frederick, being first duly sworn upon my oath, hereby state as follows:

I have been given assurances by an agent of the National Labor Relations Board that this affidavit will be considered confidential by the United States Government and will not be disclosed unless it becomes necessary for the government to produce the affidavit in connection with a formal proceeding.

I reside ██████████████████ Brooklyn, New York 112██ My telephone number is 718-773-1906. I was employed by The Sea Gate Association, herein called the Employer, located at 3700 Surf Avenue, Brooklyn, New York 11224.

1.      This is a supplemental affidavit to the March 4, 1999, affidavit I provided to this office.

2.      With respect to paragraph five of my prior affidavit stating that I was promoted to the position of Sergeant in or about the middle of 1992, I want to clarify the functions of that position. I did not have the authority to hire, fire, discipline, to grant promotions, layoff, rewards, time off, and reprimand employees. If I encountered problems with employees at work, I directly contacted my immediate Supervisor Armand Romano, and Romano handled the matter on his own. There is an assigned schedule for each post within the Employer's premises, and my job was to make sure each post was covered during my shift. I assigned meal periods to each of the men who were under my direction due to the staff shortage. At the time of my discharge the following police officers were under my direction: George Sirota, George Kises, Robert Hernandez, and John Surgue. I normally handled criminal and non-criminal complaints from the community residents. I checked the officer's reports on a daily basis and I went out on patrol to make sure everything was fine on each post assignments. I transferred patrol officers from one post to another so that each officer did not remain in the same post for 12 consecutive hours. I responded to domestic violence, alarms problems, robberies, traffic and parking violations, and the sanitation conditions within the Employer's premises. There were four to five Sergeants: Joseph Jarkovsky, Garry Spanguolo, Miguel Rosado, Howard Schwartz, and myself. There were about 22 patrol officers. There was only one Lieutenant, Armand Romano, who supervised the Sergeants.

3.      With respect to paragraph eight of my prior affidavit regarding the lawsuit I filed at the New York State Supreme Court against the Employer the following has transpired. In or about April 1998, an Employer deposition had been scheduled to take

*87*

place in that same month. In or about that same time in April 1998, my attorney, Douglas Kaplan, contacted me to advice me that the Employer's deposition was cancelled. I have had several conversations with Kaplan regarding my lawsuit, and I was advised by Kaplan that as soon as he is free from his trial commitments he will pursue my lawsuit in court. Kaplan has also advised me to wait until my unemployment benefits are granted before we continue to pursue the lawsuit. In or about the beginning of last week, exact date unknown, I spoke to Kaplan and he told me to wait for the disposition of this unfair labor practice charge to pursue the law suit.

4.    According to paragraph 10 of my prior affidavit regarding my restricted Employer gun license, this will clarify some issues. When I initially began to work for the Employer in or about September 1984, I was told that I had to apply for a restricted license in order to carry a firearm while on duty. I immediately applied for the restricted license and I was granted such license. Thereafter, every two years the license expired, and was renewed through a new application. However, at the time the Employer terminated my employment in or about September 1996, the renewal of my gun license was sent to the Employer, and as a result of my termination the Employer returned the license to the issuing office, the New York Police Department. Upon my return reinstatement ordered by the Arbitrator, I started working for the Employer in or about April 1997. In April 1997, exact date unknown, I returned to work for the Employer. I reported to the office, and I spoke to Romano as to my job assignment. After he assigned me to a work schedule, Romano told me that my Employer restricted pistol license had arrived at their premises, but since I was not working for the Employer my license was returned to the issuing office, last month, March 1997. At which time Romano told me to fill out another application form for the restricted pistol license to use while on duty. Romano also asked me if I still had my personal license to carry a gun. I replied, "Yes, I do." Romano replied, "Carry your personal weapon until you get the Seagate pistol license." I believe present in the office were police officers, but I do not specifically recall the names of the employees who were present, and heard my conversation with Romano. I do recall writing in the Supervisor's Command Logbook the serial numbers of each of the pistols the employees utilized during the shift including my personally owned weapon. I did this function every single day. However, the day I returned to work for the Employer in April 1998, I stated it was my first day back to work, and that Romano authorized me to carry my personal weapon while on duty, until I get the restricted Employer pistol license. In March 1998, I filled out the application form for the restricted pistol license for the Employer, when Romano gave me the application form. During my entire employment

for the Employer, I always wore my regular Employer Uniform, with the holster belt on top of my uniform displaying openly my personally owned licensed weapon. Everyone noticed and had full knowledge of my displayed weapon. The Chief of Police, Telano, works the same shift as I do, and two out of three days per week we see each other, and he has full view of my holster with my personally owned licensed weapon. On Thursday, April 22, 1999, during an unemployment hearing, Romano stated that he had given me verbal authorization to carry my personal weapon until I receive my restricted pistol license required by the Employer. The application form that I filed in March 1998 was denied on October 30, 1999. In the past when I applied for a renewal of my Employer pistol license, it took one week. I do not know, and I did not inquire as to why it took so long for a final approval or disapproval of this March 1998, application form. In or about December 1998, I received a suspension letter of my personal weapon. I called the New York Police Department Pistol License Section. I was told by Police officer, Syversen, at One Police Plaza the pistol license section telephone number 1212-374-5538, that either Telano or Romano called headquarters stating that I was fired for misconduct and for carrying an illegal weapon. Syversen told me that his immediate supervisor, Sergeant ---, whose name I do not recall received this telephone call.

5.    With respect to paragraph 11 of my prior affidavit regarding payment for the time spent performing union business, I recall several occasions when the previous shop steward, Joseph Jarkovsky, and myself went to the contract negotiating meetings. I saw Jarkovsky note on the overtime sheets that he had performed union work, and was paid accordingly. This occurred prior to the period I was voted in as the new shop steward in April 1998. I personally saw Jarkovsky put in the overtime sheet notations that he was performing union business work, and he was paid for such times per the collective-bargaining agreement Article Seven–Shop Steward–Section (b):

> "The Steward and /or the alternate shall be paid by the Employer at their regular (straight or overtime) rate for time spent in discussing grievances at the Employer's place of business and for the time spent at mediation and arbitrations on or away from the Employer's place of business."

6.    In or about April 1998, exact date unknown, I was present for the staff meeting Telano held. Most of all the employees were present about 20. Telano said that he was going to try and bring up moral, get grants to obtain better pay, and equipment.

Telano gave us his personal testimony during his tenure with the New York City Sheriff's Department.  However, Telano did not order or mentioned anything regarding our personal weapons.  He did not tell us not to continue carrying our personal weapons while on duty.

7.    On July 1, 1998, I reported to work as usual.  I found in my box a memo from Telano.  Copy of the memo has been attached to this report.  The memo tells me that as of July 5, 1998, I would assume command of Squad three.  This is a temporary change to facilitate the safety policy of maintaining armed personnel on the late night tours, which normally experience higher activity and present a higher threat level to both Police officers as well as the public.  This order will be rescinded after proper notice of firearm eligibility is received from the NYPD Pistol Bureau.  I was never told not to carry my weapon while on duty.  I requested one month off in protest to the change of my squad to daytime work.  Upon my return to work on or about August 5, 1998, I reported to work at 6:00 a.m., to 6:00 p.m., until my discharge on October 19, 1998.

8.    In paragraph 15 of my prior affidavit I mentioned that I received a warning letter on September 14, 1998, for writing in the logbook "Outta here" instead of "End or Tour."  To the best of my recollection I must have written "Outta here" in or about the beginning of September 1998.

9.    In or about the first week of October 1998, exact date I do not recall.  Romano asked me for my old identification card, and handed me the new card that states in large letters "No Firearm."  I asked Romano what was this all about.  Romano said he did not now to go and ask the Chief.  However, I did not ask the Chief.  I never received any verbal or written notices instructing me not to carry my weapon while on duty.  Both Romano and Telano saw me carrying my weapon openly.  To the best of my knowledge the employees who owned their own personal licensed weapon carried both firearms the Employer's and their own while on duty.  Some of the employees place they're personally owned licensed weapons in the Employer's safe while on duty, to use the Employer's restricted pistols.  Sirota, and I were the only employees who did not have a restricted Employer pistol license.  Telano is a retired police officer who also carries his personal licensed weapon from Nassau County a 9MM.  Romano carries his own personal license weapon a 9MM.  I also carried a 9MM.  Sirota carries a 357 revolver.

10.    In my prior affidavit n paragraph 16 it states that a grievance meeting was held on Monday, October 20, 1998, this date was actually Tuesday, October 20, 1998.



This grievance hearing was held in my presence after there was a brief discussion of my termination.

11.     On the October 15, 1998, I reported to work as usual and there were no incidents with management. With respect to the 72-hour notice of disciplinary complaint, and the disciplinary complaint dated October 15, 1998, I received on October 20, 1998, during the meeting with the Union and the management. Prior to that date, I was unaware of these complaint against me, until the day we had a meeting with management and the Union, on Tuesday, October 20, 1998. With respect to the first charge in the disciplinary complaint, I was never directed not to carry my personal weapon. At the time Telano terminated me for my personal firearm, this was the first time that I was told I could not carry my personal weapon. Prior to this day, my personal weapon was displayed publicly and no one told me that I could not carry such weapon. With respect to the second charge regarding George Sirota, I was aware of his personal weapon, and to the best of my understanding Romano had authorized him to carry his weapon while on duty. Also, Sirota's personal weapon serial number was entered in the Command Logbook every day he worked in my squad. This charge is not true, since neither Telano or Romano ever told me that the employees or myself were not supposed to carry our personal licensed weapons while on duty. With respect to the third charge, this occurred on October 15, 1998, that day we were short staffed, I had made an arrest, and the administrative work had to be prepared. Sirota was on post, and after his shift ended, he had to prepare a report regarding an incident that occurred. However, the person was a Russian speaking person, and it took Sirota longer than usual due to the language difficulties. In addition to three other reports he had to file. This incident dealt with domestic violence report, the Employer's incident report, and the NYC Police Department complaint report. I recall speaking to Romano that I was short staffed, and that the reports would have to be prepared after the shifts ended. Romano told me that he understood that it would be okay to prepare the reports after the shift end. Sirota was preparing the reports along with Officer Robert Hernandez. I approved overtime for both employees, after Romano gave me verbal authorization. I do not recall specifically how many hours each employee was approved for but it could have been anywhere from two to three hours per person. During October 16, 17, and 18, 1998, I was off. I returned to work on the 19 of October 1998. I worked the entire day of the 19th. At about 5:50 p.m., while I was in the office I signed out 6:00 p.m., because my relief person, Sergeant, Schwartz, had already reported to work. At about that same time 5:50 p.m., while I was in the office a call from a NYC Police officer came in as he requested assistance outside the Employer's premises. Present in the

office were Telano, Romano, Schwartz, Police Officer, Mussini, and myself. It is common practice since the inception of my employment for the Employer that whenever a NYC Police officer requested assistance, the Employer's employees aided the NYC Police officer. As a result of the NYC Police officer's request Telano and Romano left together in one car. Mussini and I left in another Employer vehicle to assist the Police officer. As described in my prior affidavit the order of events remains as described in that affidavit. At the time I returned to the Employer's premises, Mussini was with me, but he went about his work route, and I entered the office. It has been a normal every day practice to assist the NYC Police officer, and everyone who has a two way radio runs to assist the NYC Police officer when ever they request assistance. However, I do not recall when was the last time I assisted a NYC Police officer prior to my discharge. Also, on those occasions the Employer's employees assisted NYC Police officer, we were never giving any directive not to respond those requests since Telano and Romano also responded to the NYC Police Officer's calls requesting assistance. The only instructions we had was to make notations in the dispatcher's log book the special assignments given directly to us, not relating to our regular every day job assignment. I was never given any directive or memos that I was supposed to make entries on the Command Logbook or the dispatcher's logbook the times I assisted the NYC Police officers.

