UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------

JOHN FREDERICK,

                                Plaintiff,              **MEMORANDUM & ORDER**
                                                        13-CV-897 (MKB)

                v.


THE CITY OF NEW YORK, NEW YORK CITY
POLICE OFFICER EDWIN SIMON #26883, NEW
YORK CITY POLICE SGT. WAYNE MANGAN,
NEW YORK CITY POLICE OFFICER DERRICK
BOYD #10014, NEW YORK CITY POLICE
OFFICER ARNOLD MURPHY #29794, NEW
YORK CITY POLICE OFFICERS JOHN and JANE
DOE, SEA GATE ASSOCIATION, SEA GATE
N.Y. POLICE DEPARTMENT, SEA GATE
POLICE CHIEF ROBERT ABRAHAM, JEFFREY
FORTUNATO, LT. MOYSE, NEW YORK CITY
POLICE LIEUTENANT ERIC CAMPBELL
# 918740 and NEW YORK CITY POLICE
DETECTIVE LAHMAR SANDERS #2884,


                                Defendants.
--------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

        Plaintiff John Frederick, proceeding *pro se*, filed the above-captioned action on February

19, 2013 pursuant to 42 U.S.C. § 1983, alleging false arrest, false imprisonment and malicious

prosecution in violation of the Fourth Amendment and violations of other rights under the United

States Constitution and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq*.

(Compl., Docket Entry No. 1.)  By Memorandum and Order dated April 22, 2013, the Court

granted Plaintiff's request to proceed *in forma pauperis* (the "April 2013 Decision"), and

dismissed the Complaint for failure to state a claim against several Defendants and found that

some of Plaintiff's claims for false arrest, false imprisonment and malicious prosecution were

time-barred. *Frederick v. City of New York*, No. 13-CV-897, 2013 WL 1753063, at *1 (E.D.N.Y. Apr. 22, 2013); (*see* Docket Entry No. 7). The Court granted Plaintiff leave to amend his Complaint as to certain Defendants and claims. *Id*. Plaintiff subsequently amended the Complaint on four occasions. (Docket Entry Nos. 8, 9, 11, 13.) By Order dated April 22, 2014, the Court held that, with the exception of claims previously dismissed as time-barred, Plaintiff's other claims alleged in the Fourth Amended Complaint (the "FAC"), filed on March 18, 2014, were allowed to proceed (the "April 2014 Order"). (Docket Entry No. 21.)

On May 4, 2015, Defendants the City of New York (the "City"), New York City Police Officers Arnold Murphy, Derrick Boyd and Edwin Simon, Sergeant Wayne Mangan, Lieutenant Eric Campbell and Detective Lahmar Sanders (collectively, the "City Defendants") moved to dismiss the FAC.[1] (City Defs. Mot. to Dismiss ("City Mot."), Docket Entry No. 62.) On May 4, 2015, Defendants Sea Gate Police Department (the "SGPD"), Sea Gate Police Chief Robert Abraham, Jeffrey Fortunato and Lieutenant Yengeny Gene Moyse (collectively the "SGPD Defendants") also moved to dismiss the FAC. (SGPD Defs. Mot. to Dismiss ("SGPD Mot."), Docket Entry No. 67.) On May 6, 2015, Defendant Sea Gate Association ("SGA") moved to dismiss the FAC.[2] (SGA Mot. to Dismiss ("SGA Mot."), Docket Entry No. 60.) For the reasons stated below, the Court denies the City Defendants' motion to dismiss Plaintiff's false arrest

---

[1] The City Defendants' motion was initially filed on behalf of the City and Defendants Murphy, Boyd and Mangan. On September 28, 2015, counsel for the City notified the Court in writing that it also represents Defendants Simon, Campbell, and Sanders and requested that its motion be treated as asserted on their behalf. (Letter dated Sept. 28, 2015 ("Sept. 28, 2015 Ltr."), Docket Entry No. 94.) The Court grants the request.

[2] Sea Gate is a private community located in the Coney Island neighborhood of Brooklyn. The Sea Gate Association is "similar to a homeowners association" and has a private police department, the SGPD. (Tr. of Dec. 10, 2014 Status Conf. ("Dec. 10, 2014 Tr.") 5:3–5:12.)

claim based on Plaintiff's 2010 arrest as to Officers Boyd and Murphy, Detective Sanders, and Lieutenant Campbell. The Court otherwise grants the City Defendants' motion to dismiss. The Court grants the SGA and the SGPD Defendants' motions to dismiss in their entirety.

## I. Background

### a. Procedural background

On December 4, 2014, the City Defendants filed a request for a pre-motion conference in anticipation of filing a motion to dismiss the FAC. (Docket Entry No. 48.) Prior to the conference, both the SGPD Defendants and SGA also filed letters with the Court indicating their intent to move to dismiss the FAC. On December 10, 2014, the Court held a conference at which Plaintiff clarified his claims.[3] (Min. Entry dated Dec. 10, 2014.) With the consent of the parties, the Court deemed the additional facts stated by Plaintiff on the record to be part of the FAC. (*Id.*) The City Defendants, the SDPD Defendants and SGA each subsequently moved to dismiss the FAC. (Docket Entry Nos. 60, 62, 67.) On May 26, 2015, Plaintiff filed an opposition to the motions to dismiss.[4]

---

[3] At the December 10, 2014 conference, the Court clarified Plaintiff's claims as:
> [F]alse arrest as to the 2007 and 2010 incidents (the 2010 incident as to the NYPD defendants only); malicious prosecution; First Amendment retaliation; violation of Title [VII]; defamation; intentional infliction of emotional distress; violation of the due process clause, Second Amendment, and Section 400 of the New York State Penal Law; and conspiracy to violate the due process clause, Second Amendment, and Section 400 of the New York State Penal Law.

(Min. Entry dated Dec. 10, 2014.)

[4] On June 9, 2015, the Court held a conference at which Plaintiff stated that even though the document was partially titled "Notice to Amend Complaint," it was an opposition to Defendants' motions, not a motion to amend the FAC. (Min. Entry dated June 9, 2015.) The Court held the motions to dismiss in abeyance, pending Plaintiff's discussion with a *pro se*

On June 24, 2015, Plaintiff filed a letter with the Court in which he clarified his claims and requested leave to amend the FAC. (Pl. Letter dated June 24, 2015, Docket Entry No. 77.) On July 17, 2015, in response to Plaintiff's letter, the Court held a status conference and clarified Plaintiff's claims as: false arrest based on to the 2007,[5] 2009 and 2010 incidents, against all Defendants; malicious prosecution based on the 2007 and 2010 prosecutions, against all Defendants; conspiracy to violate his civil rights, against all Defendants; intentional infliction of emotional distress, against all Defendants; defamation, against SGA and the SGPD Defendants; assault, against Officers Boyd, Detective Sanders and Lieutenant Campbell; and a municipal liability claim against the City.[6] (Min. Entry dated July 17, 2015.) All other claims were dismissed.[7] In addition, the Court granted Defendants leave to file supplemental briefing in

---

attorney advisor. (*Id.*) The Court directed Plaintiff to inform the Court after his meeting as to how he wished to proceed with the action. (*Id.*)

[5] The Court had previously indicated in the April 2014 Order that Plaintiff's claims for false arrest based on the 2007 incidents were time-barred, in the absence of additional allegations by Plaintiff to support equitable tolling. At the December 10, 2014 conference, the Court stated that these claims would not be dismissed prior to a motion to dismiss in order to allow Plaintiff an opportunity to argue equitable tolling based on his appeal and the Appellate Term's recent reversal of his convictions. (Dec. 10, 2014 Tr. 9–10, 14.)

[6] The FAC also states that Plaintiff's rights at trial were violated because, *inter alia*, he was not provided with a speedy trial or effective assistance of counsel, but Plaintiff does not appear to bring claims based on these assertions. (FAC ¶¶ 88–89, 114.)

[7] On September 16, 2015, without leave from the Court, Plaintiff filed a document styled as a Fifth Amended Complaint. (Pl. Sept. 16, 2015 Submission.) In the filing Plaintiff reiterates and restates allegations from his prior complaints, including allegations pertaining to claims and Defendants that the Court had dismissed from the action. The Court declines to consider this document as the operative complaint, but does consider the arguments made in the Fifth Amended Complaint in deciding the pending motions. The Court does not identify any new and relevant allegations in the Fifth Amended Complaint as to the claims addressed in this Memorandum and Order.

support of their motions to dismiss the FAC in light of the clarification of Plaintiffs' claims. (*Id*.)

    **b.   Factual background**

The facts alleged in the FAC are assumed to be true for the purposes of deciding Defendants' motions.

    **i.   Employment and history with the SGPD**

From 1983 until 1988, and from 1991 to "1998 / 2001,"[8] Plaintiff was employed as an officer with the SGPD. (FAC ¶ 54, Docket Entry No. 13.) During his employment Plaintiff sued the SGPD for creating a hostile work environment and eventually settled the lawsuit pursuant to a stipulation of settlement. (*Id*. ¶¶ 35, 37–38.) From 1984 to the present, Plaintiff has also worked as a private investigator and, for business entity clients, as a "Watch Guard Patrol Agent," with responsibilities including "opening and closing these commercial business establishments." (*Id*. ¶¶ 50–51.)

Starting in 1978, Plaintiff possessed an "NYC Police Department Carry Conceal Pistol" license and a "Rifle / Shotgun Permit."[9] (*Id*. ¶ 49.) In or about October of 1998, SGPD Officer Louis Telano "notified his contact" in the "pistol section" of the New York City Police Department ("NYPD") that Plaintiff "[d]id not need a pistol license for employment" at the SGPD because "his position is unarmed." (*Id*. ¶ 64; *see* Dec. 10, 2014 Tr. 24:14–24:18 (stating that Officer Telano's NYPD contact was "Stuyvesant," a police officer).) Plaintiff states that, as

---

[8] Plaintiff was "on and off employment" during the "1998 / 2011" time period. (FAC ¶ 54.)

[9] Plaintiff variously references pistol and firearm licenses and permits. (*See* FAC ¶ 64.) The Court identifies them all as "firearm licenses," as any distinction is not relevant to the analysis here.

a result, his firearm license was revoked and this led to his termination with the SGPD for failure to maintain his firearm license.  (*See* FAC ¶¶ 26, 41–42, 64.)

Plaintiff further alleges that representatives of SGA and the SGPD made "false, incomplete, and misleading statements" to "several potential employer(s)," which prevented him from obtaining various positions.  (*Id*. ¶¶ 39, 147.)  Among the allegedly defamatory statements, on or about February 13, 2002, SGPD Police Chief Abraham incorrectly informed a potential employer that Plaintiff had been terminated for misconduct.  (*Id*. ¶¶ 147–48.)  According to Plaintiff, in or about 2006, the SGPD also provided false information to the New York City Hospital Police, the New York City Department of Personnel and NYPD.  (Dec. 10, 2014 Tr. 21–22.)

### ii.   2007 arrests

Plaintiff was stopped by NYPD officers on four occasions, including twice in 2007, allegedly in violation of his constitutional and other rights.  (*See* FAC ¶ 20.)  On or about November 9, 2007, Plaintiff was arrested by NYPD officers, including Simon and Magman (the "November 9, 2007 Incident").  (*Id*. ¶¶ 72–74.)  Plaintiff was stopped while driving his car, which bore a license plate within a Fraternal Order of Police frame.  (*Id*. ¶ 72.)  The NYPD officers questioned Plaintiff about an SGPD identification card that Plaintiff had in his possession.[10]  (*Id*. ¶ 73.)  According to Plaintiff, Officer Simon stated that both Plaintiff's SGPD identification card and his firearm license were forgeries and arrested Plaintiff.  (*Id*.)  While conducting a search of Plaintiff's vehicle incident to his arrest, NYPD officers recovered a firearm.  (*Id*.)  Plaintiff was charged with criminal possession of a forged instrument in the third

---

[10]  Plaintiff states that in or about 1996 or 1997 he took a leave of absence from the SGPD and was issued a "retired ID card."  (FAC ¶ 62.)  It is unclear whether the retired ID card was on Plaintiff's person during the 2007 arrests.

degree, criminal impersonation in the second degree, and possession of a rifle or shotgun. (*Id.* ¶ 75.)

Plaintiff was arrested again on November 14, 2007 (the "November 14, 2007 Incident"). (*Id.* ¶ 77.) NYPD officers, including Officers Murphy and Boyd, approached Plaintiff while he was standing outside of his parked car. (*Id.* ¶¶ 77–78.) According to Plaintiff, Officer Boyd "approache[d] [him] with physical force," "place[d] his hand inside [P]laintiff's pockets," and removed Plaintiff's wallet. (*Id.* ¶ 78.) Plaintiff "demanded" that Officers Murphy and Boyd take their hands off him. (*Id.*) Plaintiff was handcuffed while the officers searched his car. (*Id.*) Plaintiff states that Officer Murphy remembered him from the November 9, 2007, arrest and that Officer Boyd called Officer Simon on his cellular phone and stated "I found Frederick." (*Id.*) The NYPD officers found an older SGPD identification card in Plaintiff's wallet and removed Plaintiff's firearm license and shotgun registration from the vehicle. (*Id.* ¶ 79.) Plaintiff was arrested and charged with criminal possession of a forged instrument in the third degree and criminal impersonation in the second degree. (*Id.* ¶ 80.)

