UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

JOHN FREDERICK,

              Plaintiff,        **MEMORANDUM & ORDER**
                                      13-CV-0897(EK)(ST)
      -against-

NEW YORK CITY POLICE OFFICER DERRICK
BOYD #10014, et al.,

              Defendants.

-------------------------------------x
ERIC KOMITEE, United States District Judge:

      Plaintiff brings a false-arrest claim under 42 U.S.C. § 1983 against three officers of the New York City Police Department. The claim stems from Plaintiff's arrest on May 6, 2010.[1] Defendants moved for summary judgment on the grounds that they had probable cause for the arrest and, in any event, are shielded by the qualified immunity doctrine. Judge Margo Brodie, the presiding judge at the time, denied their motion for summary judgment.[2] Defendants move for reconsideration of that decision, citing three New York State court decisions that predate Judge Brodie's decision, but that they failed to call to

---

[1] Plaintiff initially pled additional claims for malicious prosecution, and other violations against multiple defendants. In March 2016, Judge Brodie dismissed all but the false-arrest claim against the three Defendants named here, plus a fourth officer who was later dismissed. *See* ECF Nos. 95, 124.

[2] This case was transferred to the undersigned in February 2020.

1

her attention in their summary-judgment briefing.  For the reasons that follow, I grant the motion in part and deny it in part.  Plaintiff's false-arrest claim will proceed to trial, but the scope of the claim will be limited as set forth below.

### I. Background

The following facts are drawn from Plaintiff's complaint and his deposition testimony, unless otherwise noted.[3]  On May 6, 2010, New York City police officers arrested Plaintiff in connection with a purported traffic violation.  The incident began when Plaintiff parked his car outside a jewelry store in Brooklyn.  As he exited the store, Plaintiff saw three plainclothes officers (the Defendants here) sitting in an unmarked vehicle beside his car.  From their vehicle, the officers told Plaintiff that "[y]our car is blocking the sidewalk."  Deposition of John Frederick at 27:7-15, ECF No. 135-1 ("Frederick Dep.").  Plaintiff disputes that the car was blocking the sidewalk.  *Id.* 28:23-29:4 (testifying that the car was "not parked close to the crosswalk at all," and was not

---

[3] Because Plaintiff, proceeding *pro se*, filed a "verified complaint" attaching a notarized form attesting to the truth of his allegations, the complaint is "treated as an affidavit for summary judgment purposes, and therefore will be considered in determining whether material issues of fact exist, provided that it meets the other requirements for an affidavit under Rule 56(e) [now 56(c)]."  *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995), *abrogated on other grounds by Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020); *see also Curtis v. Cenlar FSB*, 654 F. App'x 17, 20 (2d Cir. 2016) (same); Fifth Amended Complaint at ECF page 44, ECF No. 86 ("Compl.") (notarized form attesting that the contents of the complaint are "true to [Plaintiff's] knowledge").

2

parked illegally). Plaintiff then told the officers to "give [the car] a ticket" and began videotaping them. *Id.* 27:10-15.

As Plaintiff recorded the interaction, the officers exited their vehicle, "rushed" Plaintiff, and "tackled [him] to the ground." *Id.* 27:12-15. When Plaintiff tried to pick up his phone, they "restrained" him by holding both his arms. *Id.* 59:22-60:4. One officer told Plaintiff he would "shoot [him] dead" if he picked up the phone. *Id.* 62:22-63:2.

At some point "while" Plaintiff was "restrain[ed]," the officers asked him for his license, vehicle registration, and insurance card. Compl. ¶ 45; *but see* Deposition of Derrick Boyd 154:9-10, ECF No. 133-3 ("I exited the car and asked [Plaintiff] for his identification."). The parties agree that when asked for these documents, Plaintiff refused to comply. Compl. ¶ 45 (asserting that Officers Boyd and Sanders demanded Plaintiff's license, registration, and insurance card "while" restraining him, and acknowledging that "the plaintiff refused" this request). The officers then handcuffed Plaintiff and drove him to the 77th precinct stationhouse. Frederick Dep. 63:22-64:1. Three summonses were issued: for obscene language, failure to comply with a lawful order, and obstructing pedestrian traffic. These charges were later dismissed or adjourned in contemplation of dismissal.