12.     I have requested and received a copy of this affidavit.

I have read this statement consisting of 7 pages, including this page, I fully understand its contents, and I certify that it is true and correct to the best of my knowledge and belief.

/s/ John Frederick

Subscribed and sworn to before me at
Brooklyn New York.
This 23rd day April of 1999.

Lilliam Perez, Board Agent
National Labor Relations Board

6





John M. Audette
_____ Avenue
Staten Island, New York 10306

Lillian Perez Investigator
National Labor Relation Board (Region 29)
One Metrotech Plaza North 10th Floor
Jay Street and Myrtle Avenue
Brooklyn, NY 12201


This letter in response to your office request for information on events to which unfolded in my presence while employed at the Sea Gate Police Department (SGPD). My direct supervisor for most of my tenure was Detective Sergeant John M. Frederick. He was a man to wit I admired much. He is strong of character, courageous and wise. He taught me much in my journey to be a better uniformed police officer. I don't know if I _____ __ _____ _____ cross that he was forced

You must understand that Det. Sgt. Frederick is black; this fact has hampered his success and has been a source of contention by the supervisory officers at the Sea Gate Police Department. This was not the only reason that Det. Sgt. Frederick was singled out. He was constantly defending his lawful actions by people who were less than honorable. The SGPD is highly problem ridden. from unknowledgeable officers, from corrupt supervisors, to a political system racked with selective enforcement policies. Mr. Frederick stood for each and every citizen, irrespective of race, color or creed. He believed in the system to which he enforced, the constitution and the law. If any man attempts to besmirch his character let him not look on his words but in his actions and there you will find on the pages of countless reports a hero.

I want to express to you that the management, superior officers and even some officers not only did conspire to ruin his reputation. did so using there power they were given to help the community. I was present on many occasions throughout my employment when the Executive Officer (XO) Joseph Jarkarvsky referred to Mr. Frederick as the "house nigger". Often these statements were made in the presence of the Commanding Officer (CO) Armand Romano who would add to the conversation how. "fucked up John is" and how "he'll get his in the end". There were even occasions when each of them discussed his actions in an effort to see if he had made an error. These individuals would order Det. Sgt. Frederick to perform some task and later chastise his action as being unwarranted. Being on Squad 2. I was present for tour change and gained the trust and confidence of other supervisors as well. this allow me to be present when they spoke poorly both others irrespective of rank. Sgt. Spagnuolo the only other well-qualified superior officer often acknowledge how "John was being railroaded", though he could do nothing to stop the events to which unfolded. Sgt. Spagnuolo was the agency's Integrity Control Officer (ICO). Though he was a good supervisor. he was powerless to stop the CO and XO in their efforts to discredit Det. Sgt. Frederick. Sgt. Spagnuolo would often warn Mr. Frederick when they were hatching a plot or devising some scheme. Mr. Frederick is an excellent officer but sometimes a little hard to speak to with. It's been rumored that sometimes the gray matter inside his mind binds up and causes a brain malfunction. Sgt. Spagnuolo would tell Det. Sgt. Frederick to be careful or to lay low but sometimes Frederick would hear but not take the advice.

Sgt. Spagnuolo put it best when he coined the phrase that "these corrupt mother fuckers will someday railroad a good man out of here, for no reason what so ever." I concurred with all of these observations. He was similarly made even more of a target of management's dislike when he filed a lawsuit siting racial injustices against him by the SGPD. He was a union representative, the first in many years. he threatened to enforce the Collective Bargaining Agreement (CBA) and hold the SGPD accountable for all actions, which were capricious and arbitrary. He filed union grievances, addressed the payroll fraud, vacation misappropriations, theft of equipment, improper sale of police identification. All of which were crimes being perpetrated by the superior officers of the SGPD. By bringing these items to light Mr. Frederick became management favorite target.

As for the latest issue to which they have terminated Mr. Frederick. I as a former employee of the SGPD can attest that Mr. Frederick had only carried his personal firearm while on duty with the express verbal authorization of the CO Armand Romano of the SGPD. I was present when the CO spoke to Det. Sgt. Frederick when he asked did he still have his personal permit. When Mr. Frederick's answered in the affirmative he then asked, "What was the problem, Carry your weapon. This conversation was instigated by Mr. Frederick's constant request for his paperwork relating to his SGPD permit. The CO was the gun custodian and handled this paperwork. Including in this fact was that Mr. Romano himself carried his personally owned 9MM and often allowed other officers to carry there personally owned firearms. Any other information is noting more than a façade to hide their hidden truths. This ongoing continuous debate between both Sea Gate Police Department and Mr. Frederick is fueled by the fact that the legal process has on Mr. Frederick behalf overturned each occasion of reprimand undertaken by the department.

The truth is that any individual who had an existing personal pistol permit, no matter what class, was authorized by the CO to carry such firearms on duty. The serial numbers of these personnel weapons were recorded in the SGPD Command Log in the event these individuals were called to use deadly physical force. Most all employees carry a firearm at all times utilizing their "police" status; thus contradicting their actual permit class.

I hope this clears any misconceptions for the record. I have written this with the sincere hope that all information remains *confidential* in nature by your department. The Sea Gate Police Department is vengeful in nature and if they learn of this acknowledgement on my behalf they would use their authority in an attempt to besmirch my unblemished record. Nevertheless what I have written is still the truth.

Respectfully,

John M. Audette

County of Kings

State of New York

Case No. 29-CA-22576

## AFFIDAVIT

I, George Sirota, being first duly sworn upon my oath, hereby state as follows:

I have been given assurances by an agent of the National Labor Relations Board that this affidavit will be considered confidential by the United States Government and will not be disclosed unless it becomes necessary for the government to produce the affidavit in connection with a formal proceeding.

I reside ████████████████████████, New Jersey 07002. My telephone number is ████████████. The Sea Gate Association, herein called the Employer, located at 3700 Surf Avenue, Brooklyn, New York 11224 employed me.

1.      I began to work for the Employer in or about December 1996, until October 1998. I was employed as patrolman. At which time Armand Romano was the Commanding Officer in charge of the entire Employer operation. Romano interviewed me, and told me not to worry about not having a pistol permit. Romano also told me that I could use my personally owned Smith and Wesson 357 Magnum that also accommodated the 38-caliber ammunition standard for the Employer. Romano told me not to worry about filing an application form for a restricted license permit needed at the facility. The reason why he authorized me to carry the 357 Magnum while I was employed for the Employer was because at that time I was an Officer of the United States Department of Justice/INS. However, Romano did tell me that sometime in the future he would give me an application form to fill out for a restricted permit in order to carry a weapon at the Employer's facility. During my tenure for the Employer I was never issued an application form by the Employer for me to fill out for a restricted pistol license in order to work at their facility. I will mail to this office a copy of the collective bargaining between the Employer and Local 813, International Brotherhood of Teamsters, AFL-CIO, herein called the Union. I was never licensed to own a personal firearm. At that time no one had been designated as the Chief of Police for the Employer's facility.

2.      In or about the beginning of April 1998, I was voted in as the shop steward for the patrol officers.

3.      In or about April 1998, Luis Telano was brought back to the Employer's facility as the Chief of Police. In or about April 1998, exact date unknown, Chief, Telano, held a meeting with the entire staff. Present were about 20 employees including myself. During the meeting Chief, Telano, stated that he would bring positive changes in to the department. He stated he would solicit grants to facilitate for more equipment, overtime,



and other improvements. Telano said that he was the boss, and that he would run the department in the manner in which he perceived it should be ran. Telano stated he was not happy in the manner in which the patrol guide was put into effect, and that he would compare the Employer's patrol guide with others to see what he could implement new changes at the facility. Telano sated that he was going to improve the department issued weapons from 38 caliber to 9MM semi-automatics. I do not recall Telano stating that the employees who were not licensed with the restricted pistol license were allowed to continue using their personally owned weapons while on duty. I do not recall Telano stating that we were not authorized to carry our own weapons any longer. Telano never said anything about our personally owned weapons not being authorized by the department while we were on duty. The 357 Magnum I had was displayed in my holster openly during my employment for the Employer. During my employed for the Employer I was never told by Telano or Romano that my 357 Magnum was not an authorized weapon by the Employer while I was on duty. Both Telano and Romano saw my 357 Magnum on me while I was on duty. Neither Telano nor Romano ever told me that I could not keep my gun as it was displayed in my holster around my waist openly while I was on duty. In or about April 1997, I was no longer an officer for the United States Department of Justice/INS, and kept my 357 Magnum in the Employer's safe while I was not on duty. I do not know if my weapon was listed on the Employer's Command logbook. In or about 97 or 98, exact year I do not recall, Sergeant John Frederick, became my first line supervisor, and I believe he logged in the Command logbook the serial number of my 357 Magnum.

4.      To the best of my knowledge, Chief, Telano, has a personal license to carry a weapon, but not a restricted Employer pistol license. Chief, Telano, carries a 9MM semi-automatic. Romano also carried a personal license for a 9MM semi-automatic. Blanca Rivera, a patrolwoman, had a target practice permit, and she personally owned weapon while on duty for the Employer. Blanca Rivera also has a restricted pistol license for the Employer. Sergeant, Joseph Jarkovsky, has a restricted Employer pistol license, but he carries his personally owned weapon without any issued license permits. Sergeant, Richard Schwartz, recently obtained a restricted Employer pistol license. Sergeant, John Frederick, had his personally owned weapon, and not the restricted Employer pistol license. Patrol Officer, Edward Sipko, and Officer, Andy Wong, both owned semi-automatics, and the Employer's restricted pistol license. Wong had a target practice permit, and Sipko was licensed to carry his own personal weapon.



2

5.      In or about the end of September or beginning of October 1998, I recall receiving a call from a New York City Policeman requesting assistance outside the Employer premises. I went outside the Employer's premises and assisted the policeman. However, the policeman issued these people some summonses. When the Employer's employees report to work, we are hand two two-way radios one for the Employer, and the other two way radio is for communicating with the New York City Police Department. I want to note that this occurred routinely, and we assisted the NYC Police Department on an average of a five-day workweek at least three to five times per week.

6.      On October 15, 1998, I reported to work as usual. In or about the beginning of my work shift, a burglary occurred, and we were searching for the allegedly armed suspects inside and outside the Employer's premises. One suspect was apprehended by Sergeant, John Frederick, and at about 5:30 p.m. After I arrived at the Employer's facility, I had to speak to the 60th Precinct detectives. I had to show the detectives all the evidence collected at the scene of the crime; we discussed the manner in which the paperwork was to be written up. I had to make a few follow-up telephone calls to ascertain the identity of the apprehended suspect and get the identity of other suspect who got away. At that same time I was involved in another case involving a Russian Speaking resident regarding a domestic violence situation. I speak Russian I was assigned to handle the domestic violence case because they were Russian speaking residents. At about 8:00 p.m., I was still working on the paperwork along with officer Hernandez regarding the burglary. Photos, fingerprints, property, and paperwork was finished at about 9:00 p.m. At that time, I had to bring to the 60th Precinct the stolen property. I left the Employer's premises with Officer Hernandez to take the stolen property to the precinct. Frederick told Romano that it looked like we had to work overtime. Romano stated, "What ever." At which time Frederick told me let's go to the precinct since we had to finish the entire process. I believe I worked five overtime hours on that day. However, the Employer never paid me these five overtime hours. In or about March 1998, Robert Hernandez was terminated because his restricted Employer pistol license was not granted.