On December 3, 2009, Plaintiff proceeded to trial on two counts of criminal possession of an instrument in the third degree, two counts of criminal impersonation in the second degree, and possession of a firearm.[11] (*Id.* ¶¶ 84–85.) On December 7, 2009, a jury convicted Plaintiff of criminal possession of a forged instrument in the third degree and criminal impersonation in the second degree, based on the November 9, 2007 Incident, and of criminal possession of a forged instrument in the third degree, based on the November 14, 2007 Incident. (*Id.* ¶ 86); *see People*

---

[11] The charges stemming from the two 2007 arrests were tried jointly over Plaintiff's objection. (FAC ¶ 84.)

*v. Frederick*, 999 N.Y.S.2d 665, 670–71 (App. Term 2014).  The court entered separate

judgments for the two incidents.  *Frederick*, 999 N.Y.S.2d at 670–71.

Plaintiff appealed his convictions, (FAC ¶ 115), and on October 28, 2014, the Appellate

Term of the Supreme Court of the State of New York, Second Department, reversed both

judgments of conviction.[12]  *Frederick*, 999 N.Y.S.2d at 670–71.  The Appellate Term found that

the trial court erred in failing to suppress evidence obtained from the November 9, 2007 Incident

because, based on facts developed at a suppression hearing, the stop was without legal

justification as it was based on the arresting officer's erroneous belief that a license plate frame

could be a violation of state law even when it does not obstruct vehicle identification

information.[13]  *Id*. at 669–70.  The Appellate Term held that "there is little doubt that, had the

---

[12]  At the December 10, 2014 pre-motion conference, Plaintiff described the Appellate Term's decision and submitted a copy of the slip opinion to the Court.  (Dec. 10, 2014 Tr. 9.) Because the viability of Plaintiff's malicious prosecution claims requires a favorable termination of the criminal summonses, the Court recognizes the Appellate Term decision as integral to the Complaint.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).  The Court may also consider the substance of the Appellate Term decision because the FAC relies on the disposition of the criminal proceedings and the terms of the dispositions are necessary to the determination of whether Plaintiff has a viable malicious prosecution claim.  *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) ("[E]ven if not attached or incorporated by reference, a document upon which [the complaint] *solely* relies and which is *integral to the complaint* may be considered by the court in ruling on such a motion." (internal quotation marks and citation omitted) (citing *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006))).  Moreover, not recognizing the Appellate Term's decision would make the FAC invulnerable to a 12(b)(6) challenge "simply by clever drafting."  *See Glob. Network*, 458 F.3d at 157 (noting that the integral-to-the-complaint exception usually includes "transcripts or other legal documents containing obligations upon which the plaintiff's complaint stands or falls" that, for some reason, were not attached to the complaint).

[13]  As explained by the Appellate Term, the trial court held a suppression hearing to determine whether Plaintiff's statements during the November 9 and 14, 2007 Incidents were voluntary.  *People v. Frederick*, 999 N.Y.S.2d 665, 668 (App. Term 2014).  At the hearing, Plaintiff's counsel argued that the stop of Plaintiff's vehicle on November 9, 2007, was not legally justified, but counsel did not move for a hearing to determine the legality of the stop.  *Id*. The trial court "noted that there appeared to be an issue of whether [Plaintiff's] license plate had

evidence been suppressed, the charges based thereon would have been dismissed." *Id*. at 670. Thus, as to the judgment of conviction relating to charges arising from the November 9, 2007 Incident, the Appellate Term reversed the convictions and dismissed the counts of the accusatory instrument charging those offenses. *Id*. at 670–71.

As to the criminal possession of a forged instrument conviction arising from the November 14, 2007 Incident, the State of New York (the "State") argued that the admission of the illegally obtained evidence was harmless error because separate evidence obtained during the November 14, 2007 stop provided "overwhelming evidence of guilt of the charge." *Id*. at 668. The Appellate Term disagreed and determined that the error was not harmless because the "admission of that evidence at the joint trial could only have greatly prejudiced the defense of the charge arising from the incident of November 14, 2007." *Id*. at 671. Thus, the Appellate Term reversed the judgment of conviction as to the forged instrument charge based on the November 14, 2007 Incident and remanded the matter to Criminal Court for further proceedings on that charge. *Id*. at 671. The Court is not aware of any subsequent prosecution based on the November 14, 2007 Incident.

### iii. 2009 stop and 2010 arrest

Plaintiff alleges two subsequent stops by NYPD officers. On September 5, 2009, Plaintiff was driving his vehicle and was stopped by unidentified police officers (the "2009 Incident"). (FAC ¶ 82.) While Plaintiff was driving, the officers drove up alongside Plaintiff and asked whether he was "the guy that was arrested a year ago with a gun." (*Id*.) Plaintiff

---

been obstructed within the statute's meaning" in order to justify the stop. *Id*. However, the trial court admitted the evidence from the stop at trial. *Id*. The State of New York conceded on appeal "that the . . . evidence obtained during the first incident should have been suppressed" as illegally seized and recommended reversal of the conviction based on the November 9, 2007 Incident and dismissal of that accusatory instrument. *Id*.

ignored the question, and the officers stopped him, "ordered [P]laintiff by physical force[] out of his vehicle," searched his person, and searched his vehicle. (*Id.* ¶ 83.) According to Plaintiff, one officer stated, "You know what this [is] about." (*Id.*) Plaintiff states that he was not arrested as a result of the 2009 Incident. (*See id.* ¶ 83 ("No [a]rrest, Summons or Stop Question and Frisk . . . report prepared."); Pl. Sept. 16, 2015 Submission 24, 30, Docket Entry No. 86 ("Defendant(s) without probable cause falsely arrested [P]laintiff 3 out of the 4 incidents . . . ."); Pl. Letter dated Oct. 20, 2015 at 2, Docket Entry No. 92 ("[N]o arrest or summons issued.").)

Plaintiff also alleges that on May 6, 2010, while Plaintiff was closing a business for a client, Officers Boyd and Murphy, Detective Sanders and Lieutenant Campbell arrived at the location and told Plaintiff that his parked car was obstructing a crosswalk (the "2010 Incident").[14] (FAC ¶ 91.) Plaintiff states that he responded to the officer by suggesting that he "give the car a ticket," and Plaintiff began to film the NYPD officers with a video camera. (*Id.*) Plaintiff states that the NYPD officers told him to stop filming. (*Id.*) The officers subsequently "t[a]ckle[d] and assaulted" Plaintiff, and Officer Boyd and two other officers used "physical force [to] grab[] and restrain[ him]." (*Id.* ¶¶ 91–92.) According to Plaintiff, Officer Boyd stated "[d]rop the camera or I will sho[o]t you dead" and "slap[ped]" the camera out of Plaintiff's hands. (*Id.* ¶ 92.) Officer Boyd demanded Plaintiff's license, vehicle registration and insurance card, but Plaintiff refused to provide Officer Boyd with these items. (*Id.* ¶ 93.) Plaintiff was handcuffed, arrested, taken to jail and charged with disorderly conduct. (*Id.* ¶ 94.) Plaintiff appears to allege that some of these charges were ultimately adjourned in contemplation of

---

[14] The FAC identifies Officers Boyd and Murphy by name, and alleges actions by two "John Doe" NYPD officers. (*See, e.g.*, FAC ¶¶ 77–78, 91.) On July 7, 2014, the City identified that Detective Sanders and Lieutenant Campbell were also present during the 2010 Incident. (City Defs' Letter dated July 7, 2014.) As such, the Court treats Plaintiff's allegations as to the "John Doe" officers pertaining to Detective Sanders and Lieutenant Campbell.

dismissal and that one charge was dismissed as legally insufficient. (*Id.* ¶ 98.) Plaintiff states

that his car was "ransack[ed]," that footage of the incident was deleted from his video camera,

and that the shotgun permit, which he alleges Officers Boyd and Murphy had stolen during the

November 14, 2007 Incident, was placed back in his wallet.[15] (*Id.* ¶ 95.)

Plaintiff asserts that the false information provided by the SGPD Defendants to the City

Defendants with respect to his identification card and his employment status formed the basis for

his arrest as a result of the 2010 Incident. (Dec. 10, 2014 Tr. 12.) Plaintiff also asserts that the

SGPD Defendants conspired to "cause harm to him" resulting in his "inability to earn a living"

and that they conspired with the City Defendants through the "episode with the arrest" and "the

slanderous remark by Seagate."[16] (FAC ¶ 28; *see* Dec. 10, 2014 Tr. 23.) Plaintiff also states that

the SGPD officers were not directly involved in the 2010 Incident. (Dec. 10, 2014 Tr. 12.)

## II. Discussion

### a. Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, a court must "accept all factual allegations in the complaint as true and draw

inferences from those allegations in the light most favorable to the plaintiff." *Tsirelman v.*

*Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131

F.3d 326, 329 (2d Cir. 1997)); *see also Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011)

(quoting *Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 320 (2d Cir. 2009)). A complaint

must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

---

[15] Plaintiff asserts that the search was illegal and states that he filed a complaint regarding the incident with the NYPD internal affairs office. (FAC ¶ 98.)

[16] Plaintiff also alleges that the SGPD acted in concert with the NYPD to "violate[] labor and management and . . . settlement agreements." (FAC ¶ 146).

*Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson*, 631 F.3d at 63 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013). Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."[17] *Iqbal*, 556 U.S. at 678. In reviewing a *pro se* complaint, the court must be mindful that the plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks omitted); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally").

**b. Timeliness of service**

After moving to dismiss Plaintiff's claims, the City Defendants submitted a letter to the Court arguing that Plaintiff's service of the FAC on Simon, Campbell, Mangan and Sanders was untimely. (Sept. 28, 2015 Ltr. 1.) Because all claims against Simon and Mangan are dismissed, the Court declines to address the arguments as to those Defendants. As to Detective Sanders and Lieutenant Campbell, in the April 2014 Order, the Court directed the City Defendants to supply

---

[17] When deciding a motion to dismiss, a court's review is limited to the four corners of the complaint but a court may also review (1) documents attached to the complaint, (2) any documents incorporated in the complaint by reference, (3) documents deemed integral to the complaint, and (4) public records. *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (documents attached to the complaint, those incorporated by reference, and those integral to the complaint); *Glob. Network*, 458 F.3d at 156 (documents integral to the complaint); *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (public records).

the names and service addresses of the two unnamed NYPD officers involved in the 2010 Incident.  (Order dated Apr. 22, 2014 at 2.)  On July 7, 2014, the City Defendants provided Plaintiff with the names of Detective Sanders and Lieutenant Campbell, who had been identified as the John Doe Officers.  (City Defs' Letter dated July 7, 2014, Docket Entry No. 38.)  According to Plaintiff, he served Detective Sanders on September 9, 2015, and Lieutenant Campbell on August 14, 2015.  (Summons, Docket Entry No. 87.)  The City Defendants argue that Plaintiff's failure to serve Detective Sanders and Lieutenant Campbell for over a year after he received their addresses violates Federal Rule of Civil Procedure 4(m), and that the claims therefore should be dismissed as to them.  (Sept. 28, 2015 Ltr. 1.)

At the time Plaintiff served Detective Sanders and Lieutenant Campbell, Rule 4(m) provided:

> If service of the summons and complaint is not made upon the defendants within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m) (2015).[18]  Pursuant to this rule, a district court "abuses its discretion when it dismisses a complaint *sua sponte* for lack of service without first giving notice to the plaintiff and providing an opportunity for [him] to show good cause for the failure to effect timely service."  *Martinez v. Queens Cty. Dist. Atty.*, 596 F. App'x 10, 13 (2d Cir.) (internal quotation marks omitted) (quoting *Meilleur v. Strong*, 682 F.3d 56, 61 (2d Cir. 2012)), *cert. denied sub nom. Martinez v. Brown*, --- U.S. ---, 135 S. Ct. 1855 (2015).  "In determining whether a plaintiff

---

[18]  Pursuant to amendments to the Federal Rules of Civil Procedure that took effect on December 1, 2015, the deadline for service pursuant to Rule 4(m) has been shortened from 120 days to 90 days.  Fed. R. Civ. P. 4(m).

has shown good cause, courts generally consider two factors: (1) the reasonableness and diligence of Plaintiff's efforts to serve, and (2) the prejudice to the Moving Defendants from the delay." *Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 597 (E.D.N.Y. 2013) (internal quotation marks omitted) (quoting *Micciche v. Kemper Nat'l Servs.*, 560 F. Supp. 2d 204, 209 (E.D.N.Y. 2008)).