## II. Procedural History

On motion for summary judgment, Defendants argued that the arrest was lawful because there was probable cause to conclude that Plaintiff broke the law by refusing their request for his license and registration. This argument is predicated on Rule 4-12(a)(3) of the New York City Traffic Rules and Regulations, which provides that "[v]ehicle operators must present and/or surrender their operator's license, vehicle registration and insurance documents upon request of a law enforcement officer." N.Y.C. Traf. Rules & Regs. Title 34, Chap. 4, 4-12(a)(3) ("New York City Traffic Rules"). As Judge Brodie noted, the critical question on summary judgment was whether Rule 4-12(a)(3) applied to Plaintiff at all. Plaintiff argued that it did not, because the term "operators" in that Rule only extends to persons inside the car — not those standing outside the vehicle.

Judge Brodie agreed with Plaintiff's interpretation of Rule 4-12(a)(3). She noted that the existence of probable cause is determined by state law, and that New York law is unsettled on the question of whether the word "operators" in Rule 4-12(a)(3) extends to persons outside the vehicle. She thus turned to other sources of authority — namely, (1) the dictionary definition of the term "operator"; (2) the use of the term "operator" in other parts of the New York City Traffic

4

Rules; and (3) the use of the term "operator" in New York State's Vehicle and Traffic Law ("VTL"), along with New York State cases interpreting the VTL. Analyzing those materials, she concluded that "operators" excludes persons standing outside a car (such as Plaintiff). She also held that, in light of the factual disputes surrounding the arrest, a finding of qualified immunity was inappropriate.[4]

Defendants now move for reconsideration of that decision. They base this request on three New York State cases they discovered after the summary-judgment order was issued.

### III. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact" and that he "is entitled to judgment as a matter of law." Fed. R.

---

[4] Defendants contend that Plaintiff's refusal to produce a license and registration also violated a different state statute — namely, Section 195.05 of the New York Penal Law. Section 195.05 provides that a person "is guilty of obstructing governmental administration when he intentionally obstructs, impairs, or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means . . . of any independently unlawful act . . . ."

Judge Brodie noted that the Section 195.05 offense requires, at a minimum, an underlying violation of Rule 4-12(a)(3). Memorandum & Order at 17, ECF No. 140 ("The Court's determination that, based on the facts of this case, Plaintiff was not an operator of the vehicle . . . necessarily means that Plaintiff's failure to provide his license, registration, and insurance documents does not support probable cause to arrest Plaintiff for obstruction of governmental administration."). She explained that the mere refusal to turn over identification documents to officers does not constitute unlawful obstruction of government administration, unless the refusal itself is independently unlawful. *Id.* (citing *Uzoukwu v. City of New York*, 805 F.3d 409, 414-15 (2d Cir. 2015) (stating that "under New York law obstruction of governmental administration cannot rest upon refusal to provide identification" alone)).

5

Civ. P. 56(a). A material fact is one that "can affect the outcome under the applicable substantive law." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). A genuine dispute is one that can "reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In performing this analysis, the Court must resolve all ambiguities and draw all inferences in favor of the non-moving party. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994). "If, in this generous light, a material issue is found to exist, summary judgment is improper." *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n*, 182 F.3d 157, 160 (2d Cir. 1999).

The moving party may establish that there is no genuine dispute "by showing that little or no evidence may be found in support of the nonmoving party's case." *Gallo*, 22 F.3d at 1223-24 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If the moving party meets this burden, the non-moving party "must come forward with specific facts showing that there is a genuine issue for trial." *LaBounty v. Coughlin*, 137 F.3d 68, 73 (2d Cir. 1998). However, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (internal citations and

6

quotations omitted). If "no rational finder of fact could find in favor of the nonmoving party because the evidence to support its case is so slight, summary judgment must be granted." *Id.* (internal quotations omitted).