7.      In or about the last week of October 1998, exact date I do not recall, I was held in a booth for 11 hours without any breaks. Sergeant, Richard Schwartz, informed me that the Chief wanted to speak to me in the office. Present were Telano, Romano, and a Police Committee Chairperson, ----, whose name I do not recall, and myself. Telano asked me question about my attendance while I attended the New York Police Department Training. I replied it was great. Telano asked me who authorized me to take this course. I told him that Romano and Frederick were aware of it and that I took this training in my



own time. I asked Telano if the meeting was a formal meeting, and to identify the gentleman was sitting directly in back of me. Telano identified the person as the Board member saying; yes it was a formal meeting. I then immediately invoked my Weingarten rights, and requested a union representative to represent me. Telano and Romano found this request amusing as they started laughing saying it is funny that a union representative would request union representation. Telano said we are just asking you some questions. I said that the results of this meeting may lead to disciplinary action or that actions may be taken against me, so therefore, I have nothing to say until I have a union representative of my choice present, Pat Connell. Telano said "We are going to serve you with something today." Telano lifted some papers from his desk saying, "Here I have this for you, and you have to sign this." I said as far as I am concern you are conducting a formal meeting under the statute. I don't know what you are going to serve me with, and since I have no representation here and it does not look like you are going to extend that representation, if you have nothing further, I'm leaving. I began to get up, and both Telano and Romano said we want your badge, id, and equipment. You are suspended." Can I change first and give you your equipment. Telano said, "No, I want it right now." I gave them my batch, id, left to change into street clothing, and returned to their office to give them my uniform, belt, holster. I received a receipt.

8.    The following day, I contacted the Union, and I spoke to Pat Connell about my suspension. I filed a grievance. The Union filed for arbitration. Thereafter, the Arbitrator issued a consent award. I received backpay, and a letter of recommendation. The Union presently employs me as a Business Agent.

9.    I have requested and received a copy of this affidavit.

10.    I have read this statement consisting of 3 pages, including this page, I fully understand its contents, and I certify that it is true and correct to the best of my knowledge and belief.

/s/ George Sirota

Subscribed and sworn to before me at

Brooklyn New York.

This 26th day April of 1999.

Lilliam Perez, Board Agent National Labor Relations Board

4



# THE SEA GATE ASSOCIATION

3700 SURF AVE., BROOKLYN, NY 11224 ● OFFICE:(718) 449-4700 ● POLICE (718) 449-4400 ● FAX (718) 449-4713

**OFFICERS**

LUCILLE KATZ
PRESIDENT

BARBARA LEVINE
VICE PRESIDENT

DAVID CHECK
1ST VICE PRESIDENT

YVETTE SMORTO
SECRETARY

MICHAEL BRESLOF
TREASURER

**BOARD OF DIRECTORS**

ARTHUR BERGMAN
JEFFREY BERMAN
MICHAEL BRESLOF
DAVID CHECK
PHOEBE COHEN
BARBARA FOCCA
LUCILLE KATZ
BERNARD KAUFMAN
BARBARA LEVINE
ANTHONY PESCATORE
THOMAS PONTOLILLO
YVETTE SMORTO
PETROS SPANAKOS
DAVID STOECH
IRA ZORNBERG

## WAIVER AND RELEASE AGREEMENT

This Waiver and Release Agreement ("Agreement") is entered into this day of _30th March_, 1999 between _JOHN FREDERICK_ ("Releasor"); The Sea Gate Association and Local 1034 ("Union") concerning the grievance that was filed by the Union on behalf of the Releasor and his co-workers regarding an allegation of monies due for allegedly working overtime. (Union grievance filed on February 25, 1998, Grievance No. 4002)

This Agreement has been reached by mutual negotiation and is purely voluntary agreement between the Releasor; The Sea Gate Association and the Union and the Releasor's signature below indicates that he is entering into this Agreement freely, knowingly and voluntarily, with a full understanding of its terms and its binding legal effect.

In consideration for entering into this Agreement and in exchange for the promises, covenants and waivers set forth herein The Sea Gate Association agrees to pay Releasor _$15,000.00_ Dollars, which is in the nature of lost wages, vacation and sick time for any alleged overtime hours worked for the period covering the commencement of his employment up to and including March 31, 1999 and any other claims which may have been incorporated in the above referenced union grievance.

In exchange for The Sea Gate Association providing the Releasor with the above referenced money and other good and valuable consideration, Releasor, on his own behalf of his heirs, executors, administrators, successors and assigns, hereby releases, waives and forever discharges The Sea Gate Association and its predecessors, successors, assigns, representatives, officers, directors, agents and employees and each one of them and their heirs, executors, administrators, successors and assigns (hereinafter referred to collectively as "Releasees") from any and all actions, claims, complaints, causes of action, charges, suits, debts, sums of money, claims for attorneys' fees, interest, expenses and costs, contracts, covenants, damages, judgments, promises and demands of any nature whatsoever, whether known or unknown, which against the Releasees, the Releasor ever had, now has or may hereafter have had stemming from the above referenced grievance up to and including March 31, 1999 including but not limited to:

(a) any claims arising out of Releasor's employment relationship with respect to the payment of overtime, wages or benefits,

(b) any claims under any federal, state, local law, including but not limited to The Fair Labor Standards Act and The Department of Labor; regulation or executive order prohibiting discrimination of any kind, whether based on race, color, sex, age, religion, actual or perceived disability or handicap, national origin, citizenship, sexual orientation, martial status, or veteran status in relation to the above referenced grievance,

(c)   any claims under Title VII of the Civil Rights Act of 1964, as amended, the Civil rights Act of 1866, as amended, the Americans with Disabilities Act of 1990, as amended, the Family Medical Leave Act, the New York State Human Rights Law, the New York City Human Rights Law, the Employee Retirement Income Security Act of 1974, as amended, or any other statute, rule, executive order, law or ordinance in relation to the above referenced grievance,

(d)   any common law claims, including but not limited to claims alleging breach of express or implied contract and claims based on tort law in relation to the above referenced.

Releasor is not waiving any rights or claims that may arise after the date of execution of this Agreement or his right to enforce the terms of this Agreement.

Releasor represents, warrants and acknowledges that The Sea Gate Association does not owe him any wages, commissions, bonuses, sick pay, personal leave pay, vacation pay or any other compensation or payments or forms of remuneration of any kind or nature with respect to the above referenced grievance.

Releasor understands that the consideration provided for to him under the terms of this Agreement does not constitute an admission by The Sea Gate Association that it has violated any law or had any legal obligations to him.

By executing this Agreement, Releasor further agrees that he has not and will not institute, assist or otherwise participate willingly or voluntarily in any complaint, claim, charge, lawsuit, administrative agency proceeding, or action at law or occurrence with respect to any claims that may have been encompassed in the above referenced grievance.

Releasor agrees to keep this Agreement confidential and not to disclose it to any third party, except to his spouse, attorney and accountant, unless required to do so by a valid subpoena or court order.

This Agreement constitutes the entire Agreement between the Releasor and The Sea Gate Association, and supercedes and cancels all prior written and oral agreements, if any, between Releasor and The Sea Gate Association. This Agreement may not be changed or altered, except by a writing signed by Releasor and an authorized officer of The Sea Gate Association.

This Agreement is entered into in the State of New York and the laws of the State of New York will to any dispute concerning it. If any clause of this Agreement should ever be determined to be unenforceable, it is agreed that this will not effect the enforce-ability of any other clause or the remainder of this Agreement.

_____
Releasor

STATE OF _New York_ )
                                      ) ss.:
COUNTY OF _Kings_ )

On this 30th day of August, 1999, before me personally came to be known and known to me to be the individual described herein and who executed the foregoing WAIVER AND RELEASE AGREEMENT, and who duly acknowledged to me that he executed same.

STANLEY GROSS
Notary Public, State of New York
No. 2015821684
Qualified in Kings County
Commission Expires March 30, 1999

_____
Notary

98



Front    Wallet

Romano
Issued
1/97

POLICE DEPARTMENT
SEA GATE, NEW YORK
FREDERICK JOHN M
SERGEANT
514    100036
70"    200
SIGNATURE

POLICE DEPARTMENT
SEA GATE. NEW YORK

JOHN M. FREDERICK

SERGEANT

514        100036

Blk    Brn    70"    200

John M. Frederick

January 31, 1999

Back

This certifies that the individual whose name
and signature appears on the reverse side is
duly appointed police officer in the confines
of Sea Gate pursuant to Chapter 391 of the
Laws of 1940, as amended by the State of
New York. With N.Y. State Peace officer
status authorized by Sec. 2.10 Sub. 46 of the
Criminal Procedure Law.

Romano        4/97
Issued  I   Returned
went        to   Work

Retired
Stamped

2000

POLICE DEPARTMENT
SEA GATE, NEW YORK

RETIRED
SERGEANT

FREDERICK
JOHN M

TAX# SHIELD# DOB
100036   514

1st Officer

Sabatino  issued
2000  with

John M. Audette

Easton, PA 18045
December 27th, 2007

To whom this may concern:

I recently was contacted by Mr. John M Frederick with regard to a situation that had developed. As write this correspondence I hope to give you some information to which you didn't have or were unaware. As the designer of the last two forms of identification cards produced by the Sea Gate Police Department I am uniquely positioned to provide insight to there production and implementation.

I as my or may not have been aware I am also a former officer of the Sea Gate Police Department which is located at 3700 Surf Avenue, Brooklyn, NY. I am also a former employee of the City of New York where as a Special Investigator I was assigned to Department of Investigation. In the aftermath of September 11th I was recruited into the Department of Homeland Security where I currently serve as a Federal Air Marshal.

I was employed by Sea Gate from July 1996 to August 1998, where my principal duties were that of a uniformed officer. Additionally as with any small department in the United States I had other duties based upon my knowledge and background in computers. I was hired during the tenure of Lieutenant Armand Romano, Commanding Officer and after my initial training was assigned to work under the leadership of Detective Sergeant John Frederick.

What I know of Mr. Frederick is that he has a long and tenured history working in the law enforcement community which started in the early 1980's. He has worked for the TLC Commission and Amtrak Police in addition to Sea Gate.

But the issue at hand specifically relates to the issuance of identification cards over the course of his career at the Sea Gate. What I can relate to first hand is that in any small department policies and procedures change with each new administration. During my tenure I was asked by the Commanding Officer to purchase, create and implement a computer network for the department. This project was expanded to include the implementation of a newly designed complaint form, a tracking system for statistical purposes and the redesign of the identification card.

What has been included in this correspondence are the models of identification cards that I had worked. Mr. Frederick provided them for my review. On the attached sheet in the upper left corner is the original card I was asked to update. The one on the right was my original design that was implemented immediately while I need time to work the problems with my long term design implementation. That card is located in the bottom right. I left the department before it was fully implemented and left the project

without overcome a redundant bar coding problem. What I can tell from this example is they didn't either.

So it is without question or objection that I can attest that there was two categories that identification card were placed, current and retired. I personally issued cards in the temporary design to several retired / former members of Sea Gate Police. They were contacted by the CO or XO and a list was populated. They were given Sgt. Danzinger or my schedule so they could come in and receive a new identification card. Sgt. Paul Danzinger was trained and able to print the cards as well. I was unable to predict when I would find a solution to the bar code issue and when a permanent card would be eligible for use and implementation, my desire was to use the new cards as an access granting and tracking purposes for any secure area, holding cells, NYSPIN computers, access gates and all motor vehicles.

As for the policy on issuance, if the CO put you name on the list, you were eligible to and usually did receive an identification card. The retired version of the card was issued to any prior member of service the CO deemed appropriate, his discretion is this matter was absolute. So each administration set the tone of the policy. In fact I processed Det. Sgt Frederick's paperwork from the original design to the temporary design. I perforated the old card as per policy and returned it to him.

Mr. Frederick has always been issued retired identification cards in his previous separations from service from Sea Gate it would be highly unlikely and virtually improbably that an updated card was not issued. As evidence to this fact is his possession of a retired card in older format. Furthermore the administration at the time was the same administration which rehired him during his last separation from service.

Redundantly as evidence to his eligibility for the identification card is fact he is in possession of his old identification cards. How could he have been eligible for retired cards in the past but not a newly minted version? The only reason that could happen is the current administration desired to be uncooperative and use it as a wedge point in their never-ending battle in the court system. It is my understanding they are both under renewed litigation at this time.