A district court also "has discretion to enlarge the 120-day period for service, even in the absence of good cause." *Frankenberger v. Firth Rixson, Inc.*, 565 F. App'x 37, 38 (2d Cir. 2014) (citing *Zapata v. City of New York*, 502 F.3d 192, 196 (2d Cir. 2007)); *see also Jaiyeola v. Carrier Corp.*, 73 F. App'x 492, 494 (2d Cir. 2003) (Rule 4 "is to be construed liberally to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice." (internal quotation marks and citation omitted)). "In determining whether a discretionary extension is appropriate in the absence of good cause, courts in this Circuit generally consider four factors: (1) whether any applicable statutes of limitations would bar the action once re-filed; (2) whether the defendant[s] had actual notice of the claims asserted in the complaint; (3) whether defendant[s] attempted to conceal the defect in service; and (4) whether defendant[s] would be prejudiced by extending plaintiff's time for service." *Vaher v. Town of Orangetown, N.Y.*, 916 F. Supp. 2d 404, 420 (S.D.N.Y. 2013) (internal quotation marks omitted) (quoting *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 66 (S.D.N.Y. 2010) (collecting cases)). As to prejudice, the Second Circuit has stated that it is "obvious" that a defendant "would be harmed by a generous extension of a service period beyond the limitations period, for the action, especially if the defendant had no actual notice" of the action, but that it is "equally obvious" that a plaintiff would be burdened by "having the complaint dismissed with prejudice on technical grounds." *Zapata*, 502 F.3d at 198.

Here, Plaintiff has not articulated a reason for his delayed service on Detective Sanders and Lieutenant Campbell. While there is no indication that Detective Sanders and Lieutenant Campbell had actual notice of Plaintiff's claims, counsel for the City, who now represent Detective Sanders and Lieutenant Campbell, did have actual notice as they provided their names and addresses to Plaintiff. In addition, there does not appear to be prejudice to Detective Sanders and Lieutenant Campbell. Plaintiff's sole surviving claim is his section 1983 false arrest claim arising from the 2010 Incident. As is explained below, this claim was timely at the time Plaintiff commenced this action. Although the applicable three-year statute of limitations has since expired, it did so between the time Plaintiff commenced the action and the time the City provided Plaintiff with the names and addresses for Detective Sanders and Lieutenant Campbell. The statute of limitations period did not expire during the one-year interim before Plaintiff completed service. As such, any prejudice to Detective Sanders and Lieutenant Campbell is not attributable to Plaintiff's subsequent delay. Moreover, the City moves to dismiss on behalf of Detective Sanders and Lieutenant Campbell, and the City has not identified any defenses or arguments that are unique to either Detective Sanders and Lieutenant Campbell that could have been asserted if Plaintiff had served them a year earlier. Furthermore, any prejudice to Detective Sanders and Lieutenant Campbell is outweighed by the fact that dismissal would render Plaintiff's claims untimely. *See Zapata*, 502 F.3d at 198 ("[W]e leave to the district courts to decide on the facts of each case how to weigh the prejudice to the defendant that arises from the necessity of defending an action after both the original service period and the statute of limitations have passed before service."). The Court therefore deems the service on Detective Sanders and Lieutenant Campbell to be timely.

### c. False arrest claims

Plaintiff asserts claims for false arrest against all Defendants based on the November 9 and 14, 2007 Incidents, the 2009 Incident and the 2010 Incident. The Defendants move to dismiss all of these claims.

A section 1983 false arrest claim "rest[s] on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). In assessing section 1983 claims for false arrest, courts look to the law of the state in which the arrest occurred. *Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. 2015) ("A section 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law."); *see also Russo v. City of Bridgeport*, 479 F.3d 196, 203 (2d Cir. 2007). "Under New York law, 'to prevail on a claim of false arrest a plaintiff must show that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Nzegwu v. Friedman*, 605 F. App'x 27, 29 (2d Cir. 2015) (quoting *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003)).

### i. The 2007 Incidents and the 2009 Incident

The City Defendants, SGA and the SGPD Defendants each argue that Plaintiff's claims for false arrest based on the 2007 Incidents and the 2009 Incident, whether asserted pursuant to section 1983 or state law, are time-barred. (Mem. in Supp. of City Mot. ("City Mem.") 4–5, Docket Entry No. 64; SGA Reply Mem. ("SGA Reply") 2, annexed to Decl. in Supp. of SGA Mot. as Ex. 3, Docket Entry No. 83; SGPD Suppl. Mem. ("SGPD Reply") 2–3, 7, annexed to SGPD Not. of Mot. as Attachment 15, Docket Entry No. 81). The SGPD Defendants further argue that the continuing violation doctrine does not apply to false arrest claims and, thus, cannot

toll the statute of limitations for Plaintiff's claims. (SGPD Reply 5–6.)

### 1. Statute of limitations

"While the applicable statute of limitations in a § 1983 case is determined by state law, 'the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law.'" *Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015) (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). The statute of limitations for a section 1983 action arising in New York is three years. *Melendez v. Greiner*, 477 F. App'x 801, 803 (2d Cir. 2012) (citing *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009)); *Harrison v. Lutheran Med. Ctr.*, 468 F. App'x 33, 36 (2d Cir. 2012). For claims of false arrest, the statute of limitations begins to run "when the alleged false imprisonment ends."[19] *Wallace*, 549 U.S. at 389. An alleged false arrest "ends once the victim becomes held *pursuant to such process* — when, for example, he is bound over by a magistrate or arraigned on charges." *Id.* at 389; *accord Lynch v. Suffolk Cty. Police Dep't, Inc.*, 348 F. App'x 672, 675 (2d Cir. 2009).

Plaintiff alleges he was arrested on November 9, 2007, November 14, 2007 and September 5, 2009. (FAC ¶¶ 72, 77, 82.) However, Plaintiff includes no allegations from which the Court can determine when the Plaintiff's claims accrued, such as the dates of his arraignments. Nevertheless, crediting Plaintiff's factual allegations, Plaintiff went to trial on both sets of 2007 charges in 2009 and he was never tried on the 2009 charges. As such, Plaintiff's false arrest claims accrued in 2009, at the latest. Plaintiff did not file this action until

---

[19] False arrest and false imprisonment are considered one tort. *Wallace*, 549 U.S. at 388 ("False arrest and false imprisonment overlap; the former is a species of the latter."); *Hickey v. City of New York*, No. 01-CV-6506, 2004 WL 2724079, at *6 (S.D.N.Y. Nov. 29, 2004), *aff'd*, 173 F. App'x 893 (2d Cir. 2006) ("[T]he claims of false arrest and false imprisonment are 'synonymous[.]'").

February 19, 2013. At that time, the three-year limitations periods for the section 1983 false arrest claims related to the 2007 Incidents and the 2009 Incident had already expired.[20] *See Wallace*, 549 U.S. at 389 (noting that false arrest accrues when "the alleged false imprisonment ends"); *Lynch*, 348 F. App'x at 675 (holding that the three-year limitations period for § 1983 false arrest claims begins to run at arraignment). The Court will consider whether Plaintiff has demonstrated a basis for equitable tolling.

## 2. Equitable tolling

In the April 2013 Decision, the Court dismissed Plaintiff's claims as to the 2007 Incidents and the 2009 Incident as time-barred, and gave Plaintiff leave to amend the Complaint to "include allegations that would justify equitable tolling of the statute of limitations."[21] *Frederick*, 2013 WL 1753063, at *5; (*see also* City Mem. 5). Plaintiff argues that he believed that he could not bring an action for false arrest while his appeal on the criminal rulings was

---

[20] The Court does not understand Plaintiff to be stating claims for false arrest pursuant to New York State law. Under New York law, a false arrest claim must be asserted within one year after a plaintiff's release from custody. N.Y. C.P.L.R. § 215(3) (stating that "[t]he following actions shall be commenced within one year . . . an action to recover damages for . . . false imprisonment"); *Kevilly v. New York*, 410 F. App'x 371, 375 (2d Cir. 2010) (noting that New York false arrest claims, as a type of false imprisonment, are subject to a one-year limitations period); *Smolian v. Port Auth. of N.Y. & N.J.*, 9 N.Y.S.3d 329, 333 (App. Div. 2015) (noting the "one-year statute of limitations applicable to false arrest [and] false imprisonment"). Thus, to the extent that Plaintiff is asserting claims for false arrest pursuant to New York State law, the claims are time-barred because they were commenced more than a year after 2009, the latest time at which the claims could have accrued. Therefore, these claims are dismissed as to all Defendants.

[21] The Court noted that it did "not appear" from the Complaint that Plaintiff was arrested in 2009. *Frederick*, 2013 WL 1753063, at *2 (citing Compl. ¶ 61). Nevertheless, the Court gave Plaintiff leave to amend with respect to a false arrest claim arising from the 2009 Incident, along with the 2007 Incidents. (*Id.* at *6.)

ongoing, and that the statute of limitations should be tolled based on this mistaken belief.[22]
(Dec. 10, 2014 Tr. 9.)  The City Defendants argue that Plaintiff's mistaken belief as to the
accrual date of false arrest claims does not provide a basis for equitable tolling and they note
that, despite his claim, Plaintiff filed this action in 2013 before the Appellate Term's ruling in
2014.  (City Mem. 5–6.)

The doctrine of equitable tolling can be applied to false arrest claims.  *See Covington v.
N.Y.C. Police Dep't*, 471 F. App'x 28, 29 (2d Cir. 2012) (applying the doctrine of equitable
tolling to a false arrest claim).  "[A] litigant seeking equitable tolling must establish two
elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary
circumstance stood in his way and prevented timely filing.'"[23]  *Bolarinwa v. Williams*, 593 F.3d
226, 231 (2d Cir. 2010) (quoting *Lawrence v. Florida*, 549 U.S. 327, 336 (2007)) (providing
mental incapacity as an example of an extraordinary circumstance); *see also Baroor v. N.Y.C.
Dep't of Educ.*, 362 F. App'x 157, 159 (2d Cir. 2010) (Equitable tolling is "only appropriate in
rare and exceptional circumstances, in which a party is prevented in some extraordinary way
from exercising his rights." (quoting *Zerilli-Edelglass v. N.Y.C. Transit Authority*, 333 F.3d 74,
80 (2d Cir. 2003))); *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005) (finding that
equitable tolling applies only in "rare and exceptional circumstances, where [the Circuit] found
that extraordinary circumstances prevented a party from timely performing a required act, and
that the party acted with reasonable diligence throughout the period he sought to toll").  A

---

[22]  At the December 10, 2014 pre-motion conference, the Court deemed Plaintiff's
statements that he believed he could not bring false arrest claims while his appeal of the
convictions was pending to be part of the FAC.  (Dec. 10, 2014 Tr. 9.)

[23]  Under New York law, the statute of limitations period may be extended if the claimant
"is under a disability because of infancy or insanity at the time the cause of action accrues."
N.Y. C.P.L.R. § 208.

party's mistaken belief of law is insufficient to establish extraordinary circumstances sufficient to toll a statute of limitations. *Jenkins v. Greene*, 630 F.3d 298, 305 (2d Cir. 2010) (finding that a habeas petitioner who was "thwarted by a mistaken reading of New York case law to impose a requirement that did not in fact exist," providing an affidavit from his prior counsel, had not demonstrated extraordinary circumstances); *Chettana v. Racette*, No. 15-CV-0028, 2016 WL 447716, at *9 (N.D.N.Y. Feb. 4, 2016) ("Petitioner's misunderstanding of the procedural requirements for exhausting his claims in the state courts does not warrant equitable tolling."); *Bostic v. Greiner*, No. 01-CV-5705, 2003 WL 22670908, at *4 (E.D.N.Y. Oct. 31, 2003) (finding that a party's mistaken belief as to the tolling of a limitations period while seeking leave to appeal "is not grounds for equitable tolling"); *Bond v. Walsh*, No. 01-CV-0776, 2003 WL 21499852, at *4 (E.D.N.Y. June 12, 2003) ("Ignorance of the law does not provide a basis for equitable tolling." (citation omitted)).

Even if Plaintiff's ongoing criminal appeal was sufficient to show that he "has been pursuing his rights diligently," Plaintiff has not sufficiently pled that an "extraordinary circumstance stood in his way and prevented timely filing." *See Covington*, 471 F. App'x at 29 (denying equitable tolling for a false arrest claim where the record "reveal[ed] no extraordinary circumstances that prevented the timely filing" of the claim); (*see also* Pl. Letter dated Oct. 20, 2015 at 5 (arguing, generally, that Plaintiff has "been pursuing his rights diligently" and that "[c]ircumstances stood in [P]laintiff['s] way to prevent him [from] fil[ing] in a timely manner")). Plaintiff has not pled any facts to suggest a barrier to asserting his false arrest claim. Although Plaintiff states that he believed he was required to wait until after the culmination of the appellate process to commence a false arrest claim, this misapprehension of the timing of the accrual of his claim or of the applicable statute of limitations is not a valid basis to equitably toll the statute of

limitations.  Plaintiff fails to present a basis for equitable tolling of the statute of limitations for his false arrest claims arising from the 2007 Incidents and the 2009 Incident.  Accordingly, the Court finds that the claims are untimely.

### 3.    Continuing violation doctrine

Plaintiff argues that all four stops by NYPD officers — during the November 9 and November 14, 2007 Incidents, the 2009 Incident, and the 2010 Incident — constituted a continuing violation of his rights and, thus, that his claims for false arrest stemming from the 2007 Incidents and the 2009 Incident did not accrue until the time of the 2010 Incident.  (July 17, 2015 Min. Entry.)  The SGPD Defendants argue that Plaintiff's false arrest claims are not rendered timely by the continuing violation doctrine because false arrests are discrete acts and do not resemble the type of ongoing conduct, such as a policy of discrimination, that is typically treated as a single continuing violation.[24]  (SGPD Reply, 5–6.)