**IV. Analysis**

Before turning to the merits, I address Plaintiff's claim that this motion is procedurally improper. Although motions for reconsideration are "disfavor[ed]" in this Circuit, *e.g.*, *United States v. Barclay Capital, Inc.*, No. 16-CV-7057, 2017 WL 5054716, at *1 (E.D.N.Y. Nov. 2, 2017), this is an appropriate case for one. The limitations on reconsideration motions are less restrictive when the challenged decision is an interlocutory order, such as the denial of summary judgment. *See Vornado Realty Tr. v. Marubeni Sustainable Energy, Inc.*, 987 F. Supp. 2d 267, 276 (E.D.N.Y. 2013) ("Because the denial of a motion for summary judgment is an interlocutory order, the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law."). It is suboptimal (to say the least) that Defendants failed to locate the cases at issue earlier, given the centrality of this legal issue. But if consideration of the newly unearthed cases would preclude liability (in part or

whole) at trial, even on the admitted facts, it would make no sense to ignore them now.

A.      **Merits of the Motion**

Plaintiff admits that he refused to comply with Defendants' request to produce identification documents. Thus, if Rule 4-12(a)(3) required such production, there is no factual dispute that he violated that Rule (and, as a consequence, that the officers had probable cause to arrest him).[5] As noted above, Judge Brodie concluded that the Rule did not apply to him because he was not an "operator" of the vehicle within the meaning of that Rule.

Defendants argue that the cases they discovered change this analysis, and therefore warrant summary judgment on at least part of Plaintiff's claim. These cases, they assert, show that the term "operators" includes persons outside the vehicle, and that the officers therefore had probable cause to arrest Plaintiff for violating Rule 4-12(a)(3) and NYPL § 195.05.

---

[5] Plaintiff argues that, even if Frederick violated Rule 4-12(a)(3) of the New York City Traffic Rules, a reasonable jury could conclude that Defendants lacked probable cause for the arrest because the officers arrested him for other reasons — namely, for using obscene language, failing to comply with a lawful order, and obstructing pedestrian traffic. *See* Pl.'s Supp. Br. at 2, ECF No. 164. But the law is clear that "officers who [have] objective probable cause to arrest individuals for *any* crime — whether or not that particular crime was closely related to the offense the officers said was the reason for arrest — [are] not subject to damages for false arrest under [Section] 1983." *Berg v. Kelly*, 897 F.3d 99, 111 (2d Cir. 2018). Thus, if Rule 4-12(a)(3) applied to Plaintiff, no question of fact exists as to whether Defendants had probable cause to arrest him following his admitted refusal to produce his identification documents.

8

The cases Defendants have identified may not definitively resolve the "operators" issue. They do, however, establish definitively that reasonable minds can differ — indeed, have differed — on the matter. Under the doctrine of qualified immunity, this showing requires reconsideration. Defendants' motion, therefore, must be granted in part.

1. The Qualified-Immunity Standard

Under Supreme Court and Second Circuit precedent, police officers are afforded broad legal protection by the doctrine of qualified immunity, which "protects government officials from suit if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013) (internal quotations omitted). To determine whether the doctrine applies, a court must assess: "(1) whether [a] plaintiff has shown facts making out [a] violation of a constitutional right; (2) if so, whether that right was 'clearly established'; and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful." *Id*. "The objective reasonableness test is met — and the defendant is entitled to immunity — if officers of reasonable competence could disagree on the legality of the defendant's actions." *Rothman v. N.Y.C. Transit Auth.*, 215 F.3d

208, 216 (2d Cir. 2000) (internal quotations omitted).  This standard protects "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  Because the Defendants have invoked the doctrine of qualified immunity, I review the merits of Plaintiff's claim through this lens.

   2.  <u>Elements of a False-Arrest Claim</u>

As noted above, Plaintiff's only remaining claim is for false arrest.  When assessing Section 1983 claims for false arrest, courts look to the law of the state in which the arrest occurred.  *Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004).  Under New York law, a plaintiff must show that "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged."  *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003).