So in conclusion, while you may be dismayed as to the policies and procedures that Sea Gate employs it is not the issue. When given the facts and an understanding of them it allows you to appreciate that the accusation made by the current administration that Mr. Frederick is not a retired member of service and is possession of an unauthorized identification card is baseless and subjective. If that were to be true I would call upon Sea Gate to release the lists of names of personnel, specifically past, some of whom had measure service in years not decades to step forth and relinquish there retired identification cards. Not to mention the parking plaque program, but that would take another letter or two to discuss that program.

Bases solely on the information provide it appears the current Sea Gate administration has made statements to you which are not based on fact and a long

standing appreciation for the totality of the situation by those who were present, developed and implemented the cards. Furthermore, Mr. Frederick is a valued member of the law enforcement and is a role model to those in his community.

In fact Sea Gate and their administration has often been the subject of many investigations, and has enjoyed a long standing credibility problem with many agencies in both the city and state. Over the years several of their Commanding Officers were indicted, subjects of criminal conspiracy probes and even a dishonored members of city service. How ever could anyone take anything told from Sea Gate at face value?

Should you need any further information do not hesitate to contact me in writing at the address listed above. In sincerely hope you take the time to evaluate Mr. Fredrick application fairly and without reservation, his is a good man and should not be discouraged exercising his constitutional freedoms.

Sincerely,

John M. Audette

SWORN AND SUBSCRIBED BEFORE ME THIS
_28th_ DAY OF _December 2007_

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
CAROLINE KNOWLES, NOTARY PUBLIC
BETHLEHEM TWP, NORTHAMPTON CO.
MY COMMISSION EXPIRES JULY 29, 2009

06-07-2000 07:00   FAX 7184495330                SEA GATE-POLICE                    ☐ 02



# SEA GATE NEW YORK POLICE DEPARTMENT

3700 Surf Ave. Sea Gate, New York 11224
718-449-4400  Fax 718-449-8330

Pistol Licence Bureau
New York City Police Department
One Police Plaza
New York, New York 10038

06/06/00

This letter is to inform your agency if Detective Sergeant John Fredericks pistol licence is reinstated, he will be reinstated to his employment.

A man of Sgt. Fredericks caliber comes along once every ten years. His integrity and dedication is sorly missed, we are looking forward for his return

Respectfully

Lt. Joseph Sabatino
Commanding Officer
Gun Custodian



# Local 813 and Local 1034
# Severance and Retirement Fund

52-35 Barnett Avenue, Long Island City, New York 11104 • (718) 396-2177 • Fax: (718) 396-1735



RECEIVED
MAY - 1 2001

April 27, 2001

### Benefit Certification by Actuary

The Trustees are pleased to inform you that your application for retirement benefits has been considered and you are entitled, under the provisions of the Pension Plan to receive:

| | |
|---|---|
| Name of Applicant: | John M. Frederick 11 |
| Address of Applicant: | ▓▓▓▓▓▓▓▓ Brooklyn, N.Y. 1▓▓▓▓ |
| Social Security | 117▓▓▓ |
| Date of Birth: | ▓▓▓▓▓▓ |
| Severance Date: | October 19, 1998 |
| Employer at Date of Termination: | Seagate Police |
| Credited Years of Service: | 9.2692 |
| Amount Payable: | $10,296.00 |
| Capital Gain Portion: | $0 |
| Ordinary Income Portion: | $10,296.00 |
| Distribution Code: | G |

**************************************************

Local 1034 Severance & Retirement Trust Fund - Committee

Union Trustee _____

Employer Trustee _____



# Local 813 and Local 1034
# Severance and Retirement Fund

52-35 Barnett Avenue, Long Island City, New York 11104 • (718) 396-2177 • Fax: (718) 396-1789

Date _4/3/01_

Dear _Mr. Frederick_ :

On behalf of the Trustees of the Local 813 & Local 1034 Severance Retirement Trust fund, we are enclosing the following:

1.  Form B- is a Severance benefit application.  It is the way you tell us the form in which you wish to have your benefit paid and other important data about you and your beneficiary.  The application must be completed in full, signed by you personally and by your spouse as well, if you are married, notarized, and RETURNED TO THIS OFFICE.

2.  Form C- is a letter addressed to the Social Security Administration (SSA).  This letter allows the Social Security Administration to release information about your employment to us.  This information would then be used to confirm any employmen date that is unclear in the plan records.  Please date and sign the letter and RETURN IT TO THIS OFFICE.  WE WILL THAN MAIL IT TO THE SSA on your behalf.

3.  Form D- allows you to make an election of withholding for a monthly annuity.  DO NOT RETURN THIS FORM IF YOU ELECT A LUMP SUM PAYMENT.

4.  Form E- if you elect to receive your payment in a single Lump Sum, minus 20% federal income tax withheld, or if you are planing to rollover into an IRA, complete and sign this form and RETURN TO THIS OFFICE.

5.  Form F- is an explanation of tax and other considerations applicable to Lump Sum distributions.  It is strictly for your information.  DO NOT RETURN THIS FORM.

In addition to the above material, please send us a copy of your Birth Certificate and, if you are married, a copy of your spouse's birth certificate and your marriage license.  If you are divorced, we need a copy of the full divorce decree.  Also copy of Quadro.



# RETIREE RECOGNITION

**Adelson, Glenn,** NYC Housing Silver/Gold #997, retired July 31, 2003 after 19 years 5 months of service.

**Alfaro, Axel O.,** (NYPD P.O.), Nassau County Lodge #69, retired August 25, 2003 after 20 years of service.

**Alesi, Donald V.,** (NYPD Narcotics Div. Bklyn So.) Memorial 100, retired July 31, 2003 after 20 years of service.

**Beckett, Michael L.,** (Nassau County Police Dept. D.A. Squad) Lodge #69, retired Dec. 18, 2003 after 21 years of service.

**Bertram, William J.,** (City of White Plains, NY, Lt.) Pelham NY Lodge #9, retired Dec. 30, 2003 after 35 years and 5 mos. of service.

**Bigger, Hugh F.,** (NYSP, Orange County Sheriff's Office.) Lodge #50, retired Jan. 1, 2003 after 46 years and 6 mos. of service.

**Blatch, Marie,** (NYC Dept. of Corrections) Lodge 100, retired Sept. 2, 2003 after 20 years of service.

**Bochinski, Martin,** (Buffalo NY PD) Buffalo Lodge #205, retired Mar. 14, 2003 after 35 years of service.

**Brewington, John B.,** (NYS-MTAPO) FOP Lodge #53, retired June 6, 2003 after 30 years of service.

**Butterfield, Robert J.,** (Amsterdam PD) Lodge #107, retired Nov. 8, 2003 after 28 years of service.

**Carberry, William,** (N.Y.P.D. Sgt.) NYC Housing Silver/Gold #997, retired July 31, 2003 after 22 years of service.

**Casella, Cathleen-Azzinari,** (NYPD, Sgt.) Lodge #38, retired April 30, 2002 after 20 years of service.

**Cava, Vincent,** (Officer Cross Bay Bridge) MTA Bridge & Tunnel Lodge #77, retired March 1, 2003 after 22 years of service.

**Chala, Michael P.,** (MTA Bridge & Tunnel) MTA Bridge & Tunnel Lodge #77, March 1, 2003, after 23 years of service.

**Congelosi, Steve,** (Chief, NYSPD) Lodge #13, retired Nov. 20, 2001 after 40 years of service.

**Coorazzini, Robert** (S.C.O.) Suffolk County Court Offiers #57, retired Sept. 30, 2002 after 30 years of service.

**Crerend, Wayne,** (NYS O.M.H. Police) Lodge #25, retired June 18, 1997 after 18 years of service.

**Davidowsky, John M.,** (Sgt., NYS Dept. of Corrections) Westchester-Putnam Lodge #54, retired Feb 21, 2002 after 25 years of service.

**Del Rosario, Deborah L.,** (Det., NYPD-D.A.'s Sqd,) Staten Island Lodge #120, retired July 26, 2003 after 20 years of service.

**DiPalma, Joseph,** (NYPD) Nassau County Lodge #25, retired April 30, 2001 after 20 years of service.

**Dorie, William,** (Old Westbury Police Dept.) Lodge #111, retired Oct. 2003 after 35 years of service.

**Faulkner, Thomas,** (NYPD) Lodge #17.

**Fiore, Anthony,** (Det., NCPD District Attorney Squad) Lodge #69, retired June 12, 2002 after 33 years and 8 months of service.

**Frangipani, Thomas,** (NYPD) Memorial Lodge #100, retired Aug. 8 2003 after 20 years and six months of service.

**Frederick, Christopher,** (Det., NYPD) Lodge #317, retired July 2002 after 20 years of service.

**Frederick, John,** (Sgt., SeaGate NYPD) Lodge #5 retired October 2000 after 20 years of service.

**Friedlander, Paul,** (Det., NYPD) Transit Police Memorial Lodge #317, retired Jan. 5, 2004 after 20 years of service.

**Gibney, Peter,** (NYPD) #100, retired January 4, 2004 after 20 years of service.

**Havey, Thomas,** (NYPD) Transit Memorial Lodge #317, retired Feb. 28, 2002 after 20 years of service.

**Hunter, Scott,** (NYPD) Staten Island Lodge #120, retired Feb. 2, 2004 after 20 years of service.

**Hyland, Harry,** (Sgt.,T.B.T.A.) Bridge & Tunnel Lodge #77, retired Dec. 1, 2002 after 25 years of service.

**Keeney, Brendan,** (Capt., NYPD) NYC Transit police Memorial Lodge #317, retired Nov. 11, 2003 after 20 years of service.

**Kennedy, George,** (NYC Corrections) Lodge #39 Law Enforcement, retired June 14, 2001 after 20 years of service.

**Klein, Glen,** (NYPD ESU) Memorial Lodge #100, retired Jan. 2, 2003 after 20 years of service.

**Kocur, William E.,** (Westchester County dept. of Corrections) Lodge #54, retired July 17, 2003 after 13 years of service.

**Kregler, William,** (NYC Fire Marshal, Fire dept.-NY) NYC Fire Marshals #17, will retire Feb. 29, 2004 after 23 years of service.

**Leicht, Jan P.** (Lt., NYPD) Nassau County Lodge #25, retired Aug. 31, 2002 after 34 years of service.

**Lopez, Derrick V.** (NYPD) (MTA Bridge & Tunnel) MTA Bridge & Tunnel Lodge #77, retired October 2002 after 23 years of service.

**Lortie, Roy C.** (Lt., Oswego County Sheriff) Oswego County Lodge #1, retired Jan. 31, 2003 after 29 years of service.

**Nowich, Leon A.** (NYPD Transit Police) FOP Lodge #317, retired Aug. 31, 1999 after 26 years of service.

**Pollman, Michael H.,** (Sgt., Onondaga County Sheriff's Police Division) John C. Dillon #315, retired Sept. 20, 2000 after 20 years of service.

**Pleasants, Kevin C.,** (C.O. Nassau County P.D. OEM) Lodge #69, retired July 10, 1997 after 29 years and 11 months of service.

**Regalbuto, Joseph,** (NYC transit police-D-02) FOP Lodge #317. retired Jan. 2004 after 20 years of service.

**Reiber,Jr., George R.,** (Sgt., Nassau County PD) Lodge #69, retired Jan. 14, 2004 after 42 years of service.

**Schiller, Robert,** (Det., Nassau County PD D.A. Sqd.) FOP, retired April 25, 2002 after 30 years and 4 mos. of service.

**Seidenstein, Bill,** (NYPD) Lodge #38, retired Nov. 30, 2003 after 37 years and 4 mos. of service.

**Shaw, John F.** (Sgt., D.C. Sheriff's Office) Westchester-Putnam Lodge #54, retired Dec. 31, 2003 after 35 years of service.

**Sleight,III, William J.,** (City of Poughkeepsie PD) Dutchess County Lodge #333, retired Sept. 27, 2003 after 20 years of service.