The statute of limitations on a section 1983 claim in New York runs "from the time a 'plaintiff knows or has reason to know of the injury' giving rise to the claim."  *Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015) (quoting *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994)).  The continuing violation doctrine, "where applicable, provides an 'exception to the normal knew-or-should-have-known accrual date.'"  *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (quoting *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999)).  The doctrine "applies to claims 'composed of a series of separate acts that collectively constitute one unlawful [] practice'" rather than to "discrete unlawful acts, even where those discrete acts are part of a 'serial violation[].'"  *Id.* (first quoting *Washington v. Cty. of Rockland*, 373 F.3d

---

[24]  The City Defendants do not address the applicability of the continuing violation doctrine to Plaintiff's false arrest claims.

310, 318 (2d Cir. 2004); and then quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101,

114–15 (2002)) (explaining that the doctrine applies to "claims that by their nature accrue only

after the plaintiff has been subjected to some threshold amount of mistreat"); *see Deters v. City*

*of Poughkeepsie*, 150 F. App'x 10, 12 (2d Cir. 2005) ("The Supreme Court recently clarified that

the continuing-violation doctrine does not apply to discrete acts, but only to ongoing

circumstances that combine to form a single violation that 'cannot be said to occur on any

particular day.'" (citing *Morgan*, 536 U.S. at 117)).

While the continuing violation doctrine has been applied to claims asserted pursuant to

section 1983, *see Sherman v. Town of Chester*, 752 F.3d 554, 566 (2d Cir. 2014) ("Although this

way of applying a statute of limitations is generally used in the employment discrimination

context, we have not limited it to that area alone."), courts in this Circuit have declined to apply

the continuing violation doctrine to false arrest claims, s*ee, e.g.*, *Harrison v. New York*, 95

F. Supp. 3d 293, 327 n.13 (E.D.N.Y. 2015) (explaining that the continuing violation doctrine

"does not apply" to the "single, discrete act" of one false arrest, and that an allegation that the

defendant "foster[ed] an environment" that encouraged employees "to racially profile Black

males in its stores" was too conclusory to "amount to a legitimate challenge to a custom or

policy for the purposes of invoking the continuing violation doctrine"); *Harper v. City of New*

*York*, No. 09-CV-05571, 2010 WL 4788016, at *5 n.7 (E.D.N.Y. Nov. 17, 2010) (declining to

decide "whether multiple false arrests can ever constitute a continuous series of events giving

rise to a cumulative injury for the purposes of the continuing violation doctrine" because the

plaintiff failed to allege that the incidents "were the result of a custom or policy rather than

discreet occurrences").

While Plaintiff alleges that his arrests involved some of the same officers and related

information, the arrests were nevertheless discrete acts and, therefore, they do not constitute a continuous violation. The continuing violation doctrine provides "redress for injuries resulting from 'a series of separate acts that collectively constitute one unlawful [act],'" while false arrests are separate unlawful acts for which there is a legal remedy. *See Shomo*, 579 F.3d at 181 (quoting *Morgan*, 536 U.S. at 117). Because Plaintiff's false arrest claims accrued at the conclusion of each discrete act, Plaintiff's claims are not rendered timely by the continuing violation doctrine. Plaintiff's false arrest claims arising from the 2007 Incidents and the 2009 Incident are therefore dismissed as to all Defendants.

### i. The 2010 Incident

Plaintiff's false arrest claim based on the 2010 Incident is asserted against all Defendants. The Court separately addresses Plaintiff's allegations as to the City Defendants and the SGA and SGPD Defendants.

### 1. Officers Boyd and Murphy, Detective Sanders and Lieutenant Campbell

The City Defendants argue that the FAC's allegations establish that there was probable cause for Plaintiff's arrest during the 2010 Incident and, thus, his false arrest claim based on the 2010 Incident must be dismissed. (City Mem. 8.) Plaintiff asserts that while he was closing a business for a client, Officers Boyd and Murphy, Detective Sanders and Lieutenant Campbell approached him and told Plaintiff his automobile was parked on a crosswalk. (FAC ¶ 91.) Plaintiff states that he responded by telling the officers to "give the car a ticket" and he began to film the NYPD officers with a video camera. (*Id.*) Plaintiff claims that the officers told him to stop filming and assaulted him, and that Officer Boyd further demanded Plaintiff's license, vehicle registration and insurance card, which Plaintiff refused to provide. (*Id.* ¶ 93.) Based on

these facts, the Court understands Plaintiff to argue that the officers did not have probable cause to arrest him.

The City Defendants argue that Defendants had probable cause to arrest Plaintiff because, according to Plaintiff's allegations, he "refused to move his car and instead instructed the officers to give him a ticket, [and he] refused to provide [D]efendant Boyd with his license, registration, and insurance card." (City Mem. 8; *see also* FAC ¶¶ 91, 93.) The City Defendants contend that an arresting officer only needs "knowledge of facts . . . sufficient to establish probable cause for any offense, no matter how minor, and regardless of whether [P]laintiff was charged with that offense" to render an arrest lawful. (City Mem. 9.) They further contend that Plaintiff's refusal to move his car and to provide information to Officer Boyd supported probable cause to arrest Plaintiff for an unspecified traffic violation or a "very minor criminal offense." (*Id.*)

"[P]robable cause is a complete defense to false arrest claims." *Simpson*, 793 F.3d at 265; *see also Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013) (citations omitted); *Weyant*, 101 F.3d at 852; *see also Atwater v. Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."). "An arresting officer has probable cause when the officer has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Simpson*, 793 F.3d at 265 (quoting *Weyant*, 101 F.3d at 852); *see also Swartz v. Insogna*, 704 F.3d 105, 111 (2d Cir. 2013) (same). An arrest is constitutionally valid if there is probable cause to justify the arrest at its initiation, even if the offense providing probable cause for the arrest is

different from the offense ultimately charged. *United States v. Bernacet*, No. 11-CR-107, 2011 WL 10895014, at *4 (S.D.N.Y. Sept. 7, 2011) (finding that arrest was constitutionally valid even though police ultimately charged defendant with different offense than one that initially justified the arrest), *aff'd*, 724 F.3d 269 (2d Cir. 2013); *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006) ("[A] claim for false arrest turns only on whether probable cause existed to arrest a defendant . . . . [I]t is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest.").

A defendant bears the burden of raising and proving the existence of probable cause for a plaintiff's arrest. *See Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. 2010) (citing *Broughton v. State*, 37 N.Y.2d 451, 458 (1975)); *Curry v. City of Syracuse*, 316 F.3d 324, 335 (2d Cir. 2003) ("The defendant has the burden of raising and proving the affirmative defense of probable cause." (citations omitted)). The probable cause affirmative defense is "normally asserted in an answer." *Silver v. Kuehbeck*, 217 F. App'x 18, 22 (2d Cir. 2007) (quoting *McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004)). However, it may nevertheless warrant dismissal on a pre-answer motion to dismiss where probable cause "appears on the face of the complaint," in that "facts admitted in the complaint . . . establish 'each of the elements of the crime.'" *Id.* (first citing *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998); then citing 5A Wright & Miller, *Federal Practice and Procedure* § 1277; and then quoting *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995))); *see Naples v. Stefanelli*, 972 F. Supp. 2d 373, 393 (E.D.N.Y. 2013) ("[A] defendant may raise an affirmative defense [of probable cause] in such a motion [to dismiss] so long as the defense appears on the face of the complaint." (citing *Pani*, 152 F.3d at 71)). In *Silver*, the Second Circuit reviewed the grant of a motion to dismiss a false arrest claim *de novo* and found that the complaint "on its face

support[ed] a finding" that the officer had probable cause to arrest the plaintiff because the "undisputed facts clearly establish[ed] the elements of aggravated harassment," the crime for which the plaintiff had been arrested.  *Silver*, 217 F. App'x at 22; *see also Singer*, 63 F.3d at 119 (finding probable cause where "facts as presented to [the arresting officer] established each of the elements . . . of larceny").

To state a claim for a damage award under section 1983, a plaintiff must also allege the defendant's direct or personal involvement in the alleged constitutional deprivation.  *Victory v. Pataki*, --- F.3d. ---, ---, 2016 WL 373869, at *13 (2d Cir. Feb. 1, 2016) (The "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotation marks omitted) (quoting *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006))); *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) (same); *see also LaMagna v. Brown*, 474 F. App'x 788, 789 (2d Cir. 2012) ("A defendant's supervisory authority is insufficient in itself to demonstrate liability under § 1983.").

Accepting the FAC's allegations as true, and drawing all reasonable inferences in Plaintiff's favor, the City Defendants have not satisfied their burden to establish that, based on the totality of the circumstances, Officers Boyd and Murphy, Detective Sanders and Lieutenant Campbell had probable cause to arrest Plaintiff as during the 2010 Incident.  The City Defendants argue that the FAC demonstrates that the officers had probable cause to believe that Plaintiff committed "even a very minor criminal offense in [the officers'] presence," rendering the arrest legal.  (City Mem. 8.)  The City Defendants argue that, because Plaintiff told Officer Boyd to ticket his parked car and refused to provide his license, registration, and insurance, the officers had probable cause to arrest Plaintiff.  (*Id.*)  However, the City Defendants fail to identify any specific offense for which this conduct established probable cause.  Although

"[d]riving without a license is a traffic infraction which justifies a police officer's immediate arrest of the unlicensed operator," the FAC does not allege that Plaintiff was driving his vehicle. *See Wachtler v. Herkimer*, 35 F.3d 77, 80 (2d Cir. 1994) (upholding a finding of qualified immunity as to a false arrest claim because the arresting officer had a "well-grounded" belief that he had probable cause to arrest the plaintiff, who was pulled over while driving and "failed to identify himself or to provide any pedigree information" despite being "legally obligated to show his driver's license"); *see also Rivera v. Metakes*, 216 F.3d 1073 (2d Cir. 2000) (vacating a grant of summary judgment because disputed facts precluded a finding that officers had probable cause to arrest the plaintiff for failing to produce his license, for driving without a license as required by New York law, or for obstructing governmental administration). Indeed, the allegations in the FAC establish that Plaintiff was not in his vehicle at the time of the 2010 Incident, as he was in the process of closing a store for a business client. (FAC ¶ 91.) Nor do the City Defendants argue that, by acknowledging that an illegally parked car belonged to him and by refusing to provide his driver license or other documents, Plaintiff violated any other New York laws. Accordingly, the City Defendants' probable cause defense is not apparent on the face of the FAC.

In addition, Plaintiff's allegations specify the personal involvement of the John Doe officers and are sufficient to state a claim against Officer Boyd, Officer Murphy, Detective Sanders and Lieutenant Campbell. [25] (*Id.* ¶¶ 91–95); *see Victory*, --- F.3d at ---, 2016 WL

---

[25] The City Defendants argue that, even if Plaintiff states a claim for a violation of his constitutional rights by any of the officer Defendants, the officers are protected from litigation and liability by qualified immunity. (City Mem. 25.) "Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Does*, 779 F.3d 84,

373869, at *13–14 (holding that the district court did not err in finding insufficient evidence of direct participation by various individual defendants in violating the plaintiff's due process rights, by contributing to a procedurally defective rescission of the plaintiff's parole).  The Court therefore denies the City Defendants' motion to dismiss Plaintiff's section 1983 false arrest claim based on the 2010 Incident as to Officers Boyd and Murphy, Detective Sanders and Lieutenant Campbell. [26]  The Court dismisses Plaintiff's false arrest claim based on the 2010 Incident as to all other City Defendants.

### 2. Plaintiff fails to state a false arrest claim against SGA and the SGPD Defendants based on the 2010 Incident

SGA and the SGPD Defendants argue that Plaintiff's section 1983 false arrest claim based on the 2010 Incident fails as to them because Plaintiff has not alleged conduct by SGA or any of the SGPD Defendants sufficient to plead that they instigated or procured Plaintiff's arrest.

---

92 (2d Cir. 2015) (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007)). Overall, "the relevant question is whether a reasonable officer could have believed the search [or seizure] to be lawful, in light of clearly established law and the information the . . . officers possessed." *Moore v. Vega*, 371 F.3d 110, 115 (2d Cir. 2004) (alterations omitted) (quoting *Anderson*, 483 U.S. at 641).  Given that "qualified immunity is not only a defense to liability, but also provides immunity from suit," a court should resolve a "defendant's entitlement to qualified immunity . . . 'at the earliest possible stage in litigation.'"  *Lynch v. Ackley*, --- F.3d ---, ---, 2016 WL 335928, at *4 (2d Cir. Jan. 28, 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009)).  Here, the Court cannot determine whether it would be objectively reasonable for an officer arresting Plaintiff to believe that he had probable cause for the arrest because the City Defendants have not identified what offense or violation the officers believed Plaintiff had committed at the time of his arrest.  The Court therefore cannot conclude that Officers Boyd and Murphy, Detective Sanders and Lieutenant Campbell are protected by qualified immunity.

   [26]  As discussed above, Plaintiff's false arrest claims under New York State law are subject to a one-year statute of limitations.  N.Y. C.P.L.R. § 215(3); *Kevilly*, 410 F. App'x at 375.  Plaintiff's claim accrued the day of his arrest, because he alleges that he was released from custody the same day he was arrested.  (FAC ¶ 94 ("[P]laintiff was release[d.] Boyd issued [P]laintiff (3) Criminal court summons . . . .").)  Because this action was commenced more than a year after his claim accrued, any state law claim for false arrest arising from the 2010 Incident is dismissed as time-barred as to all Defendants.