"The existence of probable cause to arrest," however, "constitutes justification and is a complete defense to an action for false arrest."  *Lozada v. Weilminster*, 92 F. Supp. 3d 76, 88 (E.D.N.Y. 2015) (internal quotations omitted).  Probable cause operates as a defense even if the violation in question was "a very minor criminal offense."  *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (arrest for seatbelt violation);

*see also Sands v. City of New York*, No. 056-CV-5275, 2006 WL 2850613, *5 (E.D.N.Y. Oct. 3, 2006) (dismissing false-arrest claim because there was probable cause to arrest plaintiff for littering). The defense applies even when an officer initially arrested the defendant for an offense other than the one giving rise to probable cause. *See Figueroa v. Mazza*, 825 F.3d 89, 99 (2d Cir. 2016) ("The existence of probable cause to arrest — even for a crime other than the one identified by the arresting officer — will defeat a claim of false arrest under the Fourth Amendment."). "[A]n arresting officer will . . . be entitled to qualified immunity from a suit for damages if he can establish that there was arguable probable cause to arrest." *Escalara v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (internal quotations omitted).

In determining whether conduct gives rise to a state crime (and thus probable cause), federal courts must of course turn to state law. If the question is "unsettled" in state court, the court must "carefully predict how the state's highest court would resolve the uncertainties." *Travelers Ins. Co. v. Carpenter*, 411 F.3d 323, 329 (2d Cir. 2005) (cleaned up). This is the crux of the issue here.

3. Analysis

As Judge Brodie noted, New York State courts have not squarely resolved this question. But the three cases Defendants

11

discovered support a broader view of the term "operators" than the one this Court initially adopted (without the benefit of those cases). At a minimum, these cases provide definitive support for the conclusion that the officer-defendants here violated no "clearly established" provision of New York law when they arrested the Plaintiff for failing to produce his license documents.

Indeed, one of the cases Defendants cite, *People v. Frank*, 305 N.Y.S.2d 940, 943-44 (N.Y. Sup. Ct. 1969), considered the term "operating" in an almost identical provision of the VTL, and concluded that it applies to a former driver of a car who was outside the vehicle when approached by law enforcement. *Frank* interpreted Section 401 of the VTL, which provided at the time that "every person operating a vehicle . . . shall upon demand of any . . . peace officer . . . produce for inspection . . . and shall furnish . . . any information necessary for the identification of such vehicle and its owner." *Id.* at 943-44 (quoting N.Y. Veh. & Traf. L. § 401). In holding that this section applied to a person outside his vehicle, the court stated that the former driver of a car was the "operator" because his admission that he owned the car, along with his accession to the officers' requests to search it, established the defendant's "dominion" over the vehicle. *Frank*, 305 N.Y.S. 2d at 945 ("While it is true that the statute speaks of a demand

12

for identification of the motor vehicle upon the 'person operating a motor vehicle,' it would seem apparent that the intent of the statute is to cover not only the person actually operating the vehicle but also anyone who exercises dominion over a motor vehicle" registered in New York). As the state court explained in *Frank*, "it is indisputable" that the car "was operated" shortly before the officer saw it, that the defendant "acknowledged that he owned it," and that the defendant "acced[ed] to [the officer's] request for permission to look at the car (albeit superfluous[ly])." *Id.*

The same analysis (largely) applies here, even on the undisputed facts: when approached by the officers on the date in question, Plaintiff did not dispute that he owned the car or that he had parked it where it stood; instead, he told Defendants to ticket it. *See* Compl. ¶ 45 (Plaintiff told the officers to "give the car a ticket"). At a minimum, these facts rendered the officers justified in assuming that Plaintiff exercised "dominion" over the car, as was key to the definition of "operate" in *Frank*.

Another New York State court read the word "operating" similarly in *People v. Ceschini*, 310 N.Y.S.2d 581 (N.Y. Crim. Ct. 1970). Ceschini was arrested for leaving the scene of an accident, and moved to dismiss the criminal complaint on the basis that the statute he was charged with violating — Section

600 of the VTL — did not reach his conduct. Section 600 prohibits "[a]ny person operating a motor vehicle" who causes damage to property from "leav[ing] the place where the damage occurred"; Ceschini argued that it did not reach his conduct because he had exited the car prior to the accident in question. (He left the engine running, and the driverless vehicle then collided with a parked car "under circumstances which [Ceschini] did not choose to explain."). *Id.* at 582. The court held that Ceschini's arrest was proper because "a person may be 'operating' a vehicle" within the meaning of Section 600 "while it is at rest or even when the person against whom civil or criminal sanctions are invoked is outside the vehicle." *Id.* at 583. The court reasoned that "cause and effect are not housed in compartments insulated from each other, but rather . . . one flows into the other"; thus, because Ceschini's actions while he was in the car "caused" the accident after he left the car, he was the "operator" for purposes of the statute. As in *Ceschini*, Plaintiff admittedly operated the vehicle when he performed the act that gave rise to the Rule 4-12(a)(3) encounter — namely, by parking it where it stood. The same cause-and-effect underpinning Ceschini's "operator" analysis therefore applies here with equal force.