**Worthy, Patricia,** (NYCOC) NY Lodge #38, retired May 1, 2000 after 21 years and 6 mos. of service.

---

## ATTENTION RETIRED OFFICERS AND THOSE ABOUT TO RETIRE:

The NYS FOP will acknowledge and honor all NYS FOP members who are retired or are retiring from active law enforcement duty, by giving recognition in The Badge magazine.

If you are retiring soon, or have already retired, please let us know by completing the form and mailing it to the editor.

### FOR RETIREE RECOGNITION
Mail Your Completed Form To: Editor, Badge Magazine at NYS FOP Headquarters, 911 Police Plaza, Hicksville, NY 11801
### PLEASE PRINT CLEARLY

Name

Street

City          State   Zip

Lodge Name & No.

Retirement Date      Years of Service      Department



The individual whose name
signature appears on the re
side is a duly appointed

**POLICE OFFICER**

pursuant to Chapter 391 of the
Laws of 1940, as amended.

Sea Gate Police Departm:
3700 Surf Ave., Sea Gate
718-449-4400

---

**POLICE DEPARTMENT**
**SEA GATE, NEW YORK**

| ARMAND S. ROMANO | |
| --- | --- |
| LIEUTENANT | 100118 |
| 315 | |
| Gray   Brn   71"   220 | |
| RETIRED | |

---

John,

I could not find
a copy of this old
ID card.

This is the one that
replaced the old ones
that had the photo on
the left side.

If I remember correctly
the old cards were voided
but I cant remember when
Regards — Armand

PS: My best guess would be
about 1995 — when the
change was made.

DP-223A

CASE: 005699-04
SEQ: 052641222198
DATE: 09/21/05

CITY OF NEW YORK
DEPARTMENT OF CITYWIDE ADMINISTRATIVE SERVICES
INVESTIGATION DIVISION
1 CENTRE STREET, NEW YORK, NY 10007

JOSEPH DEMARCO, DEP. COMM. FOR CITYWIDE PERSONNEL SERVICES

REQUEST FOR EMPLOYMENT INFORMATION

SEA GATE POLICE
3601 SURF AVENUE
BROOKLYN
                              NY 11224 0000

ATTENTION: PERSONNEL
------------------------------------------------------------------
CANDIDATE: JOHN          M FREDERICK

SSN: 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
JOB TITLE: DETECTIVE SERGEANT
BADGE NO: 514
EMPLOYED FROM: 05/90 TO: 10/99

                    INVESTIGATOR: J BOUGHNER
                    TELEPHONE NO: (212)669-242
                    GROUP NO: US

GREETINGS:

     THE INDIVIDUAL NAMED ABOVE IS A CANDIDATE FOR THE POSITION OF
SPECIAL OFFICER
IN THE SERVICE OF THE CITY OF NEW YORK.

     PLEASE FURNISH US WITH THE INFORMATION REQUESTED ON THE
FOLLOWING PAGE.   YOUR COOPERATION AND PROMPT REPLY WILL ASSIST
THIS DEPARTMENT IN ITS EFFORTS TO SECURE COMPETENT EMPLOYEES OF
GOOD CHARACTER FOR THE CITY OF NEW YORK.

     FOR THE DEPUTY COMMISSIONER FOR CITYWIDE PERSONNEL SERVICES
                         LEROY JOHNSON
                         DIRECTOR
                         FOR INVESTIGATIONS

DP-223A
2    DEPARTMENT OF CITYWIDE ADMINISTRATIVE SERVICES
CITY OF NEW YORK
INVESTIGATIONS UNIT
1 CENTRE STREET, NEW YORK, NY 10007

CASE: 005699-04
SEQ: 052641222198
DATE: 09/21/05

REQUEST FOR EMPLOYMENT INFORMATION

CANDIDATE: JOHN                FREDERICK           AKA:
SSN: 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        EMPLOYER: SEA GATE POLICE

EMPLOYED FROM: **7-91** TO: **10/98 + 3/00 TO 4/2000**
POSITION HELD: **PEACE OFFICER - SERGEANT**

FULL TIME: **✓**  PART-TIME: _____  HOURS WORKED PER WEEK: **40**

DATE OF BIRTH: **3-10-56**

DUTIES PERFORMED: **LAW ENFORCEMENT**

WERE SERVICES SATISFACTORY?       YES **✓**    NO _____

IF NOT, PLEASE EXPLAIN: _____

WAS CANDIDATE ASKED TO RESIGN OR SUBJECT OF DISCIPLINARY ACTION?

                                    YES **✓**    NO _____

DO YOU WISH OUR REPRESENTATIVE TO CALL YOU IN REFERENCE TO THIS
CANDIDATE?

                                    YES _____    NO **✓**

WAS THERE FREQUENT LATENESS OR ABSENCE DUE TO ILLNESS OR OTHER
CAUSES?

                                    YES _____    NO **✓**

WAS THE CANDIDATE ON LEAVE AT ANY TIME?   YES **See ABOVE EMPLOYMENT**
IF YES, REASON AND DATES: _____ **DATES**

WHY DID THE CANDIDATE LEAVE YOUR EMPLOY? **TERMINATED**

ADDRESS(ES) WHILE IN YOUR EMPLOY: **NOT AVAILABLE**

NAMES AND ADDRESSES OF PREVIOUS EMPLOYERS: **NOT AVAILABLE**

**************************************************************
VERIFIED BY:

SIGNATURE            **10-26-05**          TITLE        TELEPHONE
                        DATE
PLEASE RETURN THIS FORM IN THE POSTAGE PAID ENVELOPE ENCLOSED

OFFICE OF THE

DISTRICT ATTORNEY
KINGS COUNTY, NEW YORK

# District Attorney

KINGS COUNTY

1985 JUN 17  PM 3 21

LAW ENFORCEMENT
INVESTIGATIONS UNIT

MUNICIPAL BUILDING • BROOKLYN, NEW YORK 11201     718- 802- 2000

**ELIZABETH HOLTZMAN**
*District Attorney*

M E M O R A N D U M

To:      All Assistant District Attorneys

From:    District Attorney Elizabeth Holtzman

Date:    June 13, 1985

Subject: Office guidelines for handling of cases involving
         certain arrests by off-duty police officers

Recent experience has suggested that off-duty
police officers may have abused their authority by arresting
or directing fellow officers to arrest individuals who have
not committed any unlawful act for the purpose of covering
up the officers' own misconduct in a personal dispute with
another individual or otherwise advancing some purely per-
sonal objective of the officer.  These guidelines are
intended to insure that persons subjected to such arrests
are released from custody as expeditiously as possible, that
any necessary medical treatment has properly been provided
for them, that unwarranted arrest charges against them are
dropped, and that the conduct of the officer is thoroughly
investigated.  In addition, every effort should be made to
minimize the time witnesses must spend at the scene, pre-
cinct or ECAB and to lessen any other possible inconvenience
to witnesses during the investigatory process.

    To accomplish these goals, effective immediately,
the following guidelines will be adhered to for all arrests
by off-duty police officers:

*E x*

All Assistant District Attorneys
June 13, 1985
Page Two

The Law Enforcement Investigations Unit (LEIU) will be immediately notified by the police department whenever an arrest by an off-duty police officer meets all of the following criteria:

    a)  The sole complainant is an off-duty police officer or his or her companion or associate in the incident leading to the arrest, and

    b)  The only crimes alleged are directed against that off-duty police officer or his or her companion or associate, such as resisting arrest, disorderly conduct, harassment, obstructing governmental administration, assault or other offenses characteristic of a personal dispute (as distinguished from burglary, robbery, rape, etc.), and

    c)  The person arrested by or at the direction of the off-duty police officer did not use a deadly weapon.

Upon receipt of such notification, the LEIU supervisor on call will dispatch a riding assistant to the precinct and, as necessary, report to the precinct personally. The LEIU supervisor shall determine whether the following additional factors are present:

    d)  The person arrested or any independent witness alleges abuse of authority, physical violence or other misconduct by the police officer, and

    e)  There is no independent credible evidence confirming the police officer's account of the incident, and

    f)  The police officer and/or associate have not been injured.

As soon as the LEIU supervisor has determined that all of the above criteria (paragraphs a through f) are met, and that, as a result, there is reason to believe that the arrest was unwarranted, he or she will advise NYPD that the person arrested should be released immediately and that ECAB will not process the arrest. The LEIU supervisor will immediately instruct ECAB that prosecution should be dropped or

All Assistant District Attorneys
June 13, 1985
Page Three

deferred pending further investigation and that the arrested
person should be released immediately. The LEIU supervisor
should make this processing decision as expeditiously as
possible. The supervisor and all assistants should make
special efforts to prevent witnesses from being incon-
venienced during the investigatory process. The LEIU
supervisor should confirm that any injured party has
received necessary medical treatment.

The LEIU supervisor shall take whatever steps are
necessary to collect and preserve evidence necessary to an
investigation of the conduct of the officer initiating the
arrest.

To implement these guidelines, the police depart-
ment has been informed of this office's policy and will
notify this office of any arrest by an off-duty police
officer in accordance with the aforementioned criteria.

ECAB supervisors should familiarize themselves with
these guidelines and be alert for the possible case where
routine notification to the riding desk does not occur and
the police officer attempts to process the arrest through
ECAB. LEIU should be notified immediately of these cases so
that the guidelines can be applied.


EH:ZWC:yf

CRIMINAL COURT OF THE CITY OF NEW YORK
PART APAR COUNTY OF KINGS

STATE OF NEW YORK
COUNTY OF KINGS

THE PEOPLE OF THE STATE OF NEW YORK

V

SSI

JOHN FREDERICK

POLICE OFFICER EDWIN D. SIMON SHIELD NO.26883, OF 077 COMMAND SAYS THAT ON OR
ABOUT (1) NOVEMBER 09, 2007 AT APPROXIMATELY 07:15 PM IN THE VICINITY OF PARK
PLACE AND TROY AVENUE, COUNTY OF KINGS, STATE OF NEW YORK,

THE DEFENDANT COMMITTED THE OFFENSE(S) OF:

PL 170.20              CRIMINAL POSSESSION OF A FORGED INSTRUMENT IN THE
                       THIRD DEGREE
PL 190.25(3)           CRIMINAL IMPERSONATION IN THE SECOND DEGREE

AND THAT, ON OR ABOUT (2) NOVEMBER 09,2007 AT APPROXIMATELY 08:00 PM AT 77
PRECINCT COUNTY OF KINGS, STATE OF NEW YORK,

THE DEFENDANT COMMITTED THE OFFENSE(S) OF:

AC 10-131(H)(1)        POSSESSION OF A LOADED RIFLE OR SHOTGUN

IN THAT THE DEFENDANT DID:

WITH KNOWLEDGE THAT IT WAS FORGED AND WITH INTENT TO DEFRAUD, DECEIVE OR INJURE
ANOTHER, UTTER OR POSSESS A FORGED INSTRUMENT; PRETEND TO BE A PUBLIC SERVANT,
OR WORE OR DISPLAYED WITHOUT AUTHORITY ANY UNIFORM, BADGE, INSIGNIA OR FACSIMILE
THEREOF BY WHICH SUCH PUBLIC SERVANT IS LAWFULLY DISTINGUISHED, OR FALSELY
EXPRESSED BY HIS WORDS OR ACTIONS THAT HE WAS A PUBLIC SERVANT OR WAS ACTING
WITH APPROVAL OR AUTHORITY OF A PUBLIC AGENCY OR DEPARTMENT, AND SO ACTED WITH
INTENT TO INDUCE ANOTHER TO SUBMIT TO SUCH PRETENDED OFFICIAL AUTHORITY, TO
SOLICIT FUNDS OR TO OTHERWISE CAUSE ANOTHER TO ACT IN RELIANCE UPON THAT
PRETENSE; CARRY OR POSSESS A LOADED RIFLE OR SHOTGUN IN PUBLIC WITHIN THE CITY
LIMITS.