(SGA Reply 5–6; Mem. of Law in Supp. of SGPD Mot. ("SGPD Mem.") 18, Docket Entry No. 81; SGPD Reply 9–11.)

To establish a claim for false arrest against a private individual, "a plaintiff must show that the defendant took an active role in the arrest of the plaintiff, such as giving advice and encouragement or importuning the authorities to act, and that the defendant intended to confine the plaintiff." *Vlach v. Staiano*, 604 F. App'x 77, 78 (2d Cir. 2015) (internal quotation marks omitted) (quoting *Lowmack v. Eckerd Corp.*, 757 N.Y.S.2d 406, 408 (App. Div. 2003)). The defendant must have "affirmatively induced the officer to act," including by "taking an active part in the arrest and procuring it to be made," or shown "active, officious and undue zeal to the point where the officer is not acting of his own volition." *Id.* (internal quotation marks omitted) (quoting Curley *v. AMR Corp.*, 153 F.3d 5, 13–14 (2d Cir. 1998)); *see King v. Crossland Sav. Bank*, 111 F.3d 251, 256 (2d Cir. 1997) (explaining that if a defendant did not confine plaintiff, a false arrest claim requires that a defendant "affirmatively procured or instigated a plaintiff's arrest). In contrast, "[w]hen police independently act to arrest a suspect on information provided by a party, that party is not liable for false imprisonment [i.e. arrest] — even if the information provided is later found to be erroneous." *Vlach*, 604 F. App'x at 78–79 (internal quotation marks omitted) (first quoting *King*, 111 F.3d at 257; and then citing *Quigley v. City of Auburn*, 701 N.Y.S.2d 580, 582 (App Div. 1999)).[27]

---

[27] Section 1983 "constrains only state conduct, not the 'acts of private persons or entities.'" *Hooda v. Brookhaven Nat. Lab.*, 659 F. Supp. 2d 382, 393 (E.D.N.Y. 2009) (quoting *Rendell–Baker v. Kohn*, 457 U.S. 830, 837 (1982)); *see also Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." (internal quotation marks and citation omitted)). Neither SGA nor the SGPD Defendants have argued that Plaintiff has failed to sufficiently allege that they acted under color of state law. *See Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) (stating that a claim pursuant to section 1983 against a private

Plaintiff alleges that SGPD Officer Telano provided false information to the NYPD regarding Plaintiff's eligibility for a firearm license and his employment status. (FAC ¶ 63.) In particular, Plaintiff argues that the 2007 Incidents resulted from the erroneous information provided by the SGPD to the NYPD and, further, argues that the information obtained by the NYPD officers during the 2007 Incidents formed the basis for the 2010 Incident. (SGA Reply 5.) In essence, Plaintiff claims that the NYPD officers approached him in 2010 based on the information the NYPD officer obtained when they arrested him in 2007 — that he was carrying a firearm and an expired permit — and that they recognized him from the 2007 Incidents.

Crediting Plaintiff's allegations that SGA and the SGPD provided "erroneous" information to the NYPD and that such information was related to the arrests, and drawing all reasonable inferences in his favor, Plaintiff nevertheless fails to state a false arrest claim as to SGA and the SGPD Defendants because he fails to allege that the NYPD did not "independently act" on that information to arrest him. *See Vlach*, 604 F. App'x at 79. Assuming that the NYPD officers who participated in the 2010 Incident were aware of the alleged falsity of the information provided to the NYPD by the SGPD, Plaintiff fails to plausibly allege that SGA or the SGPD Defendants took an "active part in the arrest," or "procured" or "instigated" the 2010 arrest. *See Vlach*, 604 F. App'x at 79; *King*, 111 F.3d at 256. Plaintiff has therefore failed to state a false arrest claim based on the 2010 Incident as to SGA and the SGPD Defendants.

---

individual requires alleging that its challenged conduct constituted "state action"); *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003) ("In cases under § 1983, 'under color' of law has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment."). Here, Plaintiff makes no allegations that SGA and the SGPD are not private parties. Because Plaintiff's claims are dismissed as to SGA and the SGPD Defendants on other grounds, the Court declines to address this issue.

Accordingly, the Court dismisses Plaintiff's claim for false arrest arising from the 2010 Incident as to SGA and the SGPD Defendants.

### d. Malicious prosecution claims

Plaintiff asserts malicious prosecution claims against all Defendants based on his prosecutions and convictions in connection with the 2007 Incidents and the 2010 Incident.[28] The City Defendants, SGA and the SGPD Defendants seek to dismiss all of Plaintiff's malicious prosecution claims. They present multiple arguments in support of dismissal, including the argument that none of the criminal proceedings terminated in Plaintiff's favor, a necessary element of a malicious prosecution claim.[29] (Reply in Supp. of City Mot. ("City Reply") 8–9, 14–15, Docket Entry No. 84; Mem. of Law in Supp. of SGA Mot. ("SGA Mem.") 8, Docket Entry No. 72; SGPD Reply 6.)

"To make out a federal claim under 42 U.S.C. § 1983 in addition to a state-law claim, 'a plaintiff must show a violation of his rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law.'" *Willey v. Kirkpatrick*, 801 F.3d 51, 70 (2d Cir. 2015) (internal quotation marks omitted) (quoting *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010)). Under New York law, the elements of a malicious

---

[28] Plaintiff had previously stated that he did not allege that SGA was involved in his arrests or prosecutions, (Dec. 10, 2014 Tr. 12), but at the July 15, 2015 status conference, Plaintiff clarified that he intended to assert malicious prosecution claims against all Defendants, (July 15, 2015 Min. Entry). The Court therefore considers the sufficiency of these claims as to all Defendants.

[29] SGA and the SGPD Defendants each argue that Plaintiff cannot support malicious prosecution claims as against them because his allegations — that these Defendants provided erroneous information to the NYPD regarding Plaintiff's employment status and identification card, and that the charges against him resulted from that information — are insufficient to allege that any of the Defendants instigated or played an active role in Plaintiff's prosecutions. (SGA Reply 5; SGPD Mem. 18.) Because Plaintiff's claims are dismissed on other grounds, the Court declines to address these arguments.

prosecution claim are "(1) the initiation or continuation of a criminal proceeding against plaintiff, (2) termination of the proceeding in plaintiff's favor, (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Willey*, 801 F.3d at 70 (internal quotation marks omitted) (quoting *Manganiello*, 612 F.3d at 161); *see Bermudez v. City of New York*, 790 F.3d 368, 377 (2d Cir. 2015) (stating the elements of a malicious prosecution claim under New York law); *Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010) (same). In a claim for malicious prosecution under section 1983, "the plaintiff must also show 'that there was . . . a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights.'" *Higginbotham v. City of New York*, 105 F. Supp. 3d 369, 375 (S.D.N.Y. 2015) (quoting *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000)).

"An acquittal is the most obvious example of a favorable termination." *Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995). Absent an acquittal, the favorable termination element of a malicious prosecution claim requires Plaintiff to "demonstrate a final termination of the criminal proceeding in [his] favor, or at least 'not inconsistent with his innocence.'" *Okoi v. El Al Israel Airlines*, 378 F. App'x 9, 11 (2d Cir. 2010) (alteration in original) (quoting *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 196 (2000)); *see Stampf v. Long Island R.R. Co.*, 761 F.3d 192, 200-01 (2d Cir. 2014) (explaining that the New York Court of Appeals "reject[ed]" the argument that a "plaintiff must demonstrate innocence in order to satisfy the favorable termination prong of the malicious prosecution action"); *Rothstein v. Carriere*, 373 F.3d 275, 286 (2d Cir. 2004) ("New York law does not require a malicious prosecution plaintiff to prove her innocence, or even that the termination of the criminal proceeding was indicative of innocence. Rather, the plaintiff's burden is to demonstrate a final termination that is not inconsistent with innocence."); *Cantalino v. Danner*, 96 N.Y.2d 391, 410 (2001) ("[W]e reject defendant's argument that the "inconsistent

with innocence" standard is limited to speedy trial dismissals, like the one at issue in

*Smith-Hunter*. The rule announced [by the New York Court of Appeals] in *Smith-Hunter* is one

of general application, and we see no reason to deviate from it here.").

### i. November 9, 2007 Incident

Plaintiff argues that because of the reversal of his conviction based on the November 9,

2007 Incident, his malicious prosecution claim against all Defendants is timely asserted.[30] (Dec.

10, 2014 Tr. 16–17.) Defendants argue that the Appellate Term's reversal of the judgment

convicting Plaintiff of criminal possession of a forged instrument in the third degree and criminal

impersonation in the second degree, based on the November 9, 2007 Incident, is not a favorable

termination for the purposes of Plaintiff's malicious prosecution claim. (City Reply 8–9, 14–15;

SGA Mem. 8; SGPD Reply 6.) Defendants argue that this reversal did not render a finding as to

Plaintiff's actual guilt because the reversal was based on the trial court's failure to suppress

illegally obtained evidence, without which there would have been no basis for Plaintiff's

conviction.

---

[30] Plaintiff was also charged with possession of a firearm as a result of the November 9, 2007 Incident, but there is no jury verdict convicting Plaintiff of this charge. It is unclear whether this charge was dismissed prior to trial or the jury acquitted Plaintiff of this charge. *See Frederick*, 999 N.Y.S.2d at 668 ("[T]he jury . . . acquitted [Plaintiff] of the remaining charge with respect to the latter incident."). A malicious prosecution claim accrues when the criminal proceedings are terminated in a plaintiff's favor. *Heck v. Humphrey*, 512 U.S. 477, 489 (1994) ("[A] cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor."); *Murphy v. Lynn*, 53 F.3d 547, 548 (2d Cir. 1995) ("It is clear from our precedents that the applicable statute of limitations for § 1983 actions in New York is three years, and that, for claims based in malicious prosecution, this period starts to run only when the underlying criminal action is conclusively terminated."); *Mione v. McGrath*, 435 F. Supp. 2d 266, 269 (S.D.N.Y. 2006) (A "claim for malicious prosecution accrued on the date of dismissal" of the charges). The latest possible date of termination for this charge is the entry of judgment on December 9, 2009. (FAC ¶ 86; *Frederick*, 999 N.Y.S.2d at 670. That date is more than three years prior to the commencement of this action, thus any malicious prosecution claims related to the firearm charge are time-barred.

The Second Circuit has not addressed whether the reversal of a conviction on the grounds that evidence supporting the conviction was illegally obtained and erroneously admitted during trial constitutes a "favorable termination" for purposes of a malicious prosecution claim. Only one district court in this Circuit has addressed the issue. *See Layou v. Crews*, No. 11-CV-0114, 2013 WL 5494062, at *2 (N.D.N.Y. Sept. 30, 2013) (finding that a reversal by the Appellate Term on the grounds that "the evidence was tainted by an unlawful search and seizure, and/or the chain of custody over the evidence could not be established" was not a "favorable termination" as a matter of law (citing *Martinez v. City of Schenectady*, 97 N.Y.2d 78, 84–85 (2001))). "Because there are no federal rules of decision for adjudicating § 1983 actions that are based upon claims of malicious prosecution, [courts] are required by 42 U.S.C. § 1988 to turn to state law — in this case, New York State law — for such rules." *Negron v. Wesolowski*, 536 F. App'x 151, 152 (2d Cir. 2013) (quoting *Conway v. Vill. of Mount Kisco*, 750 F.2d 205, 214 (2d Cir. 1984)). Pursuant to this Second Circuit edict to follow state law, the Court looks to decisions from the New York Court of Appeals. The New York Court of Appeals has held that a criminal proceeding was not "favorably terminate[d]" for the purposes of a plaintiff's malicious prosecution claim where the plaintiff's felony conviction had been reversed "because the evidence that formed the basis for [the plaintiff's] conviction was obtained pursuant to a faulty search warrant." *Martinez*, 97 N.Y.2d at 84–85. In *Martinez*, the New York Court of Appeals explained that such a reversal was "not because of [a] lack of culpability — indeed, [the plaintiff's] guilt was proven beyond a reasonable doubt," and thus the reversal was inconsistent with the plaintiff's innocence and was not a favorable termination for the purpose of a malicious prosecution claim. *Id.*

The application of this rule to a malicious prosecution claim asserted pursuant to section 1983 is also consistent with the Second Circuit's determination that the "fruit of the poisonous tree" doctrine does not apply to civil actions brought under section 1983. *Hargroves v. City of New York*, 411 F. App'x 378, 384 n.5 (2d Cir. 2011) (citing *Townes v. City of New York*, 176 F.3d 138, 145 (2d Cir. 1999)); *c.f. Jenkins v. City of New York*, 478 F.3d 76, 91 n.16 (2d Cir. 2007) (upholding district court's conclusion that a state court finding that evidence was fruit of the poisonous tree "is of no effect in this civil [§ 1983] proceeding"); *Jocks*, 316 F.3d at 138 ("*Miranda* violations, absent coercion, do not rise to the level of constitutional violations actionable under § 1983. The appropriate remedy for violations of *Miranda* rights is exclusion of the evidence at trial." (citation omitted)). In *Townes*, the Second Circuit explained that "[n]o Fourth Amendment value would be served if [the plaintiff], who illegally possessed firearms and narcotics, reap[ed] the financial benefit he [sought]" because the plaintiff "reaped an enormous benefit by reason of the illegal seizure and search to which he was subjected: his freedom, achieved by the suppression of evidence obtained in violation of the Fourth Amendment." *Townes*, 176 F.3d at 148.