Lastly, in *People v. Jeffrey*, 998 N.Y.S.2d 307 (N.Y. Crim Ct. 2014), the court held that officers could conclude a

14

person found hiding under a vehicle and clutching its keys had "operated" the car for purposes of VTL Sections 1192(3), 1192(1), 600(1)(a), and 509(1), which prohibit the "operation" of vehicles while intoxicated (among other things). *Jeffrey*, 998 N.Y.S.2d at 307 (holding that these allegations "collectively support the conclusion that the defendant had recently 'operated' the now inoperable vehicle"). As *Jeffrey* suggests, a reasonable police officer could have concluded, based on the circumstantial evidence, that Plaintiff was the "operator" of the vehicle.

In light of these precedents, it simply cannot be said that no reasonable officer in Defendants' position would have seen probable cause to arrest Plaintiff after he refused to produce his identification documents. Frederick evidenced his "dominion" over the car, as in *Frank*, and there was a cause-and-effect between his actions (in parking it) and the circumstances leading to the alleged underlying violation, as in *Ceschini*. Accordingly, the officers did not violate "clearly established" constitutional or statutory rights when they arrested him under a law requiring that "operators" of a car produce certain

documents on request, and Frederick (by his own admission) refused.⁶

I noted above that probable cause operates as a defense even if the violation in question was "a very minor criminal offense." *Atwater*, 532 U.S. at 354. A New York "traffic infraction is not a crime" — even a very minor one. *See* VTL § 155. But violations of the New York City Traffic Rules are nonetheless arrestable offenses. *See* N.Y. C.P.L. § 140.05 (persons believed to have committed an "offense" may "be arrested for such offense" without a warrant); VTL § 155 ("For purposes of arrest without a warrant, pursuant to [N.Y. C.P.L. § 140], a traffic infraction shall be deemed an offense."); *see also United States v. Dupree*, No. 16-CR-84, 2016 WL 10703796, at *3 n.1 (E.D.N.Y. Aug. 29, 2016) ("[A] violation of any New York City traffic regulation is an arrestable 'traffic infraction' under New York State law."); *Evans v. Solomon*, 681 F. Supp. 2d 233, 243 n.5, 248 (E.D.N.Y. 2010) (same, and holding that police officer "undoubtedly had probable cause to arrest Plaintiff based either on Plaintiff's traffic infraction" under the New York City Traffic Rules, "or on his

---

⁶ *People v. Alamo*, 34 N.Y.2d 453 (1974), does not require a different conclusion. There, the New York Court of Appeals held that "operation of [a] vehicle is established on proof that the defendant was merely behind the wheel with the engine running." *Id.* at 458. But the *Alamo* court did not limit the term "operation" to that definition.

refusal to furnish a driver's license" under the VTL); *see also Cox v. City of New York*, No. 13-CV-163, 2014 WL 3696003, at *8 (E.D.N.Y. July 23, 2014) (violation of New York City Traffic Rules justifies police stop). Put simply, police officers are (at least arguably) authorized to arrest vehicle "operators" who refuse to produce the identification documents listed in New York City Traffic Rule 4-12(a)(3) on demand.[7]

And this is true even though Plaintiff disputes that his car was illegally parked to begin with. Nothing in Rule 4-12(a)(3) requires a predicate offense for the Rule to apply. For better or worse, the Rule allows police officers to demand identification from any "operator" of a motor vehicle, whether or not they have cause to suspect that a violation has occurred. Thus, once Plaintiff refused to produce identification, the