THE SOURCE OF DEPONENT'S INFORMATION AND THE GROUNDS FOR DEPONENT'S BELIEF ARE
AS FOLLOWS:

THE DEPONENT STATES THAT, AT THE FIRST ABOVE TIME AND PLACE, THE DEPONENT
OBSERVED THE DEFENDANT DRIVING A 2005 CHRYSLER, NEW YORK STATE PLATE NO: JMFII.

THE DEPONENT FURTHER STATES THAT THE DEPONENT OBSERVED THAT THE LICENSE PLATE OF
SAID VEHICLE WAS COVERED WITH A PLASTIC COVER.

THE DEPONENT FURTHER STATES THAT AFTER THE DEPONENT PULLED OVER DEFENDANT'S
VEHICLE, THE DEPONENT APPROACHED DEFENDANT AND STATED HOW YOU DOING BOSS AND
THAT IN SUM AND SUBSTANCE DEFENDANT STATED HOW DOES THE DEPONENT KNOWS DEFENDANT
IS A BOSS AND THAT DOES THE DEPONENT GIVE CURTSEY TO MOS (MEMBER OF SERVICE - A
TERM COMMONLY USED FOR FELLOW ACTIVE DUTY POLICE OFFICERS).

THE DEPONENT FURTHER STATES THAT THE DEFENDANT PRODUCED A LAW ENFORCEMENT
IDENTIFICATION CARD, SPECIFICALLY, A NEW YORK SEAGATE POLICE IDENTIFICATION
CARD, WHEN REQUESTED TO PRODUCE DEFENDANT'S DRIVER LICENSE BY THE DEPONENT.

THE DEPONENT FURTHER STATES THAT THE DEPONENT EXAMINED THE IDENTIFICATION CARD
AND OBSERVED THAT THE WORD RETIRED WAS PASTED ON SAID IDENTIFICATION CARD.

THE DEPONENT IS FURTHER INFORMED BY CHIEF ROBERT ABRAHAM, OF NEW YORK SEAGATE
POLICE DEPARTMENT, THAT SEAGATE POLICE DEPARTMENT DID NOT ISSUE A RETIRED
IDENTIFICATION CARD TO DEFENDANT AND THAT DEFENDANT'S EMPLOYMENT WITH NEW YORK
SEAGATE POLICE DEPARTMENT WAS TERMINATED SEVERAL YEARS AGO.

THE DEPONENT FURTHER STATES THAT THE DEPONENT RECOVERED A SHIELD, WHICH SAID
"POLICE SERGEANT," FROM DEFENDANT'S PERSON.

THE DEPONENT FURTHER STATES THAT THE DEPONENT HAS HAD PROFESSIONAL TRAINING AS A
POLICE OFFICER IN THE IDENTIFICATION OF FORGED DOCUMENTS, HAS PREVIOUSLY MADE
ARRESTS FOR THE CRIMINAL POSSESSION OF FORGED DOCUMENTS, HAS PREVIOUSLY SEIZED

Sun 11-11-07 RDO —→
Mon 11-12-07 RDO —→
Tues 11-13-07 Tour 1730X0205
Assignment 77th Pct.
1730 Present for Duty @
77th Pct.
1800 Assigned R.u.P#1865
w/ Po Simon, fo Boyd —→
1813 10-34 @ St Lone Pl #1/Sl. Shush.
1855 90FF 78
2230 10-32 @ underhill / Bergen St
2300 93C 78 —→
9005 meal —→
0105 98 —→
0205 End of Tour —
Po Murphy, Tax# 935374
Wed 11-14-07 Tour 1730X0205
Assignment 77th Pct.
1730 Present fo Duty @ 77th Pct.
1830 Assigned Conds Info fo up
#1374 w/ Po Boyd. —→
2015 i/m/s c/o Nostrand Ave
+ Pacific St.
2021 one under
2055 I/S/A —→
0430 PFI Time —→
0 20. Fax time —→
0500 Ready Time —→
0505 End of Tour —→

Simon's
memo
Book

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF KINGS : Part _____

-------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK

v.

~~Shed~~ ERICK , JOHN ,

**Defendant**

-------------------------------------------------X

SUPPORTING DEPOSITION

DOCKET NO.:

2007KN05454 1

STATE OF NEW YORK        )
                         )SS.:
COUNTY OF KINGS          )

I, ROBERT ABRAHAM , have read the accusatory instrument filed in this action. The facts stated in that instrument to be on information furnished by me are true upon my personal knowledge.

FALSE STATEMENTS MADE IN THIS DOCUMENT ARE PUNISHABLE AS A CLASS A MISDEMEANOR PURSUANT TO SECTION 210.45 OF THE PENAL LAW.

Nov. 29, 2007        Robert Abraham
DATE                 SIGNATURE

# PROPERTY CLERK'S INVOICE

PD 521-141 (Rev. 501)-Pent

*Check only one of the below categories.*

**N910721**

☒ ARREST EVIDENCE  ☐ DECEDENT'S PROPERTY  ☐ FOUND PROPERTY

☐ INVESTIGATORY  ☐ PEDDLER PROPERTY  ☐ OTHER _____

DATE PREPARED: 11/09/2007

YR 2007  PCT. 077

| Arresting/Assigned Officer SIMON | | Rank PO | Shield No. 26883 | Tax Reg. No. | Command 077 |
|---|---|---|---|---|---|

| Prisoner's Last Name FREDERICK,JOHN | First | Age 51 | Address (Include City, State, Zip Code, Apt.) STREET OW BK NY | No. of Prisoners 01 | Acc./Aided # |
|---|---|---|---|---|---|

| Date of Arrest 11/09/2007 | Arrest No. K07701173M | Charge/Offense Under Investigation 190.26 | Fel. ☒ | Misd. ☐ | J.D. ☐ | Viol. ☐ | Complaint No. |
|---|---|---|---|---|---|---|---|

| Finder of Property PSNY | | Address (Include City, State, Zip Code, Apt.) | | Telephone No. |
|---|---|---|---|---|

| Owner's Name (See Instructions) SAA | | Address (Include City, State, Zip Code, Apt.) | | Telephone No. |
|---|---|---|---|---|

| Complainant's Name SAA | | Address (Include City, State, Zip Code, Apt.) | | Telephone No. |
|---|---|---|---|---|

| ITEM NO. | QUANTITY | ARTICLE | CASH VALUE U.S. Currency Only | DISPOSITION (For Property Clerk's Use Only) | AND DATE |
|---|---|---|---|---|---|
| 01 | 01 | FORGED SEAGATE PD I.D. | | | |
| 02 | 01 | FORGED SEAGATE PD PARKING PLAQUE | | | |
| 03 | 01 | SERGEANT SHIELD | | | |
| XXXXXXXXXXX | THE ABOVE ITEMS ARE THE TOTAL COMPUTE LIST OF ITEMS VOUCHERED. XXXXXXXXXXXXXXXXXXXXX | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | TOTAL | | |

Additional Invoice Nos. Related to This Case Including Motor Vehicles

Pink Receipt Copy of Voucher Issued ☐ Yes  ☐ Refused

| R.T.O. | Owner/Claimant's Signature | Date | Time | Property Clerk Storage Location |
|---|---|---|---|---|

REMARKS: *Briefly explain why the property was taken into custody (see instructions on BACK of BLUE COPY).*

AT TPO WHEN ABOVE DEFT WAS ASKED TO PRODUCED I.D ABOVE DEFT PRODUCED ABOVE ITEM NUMBER 1. UPON SILA ABOVE DEFT WAS IN POSSESSION OF ITEM 2 AND 3 VOUCHERED IN S.E E745958

| Rank and Signature of Desk Officer | Tax No. | Signature of Arresting/Assigned Officer | Boro Storage No. |
|---|---|---|---|

| PROPERTY ON THIS VOUCHER DELIVERED TO PROPERTY CLERK'S OFFICE BY: | Rank | Name | | Command |
|---|---|---|---|---|

Property Clerk's Signature

**N910721**

DISTRIBUTION: WHITE - Prop. Clk. File  SECOND WHITE - Inventory Unit Copy  YELLOW - Prop. Clk. Work Copy
BLUE - Police Officer's Copy  GREEN - Evidence Release/Investigation Copy  PINK - Prisoner/Finder Receipt Copy

# PROPERTY CLERK'S INVOICE

PD 521-141 (Rev. 6-01)-Pent

*Check only one of the below categories.*

**N910725**

☒ **ARREST EVIDENCE** ☐ **DECEDENT'S PROPERTY** ☐ **FOUND PROPERTY**

☐ **INVESTIGATORY** ☐ **PEDDLER PROPERTY** ☐ **OTHER** _____

DATE PREPARED: **11/09/2007**  YR **2007**  PCT. **077**

| Arresting/Assigned Officer **SIMON** | | Rank | Shield No. | | Command **077** |
|---|---|---|---|---|---|

| Prisoner's Last Name **FREDRICK, JOHN** | First | Age **51** | Address (Include City, State, Zip Code, Apt.) | No. of Prisoners **01** | Acc./Aided # |

| Date of Arrest **11/09/2007** | Arrest No. **K07701117341** | Charge/Offense Under Investigation **190.25** | Fel. ☒ | Misd. ☐ | J.D. ☐ | Viol. ☐ | Complaint No. |

| Finder of Property **PSNY** | Address (Include City, State, Zip Code, Apt.) | Telephone No. |
| Owner's Name (See instructions) **SAM** | Address (Include City, State, Zip Code, Apt.) | Telephone No. |
| Complainant's Name **PSNY** | Address (Include City, State, Zip Code, Apt.) | Telephone No. |

| ITEM NO. | QUANTITY | ARTICLE | CASH VALUE U.S. Currency Only | DISPOSITION (For Property Clerk's Use Only) AND DATE |
|---|---|---|---|---|
| 01 | 01 | BLK 12 GAUGE SHOT GUN SERIAL R673778 | | |
| 02 | 01 | GRN 12 GAUGE SHOTGUN SHELL MARKED ES1 | | |
| 03 | 03 | GRAY 12 GAUGE SHOTGUN SHELLS MARKED ES2,ES3,ES4 | | |
| 04 | 06 | 12 GAUGE SHOTGUN SHELLS IN PLASTIC BAG MARKED ITEM#4 | | |
| XXXXXXXXXXXX | | THE ABOVE IS THE TOTAL COMPUTE LIST OF ITEMS VOUCHERED.XXXXXXXXXXXXXXXXXXXXXXXXXXXX | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | TOTAL | |

Additional Invoice Nos. Related to This Case Including Motor Vehicles

Pink Receipt Copy of Voucher Issued ☐ Yes ☐ Refused

| R.T.O. | Owner/Claimant's Signature | Date | Time | Property Clerk Storage Location |

REMARKS: Briefly explain why the property was taken into custody (see instructions on BACK OF BLUE COPY)
I TPO ABOVE ITEMS ARE VOUCHERED AS ARREST EVIDENCE. ITEM1 FOUND IN TRUNK OF M.V. ITEM2 FOUND IN CHAMBER OF ITEM 1. ITEM 3 FOUND IN AMMO FEEDER OF ITEM 1.

| Rank and Signature of Desk Officer | Tax No. | Signature of Arresting/Assigned Officer | Boro Storage No. |

| PROPERTY C[ ] THIS VOUCHER DELIVERED TO PROPER[ ] CLERK'S OFFICE BY: | Rank | Name | Command |

Property Clerk's Signature

**N910725**

DISTRIBUTION: WHITE - Prop. Clk. File   SECOND WHITE - Inventory Unit Copy   YELLOW - Prop. Clk. Work Copy
BLUE - Police Officer's Copy   GREEN - Evidence Release/Investigation Copy   PINK - Prisoner/Finder Receipt Copy

COMPLETE WHENEVER
POSSESSION OF A
RIFLE OR SHOTGUN
IS TRANSFERRED BY
SALE OR OTHERWISE.