Here, the Appellate Term reversed the judgment convicting Plaintiff of charges based on the November 9, 2007 Incident because the Appellate Term determined that the trial court committed error when it failed to suppress the evidence obtained as a result of the unjustified stop of Plaintiff. *Frederick*, 999 N.Y.S.2d at 670–71. As in *Martinez*, the reversal addressed the illegality of the "evidence that formed the basis for [Plaintiff's] conviction," *Martinez*, 97 N.Y.2d at 84–85, and the Appellate Term found that had such evidence been properly suppressed, there would have been no evidentiary basis for the conviction and "the charges based thereon would have been dismissed," *Frederick*, 999 N.Y.S.2d at 670. However, the Appellate

Term did not overturn the merits of the jury's conviction of Plaintiff on either charge. While "[v]ictims of unreasonable searches or seizures may recover damages directly related to the invasion of their privacy," Plaintiff cannot use a malicious prosecution claim pursuant to section 1983 to remedy "injuries that result from the discovery of incriminating evidence and consequent criminal prosecution." *See Townes*, 176 F.3d at 148. Plaintiff failed to plead an outcome that is "not inconsistent with his innocence" because the Appellate Term found that the evidence should not have been before the jury, not that the jury erred in convicting him based on that evidence. Therefore, Plaintiff's conviction of charges based on the November 9, 2007 Incident did not terminate favorably for the purposes of Plaintiff's malicious prosecution claim. The Court therefore dismisses Plaintiff's malicious prosecution claim based on the November 9, 2007 Incident as to all Defendants.

### ii. November 14, 2007 Incident

Defendants argue that, as to the reversal of the judgment convicting Plaintiff of criminal possession of a forged instrument in the third degree based on the November 14, 2007 Incident, the Appellate Term remanded for further proceedings in the Criminal Court and, as a result, the proceedings have not yet terminated and Plaintiff cannot satisfy the favorable termination element.[31] (*See* SGA Reply 4.) Plaintiff argues that the Appellate Term was "not aware" that the charging instrument against him related to the November 14, 2007 Incident had previously

---

[31] The City Defendants further argue that the exercise of independent judgment by the prosecution in deciding to proceed to trial, Plaintiff's defense counsel in declining to seek a suppression hearing, the trial court in failing to suppress the evidence, and the jury in returning a guilty verdict, are each sufficient to break the causal chain between the officer Defendants' conduct and Plaintiff's conviction. (City Mem. 13–14.) Because Plaintiff's claim is dismissed on other grounds, the Court declines to address this argument.

been dismissed, allegedly when the charges were consolidated and tried jointly.  (Dec. 10, 2014 Tr. 31.)

"[I]n New York, 'malicious prosecution suits require, as an element of the offense, the termination of the proceeding in favor of the accused . . . [and] the tort cannot stand unless the underlying criminal cases finally end in failure." *Smith*, 782 F.3d at 100–01 (quoting *Poventud v. City of New York*, 750 F.3d 121, 130 (2d Cir. 2014)); *Heck*, 512 U.S. at 489 ("[A] cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor.").  "[A]ny final termination of a criminal proceeding in favor of the accused, such that the proceeding cannot be brought again, qualifies as a favorable termination . . . ." *Poventud*, 750 F.3d at 130 (quoting *Smith-Hunter*, 95 N.Y.2d at 195).  In particular, "the reversal of a conviction and remand for a new trial does not constitute such a termination." *Id.* (citing *DiBlasio v. City of New York*, 102 F.3d 654, 658 (2d Cir. 1996)).  In *DiBlasio*, the plaintiff was convicted of criminal sale of cocaine and related charges and had his conviction vacated through a *habeas* proceeding.  *DiBlasio*, 102 F.3d at 655.  After a conviction on remand for a lesser offense, he sought to assert a claim for malicious prosecution based on the charge of the more serious crimes.  *Id.*  "[A]pplying the malicious prosecution standard," the Second Circuit determined that the criminal proceeding did not terminate until the plaintiff was "convicted on the retrial." *Id.* at 658.

Here, because the Appellate Term reversed the judgment convicting Plaintiff of criminal possession of a forged instrument in the third degree based on the November 14, 2007 Incident and remanded the matter for further proceedings, the State can retry Plaintiff.  *Frederick*, 999 N.Y.S.2d at 671.  Accordingly, Plaintiff has not sufficiently pled that the proceeding has terminated, let alone that it terminated in a favorable manner.  *See Poventud*, 750 F.3d at 130.

Any claims for malicious prosecution related to the November 14, 2007 Incident are therefore dismissed without prejudice as against all Defendants.[32]

### iii. 2010 Incident

Plaintiff claims that the charges for disorderly conduct related to the 2010 Incident were either dismissed for legal insufficiency or adjourned in contemplation of dismissal. (FAC ¶ 107.) Defendants argue that Plaintiff's malicious prosecution claim fails because neither outcome is sufficient to plead a favorable termination of the proceedings. (*See* City Mem. 14–15.)

"[A]n adjournment in contemplation of dismissal is not considered to be a favorable termination" for purposes of establishing a malicious prosecution claim. *Green v. Mattingly*, 585 F.3d 97, 103 (2d Cir. 2009) (citing *Shain v. Ellison*, 273 F.3d 56, 68 (2d Cir. 2001)); *see also Fulton v. Robinson*, 289 F.3d 188, 196 (2d Cir. 2002) (Under New York law, "an 'adjournment in contemplation of dismissal,' *i.e.*, a conditional dismissal that becomes final 6–12 months thereafter . . . is not a favorable termination because it leaves open the question of the accused's

---

[32] The Court notes that the "formal abandonment" of an action under circumstances "not inconsistent with innocence" can also satisfy the favorable termination element of a malicious prosecution claim. *Smith-Hunter*, 95 N.Y.2d at 198; *see Stampf*, 761 F.3d at 200 (explaining that a dismissal without prejudice may be terminated in a plaintiff's favor, such as a case where "the record demonstrates that the prosecution undertook a full investigation and elected not to proceed with the charges because it determined that the allegations against the plaintiff were not supported by the evidence" (quoting *Verboys v. Town of Ramapo*, 785 N.Y.S.2d 496 (App. Div. 2004))); *Murphy v. Lynn*, 118 F.3d 938, 949 (2d Cir. 1997) (The question of whether an abandonment of a prosecution constitutes a termination favorable "generally depends on the cause of the abandonment."); *Del Col v. Rice*, No. 11-CV-5138, 2012 WL 6589839, at *13 (E.D.N.Y. Dec. 18, 2012), *adhered to on reconsideration*, No. 11-CV-5138, 2013 WL 4052867 (E.D.N.Y. Aug. 12, 2013) ("Generally, a plaintiff cannot establish a favorable termination, where that plaintiff can be prosecuted again for the same charge." (citations omitted)). This matter was remanded by the Appellate Term in October of 2014. The State has not proceeded with the re-prosecution of Plaintiff. Thus, Plaintiff may ultimately be able to satisfy the favorable termination element if the State abandons prosecution of the November 14, 2007 Incident.

guilt." (citations omitted) (citing N.Y. Crim. Proc. L. § 170.55(2))). Similarly, dismissals based on legal insufficiency generally do not satisfy the favorable termination element. *See McGee v. Doe*, 568 F. App'x 32, 39 (2d Cir.), *as amended* (July 2, 2014) ("[A] dismissal under CPL § 170.30 for facial insufficiency is 'not a decision on the merits, an essential element of a cause of action for malicious prosecution.'" (quoting *Breen v. Garrison*, 169 F.3d 152, 153 (2d Cir. 1999)); *Gem Fin. Serv., Inc. v. City of New York*, No. 13-CV-1686, 2014 WL 1010408, at *10 (E.D.N.Y. Mar. 17, 2014) (collecting cases); *De Cicco v. Madison Cty.*, 750 N.Y.S.2d 371, 373 (App. Div. 2002) ("A dismissal based upon the legal insufficiency of a charging instrument is not a termination in favor of plaintiff within the context of a malicious prosecution claim." (citation omitted)). This is, in part, because a dismissal for legal insufficiency lacks the requisite finality to constitute a termination. *See Smith-Hunter*, 95 N.Y.2d at 197 ("[A] plaintiff in a malicious prosecution action must show, as a threshold matter, that the criminal proceeding was *finally* terminated. Indeed, it is well settled that any disposition of the criminal action which does not terminate it but permits it to be renewed . . . cannot serve as a foundation for the [malicious prosecution] action." (alterations in original) (citation and internal quotation marks omitted)); *McGee*, 568 F. App'x at 39−40 (discussing *MacFawn v. Kresler*, 88 N.Y.2d 859 (1996), in light of *Smith-Hunter*'s discussion of finality, and concluding that dismissal was not final as facts did not show "formal abandonment of the proceedings by [the] prosecutor" (quoting *Smith-Hunter*, 95 N.Y.2d at 198)).

Plaintiff has failed to allege a favorable termination of the disorderly conduct proceeding related to the 2010 Incident. Because neither a dismissal for legal insufficiency nor an adjournment in contemplation of dismissal constitute an adjudication of the merits of the disorderly conduct charges against Plaintiff, and because neither reflects a termination of those

charges, Plaintiff cannot satisfy the favorable termination element as a matter of law. *See Breen*, 169 F.3d at 153 ("Because this was not a decision on the merits, an essential element of a cause of action for malicious prosecution, the district court did not err in dismissing [the plaintiff's] claim for malicious prosecution."); *McGee*, 568 F. App'x at 39 (upholding dismissal of section 1983 malicious prosecution claim, finding charge dismissed as facially insufficient had not terminated in plaintiff's favor as required by New York law) (citations omitted). Accordingly, the Court dismisses Plaintiff's malicious prosecution claim based on the 2010 Incident as to all Defendants.

### e. Municipal liability claim

The City Defendants move to dismiss Plaintiff's municipal liability claim arguing that Plaintiff fails to state a claim under any theory of municipal liability. (City Reply 5–7.) The City Defendants summarily argue that the FAC is "devoid of any alleged facts sufficient to support a viable claim of municipal liability" and that Plaintiff's claim must be dismissed because "no policy makers were involved here." (*Id*. at 7.)

To establish a municipal liability claim, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 140 (2d Cir. 2010) (quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)). A plaintiff can establish an official policy or custom by showing any of the following: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised "deliberate indifference" to

the rights of the plaintiff and others encountering those subordinates. *See Iacovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x 10, 13–14 (2d Cir. 2015) (formal policy officially endorsed by the municipality); *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014) (widespread and persistent practice); *Carter v. Inc. Vill. of Ocean Beach*, 759 F.3d 159, 164 (2d Cir. 2014) (failure to train amounting to deliberate indifference); *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012) (policymaking official's "express" or "tacit" ratification of low-level employee's actions).

"Although there is no heightened pleading requirement for complaints alleging municipal liability under § 1983, a complaint does not 'suffice if it tenders naked assertion[s] devoid of further factual enhancement.'" *Green*, 96 F. Supp. 3d at 301–02 (first citing *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993); and then citing *Iqbal*, 556 U.S. at 678). To survive a motion to dismiss a municipal liability claim, "a plaintiff must allege facts tending to support, at least circumstantially, an inference that . . . a municipal policy or custom exists." *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012) (citing *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993)).

Plaintiff alleges that his "case stem[s]" from the "inexperience" and "lack of training, integrity, [and credibility]" of NYPD officers. (FAC ¶ 23.) He alleges that NYPD officers "misuse and abuse a tactic called Stop Question & Frisk" and that the City Defendants "engage in unlawful policy and practices of stop and frisk" and searched Plaintiff where "no criminality" existed. (*Id*. ¶¶ 23–24.) Plaintiff further alleges that the City "failed to supervise and train its employees," which led to the violation of his rights. (*Id*. ¶ 117.)

Plaintiff does not appear to allege that a formal policy governed the use of baseless or racially biased stop and frisk tactics. Rather, liberally construing the FAC, Plaintiff appears to

allege multiple theories of municipal liability: (1) a widespread practice sufficient to constitute a policy or custom; (2) a failure to train officers as to the lawful use of stop and frisk; and (3) a failure to supervise officers despite notice of unlawful use of stop and frisk tactics without cause. (*Id.* ¶¶ 23–24, 117.) For the reasons discussed below, Plaintiff fails to state a claim for municipal liability under any of these theories because the allegations are conclusory and do not support an inference that any constitutional harm to Plaintiff was caused by a deliberate municipal action.

### i.    Widespread practice

A plaintiff "need not identify an express rule or regulation," to impose municipal liability, but can show that the practice "of municipal officials was so persistent or widespread as to constitute a custom or usage with the force of law." *Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015) (quoting *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004)). In other words, a plaintiff can show that there is "a longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 485–87 (1986)). "[I]solated acts . . . by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability." *Jones*, 691 F.3d at 81.