---

[7] Plaintiff does not argue otherwise. But Judge Brodie referenced one case, *People v. Desmornes*, 82 N.Y.S.3d 691 (N.Y. Crim. Ct. 2018), that suggests traffic arrests may, in some circumstances, be "unauthorized" when the officers could issue a parking ticket or tow the parked vehicle instead. *Id.* at 95-96. But *Desmornes* dealt with a motion to suppress evidence collected incident to arrest. It did not mention the New York Traffic Rule at issue here. And its conclusion that the arrest was "unauthorized" finds little support in New York statutory law (as explained above), or the cases on which it relies. *See People v. Howell*, 49 N.Y.2d 778, 779 (1980) (granting motion to suppress because arrest for reckless driving was "neither called for nor the preferred procedure") (citing *People v. Troiano*, 35 N.Y.S. 476, 478 (1974) (stating that searches incident to traffic arrests may, "perhaps," be "unjustified" where the arrest "was not necessary because an alternative summons was available or because the arrest was a suspect pretext . . . .") (citing *People v. Marsh*, 20 N.Y.2d 98, 101-02 (1967) (expressing doubt that "the [New York State] Legislature intended" to allow searches incident to arrest for "traffic violations")))); *see also People v. Adams*, 32 N.Y.2d 451, 454-55 (1973) (stating that "the lawfulness of [a traffic] arrest will not always justify an otherwise illegal search"). Thus, *Desmornes* does not change my conclusion that Defendants were (at least arguably) authorized to arrest Plaintiff for violating New York City Traffic Rule 4-12(a)(3).

17

officers had a reasonable basis — at least for qualified-immunity purposes — to arrest Plaintiff under Rule 4-12(a)(3). Because probable cause (at least) arguably existed from that point forward, Defendants are entitled to qualified immunity for the events following Plaintiff's refusal to produce identification documents — including the formal arrest itself.

They are not, however, shielded by qualified immunity from the events *preceding* Plaintiff's refusal. For that reason, this case will proceed to trial. Plaintiff testified that the Defendants "tackled" and "restrained" him before asking for his identification documents. *See* Compl. ¶ 45; Frederick Dep. at 27:12-15; 59:22-60:4. Those acts constitute an "arrest." *See, e.g., Posr v. Doherty*, 944 F.2d 91, 98 (2d Cir. 1991) ("An arrest need not be formal; it may occur even if the formal words of arrest have not been spoken provided that the subject is restrained and his freedom of movement is restricted"); *Jennings v. Decker*, 359 F. Supp. 3d 196, 209 (N.D.N.Y. 2019) ("Plaintiff was arrested at least as of the moment [Defendant] tackled him to the ground."); *Brown v. Dirga*, No. 15-CV-1086, 2017 WL 4399190, at *8 (D. Conn. Sept. 29, 2017) (officer "arrested" the plaintiff by grabbing his arm, putting it behind his back, and pushing him against a parked car). And Plaintiff has adduced sufficient evidence that the officers lacked probable cause to justify that arrest, given his testimony that the car was not

parked illegally. Frederick Dep. at 28:23-29:4. The officers dispute these assertions; but that dispute cannot be resolved on a motion for summary judgment.

Thus, Plaintiff's false-arrest claim may proceed with respect to the events preceding his refusal to produce identification documents. *See, e.g.*, *Gonzalez v. City of Schnectady*, No. 00-CV-824, 2001 WL 1217224, at *5 (N.D.N.Y. Sept. 17, 2001) (plaintiff could maintain false-arrest claim for the "period of time between [his] initial contact with the police" and the subsequent discovery of evidence providing probable cause for an arrest, if his detention during that time was not supported by probable cause). His false-arrest claim, however, is limited to this conduct — and not the formal arrest itself, which occurred after he refused (as he concedes) to comply with Defendants' request for his identification documents.

## VI. Conclusion

For the reasons set forth above, Defendants' motion for reconsideration is granted in part and denied in part. The scope of Plaintiff's false-arrest claim is limited to the events preceding his refusal to produce identification documents at Defendants' request. The parties shall submit a revised joint

pretrial order ("JPTO") or file a letter stating their intent to proceed on the existing JPTO by July 28, 2021.

SO ORDERED.

/s Eric Komitee
ERIC KOMITEE
United States District Judge

Dated:  June 28, 2021
        Brooklyn, New York