A579515

## DISPOSITION · REGISTRATION CERTIFICATE
PD 641-150 (10-83)

| SERIAL NO. | MAKE/MANUFACTURER | CAL./GAUGE | TYPE OF GUN | MODEL |
|---|---|---|---|---|
| R673778 | Mossberg | 12 | Shotgun | 500 |

| DEALER'S NAME | BUYER'S/DEALER'S LAST NAME | FIRST NAME |
|---|---|---|
| | Frederick | John M. |

| ADDRESS | NUMBER AND STREET | ADDRESS | (NUMBER AND STREET) |
|---|---|---|---|

| BOROUGH | POST OFFICE | ZIP CODE | CITY OR POST OFFICE | STATE | ZIP CODE |
|---|---|---|---|---|---|
| | New York | 11213 | Brooklyn | NY | 11213 |

| DEALER'S LIC. NO. | PERMIT NO./AUTHORIZATION NO. | SOCIAL SECURITY NO. | PERMIT NO./AUTHORIZATION NO. |
|---|---|---|---|
| | | | 0006169358 |

| DEALER'S SIGNATURE | DATE OF SALE | TIME OF SALE | BUYER'S/DEALER'S SIGNATURE |
|---|---|---|---|
| | 8/2/05 | 11:00 AM | John Frederick |

*INSTRUCTIONS:* Strike out all inappropriate captions. One copy of this form will be forwarded to the Firearms Control Section by the dealer and one copy will be given to the individual who buys, sells or transfers the Rifle or Shotgun. The third copy will be retained by the dealer.

If an individual is obtaining or buying a Rifle or Shotgun from a dealer, the copy of this form that the individual receives will serve as the Certificate of Registration for the gun.

*NOTE:* YOU MUST CARRY THIS CERTIFICATE OF REGISTRATION WHEN IN POSSESSION OF THE GUN DESCRIBED ABOVE.

---

BC# 04120                Exp 2/28/07

COMPLETE WHENEVER
POSSESSION OF A
RIFLE OR SHOTGUN
IS TRANSFERRED BY
SALE OR OTHERWISE.

A579510

## DISPOSITION · REGISTRATION CERTIFICATE
PD 641-150 (10-83)

| SERIAL NO. | MAKE/MANUFACTURER | GAUGE | TYPE OF GUN | MODEL |
|---|---|---|---|---|
| R615117 | Mossberg | 12 GA | Shotgun | 500 |

| DEALER'S NAME | BUYER'S/DEALER'S LAST NAME | FIRST NAME |
|---|---|---|
| BROS. SPORTS CENTER | Frederick | John M. |

| ADDRESS | NUMBER AND STREET | ADDRESS | NUMBER AND STREET |
|---|---|---|---|
| 7719-21 New Utrecht Avenue | | | |

| BOROUGH | POST OFFICE | ZIP CODE | CITY OR POST OFFICE | STATE | ZIP CODE |
|---|---|---|---|---|---|
| Brooklyn | New York | 11214 | Brooklyn | NY | 11213 |

| DEALER'S LIC. NO. | PERMIT NO./AUTHORIZATION NO. | SOCIAL SECURITY NO. | PERMIT NO./AUTHORIZATION NO. |
|---|---|---|---|
| 748 | 04-410-D-37078 | | 0006169358 |

| DEALER'S SIGNATURE | DATE OF SALE | TIME OF SALE | BUYER'S/DEALER'S SIGNATURE |
|---|---|---|---|
| | 7/8/10 | 14:30 PM | John M Frederick |

*INSTRUCTIONS:* Strike out inappropriate captions. One copy of this form will be forwarded to the Firearms Control Section by the dealer and one copy will be given to the individual who buys, sells or transfers the Rifle or Shotgun. The third copy will be retained by the dealer.

If an individual is obtaining or buying a Rifle or Shotgun from a dealer, the copy of this form that the individual receives will serve as the Certificate of Registration for the gun.

*NOTE:* YOU MUST CARRY THIS CERTIFICATE OF REGISTRATION WHEN IN POSSESSION OF THE GUN DESCRIBED ABOVE.

---



PERMIT

0006169358

02-28-2010         290919

FREDERICK JOHN M
BROOKLYN NY 11213

ONLY VALID IF SEALED BY FCS







**NEW YORK CITY**
**DEPARTMENT OF FINANCE**
RED LIGHT CAMERA MONITORING PROGRAM
POST OFFICE BOX 3674, CHURCH STREET STATION, NEW YORK, NEW YORK 10008-3674



# NOTICE OF LIABILITY

**THE CITY OF NEW YORK**

VS.

JOHN FREDERICK
PO BX 41774
BROOKLYN, NY 11247

Date of Notice                                    Jul. 28, 2008

AMOUNT DUE: $ 50.00          NOL #:5030279040

VIOLATION DATE/TIME:  07/10/2008 06:09 PM

LOCATION: NYC Brooklyn 4th Ave.(N/B)@18th St.-Kz-23



Please take notice as the Registrant of the vehicle described below which was operated in violation of section 1111 (d) of the Vehicle and Traffic Law at the place, date and time below: because **the driver did not stop for the red light** at the stop line, or before entering the crosswalk, **you are liable to pay a fine within 30 days of the date of this notice (NOL)** for the amount shown herein pursuant to section 1111-a of the VTL, section 19-210 of the NYC Administrative Code and the Rules of the NYC Department of Finance. One or more photographs evidencing the violation are shown. Please see the reverse for further instructions.







CRIMINAL COURT OF THE CITY OF NEW YORK
PART APAR COUNTY OF KINGS

THE PEOPLE OF THE STATE OF NEW YORK

STATE OF NEW YORK
COUNTY OF KINGS

V

SSI

JOHN FREDERICK

POLICE OFFICER ARNOLD MURPHY SHIELD NO.29794, OF 077 COMMAND SAYS THAT ON OR
ABOUT NOVEMBER 14, 2007 AT APPROXIMATELY 08:15 PM AT THE CORNER OF PACIFIC
STREET AND NOSTRAND AVENUE, COUNTY OF KINGS, STATE OF NEW YORK,

THE DEFENDANT COMMITTED THE OFFENSE(S) OF:

PL 170.20              CRIMINAL POSSESSION OF A FORGED INSTRUMENT IN THE
                       THIRD DEGREE
PL 190.25(3)           CRIMINAL IMPERSONATION IN THE SECOND DEGREE

IN THAT THE DEFENDANT DID:

WITH KNOWLEDGE THAT IT WAS FORGED AND WITH INTENT TO DEFRAUD, DECEIVE OR
INJURE ANOTHER, UTTER OR POSSESS A FORGED INSTRUMENT; PRETEND TO BE A PUBLIC
SERVANT, OR WORE OR DISPLAYED WITHOUT AUTHORITY ANY UNIFORM, BADGE, INSIGNIA
OR FACSIMILE THEREOF BY WHICH SUCH PUBLIC SERVANT IS LAWFULLY DISTINGUISHED,
OR FALSELY EXPRESSED BY HIS WORDS OR ACTIONS THAT HE WAS A PUBLIC SERVANT OR
WAS ACTING WITH APPROVAL OR AUTHORITY OF A PUBLIC AGENCY OR DEPARTMENT, AND
SO ACTED WITH INTENT TO INDUCE ANOTHER TO SUBMIT TO SUCH PRETENDED OFFICIAL
AUTHORITY, TO SOLICIT FUNDS OR TO OTHERWISE CAUSE ANOTHER TO ACT IN RELIANCE
UPON THAT PRETENSE.

THE SOURCE OF DEPONENT'S INFORMATION AND THE GROUNDS FOR DEPONENT'S BELIEF
ARE AS FOLLOWS:

THE DEPONENT STATES THAT, AT THE ABOVE TIME AND PLACE, DEFENDANT STATED IN
SUM AND SUBSTANCE THAT DEFENDANT IS A POLICE OFFICER AND THAT DEFENDANT
PRODUCED A LAW ENFORCEMENT IDENTIFICATION CARD, SPECIFICALLY, THE NEW YORK
SEAGATE POLICE DEPARTMENT IDENTIFICATION CARD.

THE DEPONENT FURTHER STATES THAT THE DEPONENT EXAMINED THE ABOVE-MENTIONED
CARD AND OBSERVED THAT SAID IDENTIFICATION CARD CONSISTED OF TWO BROKEN
PIECES HELD TOGETHER BY LAMINATION AND THAT A HOLE WAS PUNCHED THROUGH THE
WORD RETIRED ON SAID IDENTIFICATION.

THE DEPONENT IS INFORMED BY LIEUTENANT MOYSE OF THE NEW YORK SEAGATE POLICE
DEPARTMENT THAT SEAGATE POLICE DEPARTMENT DID NOT ISSUE A RETIRED
IDENTIFICATION CARD TO DEFENDANT AND THAT DEFENDANT'S EMPLOYMENT WITH NEW
YORK SEAGATE POLICE DEPARTMENT WAS TERMINATED SEVERAL YEARS AGO.

THE DEPONENT FURTHER STATES THAT THE DEPONENT HAS HAD PROFESSIONAL TRAINING
AS A POLICE OFFICER IN THE IDENTIFICATION OF FORGED DOCUMENTS, HAS PREVIOUSLY
MADE ARRESTS FOR THE CRIMINAL POSSESSION OF FORGED DOCUMENTS, HAS PREVIOUSLY
SEIZED FORGED DOCUMENTS, AND IN THE DEPONENT'S OPINION, THE IDENTIFICATION
CARD IN THIS CASE IS FORGED.

FALSE STATEMENTS MADE IN THIS DOCUMENT ARE PUNISHABLE
AS A CLASS A MISDEMEANOR PURSUANT TO SECTION 210.45 OF
THE PENAL LAW.

I FREDERICK, John, M
Allow CHRISTOPHER Frederick
to take my Property:

① OFORD 1993 White
       Plate ASV-4842, Crown
            un:        victoria
② Cell Phone Ericsson

③ (11)→ Keys

④ (1)→ Black Wallet w/credit
                       card
       + ID

⑤ (4)→ $100  US Currency

* Christopher Frederick
                    11/15/07 2:50 AM
* John Frederick 2:50 AM
  HAd $465 gave Christ A
            $100 usc.
     Frederick, John, M
  Kept $65  ③ $20. usc
           ① $5. usc

Sun ...
Mon ...
Tues 11-13-07  Tour  ...
Assignment with P.O.
1730 Present for Duty
712 Pct.
1800 Assigned Sector Pct 1815
w/P.O. Simon to ...

on 11/13/07
       17:30  x 0200
Assigned
with
P.O. Edwin
...

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF KINGS : Part _____

-------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK          SUPPORTING DEPOSITION

              v.          DOCKET NO.:

John Frederick          2007KN056948

           Defendant

-------------------------------------------------X

STATE OF NEW YORK  )
                )SS.:
COUNTY OF KINGS    )

I, _Lt. Moyse_____, have read the accusatory instrument filed in this action. The facts stated in that instrument to be on information furnished by me are true upon my personal knowledge.

FALSE STATEMENTS MADE IN THIS DOCUMENT ARE PUNISHABLE AS A CLASS A MISDEMEANOR PURSUANT TO SECTION 210.45 OF THE PENAL LAW.

1/10/2008   J. Moffr
DATE       SIGNATURE

**COMPLAINT/INFORMATION**

**432268918-8**

The People of The State of New York VS.

Susp/Rev Check ☐ Yes    No ☐
Motorist Exhibited License    ☐ Yes    No ☐

| Last Name | First Name | M.I. |
|---|---|---|
| Frederick | John | |

| Street Address | | Apt. No. |
|---|---|---|
| PO. Box 471774 | | |

| City | State | Zip Code |
|---|---|---|
| Brooklyn | NY | 11247 |

| ID Number | Date of Birth | Sex |
|---|---|---|
| 352 233 024 | MO ● DAY ● YR ● | M |

| Lic. State | Lic. Class or ID Type | Date Expires | Operator Owns Vehicle |
|---|---|---|---|
| NY | D | MO 3 DAY 10 YR 11 | X Yes    No ☐ |

**OPERATOR AND/OR OWNER OF VEHICLE BEARING LICENSE**

| Plate No. | REG | NY | CT | PA | NJ | Other | Reg. Expires |
|---|---|---|---|---|---|---|---|
| JMF4 | | X | | | | | MO 1 DAY 11 YR 11 |

| TYPE | PAS | OMT | COM | OML | Other | MAKE | CHEV | FORD | HONDA | DODG | OLDS | BUICK | TOYT | NISS | Other |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| X | X | | | | | | | | | X | | | | | |

| BODY | SEDAN | SUBN | VAN | TRUCK | MCY | Other | Veh. Yr. | Veh. Color | Alternate Plate | State |
|---|---|---|---|---|---|---|---|---|---|---|
| | X | | | | | | 06 | Blk | | |

VIN No.