A plaintiff must also allege that a constitutional injury was caused by the policy or custom. *See Harper v. City of New York*, 424 F. App'x 36, 38 (2d Cir. 2011) (stating that a plaintiff must show "a causal connection — an affirmative link — between the policy and the deprivation of his constitutional rights" to establish a claim for municipal liability); *Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) (A custom or policy will be deemed to have "caused" a deprivation of federal rights only if the plaintiff "demonstrate[s] that, through its deliberate

conduct, the municipality was the 'moving force' behind the alleged injury." (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997))).

Plaintiff's allegations are insufficient to state a claim for municipal liability based on a widespread practice. Plaintiff makes conclusory allegations that some of the City Defendants stopped "many NYC residents Blacks, Latinos and in certain communities without cause." (*Id.* ¶ 24; *see also* Pl. Sept. 16, 2015 Submission 18 (alleging that various City officials "failed to adopt written policy prohibiting police stop and frisk which impermissibly used . . . racial disparities . . . with forcible police encounters").) Plaintiff also describes the "history" of the City's stop and frisk program and references specific class action litigation cases, which asserted violations of constitutional rights through NYPD officers' use of stop and frisk tactics. (*Id.* ¶¶ 29, 30, 120 (first citing *Daniels v. City of New York*, No. 03-CV-0809, 2003 WL 22510379 (S.D.N.Y. Nov. 5, 2003); then citing *Floyd v. City of New York*, 959 F. Supp. 2d 540 (S.D.N.Y. 2013)); *see also* Pl. Letter dated Oct. 20, 2015 at 3 (same).)

However, even if Plaintiff's allegations suffice to allege that the City's use of stop and frisk policing tactics constituted a widespread practice, Plaintiff "does nothing to connect his alleged constitutional deprivation to the general 'stop-and-frisk litigation.'" *Outerbridge v. City of New York*, No. 13-CV-5459, 2015 WL 5813387, at *5 n.4 (S.D.N.Y. Sept. 30, 2015) (dismissing a *Monell* claim because the plaintiff failed to make factual allegations that policies or customs caused his alleged rights violations). Plaintiff instead alleges that his arrests and the other alleged violations of his rights were the result of a conspiracy between the City Defendants, SGA and the SGPD Defendants, related to carrying his SGPD identification card. Plaintiff therefore cannot state a claim for municipal liability under a theory of widespread practice because he has not plausibly alleged any "affirmative link" between a practice related to stop and

frisk policing tactics and a violation of his rights. *See Harper*, 424 F. App'x at 38.

### ii. Failure to train or supervise

Plaintiff also fails to plead a claim for municipal liability under a theory of failure to train or supervise. "[A] city's failure to train its subordinates satisfies the policy or custom requirement only where the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) (citing *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). To show deliberate indifference, a plaintiff must allege facts plausibly showing that (1) "a policymaker [knew] 'to a moral certainty' that city employees will confront a particular situation;" (2) "the situation either presents the employee with 'a difficult choice of the sort that training or supervision will make less difficult' or 'there is a history of employees mishandling the situation;'" and (3) "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Wray*, 490 F.3d at 195–96 (quoting *Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir. 1992)); *Reynolds*, 506 F.3d at 192 (same).

"[W]here . . . a city has a training program, a plaintiff must . . . 'identify a specific deficiency in the city's training program and establish that that deficiency is "closely related to the ultimate injury," such that it "actually caused" the constitutional deprivation.'" *Wray*, 490 F.3d at 196 (quoting *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 129 (2d Cir. 2004)). "The plaintiff must offer evidence to support the conclusion that the training program was inadequate, not '[t]hat a particular officer may be unsatisfactorily trained' or that 'an otherwise sound program has occasionally been negligently administered,' and that a 'hypothetically well-trained officer' would have avoided the constitutional violation." *Okin v. Vill. of*

*Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 440–41 (2d Cir. 2009) (quoting *Canton*, 489 U.S. at 390–91).

Similarly, a failure to "supervise city employees may constitute an official policy or custom if the failure amounts to 'deliberate indifference' to the rights of those with whom the city employees interact." *Wray*, 490 F.3d at 195–96 (quoting *Canton*, 489 U.S. at 388). "Where plaintiffs seek to hold a municipality liable under a theory of failure to supervise or discipline, . . . they must also show that the municipal policymaker acted with deliberate indifference." *Pipitone v. City of New York*, 57 F. Supp. 3d 173, 191 (E.D.N.Y. 2014) (citing *Canton*, 489 U.S. at 388–89). Under that standard, "where the need for more or better supervision to protect against constitutional violations was obvious, but the policymaker failed to make meaningful efforts to address the risk of harm to plaintiffs," deliberate indifference "may be inferred." *Cash v. County of Erie*, 654 F.3d 324, 334 (2d Cir. 2011) (alteration, citations and internal quotation marks omitted).

Plaintiff fails to plead facts sufficient to plausibly allege either a failure to train or supervise capable of giving rise to municipal liability. Plaintiff asserts in a general manner that his claims relate to a "lack of training" of NYPD officers, (FAC ¶ 23), and that the City "failed to supervise and train its employees," (*id.* ¶ 117), but Plaintiff makes no allegations concerning the City's training of officers, or the deficiency of such training, with respect to the use of stop and frisk tactics. (*See also* Pl. Sept. 16, 2015 Submission 29 (alleging a "municipality failure to provide adequate training[,] discipline or supervision which . . . rises to the level of deliberate indifference"); Pl. Letter dated Oct. 20, 2015 at 3 (arguing that Plaintiff can "establish municipality failure to provide adequate training[,] discipline or supervision").) Plaintiff's allegations are insufficient to plausibly allege "a specific deficiency in the city's training

program" that is closely related to his "ultimate injury," such that it can be said to have actually caused Plaintiff's constitutional deprivation. *See Wray*, 490 F.3d at 196.

Moreover, Plaintiff fails to plausibly allege that there was an obvious need for increased supervision in order to prevent constitutional violations and that a City policymaker "failed to make meaningful efforts to address" the risk of such a harm. *See Cash*, 654 F.3d at 334 (holding that deliberate indifference can be demonstrated with a showing of such inaction in the face of increased need). Even if the Court treats Plaintiff's references to the *Daniels* and *Floyd* litigation as sufficient to allege a need for supervision, Plaintiff still fails to plead any "affirmative link" between the need to train or supervise police officers as to the legitimate use of stop and frisk tactics and Plaintiff's own false arrest and malicious prosecution. *See Harper*, 424 F. App'x at 38. Therefore, Plaintiff has failed to plead a claim of municipal liability under a theory of failure to train or supervise. Plaintiff's claim of municipal liability is dismissed.

### f. Conspiracy claim

Plaintiff asserts a claim against all Defendants alleging a conspiracy to violate his civil rights. Plaintiff alleges that SGPD Officer Telano notified NYPD Officer Stuyvesant that Plaintiff's employment at the SGPD did not require a firearm license, resulting in the revocation of Plaintiff's license and his subsequent termination by the SGPD due to his failure to maintain that license. (FAC ¶ 64; Dec. 10, 2014 Tr. 24–25.) Defendants argue that, because these events occurred in 1998 and Plaintiff did not commence this litigation until 2013, after the expiration of the applicable three-year limitations period, his claim is time-barred. (City Mem. 22; SGPD Mem. 16; SGA Mem. 5.) The City Defendants and the SGPD Defendants further argue that even if the claim is not time-barred, Plaintiff fails to state a claim because he has only pled vague and conclusory allegations, which are insufficient to allege a "meeting of the minds" among the

alleged co-conspirators or a constitutional injury arising from the alleged conspiracy.[33] (City Mem. 23; SGPD Mem. 15–16.) SGA argues that Plaintiff fails to allege the direct involvement of SGA, as required to state a claim pursuant to section 1983 claim. (SGA Reply, 9–10.)

### i. Statute of limitations

As with Plaintiff's other section 1983 claims, a three-year New York statute of limitations period applies to conspiracy claims. *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (applying the three year statute of limitations to a section 1983 conspiracy claim); *see also Melendez*, 477 F. App'x at 803 (stating that the statute of limitations for all section 1983 actions arising in New York State is three years); *Harrison*, 468 F. App'x at 36 (same). "For claims alleging civil conspiracies, including conspiracies to violate an individual's civil rights, 'the cause of action accrues and the statute of limitations begins to run from the time of commission of the overt act alleged to have caused damages.'" *Allen v. Mattingly*, No. 10-CV-0667, 2011 WL 1261103, at *11 (E.D.N.Y. Mar. 29, 2011), *aff'd*, 478 F. App'x 712 (2d Cir. 2012) (quoting *Chodos v. Federal Bureau of Investigation*, 559 F. Supp. 69, 74 (S.D.N.Y. 1982), *aff'd*, 697 F.2d 289 (2d Cir. 1982)); *see also Pearl v. City of Long Beach*, 296 F.3d 76, 87 (2d Cir. 2002) ("[A]ccrual of a cause of action based on specific acts of which a plaintiff was aware cannot be postponed simply by alleging that the acts were taken pursuant to a conspiracy.").

Plaintiff alleges that his conspiracy claim rests on conduct from 1998, when SGPD Officer Telano allegedly notified an NYPD officer that Plaintiff's employment did not require a firearm license. (Dec. 10, 2014 Tr. 24–25.) Because this "overt act" took place over fourteen

---

[33] SGA also argues that Plaintiff's conspiracy claim should be dismissed because the continuing violation doctrine is inapplicable. (SGA Reply 9.) Because Plaintiff's conspiracy claim fails for other reasons, the Court declines to address this argument.

years before the commencement of the instant action, the claim is untimely and is barred by the statute of limitations. *See Chen v. City of New York*, 622 F. App'x 66, 67 (2d Cir. 2015).

### ii. Failure to state a claim

Even if Plaintiff's section 1983 claim is timely, it fails to state a claim. "To state a § 1983 conspiracy claim, the plaintiff 'must allege (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages.'" *Chen*, 622 F. App'x at 67 (quoting *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002)); *McGee v. Doe*, 568 F. App'x 32, 35 (2d Cir. 2014), *as amended* (July 2, 2014). To state a section 1983 claim against a private entity, a plaintiff "must 'allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act.'" *Betts v. Shearman*, 751 F.3d 78, 84 (2d Cir. 2014) (quoting *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992)) (explaining that a private actor's conduct is under color of state law when the actor "is a willful participant in joint activity" with the state actor (internal quotation marks and citation omitted)); *see also Young v. Suffolk Cty.*, 705 F. Supp. 2d 183, 197 (E.D.N.Y. 2010) (stating with respect to a § 1983 conspiracy claim that while "[a] plaintiff is not required to list the place and date of defendants['] meetings and the summary of their conversations . . . , the pleadings must present facts tending to show agreement and concerted action" (citations omitted)). To be a "willful participant in joint activity" with a state actor, the private actor and state actor must "share some common goal to violate the plaintiff's rights." *Betts*, 751 F.3d at 85 (citation omitted); *see Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999).

Even assuming that Plaintiff's conspiracy claim is timely, Plaintiff nevertheless fails to state a claim because he fails to allege any agreement between SGPD Officer Telano, or any

other SGPD Defendants or representatives of SGA, and any of the City Defendants. Instead, Plaintiff alleges that a conspiracy existed because Officer Telano gave the NYPD false information, which caused the NYPD to revoke Plaintiff's firearm license and thereby provided the SGPD with a basis to terminate Plaintiff's employment. (*See* FAC ¶ 64.) Plaintiff does not allege that Officer Abraham or any of the other City Defendants agreed with SGPD Officer Telano to attempt to cause Plaintiff's termination or to harm Plaintiff in any other manner.[34] *See Ciambriello*, 292 F.3d at 324 ("A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity."); *Betts*, 751 F.3d at 84 n.1, 86 (upholding dismissal of section 1983 claims on basis of failure to sufficiently plead joint action with state actors where plaintiff claimed police officers assisted and coached private individual in making a false statement); *Jae Soog Lee v. Law Office of Kim & Bae, PC*, 530 F. App'x 9, 10 (2d Cir. 2013) (upholding dismissal of section 1983 claim because the complaint lacked "allegations, made in a non-conclusory way, setting out the overt acts, and the agreement, that allegedly comprised the conspiracy"). The Court therefore dismisses Plaintiff's section 1983 conspiracy claim for failure to state a claim as against all Defendants.

---

[34] To the extent that Plaintiff also, or alternatively, seeks to assert a conspiracy claim pursuant to 42 U.S.C § 1985, such a claim fails for the same reasons that Plaintiff fails to state a conspiracy claim pursuant to section 1983. "In order to maintain an action under [s]ection 1985, a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (internal quotation marks and citation omitted). Even affording the FAC a liberal reading, it contains no factual allegations that there was any meeting of the minds to achieve an unlawful end. *See id.*

### g.  Defamation claims

Plaintiff asserts claims for defamation against SGA and the SGPD Defendants, based on Defendants' alleged statements regarding Plaintiff's firearm license and his employment.  SGA and the SGPD Defendants argue that defamation claims based on any of these statements are time-barred.[35]  (SGPD Mem. 7; SGPD Reply 18–19; Assoc. Mem. 3.)