**THE PERSON DESCRIBED ABOVE IS CHARGED AS FOLLOWS**

| AM ☐ Time PM X | Date of Offense | County | Precinct |
|---|---|---|---|
| 2020 | 5-6-10 | Kings | 77 |

Place of Occurrence
C/O NOSTRAND Ave & PACIFIC ST

IN VIOLATION OF

| | V.T.L. | Traff. Rules | Admin. Code | Penal Code | Other |
|---|---|---|---|---|---|
| Sec 140 20 Sub 5 | | | X | | |

Description of Violation, if Not Shown Below. (If returnable to Criminal Court, indicate Court Location and Date of Appearance below and COMPLETE, DATE, AND SIGN INFORMATION ON REVERSE SIDE.)

DISCON / OBSTRUCTING PED.

| SPEEDING | | DISOBEY TRAFF CONT DEV | Uninspec. Veh. | Unreg. Veh. | Unlic. Oper. |
|---|---|---|---|---|---|
| MPH | In MPH Zone | ☐ Sign | | | |
| | | ☐ Signal | Pave Marks | Uninsur. Veh. | Com. Veh. | Bus | Haz. Mat. |

The person described above is summoned to appear at CRIMINAL COURT

| | Summons Part | County |
|---|---|---|
| Located at 346 BROADWAY | 1 FL | NY |

Date of Appearance 9:30 a.m.    7th day of July year 10

I personally observed the commission of the offense charged above. False statements made herein are punishable as a Class A Misdemeanor pursuant to Section 210.45 of the Penal Law. Affirmed under penalty of perjury.

Rank/Full Signature of Complainant

| Complainant's Full Name (printed) | Command Code |
|---|---|
| | 77 |

| Agency/NCIC | Squad | Tax Registry No. |
|---|---|---|
| NYPD | ALC | 935102 |

I acknowledge receipt of this summons. I understand it is my responsibility to read and comply with the instructions on my copy, and that my signature below is not an admission of guilt.

Name_____ Date_____

AA-500 (1/06)

## CRIMINAL COURT INFORMATION (DESCRIBE OFFENSE)

AT TPO ABOVE DEFT WAS OBSERVED by A/O w/ vehicle Illegally PArked @ Above locAtion vehicle wAs OBSTrUCTING PEdESTrian CrossWAlk. A/O OBSERVED multple pedestrians WAlk into To FloW oF TraFFic in order to reach Sidewalk Due To vehicles obstruction

WARRANT CHECK   ☒ Yes   ☐ No

I PERSONALLY OBSERVED THE COMMISSION OF THE OFFENSE CHARGED HEREIN. FALSE STATE-MENTS MADE HEREIN ARE PUNISHABLE AS A CLASS A MISDEMEANOR PURSUANT TO SECTION 210.45 OF THE PENAL LAW, AFFIRMED UNDER PENALTY OF PERJURY.

5-6-11
Date                    Signature

## DEFENDANT DESCRIPTION

Eye Color __Br__   Hair Color __Blk__   Ethnicity __Blk__

Ht. __5-9__   Wt. __285__   Phone # _____

## ARRAIGNMENT

Defendant pleads   ☐ Guilty   ☐ Not Guilty

Date                    Judge

① 

② 



* 4 3 2 2 5 8 9 1 8 8 *

AA-500 (1/06)

## COMPLAINT/INFORMATION
# 432765571-5

The People of The State of New York VS.

Susp/Rev Check ☐ Yes No ☐
Motorist Exhibited License ☐ Yes No ☐

**Last Name** Frederick **First Name** John **M.I.**

**Street Address** PO BOX 471774 **Apt. No.**

**City** Brooklyn **State** NY **Zip Code** 11247

**ID Number** 352 233 024 **Date of Birth** MO __ DAY __ YR __ **Sex** N

**Lic. State** NY **Lic. Class or ID Type** **Date Expires** MO 3 DAY 10 YR 11 **Operator Owns Vehicle** ☒ Yes No ☐

### OPERATOR AND/OR OWNER OF VEHICLE BEARING LICENSE

**Plate No.** | NY CT PA NJ Other | **Reg. Expires**

PAS OMT COM OML Other | CHEV FORD HONDA DODG OLDS BUICK TOYT NISS Other | MO DAY YR

SEDAN SUBN VAN TRUCK MCY Other | Veh. Yr. | Veh. Color | Alternate Plate | State

**VIN No.**

### THE PERSON DESCRIBED ABOVE IS CHARGED AS FOLLOWS

AM ☐ **Time** 2020 PM ☒ **Date of Offense** 5-6-10 **County** Kings **Precinct** 77

**Place of Occurrence** C/O NOSTRAND Ave & PACIFIC ST

**IN VIOLATION OF** Sec 240.20 Sub 6 | V.T.L. Traff. Rules Admin. Code Penal Code Other

**Description of Violation, if Not Shown Below.** (If returnable to Criminal Court, indicate Court Location and Date of Appearance below and COMPLETE, DATE, AND SIGN INFORMATION ON REVERSE SIDE.)

Failure To Comply w/ lawful order

**SPEEDING** MPH __ In MPH Zone __ | DISOBEY TRAFF CONT DEV ☐ Sign ☐ Signal Pave ☐ Marks | Uninspec. Veh. Uninsur. Veh. | Unreg. Veh. Com. Veh. | Unlic. Oper. Bus Haz. Mat.

The person described above is summoned to appear at **CRIMINAL COURT**

Located at 346 BROADWAY **Summons Part** IFL **County** NY

**Date of Appearance** 2:00 a.m. 7th day of JULY year 10

I personally observed the commission of the offense charged above. False statements made herein are punishable as a Class A Misdemeanor pursuant to Section 210.45 of the Penal Law. Affirmed under penalty of perjury.

**Rank/Full Signature of Complainant**

**Complainant's Full Name (printed)** **Command Code** 77

**Agency/NCIC** NYPD **Squad** NIC **Tax Registry No.** 938702

I acknowledge receipt of this summons. I understand it is my responsibility to read and comply with the instructions on my copy, and that my signature below is not an admission of guilt.

**Name** _____ **Date** _____

LA-500 (1/08)

**CRIMINAL COURT INFORMATION (DESCRIBE OFFENSE)**

AT TPO ABOVE M|DEFT DID
REFUSE TO comply w| OFFicers lAwful
orders. DEFT DID REFUSE To provide
Driver license, registration and insurance
By way of Cursing, DEFT RESPONDED to
AlO by SAYing "Fuck you" "I AINT
giving you SHIT". AlO Did Ask DEFT
Multiple Times for information.

**WARRANT CHECK**  ☒ Yes   ☐ No

I PERSONALLY OBSERVED THE COMMISSION OF THE OFFENSE CHARGED HEREIN. FALSE STATE-
MENTS MADE HEREIN ARE PUNISHABLE AS A CLASS A MISDEMEANOR PURSUANT TO SECTION 210.45
OF THE PENAL LAW, AFFIRMED UNDER PENALTY OF PERJURY.

5-6-10

Date                   Signature

**DEFENDANT DESCRIPTION**

Eye Color __B__   Hair Color __Blk__   Ethnicity __Blk__
Ht. __5 8__   Wt. __285__   Phone # _____

**ARRAIGNMENT**

Defendant pleads   ☐ Guilty   ☐ Not Guilty

_____   _____
Date                   Judge

① 

② 

* 4 3 2 7 6 5 5 7 1 5 *

# New York State Unified Court System

---

## WebCrims

---

## Case Details - Appearances

### CASE INFORMATION

| | |
|---|---|
| Court | **Kings Criminal Court** |
| Case # | **2010SK069839** |
| Defendant | **Frederick, John** |

| Date/ Part | Judge | Calendar Section | Arraignment/ Hearing Type | Court Reporter | Outcome/ Release Status |
|---|---|---|---|---|---|
| 09/02/2011 SAP3 | | ACD | No Type | | |
| 03/04/2011 SAP3 | Delury, J | BENCH TRIAL | No Type | Ford, Alison | Acd Cpl 170.55 |
| 12/15/2010 SAP3 | Delury, J | BENCH TRIAL | No Type | Rinaudo, M | Adjourned For Trial Released on Recognizance |
| 10/04/2010 SAP3 | Schwartzwald, E | BENCH TRIAL | No Type | Davis, Barbara | Adjourned For Trial Released on Recognizance |
| 07/30/2010 SAP3 | Schwartzwald, E | BENCH TRIAL | No Type | Moody, Angela | Adjourned For Trial Released on Recognizance |
| 07/06/2010 SAP | Schwartzwald, E | ARRAIGNMENTS | Regular | Filion, John | Adjourned For Trial Released on Recognizance |



**Nostrand Gold Dealers**

## WE PAY TOP DOLLAR
### We Buy & Sell Gold, Diamond, Silver & Watches

Nostrand Avenue
(Bet: Pacific & Deen)
Brooklyn, NY 11216      Tel:718-363-1219

## Statement Affidavit

May 8, 2010

### Subject: *Mr. John Frederick*

    I, Christakis Kazamias being duly sworn depose and says; That I am the owner and operator of the above mention business. **Mr. John Frederick** is license as a Private Investigator and is a former police officer (Detective Sergeant) with many years of public services. I know **Mr. Frederick** for more than fifteen years and he is a person with integrity and credibility. I retain **Mr. Frederick** to handle my business Security logistics.

    On May 6, 2010 at about 07:30 pm as we were closing **Mr. Frederick** and I did exited the business location when a black 4 door sedan approach our location, double parked with 3 male black occupants later identified as plain clothes police officers. Words were exchange with **Mr. Frederick** and theses unidentified males. **Mr. Frederick** pulls out a video camera that he had in his pocket and started filming the encounter. The 3 male occupants after seeing the camera immediately jump out of their car and attack **Mr. Frederick** slapping the camera out of his hand on to the ground and handcuff him. I strongly believe that they were trying to hurt him. Some uniform police officers that were standing across the street at a police tower station came over to our location to see what was going on that when these guys identified themselves as police officers. I ask the officers what did he do?, they refuse to answer me.

Page 1 of 2

**Mr. Frederick** asks me to pick up and take the camera and his car. One the plain clothes police officer grabs the camera off the ground and told me to "mind my own business you have a business here" and further stated that we are going to take the car. I remember one these guys he occasionally come into my place of business to inspect my books and operation. Now I am worry that if I get involved in this incident they will start harassing me at my place of business. They search **Mr. Frederick** and retrieved his car keys and his wallet and search his car **Mr. Frederick** yelled stop searching my car. The police place **Mr. Frederick** inside of the black sedan and drove away with him and his car.

I took a cab to the 77th Pct. for an explanation of the encounter and to check on **Mr. Frederick** well being. The police continued to threaten me at the precinct to mind my own business. I waited for about two hours when they release **Mr. Frederick**. One of the plain clothes police officer drove his car out of the police parking lot the car was ransacked. **Mr. Frederick** stated to me after examining the camera that they deleted the footage from the camera and removed a tape cassette from a recorder that he had concealed inside of his car.

ChristaKis Kazamias

Sworn to before me this
26th day of July 2010

ALESTER A. GARVEY
Notary Public, State of New York
No: 01GA6193903
Qualified in Kings County
Commission Expires: September 22, 2012

Page 2 of 2