"Under New York law, the elements of a defamation claim are 'a false statement, published without privilege or authorization to a third party, constituting fault . . . and it must either cause special harm or constitute a defamation per se.'"[36]  *Peters v. Baldwin Union Free Sch. Dist.*, 320 F.3d 164, 169 (2d Cir. 2003) (quoting *Dillon v. City of New York*, 704 N.Y.S.2d 1, 5 (App. Div. 1999)); *see Kerik v. Tacopina*, 64 F. Supp. 3d 542, 568 (S.D.N.Y. 2014) ("[T]he elements of a defamation claim are: (1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence." (citing *Dillon*, 704 N.Y.S.2d at 5)).  A defamatory statement exposes an individual "to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or . . . induces an evil opinion of one in the minds of right-thinking persons, and . . . deprives one of . . . confidence and friendly

---

[35]  The SGPD Defendants further argue that Plaintiff fails to state a claim based on the statements by Officer Abraham to the New York City Department of Personnel, because he has not alleged a defamatory statement with the requisite specificity, including the timing of the statement.  (SGPD Mem. 8–9.)  In addition, the SGPD Defendants argue that Plaintiff's defamation claims are barred by applicable immunity doctrines.  (SGPD Mem. 9–10.)  Because the Court dismisses these claims on other grounds, it declines to address these arguments.

[36]  Claims for defamation do not implicate rights secured by the Constitution or the laws of the United States and, thus, are not actionable under section 1983.  *Rathbun v. DiLorenzo*, 438 F. App'x 48, 51 (2d Cir. 2011) (citing *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004)) ("Defamation, however, is an issue of state law, not of federal constitutional law, and therefore provides an insufficient basis to maintain a § 1983 action.").

intercourse in society." *Thorsen v. Sons of Norway*, 996 F. Supp. 2d 143, 163 (E.D.N.Y.) (internal quotation marks and citations omitted) (quoting *Karedes v. Ackerley Grp., Inc.*, 423 F.3d 107, 112 (2d Cir. 2005)), *reconsideration denied* (May 14, 2014).

The statute of limitations for defamation in New York is one year. N.Y. C.P.L.R. § 215(3); *see McKenzie v. Dow Jones & Co., Inc.*, 355 F. App'x 533, 535 (2d Cir. 2009); *Firth v. State*, 98 N.Y.2d 365, 368 (2002). The limitations period begins to run once the allegedly defamatory statements are made, "even if it would have been impossible for the plaintiff to discover the injury at that time." *Conte v. Cty. of Naussau*, 596 F. App'x 1, 4 (2d Cir. 2014) ("Under New York law, a defamation claim must be asserted within one year of the date on which the defamatory statement was published or uttered to a third party . . . ."); *Nussenzweig v. diCorcia*, 9 N.Y.3d 184, 188 (2007) ("[A] a cause of action for defamation accrues on the date the offending material is first published.").

Plaintiff's defamation claims are based on two statements. First, Plaintiff asserts that SGPD Officer Telano falsely told the NYPD that Plaintiff's employment with the SGPD did not require a firearm license. (FAC ¶ 64; Dec. 10, 2014 Tr. 24.) Plaintiff alleges that Telano's statement caused both the revocation of his firearm license and his termination by the SGPD, for failure to maintain a firearm license. (FAC ¶ 64.) Plaintiff alleges in the FAC that the statements by Officer Telano occurred in 1998. (*Id.*) Plaintiff did not commence this action until February 19, 2013, over a decade after the expiration of the one-year statute of limitations. As a result, Plaintiff cannot maintain a defamation claim based on the statements by Officer Telano.

Second, Plaintiff asserts that representatives of SGA and the SGPD made false statements to Plaintiff's potential employers, including the New York City Hospital Police, the NYPD and

the New York City Department of Personnel, which prevented Plaintiff from obtaining multiple positions. (*See* FAC ¶¶ 39, 147–48; Dec. 10, 2014 Tr. 21–22.) Plaintiff alleges that in 2002, SGPD Police Chief Abraham incorrectly told a potential employer that Plaintiff was terminated for misconduct. (FAC ¶ 148.) Plaintiff also states that the allegedly defamatory comments to the New York City Hospital Police, the New York City Department of Personnel and the NYPD each occurred in or about 2006. (Dec. 10, 2014 Tr. 21–22.) Because each of these statements was made more than a year prior to the commencement of this action, Plaintiff's defamation claims based on these statements are untimely. The Court therefore dismisses Plaintiff's defamation claims against SGA and the SGPD Defendants.

### h. Intentional infliction of emotional distress claims

Plaintiff brings claims for intentional infliction of emotional distress against all Defendants, stating that the allegedly defamatory statements by SGPD officers and his arrests by NYPD officers caused him emotional harm. (*See* FAC ¶¶ 176, 181; Dec. 10, 2014 Tr. 23.) The City Defendants argue that any claim related Plaintiff's arrests by NYPD officers are time-barred, and that any intentional infliction of emotional distress claim related to defamatory statements by SGPD officers does not apply to the City Defendants. (City Mem. 19.) SGA and the SGPD Defendants argue that this claim is barred by the statute of limitations because Plaintiff has not alleged any "actionable incidents" after February 19, 2012, within the one year prior to the commencement of this action. (SGA Mem. 3; SGPD Mem. 11.) SGA also argues that Plaintiff has not alleged sufficiently "outrageous" or "atrocious" conduct to state a claim for intentional infliction of emotional distress. (SGA Reply 6–7.) The SGPD Defendants further contend that intentional infliction of emotional distress is a claim of "last resort," which Plaintiff

cannot use to remedy conduct that falls within the ambit of defamation, a separate tort.  (SGPD

Mem. 11–12.)

To state a claim for intentional infliction of emotional distress, a plaintiff must plead:

"(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability

of causing, severe emotional distress; (iii) a causal connection between the conduct and injury;

and (iv) severe emotional distress."  *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 122 (1993); *see*

*Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014) (outlining test for intentional

infliction of emotional distress).  Under New York law, a claim for intentional infliction of

emotional distress is subject to a one year statute of limitations.  *Conte*, 596 F. App'x at 5 (citing

N.Y. C.P.L.R. § 215(3)); *see Schafler v. Aloi*, 31 F. App'x 770, 771 (2d Cir. 2002) (finding no

error in the district court's dismissal of state law claims including intentional infliction of

emotional distress "on the basis of New York's one-year statute of limitations"); *Tornheim v.*

*Fed. Home Loan Mortgage Corp.*, 198 F.3d 235 (2d Cir. 1999) (stating that "a one-year statute

of limitations" applies to "claims alleging intentional infliction of emotional distress").

The "cause of action arises on the date of injury."  *Conte*, 596 F. App'x at 5 (citing

*Wilson v. Erra*, 942 N.Y.S.2d 127, 129 (App. Div. 2012)); *De Santis v. City of New York*,

No. 10-CV-3508, 2014 WL 228659, at *4 (S.D.N.Y. Jan. 22, 2014) (same); *Lilly v.*

*Lewiston-Porter Cent. Sch. Dist.*, 853 F. Supp. 2d 346, 362 (W.D.N.Y. 2011) ("Such a claim

accrues at the time the plaintiff experiences severe emotional distress resulting from the

defendant's extreme and outrageous conduct.").  "Where the claim is based upon a series of

injuries," the accrual date is not until the "last actionable act."  *Wilson*, 942 N.Y.S.2d at 129

(quoting *Dana v. Oak Park Marina, Inc.*, 660 N.Y. S.2d 906, 911 (App. Div. 1997)); *see also*

*Lowe v. Hous. Works, Inc.*, No. 11-CV-9233, 2013 WL 2248757, at *12 (S.D.N.Y. May 15,

2013) ("[A]ccrual occurs when the claim becomes enforceable . . . ." (citation omitted)).

However, when a plaintiff asserts the claim as a state law cause of action against a municipality, including "any officer, agent, or employee thereof," a one-year-and-ninety-day statute of limitations applies, which "takes precedence over" the limitations period generally applicable to intentional torts claims. *Conte*, 596 F. App'x at 5 (first quoting N.Y. Gen. Mun. Law § 50–i; and then quoting *Wright v. City of Newburgh*, 686 N.Y.S. 2d 74, 74–75 (App. Div. 1999)); *see also Townes v. City of New York*, 176 F.3d 138, 142 (2d Cir. 1999) (stating that the statute of limitations under New York law for suits against the City and its employees is a year and ninety days).

Plaintiff states that his intentional infliction of emotional distress claim is based on "the whole episode with the arrest" and "the slanderous remark by Sea Gate," which he alleges "became a factor of [his] health." (Dec. 10, 2014 Tr. 23:16–23:19.) Plaintiff's claim that his arrests by NYPD officers caused him emotional distress is time-barred, as he was most recently arrested on May 6, 2010, over two and a half years prior to the commencement of this action. *Conte*, 596 F. App'x at 5 (upholding a dismissal of an intentional infliction of emotional distress claim as time-barred). Plaintiff also alleges emotional harm due to false statements allegedly made by SGPD officers to Plaintiff's potential employers, which, to the extent that Plaintiff provides specific dates of the statements, were made in or about 2006. (*See* FAC ¶¶ 39, 147–148; Dec. 10, 2014 Tr. 21:12–22:10.) Therefore, a claim for intentional infliction of emotional distress based on the alleged statements by SGPD officers is barred by the one-year statute of limitations. Plaintiff's claim for intentional infliction of emotional distress is therefore dismissed as to all Defendants.

### i. Assault claims

Plaintiff alleges that Officer Boyd, Detective Sanders and Lieutenant Campbell assaulted him on May 6, 2010 during his arrest. (July 15, 2015 Min. Entry.) He states that Boyd and the two other officers used "physical force [to] grab and restrain [him]" and that he was "t[a]ckle[d] and assaulted." (FAC ¶¶ 91–92.) Plaintiff alleges that Officer Boyd stated "[d]rop the camera or I will sho[o]t you dead" and "slap[ped]" the camera out of Plaintiff's hands. (*Id.* ¶ 92.) The City Defendants argue that this claim is outside the applicable one-year-and-ninety-day limitations period. (City Reply 5).

To state a claim for assault under New York law, a plaintiff must be put in "fear of imminent harmful or offensive contact." *Farash v. Cont'l Airlines, Inc.*, 337 F. App'x 7, 9 (2d Cir. 2009) (citing *United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.*, 994 F.2d 105, 108 (2d Cir. 1993)); *Cunningham v. United States*, 472 F. Supp. 2d 366, 380 (E.D.N.Y. 2007) ("[An] 'assault' under New York law [is] 'an intentional placing of another person in fear of imminent harmful or offensive conduct.'" (quoting *Girden v. Sandals Int'l*, 262 F.3d 195, 203 (2d Cir. 2001))). State law assault claims against police officers and federal excessive force claims are nearly identical. *See Humphrey v. Landers*, 344 F. App'x 686, 688 (2d Cir. 2009) ("[E]xcept for § 1983's requirement that the tort be committed under color of state law, the essential elements of excessive force and state law assault and battery claims are substantially identical." (alteration omitted) (quoting *Posr v. Doherty*, 944 F.2d 91, 94–95 (2d Cir. 1991))). A plaintiff "must show the defendant's conduct 'was not reasonable within the meaning of the New York statute concerning justification for law enforcement's use of force in the course of performing their duties.'" *Torres-Cuesta v. Berberich*, 511 F. App'x 89, 91 (2d Cir. 2013) (quoting *Nimely v. City of New York*, 414 F.3d 381, 391 (2d Cir. 2005)). Under New York State law, "[i]f an arrest

is determined to be unlawful, any use of force against a plaintiff may constitute an assault and battery, regardless of whether the force would be deemed reasonable if applied during a lawful arrest." *5 Borough Pawn, LLC. v. Marti*, 753 F. Supp. 2d 186, 201 (S.D.N.Y. 2010) (citing *Sulkowska v. City of New York*, 129 F. Supp. 2d 274, 294 (S.D.N.Y. 2001)).

In New York, claims for the intentional tort of assault are governed by a one-year statute of limitations. N.Y. Civ. Prac. L. & R. § 215(3); *see also Ashjari v. Nynex Corp.*, 182 F.3d 898 (2d Cir. 1999) ("Under N.Y. C.P.L.R. § 215(3), claims of assault and battery . . . must be brought within one year from the date the claim accrued."); *Sawyer v. Wight*, 196 F. Supp. 2d 220, 228 (E.D.N.Y. 2002) ("There is a one year statute of limitations for assault and battery claims in New York."). However, as explained above, when asserted against a municipality or its employees, as a state law cause of action, a one-year-and-ninety-day statute of limitations applies to the assault claim. *Conte*, 596 F. App'x at 5; *Townes*, 176 F.3d at 142.

The date of the Plaintiff's alleged assault, May 6, 2010, is more than a year and ninety days prior to the commencement of this suit. Therefore, Plaintiff's assault claims are barred by the statute of limitations. The Court therefore grants Defendants' motion to dismiss Plaintiff's assault claims.

### III. Conclusion

For the foregoing reasons, the Court denies the City Defendants' motion to dismiss as to Plaintiff's section 1983 false arrest claims against Officers Boyd and Murphy, Detective Sanders and Lieutenant Campbell based on his 2010 arrest. The Court dismisses without prejudice Plaintiff's section 1983 claim for malicious prosecution related to the November 14, 2007 Incident, as against all Defendants. The Court otherwise grants the City Defendants' motion to dismiss. The Court otherwise grants the motions to dismiss by SGA and the SGPD Defendants in their entirety.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: March 25, 2016
      Brooklyn, New York